DOUGLAS H. MEAL (*admitted pro hac vice*)
dmeal@orrick.com
REBECCA HARLOW (CA BAR NO. 281931)
rharlow@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

Attorneys for Defendants
ZOOSK INC. AND SPARK NETWORKS SE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

JUAN FLORES-MENDEZ, an individual and AMBER COLLINS, an individual, and on behalf of classes of similarly situated individuals,

Plaintiffs,

v.

ZOOSK, INC., a Delaware corporation; and SPARK NETWORKS SE, a German corporation,

Defendants.

Case No. 3:20-cv-4929-WHA

**DEFENDANT ZOOSK, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

Date: January 28, 2021
Time: 8:00 a.m.
Location: Courtroom 12, 19th Floor
450 Golden Gate Ave.
San Francisco, California

Judge: The Honorable William Alsup

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Plaintiffs Fail to Plead a Viable Claim under the Unfair Competition Law ..... 1

1. Plaintiffs Lack Standing to Bring a UCL Claim. ..... 1

2. Plaintiffs Have Not Pled Facts Demonstrating That Zoosk's Conduct Was Unlawful. ..... 4

3. Plaintiffs Are Not Entitled to the Relief They Seek Under the UCL. ..... 6

B. Plaintiffs Fail to State a Claim for Negligence ..... 7

1. Zoosk Did Not Owe Plaintiffs a Legal Duty to Protect Them from Harm Imposed by Third-Party Criminals ..... 8

2. Plaintiffs Fail to Allege an Applicable Standard of Care or Violation of Such Standard of Care ..... 10

3. Plaintiffs Fail to Plead Actionable Injury Caused by Any Alleged Violation of an Applicable Standard of Care ..... 11

4. The Economic Loss Doctrine Bars Plaintiffs' Negligence Claim ..... 12

C. Plaintiffs' Declaratory Judgment Claim Cannot Survive ..... 13

III. CONCLUSION ..... 13

## TABLE OF AUTHORITIES

Page

**Cases**


*Adkins v. Facebook, Inc.*,
424 F. Supp. 3d 686 (N.D. Cal. 2019) .......... 11

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) .......... 3, 11

*Bates v. United Parcel Service*,
511 F.3d 974 (9th Cir. 2007) .......... 7

*Broam v. Bogan*,
320 F.3d 1023 (9th Cir. 2003) .......... 5, 13

*Corona v. Sony Pictures Entertainment, Inc.*,
No. 14-CV-09600 RGK EX, 2015 WL 3916744 (C.D. Cal. June 15, 2015) .......... 11

*Diaz v. Intuit, Inc.*,
No. 5:15-CV-01778-EJD, 2018 WL 2215790 (N.D. Cal. May 15, 2018) .......... 8

*Echavarria, et al. v. Facebook, Inc.*,
Case No. 3:18-cv-05982 (N.D. Cal. Feb. 7, 2019) .......... 13

*Faunce v. Cate*,
222 Cal. App. 4th 166 (2013) .......... 13

*FTC v. Wyndham Worldwide Corp.*,
799 F.3d 236 (3d Cir. 2015) .......... 6

*Gardner v. Health Net, Inc.*,
No. CV 10-2140 PA (CWX), 2010 WL 11597979 (C.D. Cal. Aug. 12, 2010) .......... 4

*In re Anthem, Inc. Data Breach Litigation*,
No. 15-MD-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016) .......... 3

*In re Capital One Consumer Data Security Breach Litigation*,
No. 1:19MD2915 (AJT/JFA), 2020 WL 5629790 (E.D. Va. Sept. 18, 2020) .......... 5

*In re Equifax, Inc., Customer Data Security Breach Litigation*,
362 F. Supp. 3d 1295 (N.D. Ga. 2019) .......... 9

*In re Sony Gaming Networks & Customer Data Security Breach Litigation*,
996 F. Supp. 2d 942 (S.D. Cal. 2014) .......... 8

*In re Yahoo! Inc. Customer Data Security Breach Litigation*,
313 F. Supp. 3d 1113 (N.D. Cal. 2018) .......... 2, 9

*In re Yahoo! Inc. Customer Data Security Breach Litigation*,
No. 16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) .......... 4, 7

*J'Aire Corp. v. Gregory*,
24 Cal. 3d 800 (1979) .......... 8

*Jackson v. Loews Hotels, Inc.*,
No. EDCV18827DMGJCX, 2019 WL 6721637 (C.D. Cal. July 24, 2019) .......... 7

TABLE OF AUTHORITIES

Page

*Jones v. Micron Technology Inc.*, 400 F. Supp. 3d 897, 923 (N.D. Cal. 2019) .......... 4

*Kalitta Air, LLC v. Central Texas Airborne Systems, Inc.*, 315 F. App'x 603 (9th Cir. 2008) .......... 12

*Kuhns v. Scottrade, Inc.*, 868 F.3d 711 (8th Cir. 2017) .......... 10

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) .......... 2

*LabMD, Inc. v. FTC*, 678 F. App'x 816 (11th Cir. 2016) .......... 6

*LabMD, Inc. v. FTC*, 894 F.3d 1221 (11th Cir. 2018) .......... 6

*Mallon v. City of Long Beach*, 330 P.2d 423 (Cal. Ct. App. 1958) .......... 6

*McConnell v. Department of Labor*, 814 S.E.2d 790 (Ga. Ct. App. 2018) .......... 9

*Parziale v. HP, Inc.*, 445 F. Supp. 3d 435 (N.D. Cal. 2020) .......... 6

*Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115 (9th Cir. 1999) .......... 6

*United Guaranty Mortgage Indemnity Co. v. Contrywide Financial Corp.*, 660 F. Supp. 2d 1163 (C.D. Cal. 2009) .......... 12

*Walters v. Kimpton Hotel & Restaurant Group, LLC*, No. 16-CV-05387-VC, 2017 WL 1398660 (N.D. Cal. Apr. 13, 2017) .......... 3, 4

*Wishnev v. Northwestern Mutual Life Insurance Co.*, 162 F. Supp. 3d 930 (N.D. Cal. 2016) .......... 13

**Statutes**

15 U.S.C. § 45 .......... 6

California Business & Professions Code § 17200 .......... 1

California Business & Professions Code § 17204 .......... 1

**Other Authorities**

M. Olhausen, Acting Chairman, Federal Trade Commission, *Prepared Statement of the Federal Trade Commission on Small Business Cybersecurity* (Mar. 8, 2017) .......... 6

## I. INTRODUCTION

This action should be dismissed in its entirety as to defendant Zoosk, Inc. ("Zoosk") for failure to state a claim for which relief may be granted.

## II. ARGUMENT

### A. Plaintiffs Fail to Plead a Viable Claim under the Unfair Competition Law

California's Unfair Competition Law ("UCL") permits the government, and in some cases individual litigants, to bring suit where a defendant has engaged in unlawful, unfair, or fraudulent business practices. *See* Cal. Bus. & Prof. Code § 17200 *et seq.* Here, Plaintiffs seek relief under the UCL's prohibition on "unlawful" business practices, but they do so without establishing that they meet the threshold requirement of having "lost money or property as a result of" the Zoosk practices they challenge as unlawful, as required by the UCL. Cal. Bus. & Prof. Code § 17204 (defining standing to pursue UCL actions). Moreover, by making only conclusory allegations that Zoosk "engaged in unlawful acts and practices" by having purportedly "sub-standard security practices and procedures," FAC ¶ 106, Plaintiffs fail to adequately allege any unlawful practice upon which a UCL claim may be based. Further, even had they stated a valid theory of UCL liability against Zoosk, Plaintiffs would not be entitled to any of the relief sought by their UCL claim. For all three of these reasons, the UCL cause of action must be dismissed.

#### *1. Plaintiffs Lack Standing to Bring a UCL Claim.*

Despite Plaintiffs' best efforts, they cannot meet the prerequisite showing of UCL standing because they have not "lost money or property" by reason of Zoosk's supposed UCL violation. First, Plaintiffs argue that they would not have provided their PII to Zoosk had they "known about Defendants' inadequate data security practices" and thus suffered lost benefit of the bargain. Opp at 12. This argument fails for any number of reasons. To begin with, this argument is dead on arrival because the FAC nowhere alleges that Plaintiffs would not have provided their PII to Zoosk had they known about Defendants' inadequate data security practices; instead this "allegation" appears out of nowhere in Plaintiffs' Opposition Brief. Moreover, for Plaintiffs to have standing to bring a UCL claim under this theory, they must "*surrender in a transaction* more, or *acquire in a transaction* less, than [they] otherwise would have." *Kwikset Corp. v. Superior Court*, 51 Cal.

4th 310, 323 (2011) (emphasis added). In other words, this basis for UCL standing requires a "transaction" – some money or property exchanged for goods or services. Here, even if Plaintiffs' creation of accounts with Zoosk could be deemed a transaction, the FAC nowhere alleges that Plaintiffs paid any money to create their Zoosk accounts.

The present case therefore differs crucially from *In re Yahoo! Inc. Customer Data Security Breach Litigation*, 313 F. Supp. 3d 1113 (N.D. Cal. 2018) (Koh, J.), which Plaintiffs heavily rely on to support their standing theory, as the transaction that gave rise to standing in that case differs fundamentally from the transactions alleged here. In *Yahoo!*, the Court held that a plaintiff had UCL standing because he alleged *he paid* for Yahoo's premium email service and would not have provided his personal information had he known his account was not secure. He thus purported to have "*paid for services* that were either worth nothing or less than *what was paid for them*." *Id.* at 1130 (emphasis added). By contrast, Plaintiffs here have not alleged that they paid anything to Zoosk. Accordingly, they have no basis to assert UCL standing on the theory that succeeded in *Yahoo!*.[1]

Plaintiffs' attempt to establish standing by virtue of a purported "diminution in value of Plaintiffs' PII," Opp at 12, fares no better. This Court has squarely rejected such allegations as a

[1] Moreover, even if Plaintiffs had alleged both (1) that they would not have provided their PII to Zoosk had they known about Zoosk's allegedly inadequate data security practices and (2) that they paid money to Zoosk in the transaction whereby they created their Zoosk accounts and provided certain PII to Zoosk, the *Yahoo!* theory of UCL standing still would have no application here, for two reasons. First, the UCL requires a "loss" of money or property, not merely a "payment" of money or property, for UCL standing to exist, so any effort to employ the *Yahoo!* theory of UCL standing must be predicated not merely on the plaintiff's having *paid* money to the defendant; instead any such theory must be founded on the plaintiff's having *lost* money as a result of that payment by reason of the goods and services received in exchange for the payment having had less value than the payment. No allegation to this effect appears anywhere in the FAC. Second, the UCL requires the alleged loss of money or property to have occurred "as a result of" the alleged UCL violation, so for the *Yahoo!* theory of UCL standing to be viable in any given case, the alleged UCL violation must have caused the payment that resulted in the alleged loss of money or property. Here, however, the alleged UCL violation is that Zoosk unlawfully employed lax security measures in regard to Plaintiffs' PII and did not timely disclose the ShinyHunters attack – not that Zoosk made false promises or misrepresentations as to its security measures and thereby induced Plaintiffs to transact with Zoosk. *See* FAC at ¶¶ 106–07. As Plaintiffs' transacting to become Zoosk members is not alleged and could not be alleged to have occurred "as a result of" Zoosk's supposedly lax security measures or Zoosk's subsequent alleged notification delay – i.e., the Zoosk conduct that allegedly violated the UCL – the *Yahoo!* theory of UCL standing could not be employed here even if Plaintiffs had alleged a "loss" of money or property as a result of their transacting to become Zoosk members.

basis for UCL standing. *See Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019) (Alup, J.) (finding "lack of specificity" regarding market for and value of personal information to be "fatal" for purposes of UCL standing). Instead, Plaintiffs misconstrue caselaw to support their baseless theory. The finding of UCL standing in *In re Anthem, Inc. Data Breach Litigation* turned on an alleged lost benefit of the bargain – insurance premium payments made with expectation that certain privacy laws would be complied with, which allegedly did not occur – not on loss of value of personal information. No. 15-MD-02617-LHK, 2016 WL 3029783, at *32 (N.D. Cal. May 27, 2016) (Koh, J.). To say as Plaintiffs do that the *Anthem* court found that "lost value of PII is sufficient for statutory standing," Opp. at 12, plainly misrepresents Judge Koh's holding in that case.[2] Rather, in an entirely separate section of the opinion, the Court held that the plaintiffs had sufficiently pled *contract damages* for lost value of personal information, which has no bearing on UCL standing. *See* 2016 WL 3029783 at *15.

Finally, Plaintiffs cannot rely on allegedly having "spent their valuable time mitigating the effects of the breach," Opp. at 12, as conferring UCL standing. If that were sufficient, then the statutory requirement that a party have "lost money or property" would be read entirely out of the UCL. Plaintiffs cite for support to *Walters v. Kimpton Hotel & Restaurant Group, LLC*, No. 16-CV-05387-VC, 2017 WL 1398660 (N.D. Cal. Apr. 13, 2017) (Chhabria, J.). But again, Plaintiffs' parenthetical regarding the purported holding of that case has little to do with the actual ruling rendered, as in actuality the Court in *Walters did not* find time and effort alone sufficient to establish UCL standing. Instead, the Court found that "[t]he theft of Walters's payment card data and the time and effort he has expended to monitor his credit are sufficient to demonstrate injury *for [Article III] standing purposes*." 2017 WL 1398660, at *1 (emphasis added). In addition to finding Article III standing, the Court also found that, for purposes of an implied contract claim, "Walters sufficiently alleged '*actual damages*' flowing from the alleged breach, including having to 'secure and maintain' credit monitoring services (which presumably come at a *cost*) and other '*out-of-*

---

[2] Indeed, in a footnote, the *Anthem* court specifies that "Plaintiffs do not seek Loss of Value of PII under the UCL." 2016 WL 3029783, at *30 n.7. The finding of UCL standing was based on the fact that "[a]ll California Plaintiffs paid premiums" and did not receive what they had paid for. *Id.* at *32.

*pocket expenses* and the value of . . . time reasonably incurred to remedy or mitigate" the breach. *Id.* at *2 (emphasis added). Then, in analyzing whether the plaintiff had UCL standing, the Court referred to "the reasons stated above" as showing that the plaintiff had "alleged economic injury resulting from the breach." *Id.* at *2. Plaintiffs read that statement as endorsing a new time-as-money expansion of UCL standing, but immediately previously the Court had found sufficient allegations of "actual damages" in the form of "out-of-pocket damages" and the cost of credit monitoring services, which are "money or property" and therefore satisfy the UCL's standing requirement. *Walters* is thus entirely consistent with the prevailing precedent requiring plaintiffs to have incurred out-of-pocket costs for credit monitoring or other actual damages, not just "time and effort," in order to establish UCL standing. *See, e.g. In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *22 (N.D. Cal. Aug. 30, 2017) (concluding that plaintiffs who incurred out-of-pocket credit monitoring costs following data breach were "required to enter into a transaction, costing money or property, that would otherwise have been unnecessary if not for Defendants' alleged misconduct" and thus had UCL standing) (internal citation and quotation omitted); *Gardner v. Health Net, Inc.*, No. CV 10-2140 PA (CWX), 2010 WL 11597979, at *12 (C.D. Cal. Aug. 12, 2010) (rejecting UCL claim for lack of standing where defendant offered free credit monitoring to plaintiff such that plaintiff had only expended time on credit monitoring).

In short, having alleged no loss of "money or property" as a result of Zoosk's supposed UCL violation, Plaintiffs lack UCL standing. Their UCL claim must be dismissed for this reason alone.

*2. Plaintiffs Have Not Pled Facts Demonstrating That Zoosk's Conduct Was Unlawful.*

Even if Plaintiffs can establish UCL standing, which they cannot, their UCL claim nonetheless fails because they have not pled facts demonstrating Zoosk's conduct was unlawful by virtue of violating a separate statute. *See Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 923 (N.D. Cal. 2019) (White, J.) (explaining that UCL claim brought under "unlawful" prong is "predicated on a violation of a separate statute or common law regime" and if such "violations are

insufficiently pled, it follows that Plaintiffs have failed to sufficiently plead a violation of the UCL"). Zoosk's moving brief, ECF No. 51 ("Zoosk Br."), conclusively showed that Plaintiffs had not adequately pled violations of the two statutes that the FAC relied upon to sustain the UCL claim – California Civil Code § 1798.81.5 and California Civil Code § 1798.82. Zoosk Br. at 19–21. Plaintiffs' opposition accordingly abandons the FAC entirely and instead defends the FAC's UCL claim by asserting that "Defendants violated Section 5(a) of the FTC Act by its [sic] failure to implement adequate data security measures to detect and prevent the exfiltration of Plaintiffs' and class members' PII." Opp. at 13. Allegations regarding violation of the FTC Act appear elsewhere in the FAC, *see* FAC ¶¶ 3–5, 42, 82–85, 87–88, but those allegations are not the basis for the UCL cause of action as pled. *See* FAC ¶¶ 104–110. Even the very case that Plaintiffs cite in support of their effort to sustain their UCL claim by alleging a violation of the FTC Act, *In re Capital One Consumer Data Security Breach Litigation*, plainly states that under California law, a UCL claim "must identify the particular section of the statute that was violated, and must describe with reasonable particularity the facts supporting the violation." No. 1:19MD2915 (AJT/JFA), 2020 WL 5629790, at *28 (E.D. Va. Sept. 18, 2020) (quoting *Brothers v. Hewlett-Packard Co.*, 2006 WL 3093685, at *7 (N.D. Cal. Oct. 31, 2006)). The UCL claim in the FAC does not do so and Plaintiffs cannot accomplish through briefing what they failed to do in pleading. *See Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (quoting *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (emphasis in original). On this basis alone, Plaintiffs' UCL claim must be dismissed.

Should the Court nonetheless look beyond the UCL cause of action to determine whether an FTC Act violation is sufficiently pled elsewhere in the FAC, which it should not, Plaintiffs have not pled with reasonable particularity facts sufficient to make out such a claim. The FTC itself has recognized that the law "does not require perfect security" and "the mere fact that a breach occurred does not mean that a company has violated" Section 5. M. Olhausen, Acting Chairman, Fed. Trade Cmm'n, *Prepared Statement of the Fed. Trade Comm'n on Small Business Cybersecurity* at 3–4

(Mar. 8, 2017), *available at* https://www.ftc.gov/system/files/documents/public_statements/1174903/p072104_commission_testimony.pdf. Rather, Section 5 data security violations involve "data security failures . . . [that are] multiple and systemic." *Id.* Thus not every breach-enabling data security failure violates Section 5, and merely alleging a data breach – which is all Plaintiffs have alleged here – does not come close to alleging a violation of Section 5. In addition, Plaintiffs have not alleged facts sufficient to show that Zoosk's data security caused "*substantial injury* to consumers which [was] *not reasonably avoidable* by consumers themselves and *not outweighed* by countervailing benefits to consumers or to competition" – all of which are necessary elements of an unfairness-based Section 5 violation. *See* 15 U.S.C. § 45(n) (emphasis added).[3] Moreover, Plaintiffs' have not alleged the culpability element of an unfairness-based Section 5 violation, under which a defendant's conduct must be shown to have violated some independent constitutional, statutory, or common-law principle. *LabMD, Inc. v. FTC*, 894 F.3d 1221, 1231 (11th Cir. 2018).

*3. Plaintiffs Are Not Entitled to the Relief They Seek Under the UCL.*

Plaintiffs are incorrect when they assert that they "have sufficiently alleged entitlement to damages under the UCL." Opp. at 13. Damages are not even available under the UCL and Plaintiffs concede that they "cannot seek monetary compensation," *id.*, as they have no basis to claim restitution, which is the only monetary recovery permitted under the UCL, *see* Zoosk Br. at 21. Contrary to their assertion, Plaintiffs also are not entitled to injunctive relief under the UCL where, as here, the UCL claim is based on an incident that occurred in the past and no basis has been adequately pled upon which to conclude the incident will probably recur. *See Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1123 (9th Cir. 1999)); *Mallon v. City of Long Beach*, 330 P.2d 423 (Cal. Ct. App. 1958) ("Injunctive power is not used as punishment for

[3] Plaintiffs have not alleged that they have suffered any tangible injury, and thus have not alleged a "substantial" one. *See LabMD, Inc. v. FTC*, 678 F. App'x 816, 820 (11th Cir. 2016) (finding "intangible harm" substantial "may not be reasonable"); *Parziale v. HP, Inc.*, 445 F. Supp. 3d 435, 446 (N.D. Cal. 2020) (Davila, J.) (noting that "[i]n most cases a substantial injury involves monetary harm") (quoting *Porsche Cars N.A., Inc. v. Diamond*, 140 So. 3d 1090 (Fla. Dist. Ct. App. 2014). Plaintiffs also fail to plead facts showing that any injury was neither reasonably avoidable nor outweighed by countervailing benefits. *See FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 255–56 (3d Cir. 2015) (analysis of countervailing benefits requires applying a cost-benefit test to determine if additional security would have been worthwhile).

past acts and is ordered against them only if there is evidence they will probably recur."); *cf. In re Yahoo!*, 2017 WL 3727318, at *31 (finding standing to seek injunctive relief where complaint alleged information was being actively sold on dark web and defendant that had suffered multiple breaches over several years had taken no action). Plaintiffs' UCL cause of action contains no allegation that Zoosk currently is, or in the future will be, engaging in unlawful activity. *See* FAC ¶¶ 105–10. Rather, Plaintiffs merely assert that they have no reason to believe that Zoosk's security is in fact currently sufficient. *Id.* ¶¶ 95, 97. Plaintiffs' mere suspicions and speculation fall well short of pleading *facts* showing Zoosk's alleged prior unlawful conduct "will probably recur" and thus fail to meet their burden of pleading *facts* to support a claim for injunctive relief under the UCL.

Moreover, the type of personal information at issue counsels against finding Plaintiffs adequately pled that they face "real and immediate threat of repeated injury." *See Bates v. United Parcel Serv.*, 511 F.3d 974, 985 (9th Cir. 2007). Where there has been no theft of social security numbers or financial account information, as is the case here, courts have dismissed claims for UCL injunctive relief for lack of immediate threat. *See, e.g.*, *Jackson v. Loews Hotels, Inc.*, No. EDCV18827DMGJCX, 2019 WL 6721637, at *4 (C.D. Cal. July 24, 2019) (dismissing amended claim for UCL injunctive relief because "Plaintiff has once again failed to demonstrate that her name, phone number, email address (but not her email password), and mailing address are sensitive enough pieces of information to give rise to a certainly impending risk of future identity theft or fraud"). Though Plaintiffs rely on *Yahoo!* to assert that injunctive relief is warranted here, the *Yahoo!* plaintiffs alleged, and the Court found significant, that Yahoo! had experienced repeated data breaches and allegedly failed to take appropriate action. 2017 WL 3727318, at *2. No such allegations are made here.

### B. Plaintiffs Fail to State a Claim for Negligence

Plaintiffs have failed to establish a legal duty actionable in negligence, any applicable standard of conduct or violation thereof, or any cognizable injury proximately caused thereby and not barred by the economic loss rule. They have therefore failed to state a claim for negligence.

*1. Zoosk Did Not Owe Plaintiffs a Legal Duty to Protect Them from Harm Imposed by Third-Party Criminals*

California law does not recognize "a general duty to protect against the conduct of another in the absence of a special relationship." *Diaz v. Intuit, Inc.*, No. 5:15-CV-01778-EJD, 2018 WL 2215790, at *5 (N.D. Cal. May 15, 2018) (Davila, J.) (internal citation omitted). Plaintiffs' recitation of California's standard for finding a special relationship and conclusory allegation that Zoosk had a "special relationship" with Plaintiffs given that "[c]ustomers were required to provide PII when utilizing Defendants' properties and/or services" are insufficient to establish the existence of a "special relationship." *See* FAC ¶ 81. Plaintiffs have not demonstrated that Zoosk's provision of dating services was "intended to affect" Plaintiffs specifically rather than consumers generally, and have thus not established the first element of the special relationship test articulated in *J'Aire Corp. v. Gregory*, 24 Cal. 3d 800 (1979).[4] The other elements of the *J'Aire* test likewise do not support finding a special relationship here. Regarding "the foreseeability of harm to the plaintiff," "the degree of certainty that the plaintiff suffered injury," and "the closeness of the connection between the defendant's conduct and the injury suffered," it is far from "certain" that Plaintiffs suffered actionable injury (*see* Part II.B.3 *infra*); the First Amended Complaint alleges no specific act or omission by Zoosk that made such harm foreseeable (and includes no allegation that Zoosk "knew its system was insufficient," as Plaintiffs claim in their Opposition); and the connection between any such Zoosk conduct and any injury to Plaintiffs was far from "close" given the intervening causal steps of the ShinyHunters attack and the potential exposure of Plaintiffs' information by means of that attack. And as to "the moral blame attached to the defendant's

[4] Plaintiffs accuse Zoosk of overstating the case that finding a special relationship here would support deeming every consumer relationship a special one, but Plaintiffs' argument for finding a special relationship here has no logical stopping point and thus runs afoul of the California law requirement that there indeed must be something "special" about the relationship, beyond an "everyday consumer transaction[]," in order for the special relationship exception to apply. *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 969 (S.D. Cal. 2014), *order corrected*, No. 11MD2258 AJB (MDD), 2014 WL 12603117 (S.D. Cal. Feb. 10, 2014). Plaintiffs' argument that the special relationship they ask this Court to recognize would apply only to companies that solicit and generate revenue from consumer information (Opp. at 9) is unsurprisingly offered without any legal support and, by its terms, would cover every online consumer transaction and every in-person consumer payment card transaction.

connection" and the "policy of preventing future harm," there are no facts pled that could support any "moral blame" – particularly no allegation that Zoosk knew of system vulnerabilities, despite Plaintiffs' suggestion to the contrary – or require liability as a matter of "policy."

Plaintiffs' brief draws heavily from the discussion of the *J'Aire* factors in the *Yahoo!* decision, *see* Opp. at 8; 313 F. Supp. 3d at 1132, but omits several significant facts that the Court found compelling in that case, including that Yahoo! failed to promptly notify consumers, knew it had inadequate security and lacked security tools, suffered "repeated security breaches, [had] wholly inadequate safeguards, and refus[ed] to notify Plaintiffs . . . of breaches of security vulnerabilities," and concealed its knowledge from the public. *See* 313 F. Supp. 3d at 1132. While those facts may have supported finding a special relationship in that case, those facts are not present here, and as a result *Yahoo!* does not counsel in favor of finding a special relationship here. There being no special relationship between Plaintiffs and Zoosk and no general duty under California law to protect personal information from third-party attacks, Plaintiffs have failed to establish the legal duty that is the prerequisite to any negligence claim.

Plaintiffs additionally make a policy argument in favor of finding a duty here, relying on *In re Equifax, Inc., Customer Data Security Breach Litigation*, 362 F. Supp. 3d 1295 (N.D. Ga. 2019) (applying Georgia law). *See* Opp. at 8. But the policy argument embraced in that case was implicitly rejected mere months later by the Supreme Court of Georgia, which affirmed a lower court's determination that no such duty exists under that state's law. *See McConnell v. Dep't of Labor*, 814 S.E.2d 790, 798–99 (Ga. Ct. App. 2018), *aff'd* 828 S.E.2d 352 (Ga. 2019) (finding that purported "duty of care to safeguard personal information . . . has no source in Georgia statutory or caselaw"). Indeed, the Georgia Supreme Court affirmed the conclusion that, notwithstanding policy considerations, "[i]t is beyond the scope of judicial authority" to create a duty to protect personal information where the state legislature has not done so. *McConnell*, 814 S.E.2d at 799, *aff'd*, 828 S.E.2d 352. As in Georgia, the California legislature has considered data security and privacy risks to consumers and has enacted the California Consumer Privacy Act ("CCPA") in response, which includes a narrow private right of action made available to consumers when their personal information is involved in a data breach. Plaintiffs have already conceded that they cannot

meet the legislature's requirements for bringing a CCPA claim based on the Zoosk data security event. Opp. at 12. This Court should not create a duty at common law that the Legislature expressly chose not to create statutorily.

*2. Plaintiffs Fail to Allege an Applicable Standard of Care or Violation of Such Standard of Care*

Plaintiffs mischaracterize Zoosk's argument regarding the standard for pleading an applicable standard of care that has been violated as a "requirement that Plaintiffs lay out in detail how Defendants' system were inadequate." Opp. at 9. To the contrary, Zoosk simply points out that, to state a claim in negligence, it does not suffice to assert that merely because a breach occurred, the defendant's security systems *must have been* in violation of some applicable security standard. *See id.* Such "a naked assertion[] devoid of further factual enhancement" as to how Zoosk's security was inconsistent with an applicable standard of care cannot survive a motion to dismiss. *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 717 (8th Cir. 2017) (dismissing claim where plaintiff asserted that defendant violated contractual security obligation in allowing data breach "but [the court has] no idea how").

The FAC attempted to plead a standard of care based generally on "federal and state guidelines," Federal Trade Commission "security guidelines and recommendations," and "[v]arious FTC publications and data security breach orders." FAC ¶¶ 78, 83, 85. It also attempted to allege a violation of that claimed standard of care, based on "fail[ure] to use reasonable measures to protect PII" allegedly in violation of Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a) (FAC ¶ 85) or on Cal. Civ. Code § 1798.81.5 (FAC ¶ 106). Zoosk's moving brief demonstrated the inadequacy of these allegations, Zoosk Br. at 7–9, and Plaintiffs' opposition brief essentially abandons them, making no effort to rebut Zoosk's points. Instead, Plaintiffs' sole argument on the standard of care issue is their conclusory assertions that the inadequacy of Zoosk's security was "plainly obvious" and that Zoosk's failure to meet a standard of care "is clear." Opp. at 9. Having failed to make specific factual allegations demonstrating that Zoosk fell short of a particular standard of care to which it may legally be held, Plaintiffs have failed to state a claim for negligence, even assuming Zoosk owed them a common-law duty to

protect their information against criminal attacks such as the ShinyHunters attack.

*3. Plaintiffs Fail to Plead Actionable Injury Caused by Any Alleged Violation of an Applicable Standard of Care*

Again resorting to manufacturing unpled allegations to bolster their claims, Plaintiffs assert that like Facebook in *Bass*, "Defendants' collection and storage of Plaintiffs' and class members' PII was a 'centralized location' permitting the attackers access to a trove of data neatly organized and linked to each identity of Plaintiffs and class members." *See* Opp. at 10. The FAC contains no such allegation. Regardless, had that allegation been pled, it would still be the case that Plaintiffs have pled no injury actionable in negligence. To begin with, Plaintiffs may not rely on speculative future losses from as-yet unincurred identity theft as being injuries actionable in negligence. *See* Zoosk Br. at 10–12. Unlike in *Bass*, where the plaintiff was "bombarded" with "[e]xtensive 'phishing' emails and text messages," 394 F. Supp. 3d at 1034, Plaintiffs here do not assert that their information has been misused, nor do they articulate how the limited information potentially obtained by the ShinyHunters could be used to perpetrate identity theft or inflict other injuries on them. Likewise, Plaintiffs' assertion that the time and effort allegedly expended to address the ShinyHunters attack constitutes injury actionable in negligence is impermissibly speculative. *Corona v. Sony Pictures Entm't, Inc.*, No. 14-CV-09600 RGK EX, 2015 WL 3916744, at *4 (C.D. Cal. June 15, 2015) ("[G]eneral allegations of lost time are too speculative to constitute cognizable injury.").[5] Finally, given that they do not respond to the cases cited by Zoosk establishing that their claim for diminished value of their personal information is too speculative to satisfy the actual injury element of a negligence claim, *see Adkins v. Facebook, Inc.*, 424 F. Supp. 3d 686, 697 (N.D. Cal. 2019) (Alsup, J.); *see also Bass*, 394 F. Supp. 3d at 1040 (finding lack of allegation by plaintiff "how this information has economic value to him" fatal to UCL claim premised on loss of value), Plaintiffs appear to concede the inadequacy of that particular theory of injury actionable in negligence.

Because Plaintiffs have failed to plead any actionable injuries, their negligence claim

[5] The *Bass* decision did not address whether lost time can sustain a claim for negligence on a motion to dismiss under Rule 12(b)(6).

necessarily fails.

*4. The Economic Loss Doctrine Bars Plaintiffs' Negligence Claim*

The economic loss rule states that recovery in negligence is generally "limited to damages for physical injuries and recovery of economic loss is not allowed." *Kalitta Air, LLC v. Central Tex. Airborne Sys., Inc.*, 315 F. App'x 603, 605 (9th Cir. 2008).[6] Because this action plainly does not involve "physical injury to person or property," *id.*, Plaintiffs cannot recover monetary relief in negligence.[7]

No exception to the economic loss rule applies here. First, the parties are not in a special relationship, *see* Zoosk Br. at 3–5 and Part II.B.1 *supra*, so that particular exception to the economic loss rule is not available in this case. Likewise, Plaintiffs have not sufficiently pled breach of any "noncontractual duty" that would yield an exception to the rule. *See* Part II.B.1 *supra*.[8] There being no applicable exception, the economic loss rule applies to all Plaintiffs' claimed injuries, and their negligence claim must therefore be entirely dismissed.

---

[6] Plaintiffs cite a couple of federal district court decisions, including one from this Court, for the proposition that the economic loss rule only applies to "purely economic losses" and thus does not apply to intangible injuries such as lost time. Opp. at 11. Because intangible injuries are not actionable in negligence at all, *see* Zoosk Br. at 10–12 and Part II.B.3 *supra*, this Court need not reach the issue whether recovery for intangible injuries is barred by the economic loss doctrine. Were the Court to reach that issue, however, Zoosk respectfully suggests that the rule is intended to permit recovery in negligence only for physical injury to person and property, as stated by the Ninth Circuit in *Kalitta Air*, and thus does apply to both tangible and intangible injuries that are not physical in nature. Any other reading of the rule would lead to the anomalous result that a plaintiff could recover in negligence for intangible injuries, but not out-of-pocket losses, caused by the same negligent act – an outcome at odds with the purpose behind the rule.

[7] Even if the economic loss rule does not extend to claims seeking to recover for intangible injuries such as lost time, which Zoosk does not concede, *see* note 6 *supra*, the other injuries Plaintiffs have claimed are all purely economic losses that indisputably are not recoverable on a negligence theory, so at a minimum the negligence claim must be dismissed as to all those other claimed injuries.

[8] First, as discussed in Part II.B.1 *supra*, there is no common-law negligence duty owed by Zoosk to Plaintiffs under California law. Second, as a logical matter, the duty that triggers this exception cannot be the very same duty in negligence that brought the economic loss rule into play in the first place; otherwise, the exception would swallow the rule as any duty sufficient to state a negligence claim would also trigger the exception. Indeed, the very case that Plaintiffs cite specifies that this exception "require[s] the breach of a tort duty apart from the general duty not to act negligently" because otherwise "the [rule] would be meaningless." *United Guar. Mortg. Indem. Co. v. Contrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1181 (C.D. Cal. 2009). The "noncontractual duty" exception is thus limited to cases involving special relationships, intentional torts, and actions committed with the intent or knowledge that "severe unmitigable harm" would result. *Id.* A common-law duty in negligence is thus not a "noncontractual duty" that can trigger this particular exception to the economic loss rule.

**C. Plaintiffs' Declaratory Judgment Claim Cannot Survive**

Declaratory judgment is a remedy, not a cause of action. *Wishnev v. Nw. Mut. Life Ins. Co.*, 162 F. Supp. 3d 930, 952 (N.D. Cal. 2016) (Chen, J.), *vacated on other grounds*, 786 F. App'x 691 (9th Cir. 2019); *Faunce v. Cate*, 222 Cal. App. 4th 166, 173 (2013). Aware of this, Plaintiffs attempt in their Opposition to recharacterize their claim for a declaratory judgment as being "based on the injunctive relief sought in their UCL and negligence claims," Opp. at 14, but as pled their declaratory judgment claim says no such thing. *See* FAC pp. 23–25. Again, Plaintiffs cannot accomplish through briefing what they failed to do through pleading. *See Broam*, 320 F.3d at 1026 n.2.

Even if the Court is willing to accept Plaintiffs' reformulation of the basis for the declaratory relief Plaintiffs have requested, which it should not, by now hinging their request for that relief on their negligence and UCL claims, Plaintiffs necessarily concede that to the extent their negligence and UCL claims fail as a matter of law, their declaratory judgment claim likewise must fail. But even were one or the other of those claims to survive, Plaintiffs still have not pled sufficient facts to warrant a declaratory judgment. Plaintiffs' reliance on *Bass* is unavailing. There, the plaintiffs provided detailed factual allegations to support their claimed threat of future risk to the security of their personal information. For example, in the complaint underlying the *Bass* action, the plaintiffs alleged that "Defendant faced security breaches, conducted an 'apology tour' before Congress and many media outlets, and then this breach occurred, followed by another announced in December 2018." *Echavarria, et al. v. Facebook, Inc.*, Case No. 3:18-cv-05982, Docket No. 76, Consolidated Class Action Complaint ¶ 289 (N.D. Cal. Feb. 7, 2019). No such allegations regarding multiple and continued security breaches is alleged here, nor are there any other factual allegations that would warrant the expansive declaratory relief requested here. Plaintiffs' cause of action for a declaratory judgment thus lacks any basis and must be dismissed.

## III. CONCLUSION

Zoosk respectfully requests that the Court dismiss the FAC in its entirety as to Zoosk for failure to state a claim.

Dated: December 21, 2020

Respectfully Submitted,

_/s/ Douglas H. Meal_____________
Douglas H. Meal (*admitted pro hac vice*)
MA Bar No. 340971
ORRICK, HERRINGTON & SUTCLIFFE LLP
222 Berkeley St., Suite 2000
Boston, MA 02116
dmeal@orrick.com

Rebecca Harlow
CA Bar No. 281931
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
rharlow@orrick.com

*Attorneys for Defendants*
*Zoosk Inc. and Spark Networks SE*

**CERTIFICATE OF SERVICE**

I, Rebecca Harlow, an attorney, do hereby certify that I have caused a true and correct copy of the foregoing DEFENDANT ZOOSK, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT to be electronically filed with the Clerk of this Court using the CM/ECF system, which generated a Notification of Electronic Filing to all persons currently registered with the Court to receive such notice in the above-captioned case.

__*/s/ Rebecca Harlow*____
Rebecca Harlow
CA Bar No. 281931
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
rharlow@orrick.com

*Attorneys for Defendants*
*Zoosk Inc. and Spark Networks SE*