DOUGLAS H. MEAL (*admitted pro hac vice*)
dmeal@orrick.com
REBECCA HARLOW (CA BAR NO. 281931)
rharlow@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

Attorneys for Defendant
ZOOSK INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JUAN FLORES-MENDEZ, an individual and AMBER COLLINS, an individual, and on behalf of classes of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>ZOOSK, INC., a Delaware corporation,<br><br>Defendants. | Case No. 3:20-cv-4929-WHA<br><br>**DEFENDANT ZOOSK, INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND CAUSE OF ACTION FOR FAILURE TO STATE A CLAIM**<br><br>Date: September 16, 2021<br>Time: 8:00 a.m.<br>Location: Courtroom 12, 19th Floor<br>450 Golden Gate Ave.<br>San Francisco, California<br><br>Judge: The Honorable William Alsup |

## NOTICE OF MOTION TO DISMISS

**PLEASE TAKE NOTICE** that on Thursday September 16, 2021 at 8:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 12 (19th Floor) of the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, California 94102, defendant Zoosk, Inc. ("Zoosk") will, and hereby does, move the Court under Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the Second Cause of Action in the Second Amended Complaint ("SAC") of plaintiffs Juan Flores-Mendez and Amber Collins (together "Plaintiffs"). This motion is based on this notice, the concurrently filed memorandum of points and authorities, and all other facts the Court may or should take notice of, all files, records, and proceedings in this case, and any oral argument the Court may entertain.

**STATEMENT OF RELIEF SOUGHT (CIVIL L.R. 7-2(B)(3)).** Zoosk seeks an Order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing the SAC's Second Cause of Action for failure to state a claim upon which relief can be granted.

Dated: August 11, 2021                              ORRICK, HERRINGTON & SUTCLIFFE LLP

By: /s/ Douglas H. Meal
DOUGLAS H. MEAL
REBECCA HARLOW
Attorneys for Defendant
ZOOSK INC.

**TABLE OF CONTENTS**

**Page**

I.   STATEMENT OF THE ISSUES TO BE DECIDED (CIVIL L.R. 7-4(A)(3)) ................... 1

II.  STATEMENT OF FACTS AS ALLEGED ....................................................................... 1

III. LEGAL STANDARD ........................................................................................................ 2

IV.  ARGUMENT ..................................................................................................................... 2

    A.   Plaintiffs Lack Standing to Bring a UCL Claim. ..................................................... 3

    B.   Plaintiffs Have Not Pled Facts Demonstrating That Zoosk's Conduct Was Unlawful or Unfair. ................................................................................................. 7

        1.   Unlawfulness ................................................................................................ 7

        2.   Unfairness ..................................................................................................... 9

    C.   Plaintiffs Are Not Entitled to the Relief They Seek Under the UCL. .................... 11

V.   CONCLUSION ................................................................................................................ 13

# TABLE OF AUTHORITIES

Page

**Cases**

*Adams v. Johnson*,
  355 F.3d 1179 (9th Cir. 2004).................................................................................................. 2

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................................. 2

*Baba v. Hewlett-Packard Co.*,
  No. C 09-05946 RS, 2010 WL 2486353 (N.D. Cal. June 16, 2010) ......................................... 7

*Bardin v. Daimlerchrysler Corp.*,
  136 Cal. App. 4th 1255 (2006).................................................................................................. 11

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................................. 2

*Ehret v. Uber Technologies, Inc.*,
  68 F.Supp.3d 1121 (N.D. Cal. 2014) ......................................................................................... 4

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*,
  771 F.3d 1119 (9th Cir. 2014).................................................................................................... 11

*FTC v. Wyndham Worldwide Corp.*,
  799 F.3d 236 (3d Cir. 2015)....................................................................................................... 8

*Gardiner v. Walmart Inc.*,
  No. 20-CV-04618-JSW, 2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) ............................... 4, 5, 6

*Grace v. Apple Inc.*,
  No. 17-CV-00551, 2017 WL 3232464 (N.D. Cal. July 28, 2017).............................................. 9

*Hodson v. Mars, Inc.*,
  891 F.3d 857 (9th Cir. 2018) ................................................................................................ 6, 11

*In re Adobe Systems, Inc. Privacy Litigation*,
  66 F. Supp. 3d 1197 (N.D. Cal. 2014) ................................................................................ 10, 11

*In re Anthem, Inc. Data Breach Litigation*,
  No. 15-MD-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016).................................. 5

*In re Capital One Consumer Data Security Breach Litigation*,
  No. 1:19MD2915 (AJT/JFA), 2020 WL 5629790 (E.D. Va. Sept. 18, 2020) ........................... 8

*In re Sony Gaming Networks & Customer Data Security Breach Litigation*,
  903 F. Supp. 2d 942 (S.D. Cal. 2012) ....................................................................................... 12

*In re Yahoo! Inc. Customer Data Security Breach Litigation*,
  No. 16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ......... 3, 4, 9, 10, 11, 12

*Jones v. Micron Technology Inc.*,
  400 F. Supp. 3d 897, 923 (N.D. Cal. 2019) .............................................................................. 7

*Klein v. Chevron U.S.A., Inc.*,
  202 Cal. App. 4th 1342 (2012).................................................................................................. 7

## TABLE OF AUTHORITIES

Page

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) .................................................................................................. 3, 4

*LabMD, Inc. v. FTC*,
    678 F. App'x 816 (11th Cir. 2016) ...................................................................................... 8

*LabMD, Inc. v. FTC*,
    894 F.3d 1221 (11th Cir. 2018) .......................................................................................... 9

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) .............................................................................. 7

*Parziale v. HP, Inc.*,
    445 F. Supp. 3d 435 (N.D. Cal. 2020) ................................................................................ 8

*Sun Microsystems, Inc. v. Microsoft Corp.*,
    188 F.3d 1115 (9th Cir. 1999) ........................................................................................... 12

*Weeks v. Google LLC*,
    No. 18-CV-00801 NC, 2018 WL 3933398 (N.D. Cal. Aug. 16, 2018) ............................... 9

**Statutes**

15 U.S.C. § 45 .................................................................................................................... 8

California Business & Professions Code § 17200…………………………………………2

California Business & Professions Code § 17203 ........................................................ 11

California Business & Professions Code § 17204 ......................................................... 3

**Other Authorities**

M. Olhausen, Acting Chairman, Federal Trade Commission, *Prepared Statement of the Federal Trade Commission on Small Business Cybersecurity* (Mar. 8, 2017) .......................................... 8

The Class Action Complaint originally filed by Plaintiffs Juan Flores-Mendez and Amber Collins ("Plaintiffs") was brought after Zoosk, Inc. ("Zoosk") confirmed a data security incident that it had suffered. Zoosk timely moved to dismiss Plaintiffs' complaint under Rule 12(b)(6). (ECF No. 29). Rather than opposing Zoosk's motion to dismiss, Plaintiffs filed their First Amended Class Action Compliant ("FAC"), making a handful of small changes to their original complaint. (ECF No. 46). In turn, Zoosk moved to dismiss the FAC (the "Motion") on largely the same bases as in its first motion because Plaintiffs still failed to state a claim for relief. (ECF No. 51). Following briefing and argument on the Motion, the Court dismissed Plaintiffs' California Unfair Competition Law ("UCL") claim, among others, but granted Plaintiffs leave to amend. (ECF No. 61). Nearly six months later, on July 28, 2021 –the last day to seek leave to do so per the Stipulation and Order Staying Case For 90 Days Due to COVID-19 Related Jurisdictional Discovery Delays (ECF No. 61) – Plaintiffs filed their Second Amended Class Action Complaint ("SAC") (ECF No. 77) and a companion motion for leave to file the SAC (ECF No. 78).[1]

Among other changes to the FAC, the SAC's Second Cause of Action seeks to revive the FAC's dismissed UCL claim. See SAC ¶¶ 88-98. The SAC continues to fail, however, to allege sufficient facts or establish a legal basis for Zoosk to be found liable to Plaintiffs under the UCL. The SAC's Second Cause of Action must therefore be dismissed, this time with prejudice.

**I.   STATEMENT OF THE ISSUES TO BE DECIDED (CIVIL L.R. 7-4(A)(3))**

Zoosk seeks dismissal of Plaintiffs' UCL claim under Federal Rule of Civil Procedure 12(b)(6) for failing to allege facts sufficient to plausibly state a claim for relief against Zoosk.

**II.   STATEMENT OF FACTS AS ALLEGED**

The SAC alleges that in early 2020, a criminal group identified as the "ShinyHunters" accessed the computer systems of Zoosk and obtained certain information relating to users of Zoosk's dating application. SAC ¶ 4. Named Plaintiffs Juan Flores-Mendez and Amber Collins allege that Zoosk has acknowledged that the ShinyHunters attack involved unauthorized access to

---

[1] Plaintiffs' motion for leave to amend (ECF No. 78) asserts that the motion was unnecessary because the Court's January order on Zoosk's motion to dismiss granted Plaintiffs leave to amend. Zoosk intends to oppose that motion, insofar as the motion was necessary, on the grounds of futility to the extent the SAC seeks to revive Plaintiffs' dismissed UCL claim.

1    information including a user's name, email address, date of birth, generalized demographic
2    information, gender, gender search preferences, and password information. *Id.* ¶ 8. Plaintiff
3    Flores-Mendez alleges that he received notice of the ShinyHunters attack from Zoosk in the mail.
4    *Id.* ¶ 24. Plaintiff Collins does not allege that she received notice from Zoosk, but alleges instead
5    that she learned of the ShinyHunters attack via an alert from Credit Karma. *Id.* ¶ 27. Plaintiffs do
6    not allege that their personal information has been misused to perpetrate identity theft or otherwise,
7    nor do they allege that they have lost or spent any money or property as a result of the ShinyHunters
8    attack. *See id.* ¶¶ 25–26 (Plaintiff Flores-Mendez has spent time and suffered anxiety); 28–29
9    (same for Plaintiff Collins). Plaintiffs bring this action against Zoosk on behalf of a putative
10   Nationwide Class, a putative California Class, and a putative Subscription Subclass. *Id.* ¶ 58.[2]

### III.   LEGAL STANDARD

In order to survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Facial plausibility requires that there be sufficient factual allegations from which "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[L]abels and conclusions, and a formulaic recitation of the elements" of claims will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a court must take all the well-pleaded factual allegations in the complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint offering only "conclusory allegations of law and unwarranted inferences" cannot survive a motion to dismiss. *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### IV.   ARGUMENT

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The SAC amends the FAC's dismissed UCL claim so as to seek relief not only under the UCL's prohibition on "unlawful" business

---

[2] Plaintiff Flores-Mendez alleges he paid Zoosk for a premium subscription service like the other members of the putative Subscription Subclass. SAC ¶¶ 3, 58.

practices, but also under the "unfair" prong, for, in each case, "fail[ing] to use reasonable security measures to protect Plaintiffs' and Class Members' PII." SAC ¶¶ 94, 90. The SAC's UCL claim does not, however, overcome the threshold deficiency that this Court found in the FAC's version of that claim: namely, just like the FAC, the SAC fails to allege facts sufficient to establish that, as required for Plaintiffs to have UCL standing, Plaintiffs "lost money or property as a result of" the Zoosk practices they challenge as unlawful and/or unfair under the UCL. Cal. Bus. & Prof. Code § 17204 (defining standing to pursue UCL actions). Moreover, even if the SAC's UCL claim did sufficiently plead UCL standing, that claim still fails as a matter of law because it does not allege any Zoosk act or practice that was "unlawful" or "unfair" within the meaning of the UCL. Further, even if it adequately pled UCL standing and stated a valid theory of UCL liability against Zoosk, the SAC's UCL claim still would be legally deficient because it pleads no facts sufficient to establish Plaintiffs' entitlement to any of the relief sought by the UCL claim. For all three of these reasons, the SAC's Second Cause of Action – its UCL claim -- must be dismissed.

### A. Plaintiffs Lack Standing to Bring a UCL Claim.

The UCL specifies who may bring legal claims thereunder, limiting standing to governmental attorneys, such as the Attorney General or a city attorney, and to "a person who has suffered injury in fact and has lost money or property as a result of the [alleged UCL violation]." Cal. Bus. & Prof. Code § 17204. Without a showing of the requisite loss of money or property, individuals lack standing to pursue claims under the UCL.

A loss of money or property requires an "economic injury," which can be demonstrated in "innumerable ways." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011). For example, a plaintiff may suffer an economic injury, and thereby a loss of money or property, if he or she "(1) surrender[s] in a transaction more, or acquire[s] in a transaction less, than he or she otherwise would have; (2) ha[s] a future property interest diminished; (3) [is] deprived of money or property to which he or she has a cognizable claim; or (4) [is] required to enter into a transaction, costing money or property, that otherwise would have been unnecessary." *Id.* However, the mere "risk of *future* costs . . . is not sufficient to allege 'lost money or property' under the UCL." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *22 (N.D. Cal.

1  Aug. 30, 2017) (Koh, J.).  Nor is a non-economic intangible injury.  *Ehret v. Uber Techs., Inc.*, 68
2  F.Supp.3d 1121, 1132 (N.D. Cal. 2014) (Chen, J.) (UCL standing requires "lost money or property"
3  and is not satisfied by "intangible" noneconomic injury).

4        Here, Plaintiffs allege in conclusory fashion that they "have lost money and property as a
5  result of Defendant's conduct in violation of the UCL."  SAC ¶ 98.  In support of this assertion,
6  Plaintiffs rely on (1) money paid for Zoosk subscription services by Plaintiff Flores-Mendez, SAC
7  ¶¶ 3 & 93, and (2) a purported property interest in their "sensitive PII" that both Plaintiffs
8  supposedly lost when the ShinyHunters attack occurred, SAC ¶ 97.  Both theories are unavailing.

9        As to the first theory, UCL standing requires a "loss" of money, not merely a "payment" of
10 money, so Plaintiff Flores-Mendez must establish not merely that he paid, but rather that he
11 ***over***paid, for a Zoosk subscription service, i.e., he must establish that the Zoosk services received
12 in exchange for his payment were, by reason of Zoosk's allegedly unlawful or unfair conduct, worth
13 less than he paid for those services.  *See Kwikset*, 51 Cal. 4th at 323 (economic injury occurs if
14 plaintiff "surrender[s] in a transaction more, or acquire[s] in a transaction less, than he or she
15 otherwise would have").  Inherent in this "lost benefit of the bargain" theory of UCL loss is the
16 notion that the consumer relied on the services having certain characteristics that they allegedly
17 lacked, such that because the services were so lacking, he or she received less actual value for the
18 services than reasonably expected and thereby incurred a "loss" by reason of having paid for the
19 services.  Thus, where the alleged lost "benefit" is data security, as is the case here, a plaintiff
20 relying on this theory must allege that in deciding to purchase defendant's services he or she relied
21 on, or was at least aware of, representations or promises by the defendant regarding its data security,
22 such that the defendant's failure to live up to those representations or promises caused the actual
23 value of the defendant's services to be less than the value the plaintiff reasonably expected based
24 on the amount the plaintiff paid for those services.  *See Yahoo!*, 2017 WL 3727318, at *21 (finding
25 one plaintiff adequately alleged standing under the UCL where he alleged that Yahoo! represented
26 that its small business services were "secure" and that he "would not have agreed to utilize and pay
27 for the small business services and turn over his PII" had he known services offered "were not as
28 secure as represented or secure by any standard"); *Gardiner v. Walmart Inc.*, No. 20-CV-04618-

1    JSW, 2021 WL 2520103, at *6 (N.D. Cal. Mar. 5, 2021) (White, J.) (concluding "Plaintiff's

2    allegations do not establish that the cost of the goods he purchased at Walmart included some

3    amount attributable to data security as required to support his benefit of the bargain theory."); *In re*

4    *Anthem, Inc. Data Breach Litigation*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *32 (N.D.

5    Cal. May 27, 2016) (Koh, J.) (holding plaintiffs adequately alleged lost benefit of bargain to

6    establish UCL standing based on insurance premium payments made with expectation that certain

7    privacy laws would be complied with, which allegedly did not occur).

8          The SAC, however, alleges only that Zoosk "failed to commit appropriate portions of [the

9    subscription payments] to enact security measures to protect Plaintiffs' and Class Members' PII,"

10   SAC ¶ 93, and "[h]ad Plaintiffs known that their PII would not be adequately secured and protected,

11   they would not have used Defendant's services."  SAC ¶ 97.  Nowhere does Plaintiff Flores-

12   Mendez allege that Zoosk made any representation or promise that its data security standards were

13   adequate to protect his personal information, much less any such representation or promise in

14   relation to the subscription services he purchased, much less that he relied on or even that he knew

15   of some such representation or promise in making his decision to purchase a subscription.  As a

16   result, while the SAC alleges a *payment* by Plaintiff Flores-Mendez to Zoosk, SAC ¶ 3, it alleges

17   no facts showing that the parties understood that a portion of such payment was being made in

18   exchange for protection of  Plaintiff Flores-Mendez's personal information, and as a result it alleges

19   no *loss* that  Plaintiff Flores-Mendez incurred by reason of having made such payment but

20   (allegedly) not having received such data protection.

21         Nor could the SAC have made such an allegation, because it would have been demonstrably

22   false, as the SAC itself amply shows.  Specifically, the SAC affirmatively alleges that *all* members

23   of the putative Nationwide Class – not merely the members of the putative Subscription Subclass

24   – provided the personal information in question to Zoosk upon becoming Zoosk members. SAC ¶¶

25   2, 32-34.  That being the case, Plaintiff Flores-Mendez could not possibly have alleged that he paid

26   for a Zoosk subscription service either in exchange for providing his personal information to Zoosk

27   or in exchange for some representation or promise by Zoosk as to the security of that personal

28

information.[3] The SAC therefore not only does not, but could not, "allege facts that [Plaintiff Flores-Mendez's] purchases included a sum understood by the parties to be allocated toward customer data protection." *Gardiner*, 2021 WL 2520103, at *6. This deficiency is fatal to Plaintiff Flores-Mendez's benefit-of-the-bargain theory of UCL standing.[4]

Finally with respect to this theory of UCL standing, for UCL standing to exist the UCL requires that the alleged loss of money or property to have occurred "as a result of" the alleged UCL violation. Here, the alleged UCL violation is that Zoosk either "unlawfully" or "unfairly" employed lax security measures as to Plaintiffs' personal information. But Plaintiff Flores-Mendez's payment for a Zoosk subscription service, and any consequent alleged loss of money he incurred by reason of such payment, is not alleged and could not be alleged to have occurred "as a result of" Zoosk's supposedly lax security measures – manifestly, Zoosk's security measures, lax or not, did not cause Plaintiff Flores-Mendez to purchase a Zoosk subscription service.[5] That being the case, UCL standing would not exist here under the benefit-of-the-bargain theory even if Plaintiff Flores-Mendez had alleged that his payment to Zoosk caused him to incur a loss of money or property within the meaning of the UCL (which he has not).

As for Plaintiffs' second theory of UCL standing – i.e., that their UCL claim can be

---

[3] Any such allegation would have been false, as Plaintiff Flores-Mendez admits he provided the personal information in question to Zoosk upon becoming a Zoosk member, SAC ¶ 2, but did not purchase a subscription service from Zoosk until later, "at some time before the Data Breach was announced." SAC ¶ 3.

[4] Plaintiff Collins makes no allegation that she ever made a payment to Zoosk and thus has no benefit-of-the-bargain theory of standing to support her UCL claim.

[5] Plaintiff Flores-Mendez tries to paper over this fatal flaw in his benefit-of-the-bargain theory of UCL standing by alleging that he would not have become a Zoosk member, and hence never would have paid for a Zoosk subscription service, had he known of Zoosk's supposedly lax security measures. SAC ¶ 92. But this allegation gets Plaintiff Flores-Mendez nowhere on this theory of UCL standing, for two reasons. First, by tying his alleged loss to Zoosk's alleged *non-disclosure* of its lax security measures, this allegation effectively concedes that Plaintiff Flores-Mendez's alleged "loss" (i.e., his payment to Zoosk) did not occur as a result of the allegedly lax security measures themselves, thus defeating this theory of UCL standing as to any UCL claim based on the allegedly lax security measures themselves. Second, to the extent by this allegation Plaintiff Flores-Mendez intends to shift to a non-disclosure-based theory of UCL liability, rather than a lax-security-measures-based theory, the SAC's failure to allege a duty of disclosure would defeat any non-disclosure-based theory of UCL liability here. *See Hodsdon v. Mars, Inc.*, 891 F.3d 857, 867 (9th Cir. 2018)(defendant's failure to disclose information it had no duty to disclose in the first place is not substantially injurious, immoral, or unethical and thus cannot provide the grounds for a UCL claim).

grounded in their purported property interest in their personal information -- "the weight of authority holds that a plaintiff's 'personal information' does not constitute property." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1030 (N.D. Cal. 2012) (Koh, J.) (citing *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1074–75 (N.D. Cal. 2012) (Koh, J.); *Thompson v. Home Depot, Inc.*, No. 07cv1058 IEG, 2007 WL 2746603, at *3 (S.D. Cal. Sept. 18, 2007); *In re Facebook Privacy Litig.*, 791 F.Supp.2d 705, 715 (N.D. Cal. 2011) (Ware, J.)).  Moreover, even assuming personal information could constitute property for purposes of UCL standing, Plaintiffs have not articulated how exactly they "lost" their property other than conclusorily alleging that Zoosk "has taken [their] property" "[b]y failing to adequately secure and protect [the] sensitive PII." SAC ¶ 97.  This allegation is nonsensical, as every bit of the personal information Plaintiffs provided to Zoosk when creating their user accounts, SAC ¶¶ 2, 32, remains entirely within their possession; they did not "lose" that information in the ShinyHunters attack any more than they "lost" that information by providing it to Zoosk in the first place or by providing it to any other third party.

### B. Plaintiffs Have Not Pled Facts Demonstrating That Zoosk's Conduct Was Unlawful or Unfair.

Even if Plaintiffs had pled facts sufficient to establish UCL standing, which they have not, the SAC's UCL claim nonetheless fails because it does not plead facts demonstrating that Zoosk's conduct was "unlawful" or "unfair" within the meaning of the UCL.

#### 1. *Unlawfulness*

Where, as here, a complaint asserts a claim under the UCL's "unlawful" prong, the law "borrows violations of other laws" and "makes those unlawful practices actionable under the UCL." *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012) (internal citation and quotation omitted).  Such a claim is "predicated on a violation of a separate statute or common law regime" and if such "violations are insufficiently pled, it follows that Plaintiffs have failed to sufficiently plead a violation of the UCL." *Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 923 (N.D. Cal. 2019) (White, J.); *see also Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2010 WL 2486353, at *6 (N.D. Cal. June 16, 2010) (Seeborg, J.) (requiring that complaint "plead with particularity how the facts . . . pertain to" allegedly violated statute underlying UCL unlawfulness claim).

Here, Plaintiffs premise their UCL unlawfulness claim on Zoosk's alleged violation of the FTC Act. SAC ¶ 90.[6] Under California law, a UCL claim "must identify the particular section of the statute that was violated and must describe with reasonable particularity the facts supporting the violation." *In re Capital One Consumer Data Sec. Breach Litig.*, No. 1:19MD2915 (AJT/JFA), 2020 WL 5629790, at *28 (E.D. Va. Sept. 18, 2020) (quoting *Brothers v. Hewlett-Packard Co.*, 2006 WL 3093685, at *7 (N.D. Cal. Oct. 31, 2006)). Here, Plaintiffs have not identified which section of the FTC Act they rely on, ¶ 90 (although they do elsewhere mention Section 5, *see id.* at ¶¶ 38, 79–82), let alone pled with reasonable particularity facts sufficient to make out a claim under the FTC Act. The FTC itself has recognized that the law "does not require perfect security" and "the mere fact that a breach occurred does not mean that a company has violated" Section 5. M. Olhausen, Acting Chairman, Fed. Trade Cmm'n, *Prepared Statement of the Fed. Trade Comm'n on Small Business Cybersecurity* at 3–4 (Mar. 8, 2017), *available at* https://www.ftc.gov/system/files/documents/public_statements/1174903/p072104_commission_testimony.pdf. Rather, Section 5 data security violations involve "data security failures . . . [that are] multiple and systemic." *Id.* Thus not every breach-enabling data security failure violates Section 5, and merely alleging a data breach – which is all Plaintiffs have alleged here – does not come close to alleging a violation of Section 5. In addition, Plaintiffs have not alleged facts sufficient to show that Zoosk's data security caused "*substantial injury* to consumers which [was] *not reasonably avoidable* by consumers themselves and *not outweighed* by countervailing benefits to consumers or to competition" – all of which are necessary elements of an unfairness-based Section 5 violation. *See* 15 U.S.C. § 45(n) (emphasis added).[7] Moreover, Plaintiffs' have not alleged the

---

[6] Plaintiffs previously raised this argument in their Opposition to Zoosk's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint (ECF No. 54 at 13), but had not included the allegation in the FAC.

[7] Plaintiffs have not alleged that they have suffered any tangible injury as a result of Zoosk's purportedly inadequate security, and thus have not alleged a "substantial" one. *See LabMD, Inc. v. FTC*, 678 F. App'x 816, 820 (11th Cir. 2016) (finding "intangible harm" substantial "may not be reasonable"); *Parziale v. HP, Inc.*, 445 F. Supp. 3d 435, 446 (N.D. Cal. 2020) (Davila, J.) (noting that "[i]n most cases a substantial injury involves monetary harm") (quoting *Porsche Cars N.A., Inc. v. Diamond*, 140 So. 3d 1090 (Fla. Dist. Ct. App. 2014)). Plaintiffs also fail to plead facts showing that any injury was neither reasonably avoidable nor outweighed by countervailing benefits. *See FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 255–56 (3d Cir. 2015) (analysis of

culpability element of an unfairness-based Section 5 violation, under which a defendant's conduct must be shown to have violated some independent constitutional, statutory, or common-law principle. *LabMD, Inc. v. FTC*, 894 F.3d 1221, 1231 (11th Cir. 2018).

### 2. Unfairness

The SAC likewise fails to allege sufficient facts to demonstrate that Zoosk's conduct was unfair. "The UCL does not define the term 'unfair' . . . [and] the proper definition of 'unfair' conduct against consumers 'is currently in flux' among California courts." *Yahoo!*, 2017 WL 3727318, at *23 (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003)). Courts recognize three possible tests under the unfairness prong, and plaintiffs allege that "[Zoosk's] conduct is unfair under all three of these tests." SAC ¶ 91. First, the "tethering test" requires that the "public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." *Grace v. Apple Inc.*, No. 17-CV-00551, 2017 WL 3232464, at *14 (N.D. Cal. July 28, 2017) (quoting *Drum v. San Fernando Valley Bar Association*, 182 Cal. App. 4th 247 (2010)). Second, the "balancing test" "asks whether the alleged business practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Id.* Finally, the third test modeled after the FTC Act analysis "requires: (1) that the consumer injury be substantial; (2) that the injury not be outweighed by any countervailing benefits to consumers or competition; and (3) the injury is one that consumers could not have reasonably avoided." *Id.* However, this last test is targeted at "harm to competition, not to consumers specifically," and is thus "inappropriate in the consumer context." *Weeks v. Google LLC*, No. 18-CV-00801 NC, 2018 WL 3933398, at *14 (N.D. Cal. Aug. 16, 2018) (Cousins, Mag. J.). Focusing then on the first two tests, neither supports finding that Zoosk acted unfairly here.

#### a. **The tethering test counsels against finding Zoosk acted unfairly**

Plaintiffs fail to allege any public policy "tethered" to a "specific constitutional, statutory,

---

countervailing benefits requires applying a cost-benefit test to determine if additional security would have been worthwhile).

or regulatory provision[]," *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1227 (N.D. Cal. 2014), and thus have not pled an unfair UCL violation under the tethering test.  While Plaintiffs rely generally on "the public policy in favor of protecting consumer data," SAC ¶ 95, they fail to connect that public policy to any specific constitutional, statutory, or regulatory provision.  Instead, they vaguely assert Zoosk's conduct "violates the policies of the statutes referenced above," when in fact no other statutes are cited in their UCL claim, save for the UCL itself and the FTC Act, which is not specifically targeted at protecting consumer data.  Though Plaintiffs need not plead a direct statutory violation to "bring a claim under the UCL's unfairness prong" as opposed to the unlawful prong, Plaintiffs still must at least "show that the effects of [Zoosk's] conduct are comparable to or the same as a violation of the law, or otherwise significantly threaten or harm competition" in order to satisfy the tethering test.  *Adobe Sys.*, 66 F. Supp. 3d at 1227.  Plaintiffs have not made any such connection here and thus cannot satisfy the tethering test.

        b.        **Plaintiffs have not adequately alleged Zoosk acted unfairly under the balancing test.**

Plaintiffs allege in conclusory fashion that Zoosk's conduct "was contrary to public policy, immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers," SAC ¶ 95, parroting the language of the balancing test standard, but more than merely reciting a legal conclusion is required to plead a UCL unfairness claim in reliance on the balancing test.  *See Yahoo!*, 2017 WL 3727318, at *24 (holding Plaintiffs sufficiently pled conduct that violated the balancing test where Plaintiffs alleged (1) Defendants "knowingly failed to employ adequate safeguards to protect their consumers' data, in violation of Defendants' Privacy Policy"; (2) which conduct violated various California statutes including the Online Privacy Protection Act, "which were intended to reflect California's public policy of protecting consumer data.")  Here, Plaintiffs allege the following purported Zoosk conduct was unfair: (1) Zoosk "failed to disclose the inadequate nature of the security of its computer systems and networks that stored Plaintiffs' and Class members' sensitive PII," SAC ¶ 92; (2) Zoosk "collected money from the Subscription Subclass but failed to commit to appropriate portions of that money to enact security measures to protect Plaintiffs' and Class members' PII," SAC ¶ 93; and (3) Zoosk failed to use reasonable

1  security measures to protect Plaintiffs' and Class Members' PII," SAC ¶ 94.  But Plaintiffs have
2  pled no facts to establish that Zoosk acted in an "immoral, unethical, oppressive, unscrupulous
3  and/or substantially injurious" manner in performing this alleged conduct.  *Bardin v.*
4  *Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255, 1239 (2006) (holding that the use of less expensive
5  tubular steel exhaust manifolds did not violate public policy because the defendant made no
6  representation about the composition of the manifolds and the plaintiffs did not allege a safety
7  concern or a violation of the warranty) (internal citations omitted); *see Hodsdon*, 891 F.3d at 867
8  (holding "failure to disclose information [the defendant] had no duty to disclose in the first place is
9  not substantially injurious, immoral, or unethical" and therefore does not satisfy the balancing test).

10  Even if Plaintiffs had pled facts sufficient to satisfy this part of the balancing test, the Court
11  must still "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged
12  victim." *Adobe Sys.*, 66 F. Supp. 3d at 1227.  Again, Plaintiffs merely recite the words of the test,
13  alleging "[t]he gravity of the harm of [Zoosk's] failure to secure and protect Plaintiffs' and Class
14  Members' sensitive PII is significant and there is no corresponding benefit resulting from such
15  conduct."  SAC ¶ 96.  But nowhere do Plaintiffs quantify either the tangible harm they claim to
16  have suffered or the costs Zoosk would have had to incur in order to avoid that harm, as they must
17  in order to satisfy this part of the balancing test.

### C.     Plaintiffs Are Not Entitled to the Relief They Seek Under the UCL.

19  A plaintiff bringing an action under the UCL is permitted to obtain as a remedy only
20  injunctive and restitutionary relief.  *See* Cal. Bus. & Prof. Code § 17203; *Fresno Motors, LLC v.*
21  *Mercedes Benz USA, LLC*, 771 F.3d 1119, 1135 (9th Cir. 2014).  Here, Plaintiffs seek both forms
22  of relief.  As to the claim for restitution, "[u]nder the UCL, an individual may recover profits
23  unfairly obtained to the extent that these profits represent monies given to the defendant or benefits
24  in which the plaintiff has an ownership interest.*"  Yahoo!*, 2017 WL 3727318, at *31.  Thus, even
25  assuming Plaintiff Flores-Mendez had sufficiently alleged that he incurred a loss by having paid
26  subscription fees to Zoosk, which he has not, he nonetheless would be entitled to restitution of some
27  portion of those fees only if and only to the extent Zoosk profited from those fees (i.e., only if and
28  to the extent Zoosk's costs of providing the services were less than the payments Plaintiff Flores-

1  Mendez made for the services). No allegation of any such Zoosk profits appears in the SAC,
2  however. As for Plaintiffs' claims for restitution based on the supposed "loss" of their personal
3  information in the ShinyHunters attack, by providing their personal information to Zoosk Plaintiffs
4  "did not give [Zoosk] money 'or benefits in which [they had] an ownership interest,'" as required
5  for restitution to be available. *Id.* (quoting *Pom Wonderful LLC v. Welch Foods*, Inc., No. CV 09-
6  567 AHM AGRX, 2009 WL 5184422, at *2 (C.D. Cal. Dec. 21, 2009)). And even if Plaintiffs
7  could rely on their supposed "loss" of personal information in the ShinyHunters attack as a lost
8  "ownership interest," the "[c]ase law is clear that the loss of use and loss of value [of personal
9  information in a data breach] . . . are not recoverable as restitution because [such losses] provide
10 no corresponding gain to a defendant" that suffered the breach. *In re Sony Gaming Networks &*
11 *Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 970 (S.D. Cal. 2012) (internal citation
12 omitted).

13 Neither are the Plaintiffs entitled to an injunction under the UCL. All the Zoosk activity
14 they allege to have been unlawful occurred in the past. Under the UCL, "a plaintiff cannot receive
15 an injunction for past conduct unless he shows that the conduct will probably recur." *Sun*
16 *Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1123 (9th Cir. 1999). Plaintiffs' UCL cause
17 of action contains no allegation that Zoosk currently is, or in the future will be, engaging in unlawful
18 activity. *See* SAC ¶¶ 88–98. Indeed, Plaintiffs make no allegation whatsoever as to the current
19 state of Zoosk's security. There is thus no basis for an injunction.

20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

## V.  CONCLUSION

Zoosk respectfully requests that the Court dismiss the SAC's Second Cause of Action.

Dated: August 11, 2021

Respectfully Submitted,

 /s/Douglas H. Meal
Douglas H. Meal (*admitted pro hac vice*)
MA Bar No. 340971
ORRICK, HERRINGTON & SUTCLIFFE LLP
222 Berkeley St., Suite 2000
Boston, MA 02116
dmeal@orrick.com

Rebecca Harlow
CA Bar No. 281931
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
rharlow@orrick.com

*Attorneys for Defendant
Zoosk Inc.*

**CERTIFICATE OF SERVICE**

I, Rebecca Harlow, an attorney, do hereby certify that I have caused a true and correct copy of the foregoing DEFENDANT ZOOSK, INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND CAUSE OF ACTION FOR FAILURE TO STATE A CLAIM to be electronically filed with the Clerk of this Court using the CM/ECF system, which generated a Notification of Electronic Filing to all persons currently registered with the Court to receive such notice in the above-captioned case.

       /s/ Rebecca Harlow
Rebecca Harlow
CA Bar No. 281931
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
rharlow@orrick.com

*Attorneys for Defendant Zoosk Inc.*