**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (SBN 174156)
Kiley L. Grombacher, Esq. (SBN 245960)
Lirit A. King, Esq.  (SBN 252521)
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
Facsimile:   (805) 270-7589
E-Mail: mbradley@bradleygrombacher.com
          kgrombacher@bradleygrombacher.com
          lking@bradleygrombacher.com

*Attorneys for Plaintiffs*

(Additional counsel listed on following page)

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| JUAN FLORES-MENDEZ, an individual and AMBER COLLINS, an individual, and on behalf of classes of similarly situated individuals,<br><br>        Plaintiffs,<br><br>v.<br><br>ZOOSK, INC., a Delaware corporation,<br><br>        Defendant. | **CASE NO: 3:20-cv-04929-WHA**<br>Assigned to Hon. William Alsup, CR 12<br><br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

## TABLE OF CONTENTS

I.    INTRODUCTION...................................................................................................... 1

II.   FACTUAL BACKGROUND ..................................................................................... 2

III.  ARGUMENT .............................................................................................................. 3

    A.   Plaintiffs Have Standing Under The UCL ...................................................... 3

    B.   Plaintiffs Sufficiently Plead Both Unlawful and Unfair Conduct........................... 5

        1.   Zoosk's Conduct was Unlawful. ........................................................... 5

        2.   Zoosk's Conduct was Unfair.................................................................. 8

    C.   Plaintiff Flores-Mendez is Entitled to Monetary and Plaintiffs Are Entitled to Injunctive Relief .............................................................................................. 10

        1.   Monetary Relief is Proper ................................................................... 11

        2.   Injunctive Relief is Proper.................................................................. 11

IV.   CONCLUSION ......................................................................................................... 12

## **TABLE OF AUTHORITIES**

*Bardin v. Daimlerchrysler Corp.*, 136 Cal.App.4th 1255 (Ct. App. 2006) ..................................9

*Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1024 (N.D. Cal. 2019) .............................9–10

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1135 (9th Cir. 2014) .........10

*In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1227 (N.D. Cal. 2014)....................8–10

*In re Anthem, Inc. Data Breach Litigation*, No. 15-MD-02617-LHK,
    2016 WL 3029783 (N.D. Cal. May 27, 2016) ............................................................4, 7, 10

*In re Facebook Privacy Litigation*, 572 F. App'x 494, 494 (9th Cir. 2014) ................................4

*In re iPhone App. Litig.*, 844 F. Supp. 2d 1040, 1071 (N.D. Cal. 2012) .....................................3

*In re Marriott Int'l, Inc., Cust. Data Security Breach Litigation*,
    440 F. Supp. 3d 447, 461 (D. Md. 2020) ................................................................................4

*In re Solara Medical Supplies, LLC Customer Data Security Breach Litigation*,
    No. 3:19-CV-2284-H-KSC, 2020 WL 2214152 (S.D. Cal. May 7, 2020) ...........................7

*In re Yahoo! Inc. Customer Data Security Breach Litigation*, No. 16-MD-02752-LHK,
    2017 WL 3727318, at *13 (N.D. Cal. Aug. 30, 2017)..........................................4, 8, 10, 11

*In re Zoom Video Commc'ns Inc. Priv. Litig.*, No. 20-CV-02155-LHK,
    2021 WL 930623, at *23 (N.D. Cal. Mar. 11, 2021) .............................................................8

*Jordan v. Paul Fin., LLC*, 745 F. Supp. 2d 1084, 1098 (N.D. Cal. 2010) ...................................7

*Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*,
    No. 20CV1765-GPC (BGS), 2021 WL 148063, at *4 (S.D. Cal. Jan. 15, 2021) .............3

*Kwikset Corp. v. Superior Court*, 246 P.3d 877 (2011) ...............................................................3

*LabMD, Inc. v. FTC*, 894 F.3d 1221, 1231 (11th Cir. 2018) ...................................................7–8

*Love v. First Mortg. Corp.*, No. EDCV 08-0060 AG (CTX),
    2009 WL 4980323, at *5 (C.D. Cal. Dec. 14, 2009).............................................................7

*McCoy v. Alphabet, Inc.*, No. 20-cv-05427-SVK,
    2021 WL 405816, at *9 (N.D. Cal. Feb. 2, 2021).................................................................4

*Svenson v. Google, Inc.*, 2015 WL 1503429, at *10 (N.D. Cal. Apr. 1, 2015)............................9

## I.     **INTRODUCTION**

On January 30, 2021, the Court granted in part and denied in part Defendant's, Zoosk, Inc. ("Zoosk"), motion to dismiss. ECF No. 61. In the Order, the Court noted that Plaintiffs did not allege that they lost money or property to support a cause of action under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* (the "UCL"). ECF No. 61, at 7. Based on that lack of allegations, the Court granted dismissal of Plaintiffs' UCL claim, but also granted Plaintiffs "leave to amend with respect to all claims." ECF No. 61, at 7. On July 28, 2021, Plaintiffs filed their Second Amended Complaint ("SAC") on July 28, 2021, ECF No. 77, and out of an abundance of caution filed a Motion for Leave to Amend, ECF No. 78. On August 24, 2021, Plaintiffs corrected a scrivener's error with respect to the Second Amended Complaint. ECF No. 84.[1]

In the SAC, Plaintiff Flores-Mendez added allegations concerning his payment for Zoosk's subscription service, SAC ¶ 3, and added a subscription subclass for all individuals whose PII was compromised in the Zoosk data breach and who also paid for subscriptions with Zoosk (the "Subscription Subclass"). SAC ¶ 63. In the amendments to the UCL claim, Plaintiffs advanced two theories. *First*, Zoosk violated the UCL's "unlawful" prong because it violated the FTC Act and failed to protect Plaintiffs' and Class Members' PII. SAC ¶ 90. *Second*, Zoosk violated the UCL's "unfair" prong because it failed to disclose the inadequate nature of the security of its computer systems and networks that stored Plaintiffs' and Class Members' PII, collected money from the Subscription Subclass and failed to commit appropriate portions of that money for security measures to protect Plaintiffs' and Class Members PII, and failed to protect Plaintiffs' and Class Members' PII. SAC ¶¶ 92–94. Because Zoosk concealed this information, Plaintiffs and Class Members could not have avoided the harm resulting from this conduct, but had that information been properly disclosed, Plaintiffs would not have used Zoosk's services. SAC ¶¶ 96–97. Through their UCL claim, Plaintiffs seek to recover restitutionary damages, as well as an injunction to enjoin Zoosk's deceptive conduct, require deletion of their PII, cease further collection of their PII, and implement adequate information security policies and practices. SAC ¶ 98.

---

[1] For the avoidance of confusion, Plaintiffs' SAC paragraph references are based on ECF No. 84.

Zoosk now moves to dismiss Plaintiffs' UCL claim in the Second Amended Complaint. ECF No. 79 (the "Motion" or "Mot."). Zoosk chiefly argues that Plaintiffs do not have standing under the UCL, have not alleged sufficient facts to support their "unfair" and "unlawful" theories, and are not entitled to any form of relief under the UCL. For the reasons stated herein, Zoosk's arguments are unavailing and the Court should deny the Motion outright.

## II.     FACTUAL BACKGROUND

On May 11, 2020, Zoosk discovered that hackers had gained access to its networks, navigated through these networks undetected, and exfiltrated the PII of approximately 30 million consumers (the "Data Breach"). SAC ¶ 4. This PII included names, email addresses, dates of birth, demographical information, gender, gender search preferences, and password information. SAC ¶ 8. Zoosk did not detect nor was it aware of the breach or exfiltration until it was brought to Zoosk's attention by third parties. SAC, ¶¶ 4–6, 16.

Plaintiffs Juan Flores-Mendez ("Flores-Mendez") and Amber Collins ("Collins") created user profiles with Zoosk in 2015 and 2016, respectively, providing their PII to create these user profiles. SAC ¶¶ 24, 27. Zoosk's privacy policies acknowledge the sensitive nature of this information, such as race, ethnicity, sexual preferences and experiences, political affiliations, religious affiliations, and other information provided through the use of Zoosk's services. SAC ¶ 33. Zoosk aggregates this information with other user experiences to generate revenue and derive profits through marketing, promotions, and other business activities. SAC ¶¶ 32–36.

Zoosk acknowledged its duty to protect PII from unauthorized disclosure, SAC ¶ 33–35, but failed to meet its legal obligations to protect consumers' PII from unauthorized disclosure to third parties. SAC ¶¶ 37–40. Zoosk's failures permitted the Data Breach and resulting damages to Plaintiffs and class members. SAC ¶¶ 47–57. Plaintiffs have since spent time and effort mitigating the Data Breach, and due to the sensitive nature of the information involved, face a present and continuing risk of identity theft. SAC ¶¶ 24–39. Plaintiffs, on behalf of themselves and class members, now seek compensation for damages and to compel Zoosk to employ reasonable measures to protect the PII of Plaintiffs and class members still in Zoosk's possession.

III.   **ARGUMENT**

Zoosk attacks Plaintiffs' UCL claim on three unavailing fronts: first, that the money Plaintiff Flores-Mendez paid for Zoosk's subscription is not a sufficient loss of money or property; second, that Zoosk's failure to protect 30 million users' PII was neither "unlawful" nor "unfair"; and third, Plaintiffs' well-plead complaint—including not only that Zoosk failed to protect the PII, but that the PII ended up for sale on the dark web and only then did Zoosk realize nefarious actors had gained unauthorized access to its unsecure computer networks—does not raise provide Plaintiffs an entitlement to either restitutionary or injunctive relief. Zoosk's motion should be denied outright.

A.   **Plaintiffs Have Standing Under The UCL**

It is true that to establish standing under the UCL, a "plaintiff must show he personally lost money or property because of his own actual and reasonable reliance on the allegedly unlawful business practices." *In re iPhone App. Litig.*, 844 F. Supp. 2d 1040, 1071 (N.D. Cal. 2012) (citing *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 330, 120 Cal.Rptr.3d 741, 246 P.3d 877 (2011)). However, there are "innumerable ways in which economic injury from unfair competition may be shown." *Kwikset Corp.*, 51 Cal.4th at 323, 120 Cal.Rptr.3d 741, 246 P.3d 877. Examples include a plaintiff who "(1) surrender[s] in a transaction more, or acquire[s] in a transaction less, than he or she otherwise would have; (2) ha[s] a present or future property interest diminished; (3) [is] deprived of money or property to which he or she has a cognizable claim; or (4) [is] required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." *Id.* (citation omitted). Plaintiffs' UCL claims are only under the unfair and unlawful prongs, and therefore do not sound in fraud, reliance is not at issue. *See Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*, No. 20CV1765-GPC (BGS), 2021 WL 148063, at *4 (S.D. Cal. Jan. 15, 2021).

First, plaintiffs who suffer a loss of their personal information have standing under the UCL. Here, Zoosk's inadequate data security permitted hackers not only unfettered access to Zoosk's systems, but those hackers also published that information to the dark web, and that publication is the reason Zoosk discovered the breach in the first place. SAC ¶ 44. And not only did Zoosk fail to secure this PII, Zoosk also uses that PII to advance and monetize its relationships with third parties. SAC ¶ 36 (Zoosk permits third party advertising networks, social media companies, and other third

3

parties to collect PII through cookies and tracking technologies which is then used for ad campaigns or sold to other businesses for advertising purposes; Zoosk shares PII with promotional partners for promotional activities; Zoosk uses PII to monitor, *improve*, and *develop* its products and services). *See In re Facebook Privacy Litig.*, 572 F. App'x 494, 494 (9th Cir. 2014) (plaintiffs plausibly alleged harm when their PII was disclosed in a data breach); *In re Marriott Int'l, Inc., Cust. Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 461 (D. Md. 2020) (the "growing trend across courts that have considered this issue is to recognize the lost property value of [PII]"); *In re Yahoo! Cust. Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *13 (N.D. Cal. Aug. 30, 2017) (injury in fact for loss of value of their personal information); *In re Anthem, Inc., Data Breach Litig.*, 2016 WL 3029783, at *14 (N.D. Cal. May 17, 2016) (plaintiffs plausibly alleged injury from the loss of value to PII).

Although Plaintiffs maintain that their provision of PII to Zoosk was done so because Zoosk represented it would protect that PII, and had Plaintiffs known that the protection was inadequate they would not have provided their PII to Zoosk, crucially Plaintiff Flores-Mendez has alleged reliance on Zoosk's misrepresentations regarding the adequacy of securing and protecting his PII, and had he known about these deficiencies, he would not have used Zoosk's services—including *paying for the subscription service* for which Zoosk charged. SAC ¶¶ 3, 91–97. Inherent in Plaintiff Flores-Mendez's choice to subscribe to Zoosk was the reputation Zoosk peddled to the community: that it was secure, and that Plaintiffs and Class Members could entrust their PII to Zoosk without any concern of nefarious actors obtaining that PII. This is sufficient to allege the requisite loss of money or property for standing under the UCL as a result of Zoosk's UCL violation. *See e.g.*, *McCoy v. Alphabet, Inc.*, No. 20-cv-05427-SVK, 2021 WL 405816, at *9 (N.D. Cal. Feb. 2, 2021) (citing *Kwikset Corp.*, 51 Cal.4th at 330, 120 Cal.Rptr.3d 741, 246 P.3d 877 ("finding that the assertion that a plaintiff 'would not have bought the product but for' the unfair business practice is sufficient to establish UCL standing")).

As demonstrated above, Zoosk's reading of *Kwikset* is incorrect. Mot. at 4 (arguing that overpayment is required). Further, although Zoosk argues that "Nowhere does Plaintiff Flores-

Mendez allege that Zoosk made any representation or promise that its data security standards were adequate to protect his personal information," Mot. at 5, Zoosk completely ignores paragraph 35 of the SAC, which reads in full:

> Zoosk's Privacy Policy assures Zoosk customers their PII is secure. For example, Zoosk states "At Zoosk, we value your privacy and trust" and "work[s] with third parties *to employ technologies…to ensure the safety and security of your data.*"

SAC ¶ 35 (emphasis added). This is not puffery, ambiguous, or otherwise vague—it is a direct representation and promise to consumers that Zoosk values their privacy and trust, and will "*ensure*" it is safe and secure. SAC ¶ 35 (emphasis added). Zoosk failed to deliver on this representation and promise, and Plaintiffs should not be foreclosed from pursuing litigation against Zoosk simply because Zoosk seeks protection from the representation and promise it made to Plaintiffs and Class Members before it permitted a data breach that divulged 30 million people's PII to ShinyHunters, which was eventually placed on the dark web for sale. Plaintiffs have standing and Zoosk's motion to dismiss should be denied.

**B.      Plaintiffs Sufficiently Plead Both Unlawful and Unfair Conduct.**

**1.      Zoosk's Conduct was Unlawful.**

Zoosk contends that Plaintiffs have not adequately pled unlawful acts that are a predicate to a UCL claim. Zoosk argues that "Plaintiffs have not identified which section of the FTC Act they rely on . . . let alone pled with reasonable particularity facts sufficient to make out a claim under the FTC Act." Mot. at 8.

Zoosk's argument fails because it looks only to the specific paragraph in the UCL claim referencing the FTC Act and ignores the specific allegations in the rest of the Complaint regarding its violation of the FTC Act. While Zoosk references other discussion of the FTC Act in the Complaint, it simply elides discussion of those paragraphs. In fact, Plaintiffs allege quite clearly that Zoosk's "duty to use reasonable data security measures also arose under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a)[,]" SAC ¶ 79, and that Zoosk breached that duty by "failing to use reasonable security measures to protect PII and not complying with applicable industry, federal, and state guidelines and standards." SAC ¶ 84. Plaintiffs also allege that Zoosk's

1    "conduct was particularly unreasonable given the nature and amount of customer PII it stored and

2    the foreseeability and resulting consequences of a data breach." *Id*. Thus, Plaintiffs have clearly

3    identified the provision of law that forms the predicate for their UCL claim.

4           Plaintiffs have also identified the nature of the violation of the FTC Act with requisite

5    particularity. Zoosk cites no law to support its argument that Plaintiffs have not adequately pled a

6    violation of the FTC Act, rather it cites a prepared statement by the Acting Chairman of the Federal

7    Trade Commission indicating that the FTC Act "does not require perfect security" and "the mere

8    fact that a breach occurred does not mean that a company has violated" Section 5. Mot. at 8.

9           But Plaintiffs do not merely allege that Zoosk did not have perfect security. They allege that

10   Zoosk failed to maintain reasonable security measures, failed to detect the unauthorized intrusion

11   into its networks, failed to detect the unauthorized exfiltration, and that the malicious actors who

12   performed these actions did so with relative ease. SAC ¶¶ 4–7, 13–15, 37–46. Plaintiffs also point

13   to FTC guidance that specifically clarifies that Section 5 of the Act is violated by "the unfair

14   practices of failing to use reasonable measures to protect PII by companies such as Defendant," that

15   "FTC publications and data security breach orders further form the basis of Defendant's duty," and

16   that "Plaintiffs and Class members are consumers under the FTC Act," and that "Defendant violated

17   Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying

18   with industry standards." SAC ¶¶ 81–82 and n.15.[2]

19

20   _____

21   [2]  *See also*  https://www.ftc.gov/system/files/documents/reports/federal-trade-commission-2020-
     privacy-data-security-update/20210524_privacy_and_data_security_annual_update.pdf  (last
22   accessed August 25, 2021) at 5 ("Since 2002, the FTC has brought 80 cases against companies that
     have engaged in unfair or deceptive practices involving inadequate protection of consumers'
23   personal data. In 2020, the FTC continued to apply its strengthened orders in data security cases

24   in order to provide protection for consumers and accountability for businesses.");
     https://www.ftc.gov/system/files/documents/cases/172_3203_equifax_complaint_7-22-19.pdf (last
25   accessed August 25, 2021) at 11 (alleging that "Defendant engaged in a number of practices that,
     taken together, failed to provide reasonable security for the massive quantities of sensitive personal
26   information stored within Defendant's computer network. Among other things: A. Defendant failed
     to implement reasonable procedures to detect, respond to, and timely correct critical and other high-
27   risk security vulnerabilities across Defendant's systems[.]")._

28
                                                    6

This is sufficient to satisfy the UCL's pleading requirements—particularly here where information regarding Zoosk's security measures remains within Zoosk's knowledge and is the subject of discovery. The question of whether Zoosk actually violated the FTC Act and therefore violated the UCL is something that can and should be resolved on summary judgment. *See In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, No. 3:19-CV-2284-H-KSC, 2020 WL 2214152, at *11 (S.D. Cal. May 7, 2020) ("Defendant's arguments are better suited for a motion for summary judgment when the record is more fully developed. As a result, the Court denies Defendant's motion to dismiss Plaintiffs' unlawful UCL claim at this time.").

By contrast, in cases where plaintiffs' UCL claims have been dismissed for failing to adequately allege violations of the FTC Act as a predicate unlawful act, the complaints have done little other than reference the FTC Act and have not explained what violations of the Act occurred. *See, e.g., Jordan v. Paul Fin., LLC*, 745 F. Supp. 2d 1084, 1098 (N.D. Cal. 2010) (dismissing UCL claim based on violation of FTC Act because "[t]he FAC does no more than mention the FTC Act; it makes no effort to tie the FTC Act claim to any of the facts in the complaint."); *Love v. First Mortg. Corp.*, No. EDCV 08-0060 AG (CTX, 2009 WL 4980323, at *5 (C.D. Cal. Dec. 14, 2009) ("Although Plaintiffs now allege which section of the FTC Act Defendants allegedly violated, Plaintiffs still fail to specify factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citation omitted)). Here, where Plaintiffs have specifically discussed the nature of the violation of the FTC Act and the specific failures that represent a violation, they have done enough to identify an unlawful act that can serve as predicate for a UCL claim at the pleading stage.

Finally, while Zoosk cites to *LabMD, Inc. v. FTC*, 894 F.3d 1221, 1231 (11th Cir. 2018) for the principal that Plaintiffs must "allege[] the culpability element of an unfairness-based Section 5 violation, under which a defendant's conduct must be shown to have violated some independent constitutional, statutory, or common-law principle," Mot. at 8–9, that case is inapposite. The *LabMD* decision found that an FTC Order seeking to enforce Section 5 founded solely on negligence without applying specific standards was insufficiently vague. *LabMD*, 894 F.3d at 1231–36 ("In sum, the

prohibitions contained in cease and desist orders and injunctions must be specific. Otherwise, they may be unenforceable."). Here, Plaintiffs do not seek to enforce a vague order of the Federal Trade Commission against Zoosk. Rather, they contend that Zoosk's actions were unlawful as they violated the FTC Act for failing to take adequate measures to protect PII. Moreover, the FTC has specifically issued more specific orders that clearly delineate appropriate standards in response to *LabMD*.[3] In all events, determination of whether Zoosk actually violated the FTC Act by its alleged failure to adequately protect PII are better reserved for summary judgment, as indicated above.

## 2.   Zoosk's Conduct was Unfair

Zoosk also contends that Plaintiff has failed to adequately allege that its conduct was unfair as that term is used in the UCL. Mot. at 9–11. However, Plaintiffs' allegations in fact are sufficient under both the balancing test and tethering test for unfair competition.

### a.   Plaintiffs have sufficiently tethered their UCL allegations to a violation of statutory provisions

"[W]ith respect to the tethering test, parties need not show immoral, unethical, oppressive, unscrupulous, or substantially injurious conduct in order to move forward with a UCL claim." *In re Anthem*, 162 F. Supp. 3d at 990 ("The tethering test only requires parties to show that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL [is] tethered to specific constitutional, statutory, or regulatory provisions." *Id*. (citation and quotation marks omitted). Courts in this district have found that "various California statutes . . . reflect California's public policy of protecting customer data." *Id*.; *see also In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1227 (N.D. Cal. 2014) (holding same); *In re Yahoo!*, 2017 WL 3727318, at *24 (holding same); *In re Zoom Video Commc'ns Inc. Priv. Litig.*, No. 20-CV-02155-LHK, 2021 WL 930623, at *23 (N.D. Cal. Mar. 11, 2021). Plaintiffs here have therefore alleged

---

[3]    *See*    https://www.ftc.gov/news-events/blogs/business-blog/2020/01/new-improved-ftc-data-security-orders-better-guidance (last accessed August 25, 2021) ("As part of the FTC's Hearings on Competition and Consumer Protection in the 21st Century, we held a hearing in *December* 2018 that specifically considered how we might improve our data security orders. We were also mindful of the 11th Circuit's 2018 *LabMD* decision, which struck down an FTC data security order as unenforceably vague.  Based on this learning, in 2019 the FTC made significant improvements to its data security orders.")

1  unfair conduct by Zoosk because its alleged conduct allowing a data breach that exposed consumer

2  data is tethered directly to California's policies of protecting consumer data.

3       Finally, Zoosk argues that Plaintiffs cite to no statutes other than the FTC act and rely on

4  *Adobe* for the principal that Plaintiffs must "show that the effects of [Zoosk's] conduct are

5  comparable to or the same as a violation of the law, or otherwise significantly threaten or harm

6  competition." Mot. at 10. But *Adobe* specifically holds that "Plaintiffs do not need to plead any

7  direct violations of a statute to bring a claim under the UCL's unfair prong." *In re Adobe*, 66 F.

8  Supp. 3d at 1227. The *Adobe* Court in fact concluded that Plaintiff's UCL claims based on a data

9  breach were tethered to California's policies because "the OPPA, the IPA, and the CRA collectively

10 reflect California's public policy of 'protecting customer data'" and "California legislative intent is

11 clear on this point." *Id.*

12
13        **b.**    **Plaintiffs have alleged that Zoosk acted unfairly under the balancing test**

14      Zoosk argues that even though Plaintiffs have plead that Zoosk engaged in unfair conduct,

15 it did not rise to the level of immoral, unethical, oppressive, unscrupulous and/or substantially

16 injurious" conduct. Mot. at 11. But, contrary to Zoosk's suggestion, "[n]one of the three tests for

17 unfairness require plaintiffs to plead that defendants acted in an immoral, unethical, oppressive, or

18 unscrupulous manner." *In re Anthem*, 162 F. Supp. 3d at 990. Rather, "an unfair business practice

19 occurs when it offends an established public policy *or* when the practice is immoral, unethical,

20 oppressive, unscrupulous or substantially injurious to consumers." *Id.* (quoting *Bardin v.*

21 *Daimlerchrysler Corp.*, 136 Cal.App.4th 1255 (Ct. App. 2006) (emphasis in original). Here, as

22 discussed above, Zoosk clearly has offended California's public policy of protecting consumer data.

23      Likewise, Courts in this District have routinely found that a violation of the unfairness prong

24 of the UCL occurs when a company violates its own privacy policies and allows a breach as alleged

25 here, SAC ¶¶ 33–35 (detailing Zoosk's privacy policy's assurances that consumer data will be

26 protected). *See Svenson v. Google, Inc.*, 2015 WL 1503429, at *10 (N.D. Cal. Apr. 1, 2015) (finding

27 plaintiffs sufficiently alleged violation of UCL's unfair prong where plaintiffs alleged that "Google

28

1  violated its own privacy policies" by failing to safeguard the plaintiff's data). *See also Cappello v.*
2  *Walmart Inc.*, 394 F. Supp. 3d 1015, 1024 (N.D. Cal. 2019) (Assuming Walmart did systematically
3  breach its Privacy Policy given the ambiguity outlined above, this practice contravenes California's
4  well-established public policy of protecting consumer data); *In re Yahoo!*, 2017 WL 3727318, at
5  *24 (finding violation of UCL sufficiently alleged because "Plaintiffs allege that Defendants
6  promised in their Privacy Policy to protect their customers' data, but that Defendants knowingly
7  failed to employ adequate safeguards to protect their customers' data").

8  Zoosk next argues that the Court must "'weigh the utility of the defendant's conduct against
9  the gravity of the harm to the alleged victim.'" Mot. at 11 (quoting *In re Adobe*, 66 F. Supp. 3d at
10  1227). But, the *Adobe* Court found that Plaintiff's data breach allegations were sufficient because
11  the complaint indicated that the plaintiffs were injured by "plac[ing] Plaintiffs at a substantial risk
12  of future harm and caus[ing] Plaintiffs to overpay for Adobe products and services." *Id.* Here too,
13  Plaintiffs allege that they were placed at harm because one of the plaintiffs paid for the service, see
14  SAC ¶ 3, and because they are subject to heightened risk of their information being used by hackers
15  and must engage in heightened surveillance of their accounts, SAC ¶ 53.

16  Moreover, the actual balancing of harm versus utility is not done on a motion to dismiss.
17  Rather, "[w]hether Defendants' public policy violation is outweighed by the utility of their conduct
18  under the balancing test is a question to be resolved at a later stage in this litigation." *In re Anthem*,
19  162 F. Supp. at 990.

20  Accordingly, Plaintiffs' UCL claims should not be dismissed because Plaintiffs have
21  adequately allege both unlawful conduct and unfair conduct.

22  **C.    Plaintiff Flores-Mendez is Entitled to Monetary and Plaintiffs Are Entitled to
23    Injunctive Relief**
24  Zoosk attempts to litigate summary judgment and class certification at the dismissal stage, and
25  its arguments concerning Plaintiffs' entitlement to damages is not only premature, but incorrect. Under
26  the UCL, a plaintiff is entitled to restitutionary and injunctive relief. *Fresno Motors, LLC v. Mercedes*
27  *Benz USA, LLC*, 771 F.3d 1119, 1135 (9th Cir. 2014). The monetary recovery can be from "profits
28  unfairly obtained to the extent that th[o]se profits represent monies given to the defendant or benefits

10

in which the plaintiff has an ownership interest." *In re Yahoo!*, 2017 WL 3727318, at *31.

### 1.    Monetary Relief is Proper

Zoosk misconstrues the profits theory; although the entire class should be entitled to monetary relief for the reasons stated above, at bottom the Subscription Subclass is entitled to restitutionary disgorgement to the extent that Zoosk *did not spend money on adequate security* that it otherwise should have. Put differently, Zoosk profited by *not spending money* on adequate security practices. This is money that Zoosk improperly saved rather than spent to adequately secure Plaintiffs' and Class Members' PII, leaving that PII vulnerable and available for nefarious actors to steal, exploit, and eventually offer for sale on the dark web.

### 2.    Injunctive Relief is Proper

Plaintiffs are also entitled to injunctive relief. Zoosk conclusively argues that the unlawful activity "occurred in the past," and there are no allegations that the behavior is ongoing or will recur. Mot. at 17. Such a standard is impossible, but the Court need look no further than Zoosk's own pleadings in this case to surmise that prospective injunctive relief is appropriate: despite nefarious actors infiltrating Zoosk's inadequately secured computer systems, exfiltrating 30 million users' PII, offering that information for sale on the dark web, and Zoosk only learning of the breach because of this publication, Zoosk denies any culpability. Yet, Zoosk still maintains the PII of those 30 million people, and injunctive relief is appropriate to require Zoosk to not only enjoin Zoosk's deceptive conduct and implement adequate information security policies and practices, but also to require Zoosk to cease collecting and indeed delete Plaintiffs' and Class Members' PII. Plaintiffs have an interest in the PII they provided to Zoosk, and Zoosk should not skate from culpability based on its untested assertions that any issues have been resolved. Even still, without an injunction, Zoosk is free to roll back its practices, save money, and enjoy higher profits without any regard for the security of Plaintiffs' and Class Members' PII.

/ / /

/ / /

/ / /

PLAINTIFFS' OPPOSITION IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS
Case No. 3:20-cv-04929-WHA

## IV.   <u>CONCLUSION</u>

For the reasons stated herein, the Court should deny Zoosk's Motions to Dismiss. In the event the Court finds any merit to Zoosk's arguments and grants dismissal for any cause of action, Plaintiffs respectfully request leave to amend.

Dated: August 25, 2021

/s/ *Kiley Lynn Grombacher*
Kiley Lynn Grombacher

**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (SBN 174156)
Kiley L. Grombacher, Esq. (SBN 245960)
Lirit A. King, Esq. (SBN 252521)
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
Facsimile: (805) 270-7589
E-Mail: mbradley@bradleygrombacher.com
kgrombacher@bradleygrombacher.com
lking@bradleygrombacher.com

**BRADLEY/GROMBACHER, LLP**
Robert N. Fisher (SBN 302919)
477 Madison Avenue, Suite 6000
New York, NY 10022
Telephone: (805) 270-7100
E-Mail: rfisher@bradleygrombacher.com

**CROSNER LEGAL P.C.**
Zachary M. Crosner (SBN 272295)
Michael R. Crosner (SBN 41299)
433 N. Camden Dr., Suite 400
Beverly Hills, CA 90210
Telephone: (310) 496-4818
Facsimile: (310) 510-6429
Email: zach@crosnerlegal.com
            mike@crosnerlegal.com

**MORGAN & MORGAN
COMPLEX LITIGATION GROUP**
John A. Yanchunis (*admitted pro hac vice*)
Ryan McGee (*admitted pro hac vice*)
201 N Franklin St., 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Email: jyanchunis@forthepeople.com
            rmcgee@forthepeople.com