1   DOUGLAS H. MEAL (*admitted pro hac vice*)
    dmeal@orrick.com
2   REBECCA HARLOW (CA BAR NO. 281931)
    rharlow@orrick.com
3   ORRICK, HERRINGTON & SUTCLIFFE LLP
    The Orrick Building
4   405 Howard Street
    San Francisco, CA 94105-2669
5   Telephone:    +1 415 773 5700
    Facsimile:    +1 415 773 5759
6

7   Attorneys for Defendant
    ZOOSK, INC.

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11

12

13  JUAN FLORES-MENDEZ, an individual and        Case No. 3:20-cv-04929-WHA
    AMBER COLLINS, an individual, and on
14  behalf of classes of similarly situated       **DEFENDANT ZOOSK, INC.'S REPLY**
    individuals,                                   **BRIEF IN SUPPORT OF MOTION TO**
15                                                 **DISMISS PLAINTIFFS' SECOND**
                                                   **CAUSE OF ACTION FOR FAILURE**
16            Plaintiffs,                          **TO STATE A CLAIM**

17       v.

18
    ZOOSK, INC., a Delaware corporation,
19
              Defendant.
20

21

22

23

24

25

26

27

28

1

2

**TABLE OF CONTENTS**

3

I.   INTRODUCTION ........................................................................................................... 1

II.   ARGUMENT ................................................................................................................. 1

A.   Plaintiffs Lack Standing to Bring a UCL Claim. ............................................... 1

B.   Plaintiffs Have Not Pled Facts Demonstrating That Zoosk's Conduct Was Unlawful or Unfair. .......................................................................................................... 5

1.   Unlawfulness ................................................................................... 5

2.   Unfairness ....................................................................................... 7

C.   Plaintiffs Are Not Entitled to the Relief They Seek Under the UCL. ............................ 10

III.   CONCLUSION ............................................................................................................ 12

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

4

*Arch Insurance Co. v. Allegiant Professional Business Services, Inc.*,
    No. CV-11-1675 CAS PJWX, 2012 WL 1400302 (C.D. Cal. Apr. 23, 2012) ........................ 12

5

*Bardin v. Daimlerchrysler Corp.*,
    136 Cal.App.4th 1255 (2006)........................................................................................7

6

7

*Camacho v. Automobile Club of Southern California*,
    142 Cal. App. 4th 1394 (2nd Dist. 2006).....................................................................8

8

*Cappello v. Walmart, Inc.*,
    394 F. Supp. 3d 1015 (N.D. Cal. 2019) ......................................................................9

9

10

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
    20 Cal. 4th 163 (1999) ................................................................................................8

11

*Gregory v. Albertson's, Inc.*,
    104 Cal. App. 4th 845 (1st Dist. 2002) .......................................................................8

12

13

*In re Adobe Systems, Inc. Privacy Litig*ation,
    66 F. Supp. 3d 1197 (N.D. Cal. 2014) ..................................................................7, 10

14

*In re Anthem, Inc. Data Breach Litigation*,
    No. 15-MD-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016)....................1

15

16

*In re Facebook Privacy Litigation*,
    572 F. App'x 494 (9th Cir. 2014) ...............................................................................2

17

*In re Marriott International, Inc., Customer Data Security Breach Litigation*,
    440 F. Supp. 3d 447 (D. Md. 2020) ............................................................................2

18

19

*In re Tobacco Cases II*,
    240 Cal. App. 4th 779 (Cal. Ct. App. 2015) ........................................................10, 11

20

*In re Yahoo! Inc. Customer Data Security Breach Litigation*,
    No. 16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ...............1, 9

21

22

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) ................................................................................................4

23

*LabMD, Inc. v. Federal Trade Commission*,
    894 F.3d 1221 (11th Cir. 2018)...................................................................................6

24

25

*Lozano v. AT&T Wireless Services, Inc.*,
    504 F.3d 718 (9th Cir. 2007).......................................................................................8

26

*McCoy v. Alphabet, Inc.*,
    No. 20-cv-05427-SVK, 2021 WL 405816 (N.D. Cal. Feb. 2, 2021).........................5

27

*Orellana v. Barr*,
    967 F.3d 927 (9th Cir. 2020).......................................................................................6

28

*Scripps Clinic v. Superior Court,*
  108 Cal. App. 4th 917 (4th Dist. 2003) ........................................................................ 8

*Sharma v. Volkswagen AG,*
  No. 20-CV-02394-JST, 2021 WL 912271 (N.D. Cal. Mar. 9, 2021) ........................................ 11

*Svenson v. Google, Inc.,*
  No. 13-cv-04080-BLF, 2015 WL 1503429 (N.D. Cal. Apr. 1, 2015) ........................................ 9

*Swartz v. KPMG LLP,*
  476 F.3d 756 (9th Cir. 2007) ...................................................................................... 3

**Statutes**

15 U.S.C. § 45 ........................................................................................................ 6

California Business & Professions Code § 17204 ..................................................................... 1

1   **I.    INTRODUCTION**

2          For three separate reasons, the Court should dismiss with prejudice the Second Amended

3   Class Action Complaint's ("SAC") Second Cause of Action for a violation of California's Unfair

4   Competition Law ("UCL").   First, the SAC fails to allege facts sufficient to establish that, as

5   required for Plaintiffs to have UCL standing, Plaintiffs "lost money or property as a result of" the

6   Zoosk practices they challenge as unlawful and/or unfair under the UCL.   Cal. Bus. & Prof. Code

7   § 17204 (defining standing to pursue UCL actions).   Second, the claim fails as a matter of law

8   because the SAC does not allege any Zoosk act or practice that was "unlawful" or "unfair" within

9   the meaning of the UCL.   Third, the SAC's UCL claim is legally deficient because it contains no

10  facts sufficient to establish Plaintiffs' entitlement to any of the relief they seek on that claim.

11  **II.   ARGUMENT**

12          **A.    Plaintiffs Lack Standing to Bring a UCL Claim.**

13          This Court has already rejected Plaintiffs' argument that the theft of their personal

14  information is a sufficient basis to allege standing under the UCL.   *See* Jan. 30, 2021 Order [ECF

15  No. 61] at 7.   Plaintiffs' attempt to re-argue this ruling in the guise of amending their complaint

16  should therefore be rejected as procedurally improper.   In any event, Plaintiffs' argument to this

17  effect – which is not based on any new allegation in the SAC – fails just as definitively now as it

18  did at the time of the Court's earlier ruling.

19          For starters, most of the cases Plaintiffs cite in support of this theory of UCL standing are

20  inapposite, in that they address whether a mere theft of personal information creates Article III

21  standing, as opposed to UCL standing.   *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,

22  No. 16-MD-02752-LHK, 2017 WL 3727318, at *14 (N.D. Cal. Aug. 30, 2017) (Koh, J.) (finding

23  alleged loss of value of personal information sufficient for Article III standing, not UCL standing);

24  *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *14, *30

25  (N.D. Cal. May 27, 2016) (Koh, J.) (finding alleged loss of value of PII sufficient for Article III

26  standing for contract claim, not UCL standing, and noting that the UCL's standing "requirement

27  may, in some circumstances, impose a more stringent standard under the UCL as compared to

28  Article III"); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447,

ZOOSK INC.'S REPLY IN SUPPORT OF
MOTION TO DISMISS
3:20-cv-04929-WHA

460–61, 492 (D. Md. 2020) (analyzing whether plaintiffs had alleged "cognizable injury" for Article III purposes – not UCL purposes – based on "loss of property value in personal identifying information").

Indeed, the Ninth Circuit case cited by Plaintiffs actually directly contradicts Plaintiffs' position that UCL standing can be predicated on a mere theft of one's personal information.  *See In re Facebook Priv. Litig.*, 572 F. App'x 494, 494 (9th Cir. 2014) (finding plaintiffs sufficiently alleged damages for their breach of contract and fraud claims based on loss of personal information but affirming dismissal of UCL claim for failure to allege lost money or property).  So does *Anthem*.  *See* 2016 WL 3029783, at *30 (UCL's requirement that loss of money or property be demonstrated to establish standing "impose[s] a more stringent standard for standing  . . . as compared to Article III").  Thus, the *Anthem* court found that the UCL's higher standard for standing was satisfied where Anthem allegedly failed to implement security measures that were required by insurance contracts, such that plaintiffs lost the benefit of their bargain under those contracts and as a result overpaid when they paid their insurance premiums pursuant to those contracts.  *Id.*.  Similarly, the *Marriott* court concluded that plaintiffs had UCL standing because Marriott's alleged failure to live up to the data security promises and representations it made in connection with their paying to stay at a Marriott property, and/or in their purchasing products or services at a Marriott property, had deprived them of a portion of the benefit of their bargain in making such payment.  440 F. Supp. 3d at 462–66, 492.  In both cases, then, UCL standing was predicated on plaintiffs' alleged overpayments to the defendant in connection with their providing personal information to the defendant – not on the mere theft of that personal information from the defendant.

As a fallback position, Plaintiffs appear to argue that, by reason of his having purchased a Zoosk subscription service, Plaintiff Flores-Mendez is akin to Marriott's customers and Anthem's insureds.  *See* Opp. at 4.  That argument does not hold water.  As noted above, in both *Anthem* and *Marriott*, UCL standing was upheld on the "overpayment theory" based on the defendant's express, and allegedly unfulfilled, data-security-related promises and/or representations in connection with the plaintiffs' payments to the defendant.  Here, Plaintiffs assert Zoosk failed to live up to its supposed representation that it "work[s] with third parties *to employ technologies . . . to ensure the*

*safety and security of your data.*"  Opp. at 5 (citing SAC ¶ 35) (emphasis in original).  However, the relevant portion of Zoosk's Privacy Policy, entitled "Cross Device Tracking" actually provides:

> We also work with third parties to employ technologies, including the application of statistical modelling tools, which attempt to recognize you across multiple devices so that we understand how you use our Service across various devices, to ensure the safety and security of your data and the Zoosk Services, to show you targeted advertising (with your consent) tailored to your interests and experience, and to measure the performance of advertising campaigns.

Privacy Policy, available at https://docviewer.zoosk.com/legal-privacy-en.html.[1]  On its face, then, the Zoosk representation pointed to by Plaintiffs *only* discusses technology that Zoosk uses to recognize users across devices (*i.e.*, recognizing a user on his laptop and on his mobile phone as the same user); it makes no representation whatsoever about Zoosk's data security generally or about any data security efforts made by Zoosk in any context other than the context of "recogniz[ing] a Zoosk user] across multiple devices."  And nowhere does the SAC allege any failure by Zoosk to, as stated in its Privacy Policy, "work with third parties to employ technologies, including the application of statistical modelling tools, which attempt to recognize you across multiple devices, so that we understand how you use our Service across various devices, to ensure the safety and security of your data."  Here, then – unlike in *Anthem* and *Marriott* – the plaintiff has alleged no failure by the defendant to comply with any data-security-related promise or representation the defendant may have directed to the plaintiff.

Moreover, as noted above, in both *Anthem* and *Marriott* the defendant's alleged unperformed data-security-related promises and/or representations were made in connection with the plaintiff's payment to the defendant, which fact was crucial to the court's conclusion that non-performance of the promise or representation in question could deprive the plaintiff of a portion of the benefit of his or her bargain in making the payment.  But here, in contrast, Zoosk's Privacy

---

[1] Where a complaint quotes from and relies upon a document, that document is appropriately deemed incorporated into the complaint and can be considered on a motion to dismiss.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)(though "a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice," where a complaint "relies on [a] document and its authenticity is unquestioned" it is properly considered on a 12(b)(6) motion "in order to prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based").

ZOOSK INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS
3:20-cv-04929-WHA

Policy was directed to Zoosk members *generally* – not merely to those members who chose to pay for a subscription service after already having, *for free*, joined Zoosk and provided the personal information in question to Zoosk.  Privacy Policy, available at https://docviewer.zoosk.com/legal-privacy-en.html ("This Policy applies when you use our services through our websites linked to this Policy . . . .")  Thus, whatever data security the Zoosk Privacy Policy may have promised to Zoosk members, by the very terms of the Zoosk Privacy Policy such data security was provided to Zoosk members *for free*, whether or not any of them ever paid a dime to Zoosk.  Here, then – unlike *Anthem* and *Marriott* – UCL standing cannot be predicated on whatever data-security-related promises or representations may have been made in the defendant's privacy policy, because here the plaintiffs concededly paid nothing for those promises and representations and thus cannot have **over**paid any amount by reason of any non-performance of those promises and representations.  Instead, for the overpayment theory to sustain UCL standing here, the SAC would have to allege that Zoosk made some separate, unperformed data-security-related promise and/or representation, above and beyond whatever Zoosk's Privacy Policy had to say on the subject, in connection with Plaintiff Flores-Mendez's purchase of a Zoosk subscription service.  Otherwise, a subscription purchaser such as Plaintiff Flores-Mendez cannot plausibly claim to have "acquired in [his purchase] less[] [data security] than he otherwise would have" expected to receive in exchange for such purchase, *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011), as required for standing under the UCL pursuant to the overpayment theory.  No such allegation appears anywhere in the SAC.

Even if the SAC alleged (1) non-performance by Zoosk of a data-security-related promise or representation that (2) Zoosk made in connection with Plaintiff Flores-Mendez's purchase of a Zoosk subscription service (again, it alleges neither), UCL standing still could not be sustained as to Plaintiff Flores-Mendez under the overpayment theory.  Specifically, in this event the SAC would still fail to allege not merely a *payment* by Plaintiff Flores-Mendez to Zoosk, but a *loss* by reason of such payment.  Mot. at 5.  In addition, the SAC would in this event still fail to allege reliance by Plaintiff Flores-Mendez on any Zoosk promise or representation (*see* Mot. at 4–5), because while Plaintiffs cite generally to SAC ¶¶ 91–97 on the reliance issue (*see* Opp. at 1), there

is not one mention in those paragraphs of Plaintiff Flores-Mendez's having even been aware of, let alone having relied upon, the Zoosk Privacy Policy provision pointed to by Plaintiffs in their opposition brief or any other data-security-related representation by Zoosk.  *See McCoy v. Alphabet, Inc.*, No. 20-cv-05427-SVK, 2021 WL 405816, at *9 (N.D. Cal. Feb. 2, 2021) (Van Keulen, Mag. J.) ("To establish standing for a UCL claim, '[a] plaintiff must show he personally lost money or property because of his own actual and reasonable reliance on the allegedly unlawful business practices.'") (quoting *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1071 (N.D. Cal. 2012) (Koh, J.)).  Finally, the SAC would in this event still fail to allege that the alleged standing-creating UCL loss was caused by Zoosk's alleged UCL violation, because (unlike the UCL claims in *Anthem* and *Marriott*, each of which alleged a claim under the UCL's fraud prong), here the UCL claim has no fraud component.  Here, then, to sustain UCL standing Plaintiff Flores-Mendez's alleged loss cannot be causally linked to any alleged Zoosk non-disclosure of its supposedly inadequate data security practices (which is how UCL standing was sustained in *Anthem* and *Marriott*); instead, that loss would have to be causally linked to Zoosk's data security practices themselves (which it plainly cannot be, as Plaintiff Flores-Mendez concedes that his purported overpayment resulted not from Zoosk's supposedly lax data security practices, but rather from Zoosk's alleged non-disclosure of those practices).  Opp. at 1; *see* Mot. at 6 & n.5.

## B.   Plaintiffs Have Not Pled Facts Demonstrating That Zoosk's Conduct Was Unlawful or Unfair.

Even if Plaintiffs had pled facts sufficient to establish UCL standing, which they have not, the SAC's UCL claim nonetheless fails because it does not plead facts demonstrating that Zoosk's conduct was "unlawful" or "unfair" within the meaning of the UCL.

### 1.   Unlawfulness

For a number of reasons, Plaintiffs' allegations of a Zoosk FTC Act violation are insufficient to state a claim under the "unlawful" prong of the UCL.  First, those allegations (and Plaintiffs' opposition brief) ignore that to plead a violation of Section 5 of the FTC Act as the basis for their unlawful UCL claim, Plaintiffs must allege, but have not alleged, that Zoosk's data security practices caused: (1) substantial injury; (2) which was not reasonably avoidable; and (3) not

ZOOSK INC.'S REPLY IN SUPPORT OF
MOTION TO DISMISS
3:20-cv-04929-WHA

1   outweighed by countervailing benefits to consumers or to competition.  Mot. at 8; *see* 15 U.S.C.

2   § 45(n).  In addition, Plaintiffs' opposition brief tacitly acknowledges that the SAC does not allege,

3   as required under *LabMD, Inc. v. Federal Trade Commission*, 894 F.3d 1221, 1231 (11th Cir.

4   2018), the culpability element of an unfairness-based Section 5 violation, under which the

5   defendant's conduct must be shown to have violated some independent constitutional, statutory, or

6   common-law principle.[2]  Plaintiffs also tacitly acknowledge that their Section 5 allegations run

7   afoul of the statement by the Acting Chairman of the Federal Trade Commission that "the mere

8   fact that a breach occurred does not mean that a company has violated" Section 5.  Opp. at 6 (citing

9   Mot. at 8).[3]  Plaintiffs' opposition brief thus leaves untouched Zoosk's argument that merely

10   alleging Zoosk had a "duty to use reasonable data security measures," SAC ¶ 79, and breached that

11   duty by "failing to use reasonable security measures to protect PII and not complying with

12   applicable industry, federal, and state guidelines and standards," SAC ¶ 84, does not suffice to plead

13   a Section 5 violation.

14        Rather than acknowledge the fatal pleading deficiencies in the alleged Section 5 violation

15   that is the sole predicate for their UCL unlawfulness claim, Plaintiffs seek to defer until summary

16   judgment the court's ruling on the sufficiency of this aspect of the SAC.  Zoosk does not dispute

17

---

18   [2] Instead, Plaintiffs challenge Zoosk's citation of *LabMD* on the ground that *LabMD* dealt with an FTC enforcement order.  Opp at 7–8.  That is a distinction without a difference.  In analyzing the

19   sufficiency of the enforcement order at issue in *LabMD*, the Eleventh Circuit expressly, and soundly, held that to state a claim under Section 5 of the FTC Act in the context of a data security

20   breach, the defendant's conduct must be alleged to have violated some independent constitutional, statutory, or common-law principle.  *See* 894 F.3d at 1231 ("The [FTC] must find the standards of

21   unfairness it enforces in 'clear and well-established' policies that are expressed in the Constitution, statutes, or the common law.")  And nothing in *LabMD* suggests this holding turns on whether the

22   FTC or a private plaintiff is advancing the Section 5 claim in question.  *LabMD* is therefore directly on point here.

23   [3] According to Plaintiffs, this statement is irrelevant to this Court's analysis of the elements of a Section 5 claim in the data security context.  Opp. at 6.  However, "a reviewing court may properly

24   resort to an agency's interpretations and opinions for guidance, as they constitute a body of experience and informed judgment.  The measure of deference varies depending upon the

25   thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power

26   to control."  *Orellana v. Barr*, 967 F.3d 927, 934 (9th Cir. 2020) (quoting *Garcia v. Holder*, 659 F.3d 1261, 1266–67 (9th Cir. 2011); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)) (internal

27   quotations and alteration omitted).  Notably in this regard, the SAC itself relies upon "FTC publications and data security breach orders" as the basis for the duty Plaintiffs claim to be owed

28   under Section 5.  *See* SAC ¶ 82.

ZOOSK INC.'S REPLY IN SUPPORT OF
MOTION TO DISMISS
3:20-cv-04929-WHA

4127-3801-1697.4

1   that "[t]he question of whether Zoosk *actually violated* the FTC Act and therefore violated the UCL

2   is something that can and should be resolved on summary judgment."  Opp. at 7 (emphasis added).

3   In fact, Zoosk's opening brief made no argument to the contrary.  However, to survive a motion to

4   dismiss their UCL unlawfulness claim, Plaintiffs must allege with sufficient particularity facts that,

5   if true, would establish a Section 5 violation by Zoosk.  As the authority cited by Zoosk and ignored

6   by Plaintiffs shows, this they have not done by merely alleging that the FTC Act requires reasonable

7   security and Zoosk lacked reasonable security, because as shown above a claim under the FTC Act

8   has numerous additional elements beyond a failure to have reasonable security measures in place.

9              *2.      Unfairness*

10          The SAC likewise fails to allege sufficient facts to demonstrate that Zoosk's conduct was

11   unfair under either the tethering test or the balancing test.

12              a.      <u>Plaintiffs have not sufficiently tethered their UCL allegations to a</u>
              <u>specific constitutional, statutory, or regulatory provision</u>

13

14          Plaintiffs fail to allege any Zoosk violation of a public policy "tethered" to a "*specific*

15   constitutional, statutory, or regulatory provision[]," *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp.

16   3d 1197, 1227 (N.D. Cal. 2014) (Koh, J.) (emphasis added), and thus have not pled an unfairness-

17   based UCL violation under the tethering test.  Courts may "have found that various California

18   statutes reflect California's public policy of protecting customer data" as Plaintiffs' suggest, Opp.

19   at 8, but that alone does not satisfy the test.  Plaintiffs must still tie this public policy to a specific

20   statute or regulation to meet the tethering test.  Indeed, *Adobe*, which Plaintiffs seek to rely on,

21   found the tethering test was satisfied because the plaintiffs pointed to specific California statutes

22   (OPPA, IPA, and CRA) that "reflect California's public policy of protecting consumer data."  66

23   F. Supp. 3d at 1227.  Plaintiffs here rely on a vague invocation of the "statutes referenced above,"

24   SAC ¶ 95, but in fact no California statute is cited anywhere in the SAC other than the UCL itself.

25   This case is thus on all fours with *Bardin v. Daimlerchrysler Corp.*, where, as here, the tethering

26   test was not met because "[t]he second amended complaint did not allege the UCL claim is tethered

27   to any constitutional, statutory, or regulatory provision."  136 Cal.App.4th 1255, 1273 (2006).

28

ZOOSK INC.'S REPLY IN SUPPORT OF
MOTION TO DISMISS
3:20-CV-04929-WHA

1

         b.   <u>Plaintiffs have not adequately alleged Zoosk acted unfairly under</u>
<u>the balancing test.</u>

2

3      To the extent the so-called "balancing test" remains a valid method for evaluating whether

4 an act or practice is "unfair" within the meaning of the UCL,[4] under that test the "balancing" portion

5 of the test is conducted only if the plaintiff has alleged a business practice that "offends an

6 established public policy" or is "immoral, unethical, oppressive, unscrupulous or substantially

7 injurious to consumers." *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 990 (N.D.

8 Cal. 2016) (Koh, J.) (quoting *Bardin v. Daimlerchrysler Corp.*, 136 Cal.App.4th 1255 (2006)).

9 Here, Plaintiffs claim to have met this portion of the balancing test by alleging that Zoosk "offended

10 California's public policy of protecting consumer data." Opp. at 9.

11      To the extent Plaintiffs' position is that merely alleging a negligent failure to protect

12 consumer data from a criminal attack suffices to allege a violation of an established California

13 public policy, their position is supported by neither case law nor logic. No case has ever so held.

14 And indeed any such holding would make no sense, as it would turn any and every data breach case

15 automatically into a UCL unfairness case, given that any and every data breach case includes an

16 allegation that the defendant failed to exercise due care in protecting the data that the criminals

17 stole.

18      Far from supporting their position, the cases cited by Plaintiffs actually drive home that

19

---

20 [4] Following *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th
163 (1999), in which the California Supreme Court concluded that the balancing test was "too

21 amorphous" to be a valid test for UCL unfairness in the competition context and replaced that test
in that context with the tethering test, some California Courts of Appeal have concluded that the

22 balancing test is no longer applicable in the consumer context either. *See Gregory v. Albertson's,
Inc.*, 104 Cal. App. 4th 845, 854 (1st Dist. 2002) ("Where a claim of an unfair act or practice is

23 predicated on public policy, we read *Cel–Tech* to require that the public policy which is a predicate
to the action must be "tethered" to specific constitutional, statutory or regulatory provisions.");

24 *accord Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917, 940 (4th Dist. 2003); *see Camacho
v. Automobile Club of Southern California*, 142 Cal. App. 4th 1394, 1402–04 (2nd Dist. 2006)

25 (agreeing that balancing test is no longer applicable test for unfairness in consumer context, but
replacing it with FTC Act unfairness test rather than tethering test). Based on these decisions, and

26 its own view that "*Cel-Tech* effectively rejects the balancing test," the Ninth Circuit has
acknowledged that it is unclear that the California Supreme Court will still apply the balancing test

27 in the consumer context if and when it decides that issue. *See Lozano v. AT&T Wireless Servs.,
Inc.*, 504 F.3d 718, 736 (9th Cir. 2007).

28

ZOOSK INC.'S REPLY IN SUPPORT OF
MOTION TO DISMISS
3:20-cv-04929-WHA

4127-3801-1697.4

1    merely alleging negligence on the part of the data breach victim does not suffice to allege violation

2    of an established public policy by that victim, as every one of those cases rested its finding of an

3    alleged violation of an established public policy on some aggravating circumstance above and

4    beyond mere negligence on the defendant's part.  In one of those cases,  the court hinged its findings

5    to this effect on allegations that the defendant's conduct violated the defendant's privacy policy.

6    *See In re Yahoo!*, 2017 WL 3727318, at *24 (complaint cited to specific provisions in Privacy

7    Policy regarding protection of personal information).  And contrary to Plaintiffs' description in

8    their Opposition, Opp. at 9–10, the two other cases did not involve data breaches at all, but rather

9    sharing of data by the defendant in ways allegedly inconsistent with its privacy policy.  *Svenson v.*

10   *Google, Inc.*, No. 13-cv-04080-BLF, 2015 WL 1503429, at *1 (N.D. Cal. Apr. 1, 2015) (Freeman,

11   J.) (complaint alleged violation of promises in Google Wallet Privacy Policy and Google Privacy

12   Policy about limited circumstances where information will be shared when Google shared data with

13   app vendors); *Cappello v. Walmart, Inc.*, 394 F. Supp. 3d 1015, 1024 (N.D. Cal. 2019) (Seeborg,

14   J.) (complaint alleged Walmart violated express terms of Privacy Policy regarding opt-in for

15   information sharing by sharing data via Facebook pixel).  And in other of Plaintiffs' cited cases the

16   defendant's supposed security failings were alleged to have been knowing, as opposed to merely

17   negligent.  For example, in finding in *Yahoo!* that violation of an established public policy had been

18   pled, Judge Koh emphasized not only defendants' alleged privacy policy violations, but also

19   plaintiffs' allegation that defendants "knowingly failed" to employ adequate safeguards to protect

20   their customers' data.  2017 WL 3727318, at *24.  And her similar findings of an alleged violation

21   of an established public policy in *Anthem* and *Adobe* – the other two cases relied upon by Plaintiffs

22   here – were based on "substantially identical allegations" to those that supported her finding of

23   such an alleged violation in *Yahoo!*.  *Id*.

24         Here, unlike in *Google*, *Walmart*, and *Yahoo!*, no privacy policy violation has been pled.

25   See pp.  3–4 *supra* (explaining inapplicability of excerpted Zoosk privacy policy language on cross-

26   device tracking).  And here, unlike in *Yahoo!*, *Anthem*, and *Adobe*, no *knowing* failure to employ

27   adequate security measures has been pled either.  *See generally* SAC.  Here, then, Plaintiffs allege

28   *none* of the aggravating circumstances essential to their cited cases' findings that violation of an

ZOOSK INC.'S REPLY IN SUPPORT OF
MOTION TO DISMISS
3:20-CV-04929-WHA

1   established public policy had been pled.  Having alleged no such aggravating circumstance here,

2   Plaintiffs have pled no such violation here.

3      Even if Plaintiffs' allegations passed muster under the first step of the balancing test (which

4   they do not), they fail at the second step of that test, under which the gravity of the harm alleged

5   must outweigh the utility of the defendant's conduct.  Plaintiffs take the position that the balancing

6   test's second step is off the table entirely at the motion to dismiss stage.  Opp. at 10.  However,

7   even if it is premature on a motion to dismiss to evaluate the utility of the defendant's conduct, a

8   plaintiff must, to survive a motion to dismiss, allege some harm that can later be balanced against

9   the defendant's conduct.  Thus in *Adobe*, the court specifically examined whether consumer harm

10   had been sufficiently alleged to satisfy the balancing test and found that it had.  66 F. Supp. 3d at

11   1227 (concluding Plaintiffs sufficiently alleged harm when they alleged "Adobe's conduct placed

12   Plaintiffs at a substantial risk of future harm" given possibility of identity theft based on type of

13   information exposed and "caused Plaintiffs to overpay for Adobe products and services").  Yet

14   unlike the plaintiffs in *Adobe*, here Plaintiffs have alleged no injury that would qualify for relief

15   under the UCL and would therefore be eligible to be balanced against the utility of Zoosk's conduct.

16   See Part II.C *infra*.  Having not sufficiently alleged any such injury, Plaintiffs can never satisfy the

17   balancing test.

18      **C.    Plaintiffs Are Not Entitled to the Relief They Seek Under the UCL.**

19      Though Plaintiffs claim to be entitled to monetary damages in the form of restitutionary

20   disgorgement, Opp. at 11, their theory of damages is in fact a form of *non*-restitutionary

21   disgorgement unavailable to them.   California recognizes two forms of disgorgement:

22   "restitutionary disgorgement, which *focuses on the plaintiff's loss*, and non-restitutionary

23   disgorgement, which focuses on the defendant's unjust enrichment."  *In re Tobacco Cases II*, 240

24   Cal. App. 4th 779, 800 (Cal. Ct. App. 2015) (quoting *Meister v. Mensinger*, 230 Cal. App. 4th 381

25   (2014)) (internal quotations omitted).  Non-restitutionary disgorgement is unavailable in UCL

26   actions.  *See id.*

27      Plaintiffs allege here that Plaintiff Flores-Mendez "is entitled to restitutionary disgorgement

28   to the extent that Zoosk *did not spend money on adequate security* that it otherwise should have"

ZOOSK INC.'S REPLY IN SUPPORT OF
MOTION TO DISMISS
3:20-cv-04929-WHA

1    and that "Zoosk profited by *not spending money* on adequate security practices."  Opp. at 11

2    (emphasis in original).  They thus focus on Zoosk's purported profits, not on Plaintiff Flores-

3    Mendez's own losses.  However, "[w]ithout any showing of loss to plaintiffs, there can be no

4    restoration of money which may have been acquired by *means of such unfair* [or unlawful

5    activity]."  *In re Tobacco Cases II*, 240 Cal. App. 4th at 802. (quoting California Bus. and Prof.

6    Code § 17203) (internal quotations omitted) (emphasis in original).  Since the claimed relief is

7    "money that Zoosk improperly saved rather than spent to adequately secure" their data, Opp. at 11,

8    it "cannot be characterized as *restitutionary*"; rather, it is "concerned with restoring the [alleged]

9    violator to the status quo ante . . . instead [of restoring] the victim."  *In re Tobacco Cases II*, 240

10   Cal. App. 4th at 801. ("[C]ourts ordering restitution under UCL are not concerned with restoring

11   the violator to the status quo ante.  The focus instead is on the victim.") (citing *Red v. Kraft Foods,*

12   *Inc.*, No. 10-1028-GW, 2012 WL 8019257, at *11 (N.D. Cal. Apr. 12, 2012) (Wu, J.) (when

13   consumers received some benefit from a product, disgorgement of full profits "would constitute

14   nonrestitutionary disgorgement")).  As discussed above, *see* p. 7 *supra*, Zoosk promised paying

15   users like Plaintiff Flores-Mendez no greater security than it promised non-paying users like

16   Plaintiff Collins.  Such a separate, additive promise to a paying user like Plaintiff Flores-Mendez

17   would be necessary not only to support an overpayment theory of UCL standing on the part of such

18   a paying user, but also to support any claim by such a user for restitutionary disgorgement of some

19   portion of his or her payment.  Since Plaintiffs seek only monetary relief on their UCL claim that

20   is unavailable to them under the UCL, they have no valid claim for monetary relief under the UCL.

21        In regard to Plaintiffs' claim for injunctive relief under the UCL, Plaintiffs accuse Zoosk of

22   arguing for an "impossible standard" in taking Plaintiffs to task for the conceded fact that the SAC

23   contains no allegations that Zoosk's alleged past unlawful activity is ongoing or will recur.  Opp.

24   at 11.  Not so.  Far from being impossible to satisfy, requiring Plaintiffs to sustain a claim for

25   injunctive relief under the UCL by pleading unlawful conduct that not only has occurred in the past,

26   but also is either ongoing or likely to occur in the future, would simply enforce a basic pleading

27   requirement under California law.  *See e.g.*, *Sharma v. Volkswagen AG*, No. 20-CV-02394-JST,

28   2021 WL 912271, at *9 (N.D. Cal. Mar. 9, 2021) (Tigar, J.) (dismissing plaintiff's UCL claim in

ZOOSK INC.'S REPLY IN SUPPORT OF
MOTION TO DISMISS
3:20-CV-04929-WHA

part because "[p]laintiffs have made no showing that they are entitled to injunctive relief as they have alleged no continuing or imminent injury"); *Arch Ins. Co. v. Allegiant Pro. Bus. Servs., Inc.*, No. CV-11-1675 CAS PJWX, 2012 WL 1400302, at \*7 (C.D. Cal. Apr. 23, 2012) ("The Court finds that [plaintiff] has failed to state a claim for violation of the UCL because no remedy is available to it . . . [I]njunctive relief is not available because [plaintiff] has not alleged a continuing violation of the UCL."). Tellingly, Plaintiffs cite no authority to the contrary. The mere fact that Plaintiffs want an injunction does not excuse their failure to make a single factual allegation that could support the issuance of one.

## III.   CONCLUSION

For the reasons discussed herein, Zoosk respectfully requests that the Court dismiss the SAC's Second Cause of Action.

Dated: September 1, 2021                                Respectfully Submitted,

*/s/ Douglas H. Meal*
Douglas H. Meal (*admitted pro hac vice*)
MA Bar No. 340971
ORRICK, HERRINGTON & SUTCLIFFE LLP
222 Berkeley St., Suite 2000
Boston, MA 02116
dmeal@orrick.com

Rebecca Harlow
CA Bar No. 281931
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
rharlow@orrick.com

*Attorneys for Defendant*
*Zoosk, Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I, Rebecca Harlow, an attorney, do hereby certify that I have caused a true and correct copy of the foregoing DEFENDANT ZOOSK, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND CAUSE OF ACTION FOR FAILURE TO STATE A CLAIM to be electronically filed with the Clerk of this Court using the CM/ECF system, which generated a Notification of Electronic Filing to all persons currently registered with the Court to receive such notice in the above-captioned case.

Dated: September 1, 2021

*/s/ Rebecca Harlow*
Rebecca Harlow
CA Bar No. 281931
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
rharlow@orrick.com

*Attorneys for Defendant*
*Zoosk, Inc.*