**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (SBN 174156)
Kiley L. Grombacher, Esq. (SBN 245960)
Lirit A. King, Esq. (SBN 252521)
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
Facsimile: (805) 270-7589
E-Mail: mbradley@bradleygrombacher.com
kgrombacher@bradleygrombacher.com
lking@bradleygrombacher.com
*Attorneys for Plaintiffs*

(Additional counsel listed on following page)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JUAN FLORES-MENDEZ, an individual and AMBER COLLINS, an individual, and on behalf of classes of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>ZOOSK, INC., a Delaware corporation,<br><br>Defendant. | **CASE NO: 3:20-cv-04929-WHA**<br>Assigned to Hon. William Alsup, CR 12<br><br>**PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO AMEND**<br><br>Date:   January 13, 2022<br>Time:  8:00 a.m.<br>Place:  Courtroom 12, 19th Floor |

**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
John A. Yanchunis (*admitted pro hac vice*)
Ryan McGee (*admitted pro hac vice*)
201 N Franklin St., 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Email: jyanchunis@forthepeople.com
       rmcgee@forthepeople.com

**CROSNER LEGAL P.C.**
Zachary M. Crosner (SBN 272295)
Michael R. Crosner (SBN 41299)
433 N. Camden Dr., Suite 400
Beverly Hills, CA 90210
Telephone: (310) 496-4818
Facsimile: (310) 510-6429
Email: zach@crosnerlegal.com
       mike@crosnerlegal.com

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................. 1

II.  FACTUAL BACKGROUND ......................................................................................... 1

III. ARGUMENT ................................................................................................................... 2

    A.   Reliance is not Required ..................................................................................... 2

    B.   The Elements of UCL Claims Have Been Established ........................................ 3

        1.   Reliance is not required ............................................................................ 3

        2.   Plaintiff Flores-Mendez satisfies the unlawful prong ............................... 4

        3.   Plaintiff Flores-Mendez satisfies the unfair prong .................................... 5

    C.   Plaintiff Flores-Mendez is Entitled to Relief Under the UCL .............................. 6

IV.  CONCLUSION ................................................................................................................ 7

# **TABLE OF AUTHORITIES**

*Backus v. Gen. Mills, Inc.*, 122 F. Supp.3d 909, 929 (N.D. Cal. 2015) ..........................................6

*Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1020 (N.D. Cal. 2019)............................*passim*

*Clark v. Superior Ct.*, 50 Cal. 4th 605, 112 Cal.Rptr.3d 876, 235 P.3d 171 (2010) ......................6

*Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152 (9th Cir. 2012) ...............................................5

*Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 108 Cal.Rptr.3d 682 (2010) ......................3

*In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197 (N.D. Cal. 2014) ............................2, 5

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
    — F. Supp. 3d —, 2020 WL 2214152 (S.D. Cal. May 7, 2020).........................................4–5

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    313 F. Supp. 3d 1113 (N.D. Cal. 2018) ....................................................................2, 5–6

*Kasky v. Nike, Inc.*, 27 Cal.4th 939, 119 Cal.Rptr.2d 296, 45 P.3d 243 (2002).............................6

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134, 131 Cal.Rptr.2d 29, 63 P.3d 937 (2003).........................................................5

*Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718 (9th Cir. 2007)..........................................5

*Rose v. Bank of Am., N.A.*, 57 Cal. 4th 390, 159 Cal.Rptr.3d 693, 304 P.3d 1818 (2013) ...........4

*Svenson v. Google, Inc.*,
    No. 13-cv-04080-BLF, 2015 WL 1503429 (N.D. Cal. April 1, 2015) ................................2, 5

I.  **INTRODUCTION**

After losing 30 million consumers' personally identifiable information ("PII") in a data breach that the hackers openly bragged was "not too hard" to execute against Defendant, Zoosk, Inc. ("Zoosk"), Zoosk now opposes Plaintiff Flores-Mendez's motion to amend the class action complaint to address the Court's findings on his California Unfair Competition Law, California Business and Professions Code §§ 17200, *et seq.* ("UCL"). Despite Zoosk's promises in its Privacy Policy—unchanged from October 7, 2013 through the date of the data breach—that it would maintain the security of consumers' PII, that it would not allow unauthorized third parties to access that PII, and it would use reasonable means to detect and prevent criminal or unlawful activity (like a data breach), Zoosk contends that the Privacy Policy essentially holds no weight. Zoosk's Privacy Policy affirmatively and explicitly bound users to the terms thereof without exception, and Zoosk should be held liable for its own broken promises in allowing the data breach to occur. The Court should permit the UCL claim to proceed, as other district courts have under similar circumstances.

II.  **FACTUAL BACKGROUND**

Users of Zoosk's services are required to provide Zoosk with their personally identifiable information, including names, email addresses, dates of birth, demographical information, gender, gender search preferences, and other sensitive and confidential information ("PII"). Since at least October 7, 2013, Zoosk has maintained a Privacy Policy that binds its users to certain obligations in exchange for Zoosk's promises that it will protect that PII and proactively prevent criminal and other unlawful activity. Proposed Third Amended Complaint ("TAC"), ¶¶ 35–44. On May 11, 2020, Zoosk "learned that an unknown third party claimed to have accessed certain Zoosk member information." TAC, ¶ 6. This discovery was not through the due diligence of Zoosk's information technology or security teams, but rather from an internet announcement from the hacking group ShinyHunters, which claimed that it was "not too hard" to access Zoosk's systems and exfiltrate 30 million users' PII. TAC, ¶¶ 4–5. Put differently, Zoosk failed on its promises to securely maintain more than 30 million users' PII, failed to detect, address, and remediate any malicious activity, and allowed unauthorized third parties to exfiltrate 30 million users' PII.

## III. ARGUMENT

Defendant devotes a substantial portion of its opposition asserting that reliance is required, otherwise the amendment would be futile. This argument is contrary to the law, as are the remaining points raised by Defendant.

### A. Reliance is not Required

Where a defendant breaches contractual privacy protections governing the relationship it has with its users, there is no requirement of reliance, and those affected users have standing under the UCL. *Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1020 (N.D. Cal. 2019) (Seeborg, J.). Moreover, a defendant that "systematically breach[es] its Privacy Policy . . . contravenes California's well-established public policy of protecting consumer data, as reflected in Section 22576 and other statutes. District courts have found similar allegations sufficient to plead 'unfair' conduct under the balancing test." *Id.* at 1024 (citing *Svenson v. Google, Inc.*, No. 13-cv-04080-BLF, 2015 WL 1503429, at *10 (N.D. Cal. April 1, 2015); *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1227 (N.D. Cal. 2014); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-md-02752-LHK, 2017 WL 3727318, at *24 (N.D. Cal. Aug. 30, 2017)).

Here, Zoosk bound Plaintiffs and all Class Members to its Privacy Policy, requiring that users who "register[ed], us[ed], or subscrib[ed] to [Zoosk's] Services . . . have read and consent to," *inter alia*, Sections 1 through 6 of that Privacy Policy. TAC, ¶¶ 35–42. The Privacy Policy was unchanged from October 7, 2013 up to March 27, 2020 (after the data breach occurred). TAC, ¶¶ 43, 44. But the Privacy Policy and its privacy and protection assurances were not merely advisory or otherwise mere puffery; Zoosk *required* that users consent to those terms in order to use any services that Zoosk offered, which created a contractual privacy protection for Zoosk to abide by and follow through on its promises. TAC, ¶¶ 43, 44. While reliance may generally be required where there is no binding cross obligation, here, Zoosk's own Privacy Policy compelled users of its services to consent to the policy, which included Zoosk's own promises of security, eliminating any requirement of reliance. *Capello*, 394 F. Supp. 3d at 1020, 1024.

///

///

### B. The Elements of UCL Claims Have Been Established

#### 1. Reliance is not required

Zoosk raises reliance again as an element of the UCL in addition to standing. Zoosk's cited authorities are unavailing and all predate *Cappello* and similar authorities finding that reliance is not required when a defendant fails to provide contractually-bound security commitments.

In *Durell v. Sharp Healthcare*, the court acknowledged that "[t]here are doubtless many types of unfair business practices in which the concept of reliance, as discussed here, *has no application*." 183 Cal. App. 4th 1350, 1363, 108 Cal.Rptr.3d 682 (2010). The *Durell* court focused its analysis and ultimately decided to uphold dismissal because that plaintiff's case focused entirely on misrepresentations without any nexus to any contractual obligations on the part of the defendant. *Id.* For example, that defendant's website stated its "goal is to offer quality care and programs that set community standards, exceed patients' expectations and are provided in a caring, convenient, *cost-effective* and accessible manner." *Id.* at 1361 (emphasis in original). Based on those misrepresentations, it was alleged that defendant "intended to induce patients to seek treatment at [the defendant's] facilities," while continuing to charge higher rates than what were considered "usual and customer charges." *Id.* at 1361–62.

In *Backhaut v. Apple, Inc.*, the district court followed similar reasoning as in *Durell*: when the allegations "underlying a plaintiff's UCL claim consist[] of a defendant's misrepresentation or omission, a plaintiff must have actually relied on the misrepresentation or omission . . . ." 74 F. Supp. 3d 1033, at 1047 (N.D. Cal. 2014) (Koh, J.). In *Backhaut*, the plaintiffs brought suit with a cause of action under the UCL for Apple's text messaging technology that, after the plaintiffs switched away from Apple iPhones to non-Apple phones, continued to intercept and represent that the messages were delivered when they in fact had not been delivered. *Id.* at 1038. But because the plaintiffs had not seen, read, or relied on any representations by Apple regarding iMessage, and there was in fact public information contradicting those plaintiffs' UCL theory: articles had been published calling to attention the faulty message delivery systems a year before those plaintiffs purchased their phones. *Id.* at 1049. In short, the *Backhaut* plaintiffs' theories were contradictory and did not rise to the level of misrepresentations or omissions. *Id.*

These fact patterns are a far cry from *Cappello*, where a defendant required consent to its privacy policy—with promises for its own obligations—before a consumer could use that defendant's services. The *Cappello* court held that reliance was not required because of that consent, and this Court should similarly find that Zoosk's privacy policy equally required consent before any services could be used, thus alleviating any reliance requirement on the part of Plaintiff Flores-Mendez or any other class members.

### 2. Plaintiff Flores-Mendez satisfies the unlawful prong

"By proscribing 'any unlawful' business act or practice, the UCL 'borrows' violations of other laws and treats them as unlawful practices that the UCL makes independently actionable." *Cappello*, 394 F. Supp. 3d at 1023 (citing *Rose v. Bank of Am., N.A.*, 57 Cal. 4th 390, 396, 159 Cal.Rptr.3d 693, 304 P.3d 1818 (2013)). "In borrowing requirements from other statutes, the UCL provides its own 'distinct and limited equitable remedies for unlawful business practices, using other laws only to define what is 'unlawful.'" *Id.* Here, Plaintiff Flores-Mendez alleged violations of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. TAC, ¶¶ 50, 51. Undeniably, Zoosk failed to implement reasonable safeguards to ensure Plaintiffs' and Class Members' PII was adequately protected—Zoosk did not even know the data breach occurred until months after hackers gained access to Zoosk's systems, exfiltrated the PII of 30 million users, posted that PII to the dark web for sale, and publicized that the source of the PII was Zoosk. TAC, ¶¶ 13, 14. Zoosk even failed to encrypt that PII in line with industry standards. TAC, ¶ 15. Faced with the inescapable reality that it failed to detect the malicious activity or protect the PII from unauthorized disclosure, Zoosk tacitly admitted its security measures and processes were subpar, requiring updating. TAC, ¶ 16.

Zoosk's failure to take "reasonable measures to help protect [consumers'] information in an effort to prevent loss, misuse, and unauthorized access, disclosure, alteration or destruction [of users' PII] in accordance with th[e Privacy] Policy," TAC, ¶ 41, such as monitoring and proactively detecting malicious actors, or encrypting users' PII, resulted in Zoosk violating Section 5 of the FTC Act, fulfilling the "unlawful" prong of the UCL. Plaintiff Flores-Mendez has met his burden at the pleading stage, and whether Zoosk's conduct equates to a violation of another law is "better suited for a motion for summary judgment when the record is more fully developed." *In re Solara Med.*

*Supplies, LLC Cust. Data Sec. Breach Litig.*, — F. Supp. 3d —, 2020 WL 2214152, at *11 (S.D. Cal. May 7, 2020) (denying motion to dismiss UCL unlawful claim).

### 3. Plaintiff Flores-Mendez satisfies the unfair prong

"The 'unfair' prong of the UCL creates a cause of action for a business practice that is unfair even if not proscribed by some other law." *Cappello*, 394 F. Supp. 3d at 1023 (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143, 131 Cal.Rptr.2d 29, 63 P.3d 937 (2003)). "The UCL does not define the term 'unfair'…[and] the proper definition of 'unfair' conduct against consumers 'is currently in flux' among California courts." *Id.* "Some California courts apply a balancing test, which requires courts to 'weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim.'" *Id.* (citing *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012)). "Other California courts apply a 'tethering' test, under which the 'unfairness must be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition.'" *Id.* (citing *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007)). Plaintiff Flores-Mendez satisfies both tests.

#### a. The balancing test favors Plaintiff's UCL amendment

"An unfair business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 39 Cal.Rptr.3d 634 (2006). California has a "well-established public policy of protecting consumer data" and trial courts have found allegations similar to Plaintiff Flores-Mendez's sufficient to plead "unfair" conduct under the UCL's balancing test. *Svenson*, 2015 WL 1503429, at *10; *In re Adobe*, 66 F. Supp. 3d at 1227; *In re Yahoo!*, 2017 WL 3727318, at *24. Zoosk offers no justification for breaching its Privacy Policy, nor could it. Plaintiffs' allegations are more than sufficient to clear the low hurdle the balancing test poses at the pleading stage. *See, e.g.*, *Svenson*, 2015 WL 1503429, at *10 (finding that plaintiffs sufficiently alleged a violation of the UCL under the "unfair" prong when plaintiffs alleged that Google shared users' personal information with unauthorized third parties in violation of its privacy policy); *In re Yahoo!*, 2017 WL 3727318, at *24 (plaintiffs adequately alleged "unfair" conduct where defendant failed to adequately protect customer data in violation of its privacy policy).

Indeed, "because the [balancing] test involves weighing evidence that is not yet properly before the court," dismissal would be premature. *Backus v. Gen. Mills, Inc.*, 122 F. Supp.3d 909, 929 (N.D. Cal. 2015).

### b. The tethering test favors Plaintiff's UCL amendment

The tethering test equally favors the UCL amendment. In addition to tethering his UCL claim to the United States' policy for securing and protecting PII from unauthorized disclosure under the FTC Act, Plaintiff Flores-Mendez also seeks to hold Zoosk accountable for failing to adhere to privacy policies and ensure users' PII is protected from unauthorized disclosure under the CCPA. These public policies were designed to protect consumers' PII and impose obligations on those companies that collect and maintain those consumers' PII. Zoosk not only authored its Privacy Policy, but took the extra step of requiring that any consumers who used Zoosk's Services consented to that Privacy Policy, and Zoosk's affirmative promises to protect consumers' PII and ward against criminal and other illegal activity compelled Zoosk to comply with the United States' and California's public policies regarding the security and protection of consumers' PII, and Zoosk cannot escape liability under the UCL's tethering (or balancing) test.

### C.  Plaintiff Flores-Mendez is Entitled to Relief Under the UCL

Under the UCL, a plaintiff is entitled to injunctive and restitutionary relief. *See* Cal. Bus. & Prof. Code § 17203; *Clark v. Superior Ct.*, 50 Cal. 4th 605, 112 Cal.Rptr.3d 876, 235 P.3d 171, 174 (2010) (citing *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 950, 119 Cal.Rptr.2d 296, 45 P.3d 243 (2002)). For the reasons this Court has previously ruled, as well as those articulared in the Third Amended Complaint and argued below, Plaintiff Flores-Mendez and the Subscription Subclass are entitled to both.

First, Plaintiff Flores-Mendez and the Subscription Subclass are entitled to restitution under the UCL. As this Court held, Plaintiff Flores-Mendez—a paying member of Zoosk's platform—credited and valued the privacy protections Zoosk was supposed to provide. (Dtk. No. 93, at 7) ("Without the privacy promises, customers would have paid less or nothing at all"). Accordingly, Plaintiff Flores-Mendez and the Subscription Subclass members reasonable believed that "Zoosk would use subscribers' revenue in part for data security, especially since…'A dating app contains

sensitive information about sexual preferences, which means that a hack and subsequent use of the private information could plausibly lead to blackmail and embarrassment.'" (Dkt. No. 93, at 7–8) (citing Dkt. No. 61, at 6).

Second, Plaintiff Flores-Mendez and the Subscription Subclass are entitled to injunctive relief under the UCL. The *only* reason that Zoosk discovered 30 million users' PII was exfiltrated and compromised is because it was publicized by the hacking group that perpetuated the data breach. TAC, ¶¶ 4, 14. Plaintiff Flores-Mendez further alleged entitlement to injunctive relief because he and other class members "face ongoing risks of disclosure of their PII in subsequent data breaches because [Zoosk] has not demonstrated that it has implemented reasonable security systems and procedures." TAC, ¶ 19. Indeed, Plaintiff Flores-Mendez and others class members are further entitled to injunctive relief, including independent oversight of Defendant's security practices, because they "have a significant interest in the protection and safe storage of their PII," TAC, ¶ 19, and as of Zoosk's most recent statement on the data breach, its "investigation remain[ed] ongoing" and Zoosk only broadly claimed to be "taking several steps to monitor systems and enhance [its] existing security measures and processes." TAC, ¶ 16. Implicit in this statement is that the monitoring systems and security measures and processes were not adequate, and only with the benefit of an injunction could Plaintiff Flores-Mendez and other class members ensure that their PII, which remains in the possession of Zoosk, is secure and not subject to further compromise. At the pleading stage, Plaintiff Flores-Mendez has met his burden for seeking injunctive relief under the UCL, and any factual dispute as to whether Zoosk's security is adequate is more appropriately resolved at a later stage of litigation.

## IV.  CONCLUSION

For the reasons stated herein, the Court should grant Plaintiffs' Motion to Amend.

Dated: November 30, 2021                                Respectfully submitted,

**BRADLEY/GROMBACHER LLP**

/s/ *Kiley L. Grombacher*
Kiley L. Grombacher
Attorneys for Plaintiffs

7
PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO AMEND
3:20-CV-4929-WHA