

January 31, 2022

**Orrick, Herrington & Sutcliffe LLP**
222 Berkeley Street, Suite 2000
Boston, MA 02116-3740
+1 617 880 1800

**orrick.com**

**Douglas H. Meal**
E  dmeal@orrick.com
D  +1 617 880 1880
F  +1 617 880 1801

*Via E-filing and Courier*

The Honorable William H. Alsup
San Francisco Federal Courthouse, Courtroom 12 – 19th Floor
450 Golden Gate Ave.
San Francisco, CA  94102

Re:     *Flores-Mendez et al., v. Zoosk, Inc., et al.*, **Case No. 3:20-cv-04929-WHA**
        **Defendant Zoosk's Request for Discovery Relief**

To the Honorable Judge Alsup:

Defendant Zoosk, Inc. ("Zoosk") hereby seeks to supplement the record for its January 26, 2022 request for discovery relief pursuant to this Court's Supplemental Order to Order Setting Initial Case Management Conference in Civil Cases before Judge William Alsup (paragraph 34) ("Discovery Relief Request", ECF No. 126).

Subsequent to Zoosk submitting its Discovery Relief Request, Plaintiffs' counsel responded to Zoosk's January 24, 2022 meet and confer letter (see Attachment 1 to the Discovery Relief Request) by letter of January 27, 2022.  *See* Attachment 1 hereto.  Zoosk's counsel responded to the January 27 letter today, January 31, 2022, with the letter attached hereto as Attachment 2.

Very truly yours,

 */s/ Douglas H. Meal*

Douglas H. Meal, *Counsel for Defendant Zoosk, Inc.*

**<u>Enclosures</u>**

**Attachment 1** – January 27, 2022 Letter from Plaintiffs' counsel John A. Yanchunis to Zoosk's counsel

**Attachment 2** – January 31, 2022 Letter from Defendant's counsel Matthew D. LaBrie to Plaintiffs' counsel

# ATTACHMENT 1



MORGAN & MORGAN
COMPLEX LITIGATION GROUP
Mass Torts | Whistleblower | Class Action

January 27, 2022

<u>**VIA ELECTRONIC MAIL**</u>

Douglas H. Meal, Esq.
Rebecca Harlow, Esq.
Matthew D. LaBrie
**ORRICK, HERRINGTON
& SUTCLIFFE LLP**
222 Berkeley Street Suite 2000
Boston, MA 02116-3740

      Re:     *Juan Flores-Mendez and Amber Collins v. Zoosk, Inc.*, Case No. 3:20-cv-4929-WHA (N.D. Cal.)

Counsel:

      We write in response to your letter of January 24, 2022, in which you demand withdrawal of Plaintiffs' Second Set of Interrogatories and Third Set of Requests for Production. You ground that improper demand solely on the premise that Plaintiffs' pending Amendment Motion represents that granting the motion would not "materially change the scope of discovery in this matter."  Jan. 24, 2022 Letter (quoting Amendment Motion at 7).

      That representation remains true and hence there is no need to withdraw the discovery. Plaintiffs have long sought similar information, although Zoosk continues to fail to provide it.  Plaintiffs served prior discovery requests in 2021 seeking this information.  Specifically, Plaintiffs' Document Request No. 46 sought documents "related to Zoosk's budget and expenditures on the security of its users' PII from 2014 to the present." In Zoosk's November response to that discovery request, Zoosk represented that it would produce any relevant documents, but has not yet made any production. Likewise, Interrogatory No. 17 requested Zoosk "Describe in detail how much You budgeted and how much You actually spent on data security for each year during the Relevant Period. If You spent more or less than was budgeted in any given year, please explain in detail the reasons for the reduced or

One Tampa City Center  |  201 North Franklin Street  |  7th Floor  |  Tampa, FL 33602  |  Ph: 813.223.5505  |  www.ForThePeople.com

Atlanta, GA  |  Bowling Green, KY  |  Daytona Beach, FL  |  Fort Myers, FL  |  Jackson, MS  |  Jacksonville, FL  |  Kissimmee, FL  |  Lakeland, FL  |  Lexington, KY  |  Naples, FL  |  Nashville, TN
New York, NY  |  Memphis, TN  |  Orlando, FL  |  Plantation, FL  |  Sarasota, FL  |  St. Petersburg, FL  |  Tallahassee, FL  |  Tampa, FL  |  Tavares, FL  |  The Villages, FL  |  Winter Haven, FL

January 27, 2022
Page 2

increased spending on data security." Furthermore, Zoosk's woefully unprepared Rule 30(b)(6) witness, in the face of Topic No. 3, which included "the number of users or consumers affected by the Breach, the investigations and analyses that led to those determinations," could answer with only, "I do not know that" to the question, "Of the consumers whose information was taken in the breach, how many of those individuals were paid subscribers?" Brandon Munoz Tr. At 106:23–107:2.

Thus, Plaintiffs long ago propounded discovery encompassing much of what their Second Set of Interrogatories and Third Set of Requests for Production seek, although the newly issued discovery is certainly more specific and focused.

Moreover, it is clear that both the parties and the Court itself anticipated additional discovery concerning the UCL claim should it be permitted. Specifically, on November 17, 2021, the Parties filed a stipulation, agreeing to further extend the class certification deadline, but not impacting other deadlines such as trial. (Doc. No. 100.) The stipulation—which you signed—also expressly recognized that "**the scope of discovery may change depending on the Court's ruling on the Motion to Amend**," and "the Parties agree to negotiate in good faith whether and to what extent another extension of the class certification briefing schedule, in addition to the extension agreed to by means of this Stipulation, may be needed after the Court has issued an order on the Motion to Amend." (Doc. No. 100 at 3.)  The Court agreed in part to the stipulation, and, notably, **the Court also recognized that: "If the scope of discovery changes significantly following an order on the motion to amend, parties may move for an extended briefing schedule with a more informed explanation**." (Doc. No. 101 at 5).  (*Id.*)

Accordingly, your insinuation of surprise or some untoward conduct by Plaintiffs in serving their Second Set of Interrogatories and Third Set of Requests for Production is utterly undermined by the record.  Motion practice based on the analysis set out in your letter would be frivolous. As such, we demand that you withdraw the Request for Discovery Relief (ECF No. 127), you have now filed, prior to Plaintiffs spending further unnecessary time and expense responding to it.

Best regards,

John A. Yanchunis
jyanchunis@forthepeople.com



January 27, 2022
Page 3


Direct Line:    (813) 275-5272
Cell:           (850) 509-5641


cc:      All counsel of record.



# ATTACHMENT 2



January 31, 2022

**VIA EMAIL**

John Yanchunis
Ryan McGee
Morgan & Morgan
201 N. Franklin St., 7th Floor
Tampa, FL 33602

Kiley Grombacher
Marcus J. Bradley
Bradley/Grombacher LLP
313675 Oak Crest Drive, Suite 240
Westlake Village, CA 91361

Zachary M. Crosner
Michael R. Crosner
Crosner Legal P.C.
433 N. Camden Dr., Suite 400
Beverly Hills, CA 90210

**Orrick, Herrington & Sutcliffe LLP**
222 Berkeley Street
Suite 2000
Boston, MA 02116-3740

+1 617 880 1800
**orrick.com**


**Matthew D. LaBrie**

**E** mlabrie@orrick.com
**D** +1 617 880 2208
**F** +1 617 880 1801

Re:     Juan Flores-Mendez and Amber Collins v. Zoosk, Inc., Case No. 3:20-cv-4929-WHA (N.D. Cal.)

Dear Counsel:

We have received your letter of January 27, 2022, in which you provided your first response to our January 24, 2022 request to meet and confer regarding Zoosk's request for a protective order with respect to Plaintiffs' Second Set of Interrogatories and Third Set of Requests for Production (the "New Discovery"). As you are aware, because you failed to reply in any manner to our two requests to meet and confer on this matter, on January 26, 2022 we were forced to seek the Court's intervention regarding the New Discovery. In order to avoid unnecessary motion practice, we request that in the future Plaintiffs in a timely manner at least acknowledge, if not respond to, our requests to meet and confer.

Zoosk will not withdraw its Motion for Protective Order (ECF 127) ("Motion") as it is clear from your January 27 Letter that Plaintiffs will not agree to withdraw the New Discovery. For the reasons set forth in Zoosk's January 24 letter, in the Motion, and herein, the New Discovery is improper, contradicts Plaintiffs' prior statements to the Court, and should be immediately withdrawn.

**First**, the January 27 Letter's statement that "Plaintiffs have long sought similar information [to that requested in the New Discovery], although Zoosk continues to fail to provide it,", *see* January 27 Letter at 1, is directly at odds with Plaintiffs' assertion in their pending motion to extend the case management schedule deadlines that they have been ***precluded*** from seeking discovery such as that requested in the New Discovery by the fact that their complaint does not include a "live" UCL claim. *See* Motion for Relief



John Yanchunis
Kiley Grombacher
Zachary M. Crosner
January 31, 2022
Page 2


from Case Management Schedule (ECF 124) at 8-9.  In any event, that statement is demonstrably false.
The information and documents sought by the New Discovery are entirely different from the information
and documents sought by Plaintiffs' prior discovery requests.  Most notably, the New Discovery is specific
to the putative Subscription Subclass—including subclass members' identities and how Zoosk has
allocated monies received from them—whereas none of Plaintiffs' prior written discovery requests have
even referenced Zoosk's subscription service, let alone sought discovery of the sort requested by the New
Discovery as to users impacted by the Incident who had purchased a subscription.

In any event, Zoosk has not "fail[ed]" to provide" any discovery it was obligated to provide in response to
the discovery requests Plaintiffs have served to date.  To the contrary, Zoosk has fully complied with its
discovery obligations with respect to Document Request No. 46, Interrogatory No. 17, and Plaintiffs'
30(b)(6) notice, as discussed in detail below.  The propriety of Zoosk's responses to those discovery
requests, which responses were provided long ago, is confirmed by Plaintiffs' failure to make any effort to
meet and confer regarding those responses or otherwise raise any challenge to the sufficiency of those
responses prior to your January 27 Letter's belated effort to criticize those responses in an effort to justify
the New Discovery.

**Interrogatory No. 17**

The January 27 Letter treats Zoosk's response to Interrogatory No. 17 as somehow deficient.  This is untrue.
Zoosk served its response to Interrogatory No. 17 on June 24, 2021, and that response remained
unchanged in Zoosk's Amended Responses to Plaintiffs' First Set of Interrogatories served October 6,
2021. That response stated:

> Zoosk did not and does not separately budget for or track spending on data security.  Any such
> budgeting or spending on would have been included within and come out of the overall Information
> Technology budget.

Zoosk has therefore fully answered Interrogatory No. 17 and satisfied any discovery obligation it may have
had regarding this interrogatory.  Plaintiffs have had over six months to challenge the sufficiency of Zoosk's
response to Interrogatory No. 17 but made no attempt to do so prior to their January 27 Letter.  Indeed, the
January 27 Letter is the first time that Plaintiffs have so much as referenced Interrogatory No. 17 since it
was propounded.  Given this sequence of events, it is perfectly obvious that your January 27 Letter's
challenge to the sufficiency of Zoosk's response to Interrogatory No. 17 is an after-the-fact invention created
by Plaintiffs in the hope of deflecting the Court's attention from Plaintiffs' representation to the Court in their
motion to amend complaint (ECF 95) ("Amendment Motion") that granting that motion would not necessitate
additional discovery such as the New Discovery.



John Yanchunis
Kiley Grombacher
Zachary M. Crosner
January 31, 2022
Page 3

**Document Request No. 46**

Plaintiffs' propounded Request No. 46 as part of Plaintiffs' Request for Production of Documents to Defendant Zoosk, Inc. Set No. Two on October 29, 2021.  Zoosk's Response to Plaintiffs' Requests for Production of Documents, Set Two ("RFP Set 2 Response") incorporated by reference its General Objections to Plaintiffs' Requests for Production of Documents, Set One ("RFP Set 1 GOs"), which provide:

> "By agreeing to produce documents responsive to some or all of a Request, Zoosk is not representing that it in fact has located, will locate, or expects to locate any such documents . . . ***A statement by Zoosk that it will produce certain documents in response to a Request means that Zoosk will produce those documents to the extent they are located by means of a search of the sort described in this paragraph and are not within one of Zoosk's objections to the Requests***.

RFP Set 1 GOs, No. 11 (emphasis added).  Zoosk did in fact conduct a search of the sort described in its RFP Set 1 GOs for documents responsive to the non-objectionable portions of Document Request No. 46, located no such documents, and accordingly produced no such documents.  Zoosk made these facts clear to Plaintiffs on December 1, 2021—the day after Zoosk served its RFP Set 2 Response—when Zoosk served its sixth production of documents with a cover letter that stated, "[t]his production is the ***first and final production*** Zoosk makes in response to Plaintiffs' Second Set of Requests for Production of Documents" (emphasis added).  At that time, then, it should have been clear to Plaintiffs that Zoosk had not located, and therefore not only had not produced but would not be producing, any documents responsive to Document Request No. 46.  Moreover, given Zoosk's response to Interrogatory No. 17 (discussed above), Plaintiffs cannot have been the least bit surprised that Zoosk had located no documents responsive to Document Request No. 46.  Indeed, that the fact that Plaintiffs made no effort to challenge the sufficiency of Zoosk's production in response to Document Request No. 46 in the 58 days that elapsed between that production and your January 27 Letter again reinforces that your January 27 Letter's challenge to the sufficiency of that production is an after-the-fact invention that Plaintiffs created in the hope of deflecting the Court's attention from Plaintiffs' representation to the Court in their pending Amendment Motion that granting that motion would not necessitate additional discovery such as the New Discovery.

**Zoosk's 30(b)(6) deposition testimony**

The January 27 Letter points to Zoosk's Rule 30(b)(6) witness's testimony regarding the number of paid subscribers impacted by the Incident as further evidence of Plaintiffs' having sought, and Zoosk's having failed to provide, discovery of the same kind sought by the New Discovery.  Once again, Plaintiffs' assertion that Zoosk has blocked them from obtaining discovery of the sort requested by the New Discovery is directly at odds with Plaintiffs' assertion in their pending motion to extend the case management schedule deadlines



John Yanchunis
Kiley Grombacher
Zachary M. Crosner
January 31, 2022
Page 4


that they have been **precluded** from seeking such discovery by the absence from their complaint of a "live" UCL claim.  *See* Motion for Relief from Case Management Schedule at 8-9.  In any event, Zoosk fully met its obligations under Rule 30(b)(6).  The topic of the number of paid subscribers impacted by the Incident was not included within the topics noticed in Plaintiffs' Notice of Deposition Pursuant to Rule 30(b)(6) ("30(b)(6) Notice").   In fact, the 30(b)(6) Notice makes no mention of Zoosk's subscription service whatsoever.  Topic No. 3 of the areas of inquiry, which the Letter contends included this particular topic, *see* January 27 Letter at 2, is limited to

> "[t]he nature and extent of the PII, information, or data that was compromised in the Breach, the period of time during which the compromise occurred, the number of users or consumers affected by the Breach, the investigation and analyses that led to those determination, when those determinations were made, and the persons involve in making those determinations."

Nothing in Topic No. 3 indicated that Plaintiffs intended to discover information as to subscription users in particular, nor any other particular subgroup of impacted users, and Zoosk accordingly had no obligation to produce a 30(b)(6) witness who was knowledgeable regarding such information.  *See* Fed. R. Civ. P. 30(b)(6).  Here again, Plaintiffs never raised any challenge to the sufficiency of Zoosk's 30(b)(6) witness's testimony on this topic in the 107 days that elapsed between that testimony and the January 27 Letter, making clear that your January 27 Letter's challenge to the sufficiency of that testimony, like its challenges to the sufficiency of Zoosk's responses to Request No. 46 and Interrogatory No. 17, is a mere after-the-fact invention by which Plaintiffs hope to deflect the Court's attention from Plaintiffs' representation to the Court in the Amendment Motion that granting that motion would not necessitate additional discovery such as the New Discovery.

**Second**, your January 27 Letter's assertion that both the parties and the Court anticipated that additional discovery concerning Plaintiffs' new UCL claim might be warranted should the Court grant the Amendment Motion rests on a tortured reading of prior statements by Zoosk and the Court that are, in any event, made irrelevant by Plaintiffs' plain representation to the Court in the Amendment Motion that Plaintiffs' "proposed amendment will also not materially change the scope of discovery in this matter."  Amendment Motion at 7:11-12.

Your January 27 Letter points to the statement in the Joint Stipulation to Continue Class Certification Deadlines (ECF 100) ("Joint Stipulation") in which the parties recognized the possibility that the scope of discovery might change depending on the Court's ruling on the Amendment Motion.  January 27 Letter at 2.  But in pointing to that statement, your January 27 Letter appears to have forgotten that Zoosk entered into the Joint Stipulation in reliance on Plaintiffs' **prior** representation to the Court in the Amendment Motion filed not three weeks earlier that the scope of discovery **would not materially change**, from Plaintiffs' perspective, should the Court grant the Amendment Motion.  Given that history, the statement in the Joint



John Yanchunis
Kiley Grombacher
Zachary M. Crosner
January 31, 2022
Page 5


Stipulation pointed to by your January 27 Letter cannot reasonably be read to have put either Zoosk or the Court on notice that—contrary to Plaintiffs' express representation in the Amendment Motion itself, which representation to this day Plaintiffs have never corrected—granting the Amendment Motion would result in the massive increase in the duration and breadth of fact discovery contemplated by the New Discovery.

That history also negates the significance your January 27 Letter attaches to the Court's statement in its ruling on the Joint Stipulation that it would consider further adjusting the class certification briefing schedule "[i]f the scope of discovery changes significantly following an order on the motion to amend."  *See* ECF 101. By that statement the Court cannot possibly have been thinking that its granting of the Amendment Motion would change the scope of discovery from ***Plaintiffs'*** perspective, because Plaintiffs had already represented to the Court in the Amendment Motion itself that the scope of discovery ***would not*** materially change were the Amendment Motion to be granted.  Rather, the Court can only have been thinking that granting the Amendment Motion might significantly change the scope of discovery from ***Zoosk's*** perspective.  As you will recall, the Joint Stipulation was entered into with the purpose not only of extending the time Plaintiffs had to prepare their motion for class certification, but also of "lengthen[ing]" the amount of time available to Zoosk to prepare its opposition to class certification "in light of Plaintiffs' stated intention of supporting their class certification motion with expert advice."  Joint Stipulation (ECF 100) at 3.  Thus, a stated purpose of the Joint Stipulation was to lengthen Zoosk's time to oppose Plaintiffs' class certification motion so as to afford ***Zoosk*** time to take discovery of Plaintiffs' class-certification expert.  The Court's subsequent Order (ECF 101) declined the Joint Stipulation's request to expand Zoosk's time to oppose Plaintiffs' class certification motion (in fact, it reduced that time period by 7 days).  But, in declining at that juncture to grant Zoosk additional time to oppose Plaintiffs' class certification motion, the Court left it open to Zoosk to seek an adjustment of the class certification briefing schedule affording it extra time to oppose that motion "[i]f the scope of discovery changes significantly following an order on the motion to amend."

The bottom line is that in an effort to convince the Court to grant the Amendment Motion, Plaintiffs represented that their "proposed amendment will also not materially change the scope of discovery in this matter."  Amendment Motion at 7:11-12.  The New Discovery is incompatible with Plaintiffs' prior representation, and nothing that either Zoosk or the Court said subsequent to Plaintiffs' having made that representation can reasonably be read to have relieved Plaintiffs from living up to that representation. Zoosk therefore reiterates its demand that Plaintiffs immediately withdraw the New Discovery.

Very truly yours,

*/s/ Matthew D. LaBrie*

Matthew D. LaBrie