**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (SBN 174156)
Kiley L. Grombacher, Esq. (SBN 245960)
Lirit A. King, Esq.  (SBN 252521)
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
Facsimile:   (805) 270-7589
E-Mail: mbradley@bradleygrombacher.com
          kgrombacher@bradleygrombacher.com
          lking@bradleygrombacher.com

Attorneys for Plaintiff

(Additional counsel listed on following page)

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| JUAN FLORES-MENDEZ, an individual and AMBER COLLINS, an individual, and on behalf of classes of similarly situated individuals,<br><br>                    Plaintiffs,<br><br>v.<br><br>ZOOSK, INC., a Delaware corporation,<br><br>                    Defendant. | CASE NO: 3:20-cv-04929-WHA<br>**[Assigned to Hon. William H. Alsup, CR 12]**<br><br><br>**STIPULATED PROTOCOL FOR THE PRODUCTION OF DOCUMENTS AND ESI**<br><br><br><br><br>Second Amended Complaint filed July 28, 2021 |

1

1

2

**BRADLEY/GROMBACHER, LLP**
3  Robert N. Fisher (SBN 302919)
   477 Madison Avenue, Suite 6000
4  New York, NY 10022
5  Telephone: (805) 270-7100
   E-Mail: rfisher@bradleygrombacher.com
6

7

**CROSNER LEGAL P.C.**
8  Zachary M. Crosner (SBN 272295)
   Michael R. Crosner (SBN 41299)
9  433 N. Camden Dr., Suite 400
   Beverly Hills, CA 90210
10 Telephone: (310) 496-4818
   Facsimile:  (310) 510-6429
11 Email: zach@crosnerlegal.com
12         mike@crosnerlegal.com

13

**FOR THE PEOPLE**
14 *(Admitted Pro hac Vice)*
15 John A. Yanchunis (FL Bar No. 234681)
   Ryan McGee (FL Bar No. 64957)
16 201 N Franklin St., 7th Floor
   Tampa, FL 33602
17 Telephone: (813) 223-5505
18 Email:  jyanchunis@forthepeople.com
          rmcgee@forthepeople.com
19

20

21

22

23

24

25

26

27

28

STIPULATED PROTOCOL FOR THE PRODUCTION OF DOCUMENTS AND ESI
CASE NO: 3:20-cv-04929-WHA

1

**DOCUMENTS AND ESI**

2    This Stipulated Protocol for the Production of Documents and ESI (the "ESI Protocol")

3 shall govern any production of documents and electronically stored information ("ESI") by the

4 parties in the above-captioned Action (the "Parties").

5    The ESI Protocol shall govern productions made by any third party who is subpoenaed in

6 the Actions unless otherwise agreed to by the issuing Party and the third party.  Accordingly, the

7 ESI Protocol shall be attached to any subpoena issued in the Actions.

8 **I.  PRESERVATION**

9    A.  The Parties represent that they have issued litigation hold notices to those custodians

10 with data, and persons or entities responsible for maintenance of non-custodial data, which possibly

11 contain discoverable information.

12    B.  Such litigation hold notices provide for all backup or archive media which may

13 contain discoverable ESI not otherwise available to be pulled from rotation and preserved.

14    C.  Such litigation hold notices further provide for all processes and procedures which

15 would result in the elimination, or transfer to a less accessible medium, of any unpreserved data

16 and associated metadata which would otherwise be required to be preserved or produced to be

17 suspended.

18 **II.  THE PARTIES WILL SEEK TO REACH AGREEMENT ON:**

19    A.  *Relevant Data Sources.* The Parties recognize that collection, search, and review

20 from all sources of ESI that could possibly hold any relevant information is unnecessary.  The

21 Parties will seek to reach agreement on sources of ESI (including custodial data) that hold relevant

22 and unique information to which the discovery of ESI will be limited. These negotiations shall

23 incorporate both fair cooperation and a good faith balancing with the proportionality standards set

24 forth in the Federal Rules of Civil Procedure.

25    B.  Within 21 days of entry of this Stipulated Protocol by the Court, each Party shall

26 identify and describe all custodial and non-custodial data sources and locations to be searched. This

27 disclosure shall include identification of databases and departmental/project/collaboration/shared

28

STIPULATED PROTOCOL FOR THE PRODUCTION OF DOCUMENTS AND ESI
CASE NO: 3:20-cv-04929-WHA

storage spaces/e-rooms that have discoverable information.

C.     Where a Party contends that ESI from a source that is not reasonably accessible because of undue burden or cost, details substantiating the contention should be noted.  ESI from a source that is not reasonably accessible may include, but is not limited to, those items or types of ESI originally created or used by electronic media no longer in use, back-up tapes or media, or ESI for which retrieval otherwise involves burden and cost. If a Party objects that certain requested ESI is from a source that is not reasonably accessible, the production of which would involve undue burden and cost, the producing Party shall provide specific facts related to the costs and burdens of preservation, retrieval and/or production of such ESI.  Absent a Court Order or unless the Parties agree to limited discovery and/or cost shifting or sharing, the producing Party shall not be obligated to retrieve and produce the ESI from the purportedly inaccessible data source.

D.     Electronic searches of documents identified as ESI of limited accessibility shall not be conducted unless agreed to.  Requests for any such search must in any event be narrowly focused with a good faith basis in fact and need supporting the request.

E.     Parent-child relationships (the association between an attachment and its parent document) shall be preserved.  If an attachment "hits" a search term, if search terms are used, the attachment and its parent document shall be reviewed (or vice versa), and both shall be produced if one is determined to be relevant, unless either the email or attachment, or portion thereof, is privileged, in which case, both may be withheld, one may be withheld, or portion(s) may be redacted, as appropriate and as logged.  Nothing in this provision, however, will require review of a document hitting on a search term if technology is used to prioritize search hits, and responsiveness rates reasonably demonstrate that continued review of all search hits is not proportional with the needs of the case.

F.     In scanning paper documents for production, the Parties will use their best efforts in the unitization of the document and ensuring attachments are maintained as they existed in the original when creating the image file. For documents that contain fixed notes, the pages will be scanned both with and without the notes and those pages will be treated as part of the same

4

document. The relationship of documents in a document collection (e.g., cover letter and enclosures, email and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) shall be maintained through the scanning or conversion process.  If more than one level of parent-child relationship exists, documents will be kept in order, but all will be treated as children of the initial parent document. Distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (i.e., paper documents should be logically unitized). Parent-child relationships (the association between an attachment and its parent document) shall be preserved by a producing Party in the course of production. Documents will be unitized at the lowest possible level and attachment information preserved. For example, if a physical folder contains two documents, the folder and each document will constitute a separate document, but the relationship among the documents in the folder should be reflected in proper coding of the fields in the data load file.

### III.    FORM OF ESI PRODUCTION

A.    Documents shall be produced to the requesting party via FTP or on a DVD, or External Hard Drive.  Documents should not be zipped, compressed, encrypted, or otherwise restricted or proprietarily protected for specific use.  Production archives may be compressed and/or encrypted for delivery purposes, but the producing Party shall provide passwords for any compressed archives under separate cover, along with a description of any software needed to decrypt the archive.

B.    Documents shall be produced as they are ordinarily maintained, for example, organized by custodian or source.  The Parties agree that production of custodial files shall constitute production of documents as maintained in the ordinary course of business.  As such, the Parties need not identify specific document requests to which each produced document corresponds.

C.    Documents shall be produced as single-page TIFF image files and named according to the Bates number of the corresponding TIFF image.  TIFF images should have a resolution of no less than 300 DPI.  These TIFF images should not contain redactions other than those for

privileged or personally identifiable information.  TIFF images should be provided in a separate folder and the number of TIFF files per folder should be limited to 1,000 files.  Each *.tiff file should be assigned a unique name matching the Bates number of the corresponding image.  The Bates number should be consistent across the production, contain no special characters, and be numerically sequential within a given document.  Attachments to documents should be assigned Bates numbers that directly follow in sequential order the Bates numbers on the documents to which they were attached.

D.      Documents shall be made searchable via OCR (for documents originating as paper documents) and extracted text (for documents originating as ESI), along with load files.  In the event a document contains text which is to be redacted, OCR text files should be provided for any un-redacted portions of the documents.  Document-level OCR text files should be provided for any unredacted portions of redacted documents and for all hard copy scanned documents.  The extracted full text and/or OCR text for all deliverables should be in separate document-level TXT files.  These TXT files may either be provided in a separate folder or included in the same folder as their corresponding images. The number of TXT files per folder should be limited to 1,000 files. A UNC file path must be included in the ESI load file.

E.      The following metadata and non-metadata fields shall be produced for each document (if available):

- BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN, ADDITIONAL CUSTODIAN, AUTHOR, CREATE DATE, DATE LAST MODIFIED, LAST MODIFIED BY, TIMESVD, DOC TITLE, NATIVE LINK, FILE NAME, PAGECOUNT, FOLDERID OR ORIGFOLDERPATH OR FILEPATH, FILEEXTEN, FILESIZE, MD5 OR SHA-1 HASH VALUE, TEXTPATH, PRODVOL

- For email, the following fields should also be produced:  FROM, TO, CC, BCC, DATE SENT, DATE RECEIVED, TIME SENT, TIME RECEIVED, EMAIL SUBJECT, FAMILYID OR ATTACHID, RCRDTYPE, EMAIL THREAD

- Paper documents may be produced identified only by CUSTODIAN, BEGBATES, and ENDBATES

By agreeing to produce the fields listed above, neither Party is waiving any right to challenge the accuracy, authenticity, and reliability of any of the fields on the above list.  Notwithstanding this

6

fact, the Parties will use reasonable, good faith efforts to ensure that metadata fields are not altered during forensic collection, data processing, and review or production operations.  The Parties also understand that some documents may not contain any information for the metadata fields identified above in the ordinary course of business.

F.      *Date Format.*  Dates and times must be concatenated into a single field, with a format of MM/dd/YYYY HH:MM:ss (zzz).  If a time is not available, such as the estimate date for a codeddocument, then 12:00 am, or 00:00 should be assigned. i.e. 12/21/1999 00:00.  Date delimiters, such as slashes and colons, must be consistent across all fields. In the format of MM/dd/YYYY, there are no spaces and only forward slashes.  Date formats must be consistent within any one field.  Date formats must be consistent across all fields. i.e. a record with a sent date should have the same format in the last modified date field.

G.      When the TIFF image file is produced, the producing Party must preserve the integrity of the electronic document's contents to the extent possible, i.e., the original formatting of the document, its metadata and, where applicable, its revision history.  After initial production in image file format is complete, a Party must demonstrate particularized need for production of additional specific, identified metadata not listed above and/or ESI in native format.

H.      All spreadsheet-type documents, documents with audio or visual elements including Microsoft PowerPoint files, Microsoft Excel, and Microsoft Access files shall be produced in native format with the source path provided.  A UNC file path must be included in the ESI load file.  Additionally, a bates-stamped *.tiff placeholder matching the bates number of the native file, must be included in the production and reflected in the image load file.  The processed native shall be linked to its associated placeholder TIFF image by the metadata field "Native Link."  To the extent the Parties prefer native file redaction of spreadsheet files, the Parties will meet and confer to discuss the form of production. The Parties will discuss native format production for other file types that cannot be rendered effectively to TIFF images, if such an issue arises.

I.      Word processing files, including without limitation Microsoft Word files, that contain comments and track changes will be produced as *.tiff images showing the track changes

7

and comments.

J.      If the producing Party is redacting information from a page, the producing Party shall electronically "brand" the word "Redacted" onto the page at or reasonably near to the location of the redaction(s).  If the producing Party redacts a document, it may withhold from the document's load file only the metadata directly associated with the redaction and the text/image associated with the redaction.  If a producing Party redacts a document on the basis of privilege, then the producing Party must comply with the privilege log requirements.

K.      Database Records and Structured Data.  To the extent that any Party requests information that is stored in a database or database management system, including but not limited to records of Plaintiffs' contact information, work telephone records, and/or log-in/log-out records, the producing Party will identify the database and platform to the receiving Party, and will meet and confer in good faith in an attempt to reach agreement on the data to be produced and the form of the production.  The producing Party will provide information about the database to facilitate that discussion, including the fields, data types, rules contained within the database, the database's physical schema, the database's logical schema, the reporting capabilities of the database, any available system catalog containing metadata associated with the database, and query language that may be used to search the database.

Information produced from the database as a result of a report or query will be produced in a reasonably usable and exportable electronic file (for example, *.csv and/or *.xls formats) for review by the requesting Party.  To the extent this production format is not feasible or causes the producing Party undue burden, the Parties agree to meet and confer to discuss the different form of production.

L.      *Password Protected Files.*  The producing Party shall produce passwords for any password-protected files to the extent the passwords are reasonably available.

M.      *Embedded Documents.*  If reasonably possible, embedded ESI documents (*e.g.* a spreadsheet embedded within a word processing document) will be extracted, produced as independent document records, and related back to the respective top level parent document (*e.g.*,

standalone file, email message, etc.) via the BegAttach and EndAttach fields.  Related documents will be produced within a continuous Bates range.  Nothing in this paragraph will require a Party to extract or produce information from an embedded or attached external internet link.

N.     *Data Load Files.*  Documents should be provided with an Opticon Cross-Reference File and Concordance data load file using standard Concordance delimiters:

- Field Separator: ASCII character 20 ("¶");
- Quote: ASCII character 254 ("þ"); and
- New Line: ASCII character 174 ("®").

Concordance-compatible image and data load files should be provided in a "Data" folder.  Parties have the option to exchange sample load files.  If this exchange occurs, the receiving Party will have 14 days to respond with load file change requests.  Nothing in this Order will limit the Parties from discussing load file changes throughout the course of the litigation.

O.     *Deduplication.*  Documents may be globally deduplicated at the family-group level provided that the producing Party identifies the additional custodians in an Additional Custodian field as well as all file paths in an All File Paths Field.  A Party may also de-duplicate "near-duplicate" email threads as follows: In an email thread, only the final-in-time document need be produced, assuming that all previous emails in the thread are contained within the final message and provided that the software used to identify these "near-duplicate" threads is able to identify any substantive differences to the thread such as changes in recipients (*e.g.*, side threads, subject line changes), selective deletion of previous thread content by sender, etc.  Where a prior email contains an attachment, that email and attachment shall not be removed as a "near-duplicate."

P.     *Protective Order.*  All productions are subject to the Protective Order entered by the Court in this Action.

Q.     *Lost ESI or Document.*  If a producing Party learns that any ESI or Document that should have been preserved in the anticipation or conduct of this litigation has been lost within the meaning of Federal Rule of Civil Procedure 37(e), the producing Party shall comply with its obligations under the Federal Rules of Civil Procedure to disclose to the other Parties where and

9

when the ESI or Document in question was last retrievable or last existed in its original format; the circumstances surrounding the loss of the ESI or Document in question; and whether the ESI or Document in question can be restored or replaced through additional discovery as contemplated by Rule 37(e) or is otherwise available from other sources (including but not limited to whether any backup or copy exists of the ESI or Document in question).  Nothing in this paragraph is intended to limit the obligations of the Parties under the Federal Rules of Civil Procedure.

R.      Nothing in this protocol or its implementation shall be interpreted to relieve a Party's obligation to produce all known responsive documents within its possession, custody, and control consistent with the scope of the Federal Rules of Civil Procedure.

## IV.    SEARCH AND REVIEW

A.      The Parties agree that in any given case, the search and review process and technology employed is more effective and efficient when fit to the actual scope of discovery and the volume of ESI subject to review. It is not the intent of the Parties to herein set forth every possible hypothetical search and review process and technology, but rather to agree that the process and technology for search and review in this action shall be appropriate to the scope of discovery and volume of ESI subject to review in this action.

B.      The Parties may use keyword searching to identify ESI that is reasonably likely to have discoverable information regarding the subject matter of these Actions. If any Party chooses to use keyword searching to identify potentially relevant ESI, that Party shall offer to meet and confer with regard to the search terms to be used and the sources of ESI to be searched.

C.      No Party is required to use search terms; further, use of search terms does not foreclose a Party's right to use other technologies, where appropriate. It is the producing Party's right to determine the best method of search and review and how it will comply with Rule 26 and with the terms of this protocol; provided however that nothing contained within this sentence shall be deemed to abridge any Party's rights under the Federal Rules of Civil Procedure or this protocol or to seek judicial determination of a Party's obligations under Rule 26 or this protocol.  The Parties shall meet and confer in good faith to attempt to reach agreement on search methods used to identify

responsive documents and ESI.  The Parties will meet and confer regarding the methods used to search documents and ESI for potentially responsive documents or filter out documents and ESI that are not subject to discovery, and such meet and confers will include disclosures necessary for the requesting Party to understand and assess the reasonableness of the search or filtering methodology and the validation techniques and parameters, such as the nature of and processes of the search technology employed, the identity and number of custodians, and data sources and types to which it was and was not applied, date ranges that were used to filter documents, file types subject to or excluded from the methodology, search terms used (if any) upon entry of this ESI Protocol, statistical sampling or validation techniques the producing Party has used or intends to use to evaluate the sufficiency of the methodology, and whether different search methodologies were applied to different types or sources of data. The producing Party shall retain the sole right and responsibility to manage and control searches of its data files, including the right to use revised search-term methods or revised advanced-technology procedures where it is reasonable to do so in order to make the searches more accurate and cost-effective. The producing Party, however, shall disclose any search-term methods including the search terms used to identify potentially responsive documents and the Parties shall confer in good faith on the search terms used. Nothing in this section shall limit a Party's right to reasonably seek agreement from the other Party or a Court ruling to modify previously agreed-upon search terms or other search parameters at any time prior to the completion of discovery.  Further, nothing in this section shall limit a producing Party's right to use technology to prioritize search term hits or utilize other technology to assist review provided that the producing Party shall disclose the technology or methodology that was used and all relevant validation methods and thresholds. The Parties will not seek Court intervention without first attempting to resolve any disagreements in good faith, based upon all reasonably available information.

D.      Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere

STIPULATED PROTOCOL FOR THE PRODUCTION OF DOCUMENTS AND ESI
CASE NO: 3:20-cv-04929-WHA

production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

**V.     PRIVILEGE LOG**

A.     Within thirty (30) days of each production of documents or ESI, the producing Party shall provide a privilege log or logs in PDF and Excel format concerning any information that has been redacted or withheld in whole or in part from that production.  The Parties are not required to log privileged or work product communications created on or after July 22, 2020 and exchanged solely between the Parties and their outside counsel relating to the legal defense of the data breach. The Parties are also not required to log privileged or work product communications created on or after July 22, 2020 and exchanged solely between outside counsel and experts relating to the legal defense of the data breach, provided that the experts were hired by outside counsel after July 22, 2020 for the sole purpose of legal defense of this lawsuit. When ESI review and production has begun, the Parties will meet and confer regarding whether they will be required to log attorney-client privileged or work product protected documents to, from, or between outside or in-house counsel, dated between May 11, 2020 and July 22, 2020.  Such documents are presumptively required to be logged under the Federal Rules of Civil Procedure.  To the extent the Parties agree that any such documents need not be included on a privilege log, the Parties reserve the right to request a log of particular types of such non-logged documents where good cause exists.

B.     The privilege log shall set forth the privilege or protection relied upon and specify separately for each document:

      a.  Bates-number range, or if no Bates-number range, a unique document identifier;

      b.  Family relationship, if applicable (i.e. identification of parent emails and all attachments)

      c.  A description of the document, including the factual basis sufficient to support the claim that the document is privileged and/or protected;

      d.  The names of the author(s);

      e.  The names of all addressees and recipients, including copyees and blind copyees;

1           f.   The document date;

2           g.   An indication of whether the document has been produced in redacted form or withheld in its entirety;

3

4           h.   The privilege designation (attorney-client; attorney work product; joint defense and/or common interest, etc.).

C.     Attachments to emails shall be logged as separate documents on the log, with family relationships identified.

D.     Attorneys or their staff must be identified on the log with an asterisk (or similar notation).

E.     Where multiple email messages are part of a single chain or "thread," a Party is only required to include on a privilege log the most inclusive message ("Last In Time Email") and need not log earlier, less inclusive email messages or "thread members" that are fully contained within the thread, provided that the log entry includes the names of the authors, addressees, and recipients (including copyees and blind copyees) for all thread members, that the description of the thread include the factual bases sufficient to support the claim of privilege for each thread member over which privilege is asserted, and that the log entry include the privilege designations applicable to any thread members.

F.     After the receipt of a privilege log, any Party may dispute a claim of privilege. Prior to seeking Court intervention, the Party disputing, questioning, or otherwise objecting to a claim of privilege shall provide in writing the identification of the documents or category of documents for which it questions the claim of privilege and the reasons for disputing, questioning, or otherwise objecting to the privilege designation. Within fourteen (14) days, the Party that designated the documents as privileged will provide a written response explaining the basis for its claim or privilege, or if applicable, de-designating documents as privileged and producing such documents in accordance with this ESI Protocol. Thereafter, if the Parties continue to disagree, they will then then meet and confer in good faith as to the claims of privilege. If agreement has not been reached after fourteen (14) days, the Parties shall submit the dispute to the Court.

**VI.     GOOD FAITH RESOLUTION OF TECHNICAL DEFECTS AND DISPUTES.**

A.      The Parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this ESI Protocol.  If a producing Party, notwithstanding their good faith efforts, cannot comply with any material aspect of this ESI Protocol or if compliance with such material aspect would be unreasonable, such Party shall inform the requesting Party in writing a reasonable time before the date of production as to why compliance with the ESI Protocol is impossible or unreasonable.

B.      The producing Party shall fix any problems associated with the production of data under this protocol promptly when detected.  The producing Party shall take reasonable steps to ensure that all data is produced without technical defects that could impair the use of such data.  If either Party becomes aware of any potential defect or delay with any of the procedures described herein, that Party shall promptly advise the other Parties as soon as possible so that the Parties can meet and confer in an attempt to address the problem.  To the extent replacement data is required, the producing Party shall promptly produce it.

C.      No Party may seek relief from the Court concerning compliance with the ESI Protocol unless it has conferred in good faith with the affected Parties.

D.      This ESI Protocol may be modified for good cause by a Stipulated Order of the Parties or by the Court for good cause shown.  If the Parties cannot resolve their disagreements regarding modifications, the Parties may submit their competing proposals and a summary of their dispute to the Court.

1  Dated: February 7, 2022                    **BRADLEY/GROMBACHER, LLP**

2

3                                             BY: _____ */s/ Kiley L. Grombacher* _____
                                                        KILEY L. GROMBACHER
4                                                       Attorneys for Plaintiffs
                                             Juan Flores-Mendez and Amber Collins
5

6
   Dated: February 7, 2022                    **ORRICK, HERRINGTON & SUTCLIFFE LLP**
7

8                                             By: _____ */s/ Douglas H. Meal* _____
9                                                       DOUGLAS H. MEAL
                                                        Attorneys for Defendant
10                                                          Zoosk, Inc.

11 **IT IS ORDERED** that the forgoing Agreement is approved.

12   Dated: February 8, 2022              _____
13                                              HON. WILLIAM ALSUP
                                             UNITED STATES DISTRICT JUDGE
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATED PROTOCOL FOR THE PRODUCTION OF DOCUMENTS AND ESI
CASE NO: 3:20-cv-04929-WHA