DOUGLAS H. MEAL (*admitted pro hac vice*)
dmeal@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
222 Berkeley Street
Suite 2000
Boston, MA  02116-3740
Telephone:    +1 617 880 1800
Facsimile:    +1 617 880 1801

REBECCA HARLOW (STATE BAR NO. 281931)
rharlow@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

Attorneys for Defendant Zoosk, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN FLORES-MENDEZ, an individual and AMBER COLLINS, an individual, and on behalf of classes of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>ZOOSK, INC., a Delaware corporation,<br><br>Defendant. | Case No. 3:20-cv-4929-WHA<br><br>**ZOOSK'S OPPOSITION TO PLAINTIFFS' MOTION TO SUBSTITUTE CLASS REPRESENTATIVE**<br><br>DATE:   March 24, 2022<br>TIME:   8:00 a.m.<br>CTRM.:  12, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102<br><br>JUDGE:  The Honorable William Alsup |

Plaintiffs' Motion to Substitute Class Representative ("Motion") is substantively flawed, is egregiously untimely, and, if granted, would cause severe undue burden on Zoosk. Denial of the Motion, on the other hand, would cause no prejudice to the current plaintiffs, the proposed new plaintiff, or the members of the putative class. The Motion should, therefore, be denied.

As matters currently stand in this case, no class can be certified; indeed, no motion for class certification can even be brought. That is because, thanks to the discovery efforts Zoosk has tirelessly undertaken over many months, Plaintiffs now concede that one of them (Collins) must be dismissed from the case entirely due to her failure dating back to August 2021 to comply with her discovery obligations under the Federal Rules and this Court's orders, and the other of them (Flores-Mendez) is an inadequate class representative. In other words, this nearly two-year-old lawsuit is finally about to come to an end, for all practical purposes.

By the Motion, Plaintiffs seek to reverse the above-described imminent and inevitable resolution of this action by effectively asking for a "do-over" in which the class certification process would be reset and restarted from square one. To be clear: this is not the run-of-the-mill situation where an otherwise adequate plaintiff seeks to be replaced because she is unable or unwilling to continue an otherwise viable class action litigation at a point where the addition of a new named plaintiff will have no meaningful impact on the progress of the case or the position of the defendant. Rather, the Court is faced with a situation where the named Plaintiffs and their attorneys have—as a result of their own carelessness and lack of diligence—only now just come to realize after twenty months of litigation and four complaints that *both* named Plaintiffs are inadequate class representatives. As a result, Plaintiffs and their counsel have only now come to realize that they made a huge tactical mistake more than seven months ago when they decided to let the Court's July 28, 2021 deadline to add parties to the litigation come and go without seeking to add any additional plaintiffs to the case. The Motion in essence asks the Court to forgive Plaintiffs for that tactical blunder, by allowing Plaintiffs to belatedly add to the case a new named plaintiff, Ms. Greenamyer.

The Court should refuse to do so. Plaintiffs tell this Court the Motion is timely because their counsel only just discovered Plaintiffs' inadequacy as class representatives. This is false. The truth is that Plaintiff Collins's "deficiencies" as a named plaintiff emerged in August 2021, more

than six months ago, when she broke off all contact with Plaintiffs' counsel and stopped complying with her discovery obligations, and Plaintiff Flores-Mendez's "deficiencies" as a class representative should have become known to Plaintiffs' counsel before this lawsuit was ever even filed, by their simply asking Plaintiff Flores-Mendez the very same questions that Zoosk later asked him in discovery. Moreover, it is legally irrelevant whether Plaintiffs only recently learned of Plaintiffs' inadequacy and could not reasonably have done so earlier. Rather, the legal question posed by the Motion in regard to its timeliness is whether Plaintiffs could, or could not, reasonably have identified and added Ms. Greenamyer prior to expiration of the Court's deadline for doing so. Tellingly, Plaintiffs offer no evidence whatever on this crucial legal issue, and the inescapable conclusion to be drawn from their failure to offer such evidence is that Plaintiffs' failure to timely add Ms. Greenamyer occurred not because Plaintiffs were *unable* to do so, but rather because they made a tactical decision *not* to do so.

In addition to being egregiously untimely, the Motion, if granted, would cause substantial, and unwarranted, prejudice to Zoosk. First, granting the Motion will force Zoosk to incur the burden and expense of opposing a class certification motion that, thanks to the huge discovery effort Zoosk directed at the Plaintiffs over the past eight months, otherwise could not and would not be brought. Second, granting the Motion will force Zoosk, having already incurred the very substantial burden and expense of eight months of discovery efforts directed at Plaintiffs, to incur the burden and expense of yet another round of named plaintiff discovery, this time directed at Ms. Greenamyer – which burden and expense Zoosk would not incur were the Motion denied. Third, because Plaintiffs did not file the Motion until the eve of class certification briefing and the close of fact discovery (both of which are scheduled to be completed in April), granting the Motion will inevitably blow up the current schedule for those events, and blowing up the schedule for those events will inevitably necessitate blowing up the entire case schedule – forcing Zoosk to incur months more time and otherwise avoidable litigation expense in order to finally bring this already nearly two-year-old case to conclusion.

Finally, denying the Motion would not prejudice anybody. Plaintiff Flores-Mendez could continue to pursue his claims against Zoosk on an individual basis in this action. And, since no

class can or will be certified in this action, disposition of Plaintiff Flores-Mendez's individual claims this action cannot and will not affect whatever claims Plaintiff Collins, Ms. Greenamyer, and other members of the putative class may have based on the data breach that Zoosk suffered (the "Security Event") and will leave intact whatever rights they currently have to pursue those claims either individually or as part of another class action.

Because the Motion is egregiously untimely, would substantially prejudice Zoosk were it to be granted, and would result in no prejudice to Plaintiffs, Ms. Greenamyer, or the other members of the putative class were it to be denied, the Court should reject Plaintiff's request to file a *fifth* complaint in this action, this time to add Ms. Greenamyer as a co-plaintiff.  First, Plaintiffs are unable to make the required showing under Rule 16(b) that good cause exists for relief from this Court's long-ago-passed Rule 16 deadline to add new parties to the case.  Second, even if Plaintiffs could show good cause exists for Rule 16 purposes, Plaintiffs cannot satisfy the showing required under Rule 15(a) or the showing required under Rule 24 for the addition of Ms. Greenamyer as a co-plaintiff, because the Motion is untimely under the meaning of those rules, would if granted cause significant undue prejudice to Zoosk, and would if denied not leave Plaintiff Collins, Plaintiff Flores-Mendez, the putative class, or Ms. Greenamyer prejudiced in any way.

## FACTUAL BACKGROUND

Plaintiffs initiated this case in July 2020. ECF 1.  On March 22, 2021, the Court stayed all deadlines in the case for 90 days due to difficulties scheduling foreign depositions during the ongoing COVID-19 pandemic. ECF 73.  As part of that March 22 scheduling order, the Court set July 28, 2021 as the deadline to "Add New Parties or to Amend Pleadings." ECF 72.

On June 21, 2021, Zoosk propounded to Plaintiffs 23 Requests for Production of Documents ("Requests") and 13 Interrogatories.  ECF 106.  Both Plaintiffs Collins and Flores-Mendez responded to the Requests and Interrogatories more than two months later on August 23, 2021. *Id*.  Plaintiffs objected to and refused to produce documents in response to two Requests, claimed no responsive, non-privileged documents existed in response to seven Requests, agreed to produce documents in response to the remaining 14 Requests.  *Id.*  Plaintiff Collins, however, did not actually produce a single document to Zoosk, and Plaintiff Flores-Mendez's production to-date

consists of a grand total of 544 pages (much of which are news articles and filings in this action). Declaration of Attorney LaBrie ("Decl.") ¶ 4. As for their Interrogatory responses, while Plaintiff Flores-Mendez did state that he sought restitution of two payments in this action, one for $74.95 which he admitted was paid for with his mother's debit card, and one for $56.21, *see* Decl., Exhibit A., for the most part Plaintiffs' Interrogatory answers were deficient and incomplete, with Plaintiffs stating that they intended to amend their responses to provide the requested information. *See* Decl., Exhibits A, B.

Over the next two months, no further documents were produced and no amended interrogatory answers were provided by either Plaintiff. Decl. ¶ 5. Counsel for Zoosk sent Plaintiffs' counsel five letters between November 2021 and January 2022 in an effort to cause Plaintiffs to comply with their discovery obligations. Decl. ¶ 6; *see* ECF 106.00-106.05. When those efforts got nowhere, Zoosk ultimately had to seek the Court's intervention to get Plaintiffs to live up to their discovery obligations. *See* ECF 106.

On January 11, 2022, after a hearing on Zoosk's motion to compel, the Court ordered Plaintiffs to provide complete Interrogatory responses by January 14, 2022, produce all non-privileged documents responses to the Requests by January 18, 2022, and sit for depositions which were noticed for the following week. *See* ECF 117. Plaintiffs failed to meet either the January 14 or the January 18 deadline, and Plaintiff Collins failed to appear for her deposition. *See* ECF 129; 129.1. Finally, in the evening of January 19, 2022, fewer than 24 hours before his deposition, Plaintiff Flores-Mendez produced a handful of additional documents, including records that showed he had never actually paid Zoosk the amounts he was suing to recover from Zoosk as "restitution." Decl. ¶ 7. Rather, the records showed that Plaintiff Flores-Mendez's *mother* (not Plaintiff Flores-Mendez) had paid to Zoosk the $74.95 amount that Plaintiff Flores-Mendez was claiming as restitutionary damages, and that neither Plaintiff Flores-Mendez nor his mother had ever paid to Zoosk the $56.21 amount that Plaintiff Flores-Mendez was claiming as restitutionary damages. *Id*. The following day, Plaintiff Flores-Mendez admitted these facts in his deposition

and further admitted the falsity of his prior sworn interrogatory answers on these points. *Id.*[1]

Plaintiff Collins, as the Court well knows, has failed to participate meaningfully in discovery at all since she provided her August 23, 2021 responses to the Zoosk's Requests and Interrogatories. Indeed, Plaintiff Collins has never produced a single document in this litigation and, as noted, failed to appear for her deposition. *See* ECF 129; 129.1. As a result, during a January 14, 2022 meet and confer, Plaintiffs' counsel admitted that, owing to Plaintiff Collins's discovery defaults, Plaintiff Collins not only was an inadequate class representative but would need to be dismissed from the action entirely. Decl. ¶ 9. Plaintiffs' counsel did not, however, suggest that Plaintiff Collins dismissal would create a need for a new plaintiff to be substituted in for Plaintiff Collins. *Id.* During the January 14 meet and confer, counsel for Zoosk agreed that Plaintiff Collins should be dismissed and asked that Plaintiffs' counsel draft a stipulation of dismissal, which Plaintiffs' counsel provided on January 19. *Id.* While counsel for both sides have been in agreement since January 14 that Plaintiff Collins should be entirely dismissed from this case, they could not agree whether the dismissal should be with or without prejudice, so that issue is now before the Court for decision pursuant to Zoosk's motion to dismiss Plaintiff Collins pursuant to Fed. R. Civ. P 41(b). *See* ECF 129; 139; 143.

It was not until a February 1, 2022 meet and confer that Plaintiffs' counsel raised the idea of bringing a new plaintiff into the action. Decl. ¶ 10. This was shortly after Plaintiff Flores-Mendez's above-described deposition testimony in which he admitted the falsity of his sworn interrogatory answers in which he had claimed to have paid Zoosk the monies that he is seeking to recover from Zoosk in this action as "restitution." On February 2, 2022, counsel for Zoosk asked Plaintiffs' counsel to set forth the grounds for proposing addition of a new plaintiff. Decl. ¶ 11. On February 3, 2022, Plaintiffs' counsel responded by asserting, *inter alia*, that the proposed "intervener's interests are not adequately represented by other parties." Decl. ¶ 12.

---

[1] Since January 19, although Plaintiff Flores-Mendez has continued to make small document productions (one page on February 8, 2020; four pages on February 10, 2020), his document production and his Interrogatory responses remain incomplete despite counsel for Zoosk having sent four additional letters concerning Plaintiffs' discovery deficiencies. Decl. ¶ 8.

Plaintiffs' instant Motion is set for hearing on March 24, 2022.  If the Motion is granted, Zoosk will need to start discovery from scratch with the new plaintiff, Ms. Greenamyer – a process that began over eight months ago as to Plaintiff Collins and Plaintiff Flores-Mendez and still is not complete as to either of them.  Yet under the latest schedule set by the Court, Plaintiffs' motion for class certification is due on April 11, 2022, Zoosk's opposition is due April 25, 2022, and fact discovery ends on April 29, 2022.  Thus, even if the Court were to grant the Motion from the bench, Zoosk would be left with barely a month to propound document requests and interrogatories to Ms. Greenamyer, obtain and review the discovery sought by those requests, and prepare for and take her deposition.  What is worse, Zoosk would be faced with doing all that discovery work while at the same time preparing its opposition to Ms. Greenamyer's class certification motion.

## ARGUMENT

### I.  Plaintiffs Have Not Shown "Good Cause" Exists for Relief from the Court's Case Management Order.

As Plaintiffs concede, motions under Rule 21 are evaluated under the framework of Rule 15(a), except – as here – when filed after the deadlines established by the Court, in which case, such motions are evaluated first under Rule 16(b) to determine whether "good cause" exists for the court to grant relief from its case management order. Mot. at 7.  Because Plaintiffs filed the Motion after the Court's July 28, 2021 deadline to add new parties passed, pursuant to Rule 16(b) Plaintiffs must now show good cause exists for the Court to grant relief from its case management order.  *See Ahmadi v. Chertoff*, C 07-03455 WHA, 2008 WL 1886001, *3 (N.D. Cal. Apr. 25, 2008).  Plaintiffs have not – and cannot – make this showing, however, because their failure to meet the Court's deadline for adding Ms. Greenamyer resulted from a tactical decision that they and their counsel consciously made more than seven months ago when they let that deadline to add new parties pass without taking any action to join her as a co-plaintiff.  On this ground alone, the Motion should be denied, and the Court does not need to conduct either a Rule 15(a) or Rule 24 analysis.

"A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.  The district court's decision to honor the terms of its binding scheduling order does not simply exalt procedural technicalities over the merits of a case.  Disregard

1  of the order would undermine the court's ability to control its docket, disrupt the agreed-upon
2  course of the litigation, and reward the indolent and the cavalier. Rule 16 was drafted to prevent
3  this situation[.]" *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992)
4  (quotation marks and citations omitted). "Rule 16 presumes that scheduling orders are firm and
5  places an affirmative burden on the party seeking leave to modify a scheduling order to show that
6  they were diligent in requesting modification of the scheduling order." *Fed. Deposit Ins. Corp. v.*
7  *Network Cap. Funding Corp.*, 2015 WL 13916255, at *10 (C.D. Cal. Aug. 28, 2015).

8  Thus, when a plaintiff seeks to file a motion to amend after the deadline established by the
9  Court for amendment, the motion must be denied unless the plaintiff demonstrates "good cause"
10 exists to warrant relief form the case management order. *Johnson v. Mammoth Recreations, Inc.*,
11 975 F.2d 604, 607-608 (9th Cir. 1992). "Rule 16(b)'s 'good cause' standard primarily considers
12 the diligence of the party seeking the amendment"; "the focus of the inquiry is upon the moving
13 party's reasons for seeking modification. If that party was not diligent, the inquiry should end." *Id.*
14 at 609. "Moreover, carelessness is not compatible with a finding of diligence and offers no reason
15 for a grant of relief." *Id.* "To show the requisite diligence, the party seeking amendment must
16 establish both that its noncompliance with a Rule 16 deadline 'occurred... because of the
17 development of matters which could not have been reasonably foreseen or anticipated' and that it
18 was 'diligent in seeking amendment of the Rule 16 order, once it became apparent that [it] could
19 not comply.'" *In re Rocket Fuel Inc. Sec. Litig.*, No. 14-CV-03998-PJH, 2017 WL 344983, at *3
20 (N.D. Cal. Jan. 24, 2017) ((quoting *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal.
21 1999)).

22 Plaintiffs cannot make this showing. Plaintiffs have put forth no reason whatsoever
23 explaining why they could not have moved to add Ms. Greenamyer as a co-plaintiff prior to the
24 Court's July 28, 2021 deadline to add new parties. There is, as a result, nothing in the record before
25 the Court to sustain a finding that the Plaintiffs were diligent in the period leading up to the deadline
26 in seeking to identify persons who might be named as co-plaintiffs, but notwithstanding those
27 diligent efforts they did not succeed in identifying Ms. Greenamyer as a potential co-plaintiff.
28 Indeed, for all the Court knows based on the evidence-free record on this point, as of the July 28,

1  2021 deadline to add new parties Plaintiffs knew all about Ms. Greenamyer and her claims against
2  Zoosk but made a conscious tactical choice not to seek to add her as a co-plaintiff prior to the
3  deadline's passing.  This alone defeats the Motion.

4      Having *de facto* conceded they made no effort at all prior to the July 28, 2021 deadline
5  (much less a diligent one) to identify and add Ms. Greenamyer as a co-plaintiff, Plaintiffs argue
6  they made diligent efforts to do so once they became aware of the "deficiencies" – namely, Plaintiff
7  Collins's abject failure to comply with her obligations under the Rules and this Court's orders and
8  Plaintiff Flores-Mendez's misstatements regarding payment for his Zoosk subscription – that both
9  sides agree require Plaintiff Collins's dismissal from this case and render Plaintiff Flores-Mendez
10 an inadequate class representative.  Mot. at 8.  But this argument is both legally misguided and
11 factually unsustainable.

12     As to Plaintiff Collins, it is legally irrelevant whether Plaintiffs reasonably could have
13 foreseen Plaintiff Collins's misconduct and consequent dismissal from the case by reason of such
14 misconduct.  Instead, what must be shown (but what has not even been argued) is that, at the time
15 the deadline to add new parties passed, Plaintiffs could not reasonably have identified Ms.
16 Greenamyer and her claims against Zoosk and thus had no ability to comply with the Court's
17 deadline for adding her as a co-plaintiff.  Otherwise, rather than being limited to protecting parties
18 who diligently sought to meet the Court's deadlines but, due to unforeseen circumstances, were
19 unable to do so, relief from Rule 16 orders would become available to parties (like Plaintiffs) who
20 make a tactical decision to ignore a Court-ordered deadline only to have that decision blow up in
21 their faces seven months later.

22     In any event, Plaintiff Collins's failure to comply with her obligations under the Rules and
23 this Court's orders began in August 2021, *see* ECF 129; 129.1, and her incarceration began in
24 November 2021, *see* ECF 139, so her awareness of her "deficiencies" goes back months.  By
25 August 2021 Plaintiffs' counsel knew of Plaintiff Collins's discovery defaults and in fact had lost
26 contact with her entirely, *see supra* p. 6, and by January 14, 2022 Plaintiffs had acknowledged that
27 those deficiencies would necessitate her dismissal from the case, *see id.*; Decl. ¶ 9.  In
28 acknowledging the necessity of dismissing Plaintiff Collins, however, Plaintiffs made no

suggestion that Plaintiff Collins's deficiencies and consequent dismissal would necessitate addition of a new plaintiff in her stead.  *See id*.  Rather, that suggestion was first made weeks later, on February 1, 2022, only after the deficiencies of Plaintiff *Flores-Mendez* had been revealed.  *See supra* p. 6; Decl. ¶ 10.

As a factual matter, then, it simply is not true that Plaintiff Collins's disqualifying "deficiencies" are what caused Plaintiffs to seek, or that those deficiencies provide Plaintiffs with any justification for seeking, to add Ms. Greenamyer as a plaintiff.  Nor is it true, given that Plaintiff Collins's disqualifying deficiencies were known to Plaintiffs and their counsel as early as August 2021, that once they became aware of those deficiencies Plaintiffs acted diligently to seek to add Ms. Greenamyer as a plaintiff.  Thus, even if relief from a deadline imposed under Rule 16 could be granted in favor of a party who diligently seeks relief from the deadline only after a post-deadline event causes the party to rethink the wisdom of her conscious tactical decision to ignore the deadline at the time it passed, that principle would not apply to the facts presented here as to Plaintiff Collins.

Nor would that principle, were it valid, apply on the facts presented here as to Plaintiff Flores-Mendez.  *His* "deficiencies" are described in the Motion as his being an inadequate class representative by reason of "credibility" issues arising from, and his being subject to a unique defense owing to, misstatements he made in the complaint and in his sworn interrogatory answers regarding the method by which his Zoosk subscription was purchased.  *See* Mot. at 4.  Far from being "unforeseeable," those deficiencies were fully known to Plaintiff Flores-Mendez at the time he filed this lawsuit.  Moreover, those deficiencies easily could have been discovered by his counsel during their pre-litigation diligence had they merely asked him the same questions that Zoosk later asked him in the course of discovery.  For example, the documents requested by Zoosk from Plaintiff Flores-Mendez in July 2021 (which were produced only after the Court ordered their production in January of this year) make perfectly clear that he never paid the monies to Zoosk he is currently suing to recover as "restitution" and, thus, that he is an inadequate class representative for the paid-subscription subclass.  *See supra* p. 5; Decl. ¶ 7.  Similarly, Plaintiff Flores-Mendez's August 2021 interrogatory answers admitted that a least some of the amounts he was seeking to recover from Zoosk he himself never paid.  *See supra* p. 5; Decl. Ex. A.  Had counsel for Plaintiffs

diligently reviewed the claims of Plaintiff Flores-Mendez prior to filing this lawsuit, they would have obtained the documents and information that Zoosk later obtained in discovery regarding payment for his Zoosk subscription and would have immediately determined Plaintiff Flores-Mendez's inadequacy. At the time the Court-ordered deadline for adding new parties passed on July 28, 2021, then, it was reasonably foreseeable that Plaintiff Flores-Mendez would be an inadequate class representative, even if Plaintiffs and their counsel had not yet discovered that inadequacy. Plaintiffs' counsel's failure to discover Plaintiff Flores-Mendez's inadequacy until defending their client in deposition is therefore a problem of their own making and a text-book example of carelessness and lack of diligence that should not be rewarded by means of relief from a Court-ordered deadline imposed under Rule 16. *See Feske v. MHC Thousand Trails Ltd. P'ship*, No. 11-4124 PSG, 2013 WL 1120816, at *6 (N.D. Cal. Mar. 18, 2013) ("[H]aving found that any of the problems with [the plaintiffs'] pleadings were of their own making," the court found that the Plaintiffs were not diligent in seeking amendment of their complaint to add class representatives to cure deficiencies defendants identified when plaintiffs "requested amendment more than four months after the deadline had passed and one year to the day after they initiated this case, despite the fact that throughout that period they possessed knowledge of the facts that undermine their complaint."); *In re Rocket Fuel Inc. Sec. Litig.*, No. 14-CV-03998-PJH, 2017 WL 344983, at *3 (N.D. Cal. Jan. 24, 2017) ("To show the requisite diligence, the party seeking amendment must establish both that [*inter* alia] it was diligent in seeking amendment of the Rule 16 order, once it became apparent that [it] could not comply.").

In short, Plaintiffs have put forth no suitable explanation and provided no good cause why they did not seek to add Ms. Greenamyer as a co-plaintiff in this action prior to the expiration of the Court's deadline for doing so. Nothing in the record shows that Plaintiffs made *any* pre-deadline effort – much less a diligent one – to identify Ms. Greenamyer and her claims against Zoosk. To the contrary, the record suggests what *really* happened here is that Plaintiffs made a conscious tactical decision to let the deadline pass without seeking to add Ms. Greenamyer as a co-plaintiff. That being the case, it is legally irrelevant whether Plaintiffs diligently sought relief from that deliberate tactical decision once (more than seven months after the deadline had passed) they

determined their decision was a mistake. And even if the law allowed a party to seek relief from a Rule 16 deadline where the party previously made a conscious tactical decision to let that deadline pass, only to determine later based on a subsequent event that its decision was in error, that rule would not assist Plaintiffs in seeking such relief here. First, as to Plaintiff Collins, the record shows that Plaintiffs' effort to add Ms. Greenamyer as a co-plaintiff did not result from and cannot be justified based on their post-deadline discovery of Plaintiff Collins's "deficiencies" as a plaintiff and that, in any event, their effort to add Ms. Greenamyer was not pursued by them diligently once they made that discovery. Second, as to Plaintiff Flores-Mendez, the record shows his "deficiencies" as a class representative were reasonably foreseeable long before the Court-ordered deadline for adding new parties, such that Plaintiffs' failure to discover those deficiencies only after that deadline had long since passed provides no excuse for their failure to comply with that deadline in regard to Ms. Greenamyer. For each and all of these reasons, then, the Motion should be denied under Rule 16(b), and there is no need for the Court to reach the issue of the propriety of the relief sought by the Motion under Rule 15 and/or Rule 24.

### II.     Plaintiffs Have Not Made the Showing Required by Rule 15(a).

Even if Plaintiffs had made the required showing under Rule 16(b) for relief from the Court's deadline for adding new parties, they have not made a showing sufficient to satisfy Rule 15(a) as to their proposed addition of Ms. Greenamyer, which Plaintiffs concede is the analysis that controls the Motion insofar as it is brought under Rule 21. Mot. at 7.

Central to a court's consideration of whether to allow a motion to amend is whether such motion is timely and whether such motion will cause prejudice to the opposing party. *See Bowler v. Home Depot USA Inc*, No. C-09-05523 JCS, 2010 WL 3619850, at *2 (N.D. Cal. Sept. 13, 2010) (Spero, Mag. J.) (Courts consider the following five factors to determine whether leave to amend is appropriate: "1) bad faith, 2) undue delay, 3) prejudice to the opposing party, 4) futility, and 5) any previous opportunities to amend."); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003) ("Prejudice to the opposing party is the crucial factor and carries the greatest weight."). Because the Motion is untimely and because granting the Motion will cause Zoosk severe and undue prejudice, the Court should deny Plaintiffs' request to amend their

1 complaint for a *fourth* time so as to make Ms. Greenamyer a co-plaintiff.

2   As set forth in Part I above, the Motion is untimely. Plaintiffs have provided zero explanation for why the Motion could not have been brought prior to the Court's deadline for adding new parties to this action. Instead, what the record reflects is that Plaintiffs made a conscious tactical decision *not* to add any additional parties prior to the Court's deadline for doing so, and now – more than seven months after that deadline passed – want to be permitted to change that decision because it turned out to be a bad choice on their part. Moreover, as discussed below, *see infra* pp. 14-15, Plaintiffs brought the Motion on the eve of the deadlines for Zoosk's class certification opposition and completion of fact discovery, such that granting the Motion will inevitably require substantial extensions of those deadlines and all the other current case deadlines. To call the Motion "untimely," then, is an understatement.

  More importantly, if granted, the Motion will cause Zoosk severe and undue prejudice. As matters now stand in this case, Plaintiff Collins concededly is going to be dismissed, and Plaintiff Flores-Mendes concededly is an inadequate class representative. *See supra* p. 6; Decl ¶¶ 9, 12. Thus, Plaintiffs will not be moving for class certification, and Zoosk accordingly does not face the burden and expense of opposing a class certification motion in this case. The Motion seeks to inflict that burden and expense on Zoosk, however, by adding Ms. Greenamyer as a co-plaintiff so that *she* can file the class-certification motion that otherwise would not be brought here. Granting the Motion would, therefore, force Zoosk (and the Court) to engage in substantial, time-consuming, and expensive motion practice that otherwise would not occur in this action. The prejudice to Zoosk were that to be allowed to happen is manifest.

  But that is not all. As Plaintiffs acknowledge, adding Ms. Greenamyer as a co-plaintiff will necessarily trigger a whole round of discovery – document requests, interrogatories, and deposition testimony – directed towards ascertaining whether she too is an inadequate class representative. Mot. at 8-9. The cost to Zoosk of propounding, actually obtaining, and thereafter reviewing and analyzing that discovery will be substantial. In the case of Plaintiffs Flores-Mendez and Collins, for example, Zoosk spent months and months writing letters to opposing counsel, attending meet-and-confer sessions, and successfully seeking orders from this Court in order to actually obtain

from Plaintiffs the discovery it had rightly requested – and even to this day, some eight months after Zoosk requested that discovery and some seven weeks after the Court ordered Plaintiffs to provide the discovery Zoosk had requested, Plaintiff Collins has provided none of that discovery and Plaintiff Flores-Mendez has provided only a part of that discovery. *See supra* pp. 5-6. Granting the Motion would, therefore, force Zoosk to engage in substantial, time-consuming, and expensive discovery that otherwise would not occur in this action. The prejudice to Zoosk were that to be allowed to happen is also manifest.

And there is more. Under the Court's recent order granting Plaintiffs yet another extension of their class certification deadline, *see* ECF 138, Plaintiffs' motion for class certification is due on April 11, 2022, Zoosk's opposition is due April 25, 2022, and fact discovery is scheduled to close on April 29, 2022. Plaintiffs' instant Motion is set for hearing on March 24, 2022. Even were the Court to grant the Motion from the bench, there is no possible way for Zoosk to obtain the necessary discovery from Ms. Greenamyer in the 18 days between March 24 and April 11, the date on which Zoosk would have to begin work on its opposition to the class certification motion Ms. Greenamyer proposes to file. Nor is there any realistic possibility of Zoosk's completing its discovery of Ms. Greenamyer prior to either the April 25 deadline for its class certification opposition or the April 29 deadline for completion of fact discovery.[2] Granting the Motion would, therefore, inevitably blow up the current class certification briefing schedule and the current fact discovery schedule, and blowing up the current fact discovery schedule would necessarily blow up all the other deadlines set forth in the Court's current scheduling order. Extending, yet again, the current schedule for bringing this case to a close will increase, yet again, the burden and expense that

---

[2] Plaintiffs promise that Ms. Greenamyer will produce all documents covered by Zoosk's prior document requests and fully answer all of Zoosk's prior interrogatories within 14 days of her being added to the case as a co-plaintiff, and that she will sit for a deposition prior to the current deadlines for Zoosk's class certification opposition and completion of fact discovery. Mot. at 8-9. (Notably, Ms. Greenamyer herself has submitted no affidavit to the Court making any such promise.) Coming as it does from Plaintiffs, and being made by them against the background of their failure over months and months to comply with Zoosk's discovery requests, even after being ordered to do so by the Court , *see supra* pp. 5-6; Decl. ¶¶ 4-8, this promise rings hollow. Moreover, this promise assumes that Zoosk would decide to propound to Ms. Greenamyer the exact same document requests and the exact same interrogatories that it propounded to Plaintiffs, which is not necessarily the case given all that Zoosk has learned in the meantime. And this promise ignores that Zoosk will need weeks – not days – to review and analyze Ms. Greenamyer's document production and interrogatory answers prior to taking her deposition. Finally, this promise ignores that, in order to meet the current deadlines, Zoosk would be expected to do this monumental amount of discovery work as to Ms. Greenamyer simultaneously with preparing its opposition to Ms. Greenamyer's class certification motion.

defending this litigation is imposing on Zoosk. For this further reason, then, the prejudice to Zoosk from granting the Motion is manifest.

Because Zoosk will suffer substantial and undue prejudice if the Motion is granted, and because the Motion is grossly untimely coming as it does just a few weeks before class certification is scheduled to be briefed and fact discovery is to be completed, seven months after the Court's deadline for adding new parties, and without offering any explanation for why Plaintiffs could not have sought to add Ms. Greenamyer as a co-plaintiff prior to that deadline, Plaintiffs cannot show and have not shown the Motion meets the requirements of Rule 15(a). For this further reason, the Motion must be denied.[3]

### III.  Insofar as the Motion Is Predicated on Rule 24, Plaintiffs Have Failed to Make the Showing Required by Rule 24.

Even if Plaintiffs had made the required showing under Rule 16(b) for relief from the Court's deadline for adding new parties, they have not made the showing required by Rule 24 for Ms. Greenamyer to be added as a co-plaintiff in this case by intervention either as of right or with this Court's permission.

To intervene by right, the applicant must (1) file a timely motion; (2) assert an interest relating to the property or transaction which is the subject of the action; (3) be so situated that without intervention the disposition of the action may impair or impede her ability to protect her

---

[3] The cases Plaintiffs cite in support of their Motion do not counsel a different outcome. *See Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 879, 881 (9th Cir. 1999) (rejecting the district court's bases for futility and bad faith when the district court incorrectly concluded limitations period for the claims of putative class members had elapsed and implicitly found the plaintiff's previous filings were in bad faith); *In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*, No. 19-MD-02918-MMC, 2021 WL 5848055, at *2 (N.D. Cal. Dec. 9, 2021) (granting leave to amend when the defendants' opposition to the motion for class certification was over seven months away and the defendants had yet to take the deposition of any named plaintiff); *In re: Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2016 WL 948874, at *3 (N.D. Cal. Mar. 14, 2016) (forgiving the plaintiffs' delay when judicial economy supported the plaintiffs' approach of waiting to "ascertain and consolidate all necessary amendments in a single request"); *Ellsworth v. U.S. Bank, N.A.*, No. C 12-02506 LB, 2013 WL 6730725, at *11-12 (N.D. Cal. Dec. 19, 2013) (finding no prejudice when the defendants had offered to allow amendment if the plaintiff withdrew his class certification motion, the plaintiff did not seek to withdraw as class representative, and the plaintiff sought to narrow his class definitions); *Robichaud v. Speedy PC Software*, No. C 12 04730 LB, 2013 WL 818503, at *8-9 (N.D. Cal. Mar. 5, 2013) (allowing substitution when the amended complaint was filed as a matter of right and the defendant did not argue it was prejudiced by the substitution); *Baba v. Hewlett Packard Co.*, No. C 09-5946 RS, 2012 WL 12921298, at *1 (N.D. Cal. May 22, 2012) (granting motion to substitute when the plaintiffs sought to substitute the proposed plaintiff in place of her husband because she was the "more appropriate representative" and the proposed plaintiff had already been deposed); *In re Motor Fuel Temperature Sales Pracs.* Litig., No. 07-MD-1840-KHV, 2009 WL 3122501, at *2 (D. Kan. Sept. 24, 2009) (describing approach taken by courts in the Tenth Circuit); *Breaker v. United States*, 977 F. Supp. 2d 921, 933–34 (D. Minn. 2013) (concerning relief under Rule 17(a)).

interest; and (4) have an interest inadequately represented by the other parties. *See Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). To intervene with the Court's permission, the applicant must (1) have claims that share a common question of law or fact with the main action; (2) file a timely motion; (3) demonstrate an independent basis for the court's jurisdiction over the applicant's claims. *See Lee v. Pep Boys-Manny Moe & Jack of Cal.*, No. 12-CV-05064-JSC, 2016 WL 324015 at *2 (N.D. Cal. Jan. 27, 2016). If the applicant demonstrates that she meets these three factors, the Court may then still deny the motion if "intervention will unduly delay the main action or will unfairly prejudice the existing parties." *Id*. Plaintiffs have failed to show their Motion meets either set of factors.

As discussed above in both Part I (*see* pp. 7-12) and Part II (*see* pp. 12-17), the Motion is untimely. On this ground alone, Plaintiffs cannot demonstrate Ms. Greenamyer should be allowed to intervene either as of right under Rule 24(a) or with the Court's permission under Rule 24(b).

Additionally, as to intervention as of right under Rule 24(a), Plaintiffs cannot demonstrate (as they must) that Ms. Greenamyer is "so situated that disposing of the action may as a practical matter impair or impede [her] ability to protect [her] interest" relative to the subject matter of this action. *See* Fed. R. Civ. P 24(a)(2). Because Plaintiff Collins's claims are going to be dismissed, and because Plaintiff Flores-Mendez has admitted he is an inadequate class representative, Mot. at 10 (Ms. "Greenamyer's interests are not being adequately represented."); Decl. ¶ 12 ("[I]ntervener's interests are not adequately represented by other parties[.]"), the Court will be unable to certify a class in this action. Because the Court will be unable to certify a class here, resolution of this action (*i.e.*, resolution of Plaintiff Flores-Mendez's individual claims) will have no effect on the ability of Ms. Greenamyer to protect her interest in the subject matter of this action.[4] Instead, regardless of the outcome of this action, Ms. Greenamyer will continue to have whatever rights she currently has to bring her claims against Zoosk either on an individual basis or as part of

---

[4] For that matter, even if a class could be certified here (which is not the case), Ms. Greenamyer would still not be able to satisfy Rule 24(a). The Court's certification of a class would mean that the Court has determined – as a matter of law – that one or both Plaintiffs are adequate representatives of the class, which purportedly includes Ms. Greenamyer. By its very terms, Rule 24(a) is inapplicable where (as would be the case were a class to be certified here) "existing parties adequately represent th[e] interest" of the proposed intervenor in the subject matter of the action. *See* Fed. R. Civ. P. 24(a)(2).

another putative class action. Because the outcome of this action, accordingly, will not and cannot have any effect on either Ms. Greenamyer's claims against Zoosk or her ability to pursue those claims, "disposing of the action" will not and cannot, "as a practical matter" or otherwise, "impair or impede [her] ability to protect [her] interest" in the subject matter of this action, as it must for Rule 24(a) to be brought into play.

Further, as to permissive intervention under Rule 24(b), Plaintiffs cannot demonstrate (as they must) that "intervention will [not] unduly delay the main action [and] will [not] unfairly prejudice the existing parties." *See Lee*, 2016 WL 324015 at *2. First, as shown above, *see supra* pp. 14-15, adding Ms. Greenamyer as a party will inevitably cause a huge delay in this action. Second, as also shown above *see supra* pp. 13-14, adding Ms. Greenamyer as a party will unfairly prejudice Zoosk by causing it to incur substantial costs in defending this case that it otherwise would not suffer. For this additional reason then, the Motion must be denied insofar as it seeks permissive intervention on behalf of Ms. Greenamyer.

**IV.     Neither Ms. Greenamyer, nor Plaintiffs, nor the Members of the Putative Class Will Be Prejudiced by Denial of the Motion.**

Neither Ms. Greenamyer nor Plaintiffs will suffer prejudice if the Court denies the Motion. As to Ms. Greenamyer, her interests will not be prejudiced if the Court denies the Motion, because, as discussed in Part III, the failure of a class to be certified in this action will have no impact on her claims against Zoosk or limit whatever right she may have to assert those claims against Zoosk either individually or as part of some other putative class action. Additionally, neither Plaintiff will be prejudiced if the Motion is denied. To the extent, following her upcoming dismissal from this action, Plaintiff Collins continues to have the right to make claims against Zoosk arising from the Security Event, denial of the Motion will not impede her ability to pursue those claims in a new proceeding, either individually or as part of another putative class action. As for Plaintiff Flores-Mendez, he will be able to pursue his individual claims here in this action even if the Motion is denied.

Finally, to the extent the interests of the non-party members of the putative class are relevant to the Court's analysis of the Motion, those individuals likewise will not suffer any prejudice from

denial of the Motion.  Because, as discussed above, a class will not and cannot be certified in this case, *see supra* pp. 13, 16, denial of the Motion will have no effect on whatever Security Event-related claims members of the putative class may have against Zoosk and will leave intact whatever right any member of the putative class currently has to pursue those claims either individually or as part of another putative class action.[5]

## **CONCLUSION**

The Court is not presented here with a situation in which an adequate class representative unforeseeably becomes unable or unwilling to proceed with litigation.  In such cases, substitution of class representatives may be routinely and easily granted where doing so would neither prejudice the defendant nor disrupt the case schedule.  Here, instead, Plaintiffs and their attorneys seek to restart the class certification process in this case with a new class representative because through their own fault they failed to realize until twenty months into this litigation that Plaintiffs are utterly inadequate class representatives and because through their own tactical choice they let the deadline for adding new plaintiffs come and go more than seven months ago without lifting a finger to bring a new plaintiff into the case. Granting Plaintiffs and their attorneys a do-over at this late juncture of the case, on the eve of class certification briefing and the close of fact discovery, would cause great cost, burden, and prejudice to Zoosk and would reward Plaintiffs' and their attorneys' carelessness and lack of diligence.  It should not be allowed.

For the foregoing reasons, Defendant, Zoosk, Inc., respectfully requests this Court deny Plaintiffs' Motion to Substitute Class Representative.

Dated: March 4, 2022                                             ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____*/s/ Douglas H. Meal*_____
DOUGLAS H. MEAL
Attorneys for Defendant Zoosk, Inc.

---

[5] For that matter, even if a class could be certified in this action (which is not the case), denial of the Motion would cause no prejudice to members of the putative class.  *See supra* p. 16 n.7.