

April 22, 2022

*Via E-filing and Courier*

The Honorable William H. Alsup
San Francisco Federal Courthouse, Courtroom 12 – 19th Floor
450 Golden Gate Ave., San Francisco, CA  94102

Orrick, Herrington & Sutcliffe LLP
222 Berkeley Street, Suite 2000
Boston, MA 02116-3740
+1 617 880 1800

orrick.com

Douglas H. Meal
E  dmeal@orrick.com
D  +1 617 880 1880
F  +1 617 880 1801

Re:   *Flores-Mendez et al., v. Zoosk, Inc., et al.*, Case No. 3:20-cv-04929-WHA
       Defendant Zoosk's Request for Discovery Relief (re: Interrogatory 5)

To the Honorable Judge Alsup:

Defendant Zoosk, Inc. ("Zoosk") requests the discovery relief set forth below pursuant to this Court's Supplemental Order to Order Setting Initial Case Management Conference in Civil Cases before Judge William Alsup (paragraph 34) ("Supplemental Order").[1]  Pursuant to the Supplemental Order, Zoosk respectfully requests this Court to compel Plaintiff Juan Flores-Mendez ("Plaintiff") to further supplement his answer to Interrogatory 5 in Zoosk's First Set of Interrogatories.

Although Plaintiff has provided a response to Interrogatory 5, his response is woefully incomplete, and Zoosk's efforts to obtain the information to which it is entitled via meet-and-confers have proven futile.  "The purpose of the liberal disclosure and discovery policies of the federal system is to allow parties to fully develop their case theories before trial begins."  *San Francisco BART Dist. v. Spencer*, 2007 WL 421336, at *4 (N.D. Cal. Feb. 5, 2007) (Illston, J.).  And, specifically, "[t]he purpose of contention interrogatories such as [Interrogatory 5 is] to narrow the issues that will be addressed at trial and to enable the propounding party to determine the proof required to rebut the respondent's position" as well as "to learn what the opposing party will argue at trial."  *Lexington Ins. Co. v. Cwlth Ins. Co*., 1999 WL 33292943, at *7-8 (N.D. Cal. Sept. 17, 1999) (Spero, Mag. J.).  As shown below, Plaintiff's failure to answer Interrogatory 5 "fully," as expressly required by Rule 33(b)(3), has denied Zoosk the ability to understand Plaintiff's allegations and arguments and to adequately prepare its defenses as to Plaintiff's assertion that Zoosk is legally liable for his claimed damages because Zoosk supposedly failed to have reasonable security measures in place to protect Plaintiff and his data against the third-party criminal attack that led to that data security event that Zoosk suffered (the "Security Event").

In all five of his complaints in this action, including the proposed Fourth Amended Complaint, Plaintiff accuses Zoosk of failing to maintain reasonable security for the personal data he provided to Zoosk that allegedly was stolen in the Security Event.  This accusation is the linchpin of both claims Plaintiff is asserting against Zoosk:  The negligence cause of action is premised on Zoosk's having purportedly violated a common-law duty to provide "reasonable

---

[1] Pursuant to the Supplemental Order, attached to this letter are (i) "Attachment 1", a 12-page attachment containing Zoosk's letters to Plaintiff regarding Interrogatory 13, (ii) "Exhibit 1", the original "discovery-dispute requests and responses," and (iii) "Exhibit 2", Plaintiff's March 19, 2022, compiled supplemental responses to Interrogatory 5.

security" for the allegedly stolen data; and the UCL claim asserts that Zoosk's alleged misrepresentation that it provided "reasonable security" for Plaintiff's allegedly stolen data resulted in him not receiving full value for the portion of his subscription payment that he and Zoosk supposedly mutually understood as being paid in exchange for the security measures necessary to provide such "reasonable security."  Given that the reasonableness of Zoosk's data security measures regarding Plaintiff's allegedly stolen data is thus a central issue to both of his causes of action, Zoosk is entitled to receive from him, and he is obliged to provide to Zoosk, discovery that gives Zoosk fair notice of exactly how he intends to prove that Zoosk's security measures for that data was "unreasonable."  Accordingly, Zoosk sought to obtain such information by propounding Interrogatory 5, which asks Plaintiff to "[s]tate the basis for [his] contention that 'Zoosk has failed to maintain reasonable security controls and systems appropriate for the nature of the [Personal Information] it maintains.' ([FAC], ¶ 13)."  Ex. 1 at 5:20-22.

Plaintiff has failed to provide such discovery by the answers he has to date given to Interrogatory 5.  Plaintiff initially responded to Interrogatory 5 on August 23, 2021.  *Id*.  In that response, Plaintiff merely re-stated the allegation that is the subject of Interrogatory 5 (asserting that "Zoosk did not adequately protect Plaintiff's personal information and was subject to a breach exposing [his] information") and provided no information to support that allegation.  *Id*. at 6:1-3.  Plaintiff defended his failure to respond fully to Interrogatory 5 by objecting, *inter alia*, that the evidence he claimed he would need to prove the allegation that is the subject of Interrogatory 5 could only be ascertained through discovery and by reserving his right to supplement his response to Interrogatory 5 "after having an adequate opportunity to conduct discovery."  *Id*. at 5:24-28.

Over the next seven months, Zoosk produced nearly 2,800 pages of documents in response to Plaintiff's 53 document requests; provided detailed answers to the 21 interrogatories served by Plaintiff; testified as to the 6 broadly-worded topics identified in Plaintiff's notice of Zoosk's deposition pursuant to Rule 30(b)(6); and enabled Plaintiff to take non-party depositions of four separate former employees of Zoosk and its corporate parent.  All of this discovery addressed, at least in part, the security systems and controls that Zoosk had in place as of, and in the period prior to, the Security Event.  Thus, by the end of February 2022, Plaintiff unquestionably had been given "an adequate opportunity to conduct discovery" as to the subject matter of Interrogatory 5, namely, the reasonableness of the security measures and controls Zoosk had in place at the time of and in the period prior to the Security Event to protect the data Plaintiff had provided to Zoosk.

Accordingly, by letter dated March 7, 2022, Zoosk asked Plaintiff to provide the previously promised supplement of his initial response to Interrogatory 5.  Attachment 1 at 1-4.  In that letter, Zoosk specified the particular categories of information Zoosk believed Plaintiff was required to provide in order to answer Interrogatory 5 fully as to both his negligence claim and his UCL claim.  *Id*.  At a March 11 meet-and-confer conference in regard to Zoosk's March 7 letter, Plaintiff's counsel agreed that on or before March 18, 2022, Plaintiff would supplement his response to Interrogatory 5 by providing each category of information specified in Zoosk's March 7 letter.  That agreement was confirmed by a letter from Zoosk to Plaintiff's counsel dated March 15, 2022.  *Id*. at 5-8.  Throughout the period from March 7 through March 18 of 2022, Plaintiff's counsel never once disputed that in order to answer Interrogatory 5 fully Plaintiff was required to provide the categories of information specified in Zoosk's March 7 letter.  Nor at any time after March 15 2022, did Plaintiff's counsel suggest Zoosk's March 15 letter inaccurately memorialized Plaintiff's agreement to provide each of those categories of information by March 18, 2022.

On March 19, 2022, Plaintiff served supplemental responses to Zoosk's interrogatories. *See* Ex. 2. As to Interrogatory 5, those supplemental responses list various alleged "information security failings" supposedly attributable to Zoosk but, as to each such alleged "failing," Plaintiff's supplemental response provides virtually none of the information that Plaintiff is required to provide, and had agreed to provide, in order to answer Interrogatory 5 fully. *Id*. at 6:10-7:21.

For example, as to each of Zoosk's alleged security "failings" Plaintiff's supplemental response provides no information as to—much less information sufficient to provide fair notice to Zoosk of—how Plaintiff proposes to prove (1) the security standard Plaintiff contends Zoosk was required to meet in regard to the data Plaintiff provided to Zoosk; (2) that the alleged security "failing" represented a failure by Zoosk to meet that standard; (3) that the alleged security "failing" rendered "unreasonable" Zoosk's security for the data Plaintiff provided to Zoosk; or (4) that the alleged security "failing" both in fact and proximately caused the data Plaintiff provided to Zoosk to be stolen by criminals in the course of the Security Event.

Instead, as to each alleged Zoosk security "failing" Plaintiff's supplemental response merely (1) identifies evidence Plaintiff evidently believes is sufficient to establish a particular circumstance regarding Zoosk's pre-Security Event information security practices; (2) conclusorily labels that circumstance as a security "failing" on Zoosk's part without explaining the basis for or the propriety of applying that particular label to that particular circumstance; and (3) conclusorily assumes, without providing any supporting evidence, that each such supposed "failing" was sufficient both to (a) render "unreasonable" Zoosk's security for the data Plaintiff provided to Zoosk and (b) cause the theft of that data in the course of the Security Event.

In order for Plaintiff, as required by the Federal Rules, to provide Zoosk with fair notice of the basis for his core allegation that Zoosk's security for the data Plaintiff provided to Zoosk was "unreasonable," he must provide Zoosk with all of the information he intends to rely upon to prove that allegation, including all the categories of information specified in Zoosk's letter of March 7, 2022. *See, e.g.*, *Lexington Ins. Co.*, 1999 WL 33292943, at *7-8 (Spero, Mag. J.). Plaintiff's counsel acknowledged as much by agreeing at the March 11 meet-and-confer to provide all the categories of information specified in Zoosk's March 7 letter, which agreement was memorialized in Zoosk's March 15 letter. Plaintiff has, however, egregiously failed to live up to his obligations under the Federal Rules and his counsel's prior agreement.

Plaintiff's failure to answer Interrogatory 5 fully has deprived Zoosk of discovery essential to its defense of this case. In particular, without knowing how Plaintiff plans to prove his core allegation as to the unreasonableness of Zoosk's data security practices, Zoosk has been unable to question the deposition witnesses to date as to the validity of that proposed proof (whatever it may be). The Court should therefore order Plaintiff to supplement his response to Interrogatory 5 by providing Zoosk with all the information upon which Plaintiff intends to rely to prove his allegation that Zoosk's security for the data Plaintiff provided to Zoosk was "unreasonable," including all the categories of information specified in Zoosk's letters of March 7 and 15.

Very truly yours,

 */s/ Douglas H. Meal*
Douglas H. Meal, *Counsel for Defendant Zoosk, Inc.*

## Enclosures

**Attachment 1**

- Mar. 7, 2022, Letter from Defendant's counsel Douglas H. Meal to Plaintiff's counsel

- Mar. 15, 2022, Letter from Defendant's counsel Matthew D. LaBrie to Plaintiff's counsel


**Exhibit 1**: Plaintiff Juan Flores-Mendez's [Original] Responses to Zoosk's Interrogatories, Set One (August 23, 2021)

**Exhibit 2:** Plaintiff Juan Flores-Mendez's Fourth Supplemental Responses to Zoosk's Interrogatories, Set One (March 18, 2022)