**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (SBN 174156)
Kiley L. Grombacher, Esq. (SBN 245960)
Lirit A. King, Esq.  (SBN 252521)
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
Facsimile:   (805) 270-7589
E-Mail: mbradley@bradleygrombacher.com
         kgrombacher@bradleygrombacher.com
         lking@bradleygrombacher.com

*Attorneys for Plaintiffs*

(Additional counsel listed below)

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| JUAN FLORES-MENDEZ, an individual and AMBER COLLINS, an individual, and TRACY GREENAMYER, an individual, on behalf of classes of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>ZOOSK, INC., a Delaware corporation,<br><br>Defendant. | **CASE NO: 3:20-cv-04929-WHA**<br><br>**PLAINTIFF'S NOTICE OF MOTION  TO STRIKE UNTIMELY DISCLOSED EVIDENCE AND WITNESSES**<br><br>Date:        August 11, 2022<br>Time:       8:00 a.m.<br>Court:      Courtroom 12, 19th Floor<br>              Hon. William Alsup |

**Additional Counsel for Plaintiffs and the Putative Class:**
**CROSNER LEGAL P.C.**
Zachary M. Crosner (SBN 272295)
Michael R. Crosner (SBN 41299)
433 N. Camden Dr., Suite 400
Beverly Hills, CA 90210
Telephone: (310) 496-4818
Facsimile: (310) 510-6429
Email: zach@crosnerlegal.com
        mike@crosnerlegal.com

**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
(*Admitted Pro hac Vice*)
John A. Yanchunis (FL Bar No. 234681)
Ryan McGee (FL Bar No. 64957)
201 N Franklin St., 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Email: jyanchunis@forthepeople.com
        rmcgee@forthepeople.com

**TO THIS HONORABLE COURT, AND EACH PARTY HEREIN AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

    **PLEASE TAKE NOTICE THAT** on August 11, 2022 at 8:00 a.m.or as soon thereafter as the matter may be heard in Courtroom 12 – 19th Floor of the above-entitled court located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs Juan Flores-Mendez and Tracy Greenamyer will and hereby do move this Court for an Order excluding the late disclosed witness Constantin Garcev and the never disclosed witness Juliana von Trotha, along with all evidence from their declarations; exclude the late-disclosed document ZOOSK00002773, along with all portions of Mr. Ellman's Expert Report that relies thereon; and exclude the disc images, along with all portions of Mr. El Halabi's expert report that relies thereon.  This Motion is made pursuant to Federal Rules of Civil Procedure 26 and 37 other applicable law, and is made on the late disclosure of such witnesses and evidence is inexcusable and a paradigmatic example of the hide-the-ball, litigation by ambush tactics that Rules 26 and 37 prohibit.

    This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum in support, the Declaration of Kiley L. Grombacher and its accompanying exhibits filed concurrently herewith, the complete files and records in this action, and such other oral and documentary evidence as may be presented to the Court at or before the hearing on this Motion.

Dated: June 24, 2022              Respectfully submitted,

                       **BRADLEY/GROMBACHER, LLP**
                       **CROSNER LEGAL P.C**
                       **MORGAN & MORGAN**
                       **COMPLEX LITIGATION GROUP**

            By:  /s/ Kiley L. Grombacher
                Marcus J. Bradley, Esq.
                Kiley L. Grombacher, Esq.
                Lirit A. King, Esq.
                Zachary M. Crosner
                Michael R. Crosner
                John A. Yanchunis
                Ryan McGee
                *Attorneys for Plaintif*

**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (SBN 174156)
Kiley L. Grombacher, Esq. (SBN 245960)
Lirit A. King, Esq.  (SBN 252521)
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
Facsimile:   (805) 270-7589
E-Mail: mbradley@bradleygrombacher.com
        kgrombacher@bradleygrombacher.com
        lking@bradleygrombacher.com

*Attorneys for Plaintiffs*

(Additional counsel listed below)

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| JUAN FLORES-MENDEZ, an individual and AMBER COLLINS, an individual, and TRACY GREENAMYER, an individual, on behalf of classes of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>ZOOSK, INC., a Delaware corporation,<br><br>Defendant. | **CASE NO: 3:20-cv-04929-WHA**<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE UNTIMELY DISCLOSED EVIDENCE AND WITNESSES**<br><br>Date:       August 11, 2022<br>Time:      8:00 a.m.<br>Court:     Courtroom 12, 19th Floor<br>              Hon. William Alsup |

1

**Additional Counsel for Plaintiffs and the Putative Class:**
**CROSNER LEGAL P.C.**
Zachary M. Crosner (SBN 272295)

2

Michael R. Crosner (SBN 41299)

3

433 N. Camden Dr., Suite 400
Beverly Hills, CA 90210

4

Telephone: (310) 496-4818
Facsimile: (310) 510-6429

5

Email: zach@crosnerlegal.com

6

           mike@crosnerlegal.com

7

**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**

8

(*Admitted Pro hac Vice*)

9

John A. Yanchunis (FL Bar No. 234681)
Ryan McGee (FL Bar No. 64957)

10

201 N Franklin St., 7th Floor
Tampa, FL 33602

11

Telephone: (813) 223-5505
Email: jyanchunis@forthepeople.com

12

           rmcgee@forthepeople.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 1

    A.   Zoosk's Evolving Disclosures and Corresponding Case Management Deadlines............ 2

    B.   Zoosk's Responds to Plaintiffs' Expert Reports and Motion for Class Certification with

        Untimely Witnesses and Evidence ................................................................. 4

       1.   Untimely Information Regarding Subscription Fee Refunds/Offsets........................ 4

       2.   Disc Images of the Breached Environment ................................................. 6

       3.   Untimely Disclosed Witnesses ............................................................... 8

III.   ARGUMENT ................................................................................................... 13

    A.   The Interplay Between Rules 26 and 37 ....................................................... 13

    B.   The Untimely Disclosed Witnesses, Evidence, and Information Should be Excluded .. 16

IV.   CONCLUSION ................................................................................................. 18

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bresler v. Wilmington Tr. Co.*,
   855 F.3d 178 (4th Cir. 2017). ................................................................. 15

*BWP Media USA Inc. v. Urbanity*, LLC,
   696 F. App'x 795 (9th Cir. 2017) ...................................................... 13, 14

*Feamster v. Gaco W., LLC*,
   18-CV-01327-HSG, 2021 WL 5494277 ............................................. 14, 17

*Hoffman v. Constr. Protective Servs., Inc.*,
   541 F.3d 1175  (9th Cir. 2008) ................................................................. 13

*Lanard Toys Ltd. v. Novelty, Inc.*,
   375 Fed. Appx. 705 (9th Cir. 2010)........................................................ 14

*Martel v. Hearst Communications, Inc.*,
   468 F. Supp. 3d 1212 (N.D. Cal. 2020) .................................................. 14

*Power Integrations, Inc. v. ON Semiconductor Corp.*,
   396 F. Supp. 3d 851 (N.D. Cal. 2019) ............................................. 14, 17

*R & R Sails, Inc. v. Ins. Co. of Pennsylvania*,
   673 F.3d 1240  (9th Cir. 2012) ................................................................ 15

*Southern States* test. *United States v. N. E. Med. Servs.*,
   No. 10-CV-01904-CW (JCS), 2014 WL 7208627 ................................. 14

*United States v. N. E. Med. Servs.*,
   No. 10-CV-01904-CW (JCS), 2014 WL 7208627 ................................. 18

*Wendt v. Host Int'l, Inc.*,
   125 F.3d 806 (9th Cir. 1997)). ................................................................ 15

**Rules**

Fed.R.Civ. Proc. Rule 37(c)(1) ................................................................ 13

Fed.R.Civ. Proc Rule 26(a) & (e)............................................................. 13

Fed.R.Civ. Proc  Rule 26(a)(1) ................................................................ 15

## I.   **INTRODUCTION**

This case has been in active litigation for nearly two years, since the filing of the original complaint on July 22, 2020. (ECF No. 1). Despite that fact, and despite the fact that Defendant, Zoosk, Inc. ("Zoosk") has provided four different iterations of its Rule 26 disclosures, amending them twice during (and once after) the discovery period, Zoosk waited until after the close of discovery (and, in several instances, after Plaintiffs had already moved for class certification) to first reveal several witnesses, documents, and other information highly pertinent to this case, *for the first time*. Many of these issues are highly relevant to Plaintiff's[1] class certification motion. This type of gamesmanship, and hide-the-ball-tactics, are not countenanced by the Federal Rules or by this Court's standing orders. Accordingly, pursuant to Rules 26 and 37, Plaintiffs seek exclusion of all witnesses, evidence, and other information pertinent to this case that Zoosk failed to timely disclose—including portions of expert reports relying thereupon. This includes:

1.   Any and all information contained in the declaration of Constantin Garcev;

2.   Any and all information contained in the declaration of Juliana von Trotha;

3.   Portions of Zoosk's expert report concerning subscription fee refunds and offsets, and conclusions drawn therefrom;

4.   Portions of Zoosk's expert report concerning the analysis of two disc images, and conclusions drawn therefrom.

## II.   **BACKGROUND**

This class action data breach case alleges that Zoosk—an online dating service—lost millions of consumers' personally identifiable information ("PII") in a data breach. (ECF No. 191, Fourth Amended Complaint ("FAC"), ¶ 5). Among the PII looted were class members' names, email addresses, dates of birth, demographical information, gender, and gender search preferences. FAC, ¶ 8. Notably, Zoosk did not detect the breach or exfiltration; rather, it was brought to Zoosk's attention by third parties. FAC, ¶¶ 4–6, 14.

---

[1] In this motion, there are singular and plural references to the Plaintiff and Plaintiffs. As the Court is aware, prior to class certification, there were multiple plaintiffs in this matter; however, only Ms. Greenamyer moved for class certification. Thus, the use of Plaintiff's and Plaintiffs' is intentional.

A.      **Zoosk's Evolving Disclosures and Corresponding Case Management Deadlines**

The Order Setting Initial Case Management Conference and ADR Deadlines set a deadline of October 20, 2020, to "complete initial disclosures or state objection in Rule 26(f) Report." (ECF No. 5 at 2). Here, the latter path was chosen, with Zoosk seeking to delay provision of disclosures until "sixty days from the later of (1) the filing of the Amended Complaint or (2) the Court's ruling on any motion to dismiss for lack of personal jurisdiction that Spark might file." (ECF No. 44 at 9). Ultimately, initial disclosures were exchanged on November 30, 2020. (ECF No. 57 at 8).

Zoosk's original Initial Disclosures are attached to the Declaration of Patrick Barthle II In Support of Motion to Seal (Dkt No.213-1) "Barthle Seal Decl." as **<u>Exhibit 1</u>**.  Notably, the only listed witness is Benjamin Hoskins, and the categories of documents are as follows:

- Documents regarding Zoosk's IT infrastructure.

- Documents regarding the nature and scope of the cybersecurity attack and attackers.

- Documents regarding the nature and scope of data and information potentially affected by the cybersecurity attack.

- Documents regarding Zoosk's discovery of the cybersecurity attack and its response thereto, including but not limited to notifications to individuals.

- Documents regarding Zoosk's containment of the cybersecurity attack and Zoosk's efforts to implement enhanced security measures.

- Documents regarding Zoosk policies and procedures in relation to data security.

In its original Case Management Order, this Court set an initial deadline of February 5, 2021 for Rule 26 disclosures, a non-expert discovery deadline of March 4, 2022, and a trial setting of June 2022.  (ECF No. 60).

In accord with that order, Zoosk amended its disclosures on February 5, 2021. *See* Amended Initial Disclosures, attached to the "Barthle Seal Decl." Decl. as **<u>Exhibit 2</u>**. These amended disclosures added witnesses Markus Baehr, Grant Kessler, and Matthias Huttar.  *Id.* at 2-3. It maintained the list of documents, while adding the following additional category: "Documents regarding security measures taken to protect Zoosk's IT infrastructure against cyberattacks and/or to mitigate the impact of any such cyberattack." *Id.* at 3.

2

1

2        On February 9, 2022, the court entered a Revised Case Management Order. (ECF No. 138).

3   It set a non-expert discovery deadline of April 29, 2022, an expert discovery deadline of June 3,

4   2022, and a trial setting of August 2022. (*Id*. at 1-2, 4). In light of the addition of a new named

5   plaintiff, and pursuant to a stipulation that was entered as revised by the Court, the final deadlines

6   in this case were as follow:

7        • Non-expert discovery: April 29, 2022;

8        • Disclosure of opening expert reports: April 29, 2022;

9        • Motion for Class Certification: May 20, 2022;

10       • Dispositive Motions: August 7, 2022;

11       • Trial setting: October 17, 2022.

12   (ECF No. 192).

13       On April 29, 2022—the day discovery in this matter closed and Plaintiff's expert reports

14   were due—Zoosk provided its Second Amended Initial Disclosures, attached to the "Barthle Seal

15   Decl." as **Exhibit 3**. This iteration added witness Conor Callahan and Ethan Tuttle (who were both

16   identified as document custodians nearly a year prior in 2021).[2]  The Second Amended Disclosures

17   also added the following category of documents: "Documents regarding Zoosk's agreements with

18   users, including but not limited to Terms of Use and Privacy Policy."  Thus, the full list of disclosed

19   witnesses, as supplemented on the last day of discovery, was Benjamin Hoskins, Markus Baehr,

20   Grant Kessler, Matthias Huttar, Connor Callahan, and Ethan Tuttle.

21       As noted above, that same day (April 29th) Plaintiff's opening expert reports were due and

22   were so provided to Defendant.  *See* Exhibits G and I to Plaintiff's Motion for Class Certification,

23   filed under seal at ECF Nos. 201-8, 201-10.

24   _____

25   [2] Plaintiffs had previously identified and deposed Messrs. Tuttle and Callahan during the discovery
     period, and hence had no need to seek relief regarding their belated disclosure.  Indeed, due to

26   significant document production made after their original depositions (*see, e.g.*, ECF No. 186), and
     after the Court directed Plaintiffs to depose the company responsible for hosting Defendant's

27   documents, Mr. Tuttle was deposed for a second time concerning the newly produced documents
     on June 17, 2022, and Mr. Callahan will be deposed for a second time on June 29, 2022.

28

3

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO STRIKE UNTIMELY DISCLOSED EVIDENCE AND WITNESSES
Case No. 3:20-cv-04929-WHA

On May 13, 2022—weeks after discovery closed and Plaintiffs had served their expert reports—Zoosk served its Third Amended Initial Disclosures, attached to the "Barthle Seal Decl." as **<u>Exhibit 4</u>**.  This version added, for the first time, another witness—Constantin Garcev—and an additional document category: "Records of Zoosk user activity, including but not limited to subscription purchase history."  *Id*. at 3-4.

Notably, while Zoosk iteratively added document categories to its disclosures, it did not correspondingly produce those documents nor make them available for inspection.

**B.     Zoosk's Responds to Plaintiffs' Expert Reports and Motion for Class Certification with Untimely Witnesses and Evidence**

In accord with the Court's schedule, Plaintiffs timely disclosed their expert reports on April 29, 2022, and timely filed the Motion for Class Certification on May 20, 2022, (ECF No. 200). In response to the expert reports, on June 1, 2022, Zoosk disclosed four response expert reports.  Two of those reports—those of Messrs. Ellman[3] and El Halabi[4]—rely on information not previously produced in this case (although requested).  In addition, on June 10, 2022, Zoosk filed its Opposition to Plaintiff's Motion for Class Certification (ECF No. 206) ("Opposition"), which (in addition to the above objectionable expert evidence) relies extensively upon the Declarations of Constantin Garcev (ECF No. 206-8) and Juliana von Trotha (ECF No. 206-9). As explained above, Mr. Garcev was not disclosed until *after* the discovery period in this case closed; Ms. Von Trotha was never disclosed. Pursuant to Rules 26 and 37 all evidence from the untimely disclosed witnesses—and the portions of the expert reports of Messrs. Ellman and El Halabi that rely on untimely disclosed evidence—should be excluded and ignored by this Court, especially as they relate to Plaintiff's Motion for Class Certification.

**1.     Untimely Information Regarding Subscription Fee Refunds/Offsets**

The expert report of Gary Olsen proposes multiple possible damages calculations for the Subscription Subclass. Those calculations were made using the Subscription Subclass fee payment

---

[3] ECF No. 206-5, Exhibit D to the Declaration of Douglas Meal in Support of Opposition to Motion for Class Certification,

[4] Attached to the "Barthle Seal Decl." as **Exhibit 5**.

1  information that Zoosk produced in response to Plaintiffs' discovery requests.  Specifically, in

2  response to Plaintiffs' Interrogatory No. 20—which sought "the amount each member of the

3  Subscription Subclass paid for a subscription, the number of consumers in each year who paid for a

4  subscription, and the total amounts paid by Subscription Subclass members for his/her/their use of

5  Your platform"—Zoosk provided, pursuant to Rule 33(d), four excel spreadsheets referred to as

6  Exhibits A-D.  *See* Zoosk's Responses to Plaintiffs Second Set of Interrogatories at 3, attached to

7  the "Barthle Seal Decl." as **Exhibit 6**. Likewise, in Plaintiffs' Third Request for Production of

8  Documents, Plaintiffs sought "[d]ocuments sufficing to show all amounts paid by Subscription

9  Subclass members for his/her/their use of Your Platform," (Request 49), "documents sufficient to

10  show all uses of Subscription Subclass members' payments by You," (Request 51), and documents

11  "sufficient to show the revenues, costs of sales, and cost of customer acquisition for Subscription

12  Subclass fee revenue received," (Request 53), to which Zoosk responded it would, subject to

13  "General Objections," produce documents responsive to the requests. *See* Zoosk's Responses to

14  Plaintiffs' Third Set of Requests for Production at 3-5, attached to "Barthle Seal Decl.". as **Exhibit**

15  **7**.

16       Plaintiffs' expert Mr. Olsen relied on the produced spreadsheets A-D to perform his

17  calculations, as well as the lack of any other production from Zoosk concerning the above-

18  mentioned information. *See, e.g.*, (ECF No. 200-10, Olsen Report at Schedules 3-5 (citing to and

19  relying upon Exhibits A-D to Zoosk's Responses to Plaintiffs' Second Set of Interrogatories)).

20       On June 1, 2022, Zoosk disclosed the Expert Report of Brian Ellman. (ECF No. 206-5).

21  Much to Plaintiffs' surprise, Mr. Ellman opined that Mr. Olsen's ███████████████████

22  ████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████

24  ██████████  In support, Mr. Ellman cites to a document, ZOOSK00002773. Prior to this report,

25  Zoosk's document production ended at bates number ending in 002772. Thus, this document had

26  not been disclosed nor produced prior to disclosure of Mr. Ellman's report. Indeed, Plaintiffs'

27  counsel emailed defense counsel to confirm this document had never before been provided. Zoosk's

28

1    counsel confirmed, stating that Zoosk had "produced the document simultaneously with our service

2    of Mr. Ellman's report." Email of June 7, 2022, attached to the Declaration of Patrick Barthle In

3    Support of Motion to Strike ("Barthle Strike Decl.") as **Exhibit 8**.

4        In addition to the impermissibly late disclosure of this information—and Mr. Ellman's

5    disingenuous opinion that Mr. Olsen had failed to account for information he undisputedly did not

6    have access to at the time of the initial Olsen Report—Mr. Olsen explained in his June 8, 2022,

7    Reply Report that the file itself lacks any semblance of proper evidentiary foundation:

8

9

10

11

12                                          (ECF No. 206-6, Olsen Reply Report at ¶ 10 n.8). Mr.

13   Ellman's deposition testimony confirmed that he cannot speak to provenance of the information and

14   that he did nothing to confirm its accuracy. *See* Ellman Depo. Tr. (Rough) at 67:23-74:16, attached

15   to the Barthle Seal Decl. as **Exhibit 9** (stating that Mr. Ellman took no steps to verify the information

16   other than requesting and receiving it from counsel). For this reason too that information—and the

17   parts of Mr. Ellman's report reliant thereon—should be excluded.

18                      **2.    Disc Images of the Breached Environment**

19       Alongside Mr. Olsen's report regarding damages, Plaintiffs also disclosed the expert report

20   of Matthew Strebe. (ECF No. 200-8) ("Strebe Report"). Mr. Strebe opines to a number of

21   cybersecurity failings at Zoosk. One such misstep was that

22

23

24                      Strebe Report ¶ 51 (citation omitted). This factual understanding was taken directly

25   from Zoosk's Amended Responses to Plaintiffs' First Interrogatories, which state:

26                                                                                                          "

27   (ECF No. 200-2 at Resp. No. 8, p. 16).

28       On June 1, 2022, Zoosk disclosed the expert report of Mahmoud El Halabi. Ex. 5. Once

                                                       6

again, much to Plaintiffs' surprise, Mr. El Halabi states that he relied upon two ▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* El Halabi Report, Table 1
pp. 6-7. Given Zoosk had previously unequivocally indicated this information had been deleted,
Plaintiffs were gob smacked.

Moreover, Plaintiffs had also previously propounded discovery requests that covered this
information. For example, Plaintiffs First Request for Production of Documents sought:

- No. 5: "Documents sufficient to identify the structure, architecture, and interconnectivity of the portion(s) of Your computer system accessed in or related to the systems involved in the Breach, including maps, diagrams, and charts including those portions of the computer system."

- No. 12: "Zoosk system logs relating to the Breach."

- No. 24: "All incident reports and referenced artifacts concerning the Breach or remediation of the Breach, including the Documents supporting the incident reports, such as investigator notes, correspondence, service desk tickets, security architectural reviews, change approvals and change management documents, and any remediation plans."

- No. 27: "Documents concerning any investigations, assessments, or analyses undertaken by You, or anyone acting on Your behalf, concerning the Breach, including possible cause(s) of the Breach and any recommendations for improvements or modifications to Your computer system or data security systems or processes."

- No. 28: "All event logs prepared or reviewed as part of any investigation of the Breach."

- No 29: "Documents concerning any and all investigations, assessments, or reports, whether by You or any third party on behalf of You, regarding the PII compromised in the Breach, including the identities of the persons whose PII was compromised in the Breach."

Zoosk responded to each of the above confirming that, subject to its "General Objections," it would produce the requested documents. *See* Zoosk's Responses to Plaintiffs First Set of Requests for Production of Documents, attached to the Barthle Seal Decl. as **Exhibit 10**. Yet, to this day, the disc image evidence it previously stated had been destroyed, but later confirmed existed, has still not been produced.

Notably, Mr. El Halabi's report establishes that his firm was retained in November 2021, well in advance of the pertinent deadlines here. Ex. 5, El Halabi Report at 4. Moreover, Mr. El Halabi explained at deposition that he relied upon the (undisclosed) disc images to: determine what, if any, additional credentials the attackers were able to glean, as well as whether the attackers were able to gain additional access to Zoosk's production and development environments. El Halabi Rough Depo. Tr. at 120:10–123:11, attached to the Barthle Seal Decl. as **Exhibit 11**.

As set out below, because Zoosk failed to timely disclose and/or produce that information it must be excluded and thus must also every part of Mr. El Halabi's report that is reliant thereupon.

### 3.    Untimely Disclosed Witnesses

Finally, on June 10, 2022, Zoosk filed its Opposition to Plaintiff's Motion for Class Certification. (ECF No. 206). Therein, Zoosk extensively relies upon the declarations of Constantin Garcev (ECF No. 206-8) and Juliana von Trotha (ECF No. 206-9).

As noted above, Mr. Garcev was not disclosed as a witness until Zoosk's Third Amended Disclosures, on May 13, 2022. Therein, his knowledge is described as relating to "Zoosk's IT infrastructure and security policies and procedures, and Zoosk user activity, including but not limited to subscription purchase history." Ex. 4 at p. 3. Notably, even if this disclosure were timely it fails to describe what Zoosk is in fact relying upon Mr. Garcev for: various remediation and mitigation practices implemented (or anticipated) following the Breach. In any event, May 13th was weeks after the close of discovery in this case (April 29th) and weeks after Plaintiff's expert reports were disclosed (also on April 29th) and just days before Plaintiff's Motion for Class Certification was filed (May 20th).

As explained, Ms. von Trotha was never properly disclosed.

Moreover, Plaintiff's expert reply reports were due, and were provided to Zoosk, on June 8,

1  2022. Thus, by the time these declarations were reveled (on June 10th), Plaintiffs were procedurally

2  precluded from having their expert(s) consider and opine on the contents thereof.

3        **a.  The Garcev Declaration Contains All Manner of Undisclosed Information**

4        Zoosk's Opposition uses the Garcev declaration to undermine the request for injunctive

5  relief, citing to it for the proposition that "the Rule 23(b)(2) injunctive relief Greenamyer seeks,

6  would do nothing to redress whatever risk the Class may have of future harm from Zoosk security

7  failings, because all of the 'security controls' recommended by Greenamyer's retained expert either

8  already have been or are being implemented by Zoosk or would provide no incremental security

9  benefit given other security controls Zoosk already has in place." (ECF No. 206 at 29-30) (citation

10  omitted).[5]

11        Indeed, Mr. Garcev details at great length numerous cybersecurity measures Zoosk has put

12  in place, will be putting in place, or is considering putting in place concerning its "security posture,"

13  including, describing, among other things,

14

15   . Garcev Decl. ¶¶ 6,

16  9–15.

17        These various remediation and mitigation efforts have never before been revealed or

18  disclosed to Plaintiffs. Yet, evidence regarding such measures has repeatedly been sought. For

19  example, Plaintiffs' Interrogatory No. 12 stated: "Describe in detail any remedial actions undertaken

20  by You, or others acting on Your behalf, related to the Breach, including, without any limitation,

21  any modification of Your policies, practices, procedures, hardware, software, and personnel for

22  safeguarding PII and the cost of those remediations." (ECF No. 200-2). Zoosk's response thereto

23  addresses none of the matters noted above as articulated by Mr. Garcev, nor has that response been

24  update or amended since October 2021.

25        Moreover, as noted above, Plaintiffs' RFP No. 24 sought documents concerning, among

26

---

27  [5] Pinpoint citations to material previously filed publicly on the Court's docket refers to the CM/ECF System's pagination in the upper, righthand corner of the document.

28

9

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO STRIKE UNTIMELY DISCLOSED EVIDENCE AND WITNESSES
Case No. 3:20-cv-04929-WHA

1   other things, "any remediation plans." Ex. 10 at p. 16. Request number 16 sought "*Documents and*

2   *Communications relating to* incident response testing, *remediation,* security testing, validation, or

3   monitoring of any computer networks or computer systems (including any cloud infrastructure),

4   including *actions taken to remedy any potential vulnerabilities* in Your server configurations, WAF

5   configurations, computer systems, networks, code, other electronic devices, storage devices, and

6   software *to prevent future data breaches and data disclosures*." *Id.* at p. 13. Yet, no documents

7   concerning the various efforts Mr. Garcev describes have been produced.

8        Similarly, Plaintiffs' Rule 30(b)(6) topic No. 6 sought testimony regarding, "The

9   information-security related measures You or others on Your behalf have taken in response to the

10  Breach with respect to Your computer networks and/or computer systems (including any cloud

11  infrastructure), or Your other electronic devices, storage devices, and software, including those

12  measures which you plan to take and the schedule for the implantation or completion of those

13  measures." *See* Plaintiffs' Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6), attached to the

14  Barthle Strike Decl. as **Exhibit 12**. Yet, Zoosk's corporate representative did not testify as to any of

15  the measures Mr. Garcev seeks to put at issue here, and, indeed, the corporate representative could

16  not testify beyond essentially parroting what the interrogatory response revealed. *See, e.g.,* (ECF

17  No. 200-3, Munoz Depo. Tr. 84:18–85:8, 93:17–94:18).

18       Additionally, Zoosk cannot credibly claim that Mr. Garcev was not known before the close

19  of discovery: Zoosk's purported expert Mr. El Halabi had discussions with Mr. Garcev in November

20  or December of 2021. Ex. 11 at 63:1-22 (Mr. El Halabi ███████████████████████

21  ██████████████████████████████████). At bottom, Mr. Garcev should have been

22  disclosed in November or December 2021, yet Zoosk waited almost six months—*after* discovery

23  closed and *after* Plaintiff's expert reports were served—to disclose him on May 13, 2022.

24       Accordingly, Mr. Garcev's declaration should be excluded and ignored in total, and

25  especially for purposes Plaintiff's Motion for Class Certification.

        **b. The Von Trotha Declaration Materially Supplements Previously Provided
26         Information and Discloses for the First Time Other Evidence**

27       Juliana von Trotha purports to be an attorney working for Zoosk's parent company, Spark.

28                                          10

(ECF No. 206-9 ¶ 1). Being an attorney, and apparently having ***never worked for Zoosk***, it is far from apparent how she is competent to so declare. Indeed, Par. 3 appears to confirm the declaration is little more than rank hearsay: "I make this declaration on the basis of my knowledge, information and belief, which includes *knowledge and information obtained by and through agents, representatives, and service providers of Zoosk*." (*Id.* ¶ 3) (emphasis added). This alone militates in favor of ignoring this declaration.

Spring boarding from this purported "knowledge," Zoosk relies on Ms. von Trotha to supplement and buttresses its prior interrogatory responses and, most critically, as the sole evidentiary reed upon which Zoosk seeks to establish that Plaintiff Greenamyer is not a member of the Class. Specifically, Zoosk cites von Trotha for the proposition that "Zoosk's own records reflect that none of the information Greenamyer provided to Zoosk was compromised in the Intrusion and that, as a result, Zoosk never sent her any notification of the Intrusion." (ECF No. 206 at 10) (citing von Trotha Decl. ¶ 15). Zoosk also cites to von Trotha for "the data suggest[ing] that only a miniscule fraction of visitors to Zoosk's webpages review the Privacy Policy . . . ." (ECF No. 206 at 26) (citing von Trotha Decl. ¶ 18).

The von Trotha Declaration also appears to seek to supplement Zoosk's prior interrogatory responses. At paragraphs 5–12, the von Trotha Declaration speaks to several issues touched upon in Response Nos. 8 & 10 in Zoosk's Amended Responses to Plaintiffs' First Interrogatories, (ECF No. 200-2 at Resp. Nos. 8, 10 p. 16–19), but adds significant, never before revealed details.

For instance, while the Amended Interrogatory responses refer to "accessed databases" and "unaffected databases,"[6] the von Trotha Declaration states that the Zoosk user database was "███████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████" Von Trotha Decl. ¶ 6. Von Trotha states that "during the Intrusion the unknown attacker had ███████████████████████████████████████████████

---

[6] (ECF No. 200-2 at Resp. No. 8 p. 16).

1 ████████████████████████████████████████████████████████████

2 ████████████████████████████████████████████." Von Trotha Decl. ¶ 7.

3 Ms. von Trotha continues, explaining certain facets of the information taken in the Breach, including

4 the revelation that ***additional types of previously undisclosed personal information were impacted***,

5 again with additional new details: "████████████████████████████████████████

6 ████████████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████████████

8 ████████████████████████████████████████████████████████

9 ███████ Von Trotha Decl. ¶ 9. This is, to undersigned's knowledge, the first time Zoosk has

10 revealed that information such as "████████████████████████████████████████

11 █████████" were also impacted in the Breach.

12     Most crucially, von Trotha continues, stating that "Zoosk has determined that none of the

13 data associated with Ms. Greenamyer's Zoosk user account was ████████████████████

14 ████████████████████████████████████████████████████████████

15 ██████████ and Ms. Greenamyer's Zoosk user account is therefore not among the Zoosk

16 user accounts that Zoosk has determined to have been impacted by the Intrusion." Von Trotha Decl.

17 ¶ 15. How Ms. von Trotha made this determination, what records she reviewed, what "agents,

18 representatives, and service providers" she talked to, are not revealed. Plaintiffs are forced to take

19 her word for it.[7]

20     Ms. von Trotha attaches a brand-new Zoosk Privacy Policy, created on June 6, 2022—

21 notably, weeks after Plaintiff's Motion for Class Certification was filed—that supposedly removes

22 any promise to take "reasonable measures to help protect you information . . . ." von Trotha Decl.

23 ¶ 16. Finally, as refenced above, von Trotha sets out statistics of Privacy Policy page views. Von

24

25 ───────────────────────

[7] Further, given that Plaintiff Greenamyer was added to this matter only over strenuous objection

26 from Zoosk and following the payment of fees to Zoosk concerning the involvement of a prior named plaintiff (*see* ECF Nos. 129, 139, 145, 149, 150, 162, 179), good faith and candidness with

27 the Court would have dictated that Zoosk raise the potential futility of Ms. Greenamyer as plaintiff in this case when she was added, and long before now.

28

12

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO STRIKE UNTIMELY DISCLOSED EVIDENCE AND WITNESSES
Case No. 3:20-cv-04929-WHA

1  Trotha Decl. ¶ 18. How that information was collected, its accuracy, its relevance, etc., all left
2  untested.

3          Like with Mr. Garcev, Zoosk cannot credibly claim that Ms. von Trotha was not known
4  before the discovery deadline: Zoosk's purported expert Mr. El Halabi had discussions with Ms.
5  von Trotha in approximately April 2022—*with Zoosk's counsel present*. Ex. 11 at 64:4–66:23 (Mr.
6  El Halabi ███████████████████████████████████████████████████████████████████
7  ████████████████████████████████████). At bottom, Ms. von Trotha should have
8  been disclosed before the discovery deadline of April 29, 2022, yet Zoosk *never disclosed her*,
9  choosing instead to sandbag Plaintiff with her in its Opposition. Worse, Ms. von Trotha is advanced
10 as a fact witness, yet Zoosk's counsel objected to and directed Mr. El Halabi not to answer questions
11 concerning what he discussed with Ms. von Trotha. *Id*.

12         This is all new information coming from a never-before disclosed witness and one with
13 highly questionable competence to so testify. It must be excluded.[8]

14 **III.    ARGUMENT**

15     **A.    The Interplay Between Rules 26 and 37**

16         The conduct of litigation is not  trial by ambush. "Rule 26(a)(1)(A)(ii) requires a party to,
17 'without awaiting a discovery request, provide to the other parties ... a copy—or a description by
18 category and location—of all documents, electronically stored information, and tangible things that
19 the disclosing party has in its possession, custody, or control and may use to support its claims or
20 defenses, unless the use would be solely for impeachment.'" *BWP Media USA Inc. v. Urbanity*,
21 LLC, 696 F. App'x 795, 796 (9th Cir. 2017) (quoting Fed. R. Civ. P. 26(a)(1)(A)(ii)). Likewise,
22 Rule 26(e) "provides that a party 'must supplement or correct' its initial disclosures 'in a timely
23 manner if the party learns that in some material respect the disclosure or response is incomplete or

---

[8] As with the other untimely evidence, the issues addressed by Ms. von Trotha were the subject of
multiple, overlapping prior discovery requests, including the interrogatories, requests for production
of documents, and corporate representative deposition topics previously referred to. *See, e.g.*, Ex 10
at Request Nos. 5, 21, 22, 29; Ex. 12 at Area of Inquiry 3; (ECF No. 200-2 at Resp. Nos. 8, 10 p.
16–19).

13

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO STRIKE UNTIMELY DISCLOSED EVIDENCE AND WITNESSES
Case No. 3:20-cv-04929-WHA

incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.'" *Id.* (quoting Fed. R. Civ. P. 26(e)(1)(A)).

"Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008) (quoting *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)). Pursuant to Rule 37, "a party that fails to meet its obligations under Rule 26(a) & (e) 'is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.'" *Power Integrations, Inc. v. ON Semiconductor Corp.*, 396 F. Supp. 3d 851, 888 (N.D. Cal. 2019) (quoting Fed. R. Civ. P. 37(c)(1)).

This Court's standing Supplemental Order to Order Setting Initial Case Management Conference reaffirms this analysis, stating:

> FRCP 26(a) requires certain automatic disclosures and requires them to be made in a timely manner. Under FRCP 37(c), untimely-disclosed materials may not be used at trial or on summary judgment unless the delay in disclosure is "harmless" or unless "substantial justification" for the delay is shown.

Supplemental Order at ¶ 35.

Importantly, the "party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless." *Power Integrations, Inc. v. ON Semiconductor Corp.*, 396 F. Supp. 3d 851, 888 (N.D. Cal. 2019) (quoting *R & R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1246 (9th Cir. 2012)); *see also, e.g., Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705, 713 (9th Cir. 2010) ("The burden is on the party facing exclusion of [evidence under Rule 37(c)] to prove the delay was justified or harmless.").

This Court has recognized that "[t]here is no explicit guidance from our court of appeals in determining whether non-disclosure is justified or harmless, but courts in our district have considered the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to

14

disclose the evidence." *Martel v. Hearst Communications, Inc.*, 468 F. Supp. 3d 1212, 1219 (N.D. Cal. 2020) (Alsup, J.) (citing *San Francisco Baykeeper v. W. Bay Sanitary Dist.*, 791 F.Supp.2d 719, 733 (N.D. Cal. 2011)).[9]

These factors generally derive from the Fourth Circuit's *Southern States* test. *United States v. N. E. Med. Servs.*, No. 10-CV-01904-CW (JCS), 2014 WL 7208627, at *7 (N.D. Cal. Dec. 17, 2014) (citing *Southern States Rack & Fixture, Inc. v. Sherwin–Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003)).

"The first four factors listed above relate primarily to the harmlessness exception, while the last factor, addressing the party's explanation for its nondisclosure, relates mainly to the substantial justification exception." *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017). The first factor (surprise) weighs in favor of exclusion if the party against whom the evidence would be offered believed the producing party "had produced all documents responsive to the relevant requests for production [and] complied with its Rule 26(a)(1)" obligations. *See, e.g.*, *United States*, 2014 WL 7208627, at *7 (internal citations omitted). The second and third factors (ability to cure and disruption of trial) are interrelated, and where curative measures would "result in a significant disruption of the planned trial date," these factors also weigh in favor of exclusion. *Id*. The fourth factor (importance of the evidence) "must be viewed from the perspective of both parties." *Id.* (quoting *Southern States*, 318 F.3d at 598-98). And the more important the evidence, the more likely its untimely disclosure is to prejudice the opposing party and tilt the scales in favor of exclusion. *Id.* (citing *Southern States*, 318 F.3d at 598–99). Finally, the fifth factor (explanation for failure to disclose) weighs in favor of exclusion where "no credible explanation" is offered for the untimely disclosure. *Id.* at *7–8.[10]

---

[9] *See also, e.g.*, *Feamster v. Gaco W., LLC*, 18-CV-01327-HSG, 2021 WL 5494277, at *1, n.1 (N.D. Cal. Nov. 23, 2021) (citing *Lanard Toys Ltd.*, 375 Fed. Appx. at 713 and noting that, as "an unpublished Ninth Circuit decision, *Lanard Toys* is not precedent but may be considered for its persuasive value").

[10] In instances where exclusion of evidence is tantamount to dismissal of a claim, the Ninth Circuit has directed that certain other factors be considered. *See R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1247 (9th Cir. 2012) ("Under this circuit's law, because the sanction amounted to dismissal of a claim, the district court was required… to consider the availability of lesser sanctions.") (citing *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997)). Because dismissal is not at issue here—as Zoosk has raised no claims that could be dismissed—the *R&R Sails* factors are not addressed herein.

Importantly, exclusion under Rule 37(c) does not require a finding of bad faith "unless the sanction amount[s] to dismissal of a claim." *R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1247 (9th Cir. 2012).

**B.      The Untimely Disclosed Witnesses, Evidence, and Information Should be Excluded**

Here, Zoosk shoulders the burden of establishing substantial justification or harmlessness, a burden it cannot carry. Discovery in this matter closed nearly two months ago. Plaintiffs repeatedly sought the type of information Zoosk revealed only *after* discovery closed, *after* Plaintiffs' expert report were disclosed (April 29th), and *after* the class certification motion had been filed (May 20th).

And this undue surprise cannot be cured, short of a full-scale re-opening of discovery—fact and expert—to permit depositions of the new witnesses/declarants, investigations into the sources of their new information, and preparation of new expert report(s) to account for that information and the other newly disclosed information sources,[11] as well as re-briefing of class certification.

Plaintiffs do not believe another, further discovery and expert disclosure extension would be permitted by this Court, nor are they seeking one. The Court has already indulged the parties by extending the deadlines, and Zoosk's unjustifiable, untimely disclosures are no reason to do so again. Rather, the evidence should simply be excluded in accord with the "automatic sanction" of Rule 37. *See* Fed. R. Civ. 37(c) advisory committee's note to 1993 amendment.

As detailed above (and while not required under Rules 26 and 37) Plaintiffs had sought the information at issue here via multiple, overlapping discovery requests. Thus, Plaintiffs reasonably believed the Zoosk "had produced all documents responsive to the relevant requests for production [and] complied with its Rule 26(a)(1)" obligations, thus favoring exclusion. *United States*, 2014 WL 7208627, at *7 (internal citations omitted).

---

[11] Mr. Olsen's Reply Report does account for the unseasonably revealed financial information regarding subscription fee refunds/offsets. However, if considered by the Court, Plaintiffs should be permitted to inquire as to how that new information was obtained and by whom given its facial ambiguity—if not obtain and review the underlying data from which it was derived. Mr. Strebe's reports (initial or reply) do not account for the disc images—as they still have not been provided— nor for the information provided Mr. Garcev or Ms. von Trotha, as those declarations were first provided after his reply report was due.

16

1    The potential for impact on the trial date in this case—set for October 17, 2022, (ECF No. 192)—

2    is nearly certain. Basic fairness would demand that if this abundance of new information and new

3    witnesses are to be permitted by the Court, that Plaintiffs have the ability to (1) depose the witnesses

4    (both of whom are in Germany and thus will require a minimum of eight weeks' notice to schedule their

5    depositions through the U.S. consulate), (2) prepare and disclose new expert reports based thereon—

6    which, likely, will require re-deposition of Plaintiffs' experts, who were both deposed this past week on

7    June 20 and 22; (3) perform discovery on the new financial information to determine its provenance and

8    reliability, and, potentially issue an updated damages expert report thereon (again potentially

9    necessitating re-deposition), and (4) obtain and analyze the disc images, determine whether they reveal

10   any additional facts concerning the Breach, and potentially issue new expert reports based thereon. Re-

11   briefing of class certification would then need to follow. Essentially, this case would essentially need to

12   begin again.

13    Zoosk was clearly aware of the importance of this information. Among other things, the von

14   Trotha Declaration attempts to establish that the sole named plaintiff on whose behalf class certification

15   was sought is not a class member thus eliminating any chance of certification;[12] and the Garcev

16   Declaration is being used to wholly undermine all requested injunctive relief and thus certification under

17   Rule 23(b)(2). These are fundamental aspects of this case. The financial information seeks to remove

18   over ███████ from the damages model—certainly significant and important under any view. And the

19   disc images are some of the only contemporaneous or nearly contemporaneous forensic evidence

20   regarding the Breach that exists—undoubtedly important information.

21    Zoosk has, thus far, provided no explanation for its disclosure failures, apart from its

22   transparently inadequate explanation regarding the financial information as having been requested by its

23   expert (Ex. 8)—that is clearly false (it was responsive to several discovery requests) and would be

24   insufficient even if true under Rule 26, which requires timely disclosure of all evidence to be relied upon.

25    Zoosk's actions here are neither justified nor harmless. Many courts have excluded evidence in

26   similar settings. *See, e.g.*, *Feamster v. Gaco W., LLC*, No. 18-CV-01327-HSG, 2021 WL 5494277, at

---

[12] As noted above, this should have been timely raised when Plaintiffs sought to add Greenamyer as plaintiff.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO STRIKE UNTIMELY DISCLOSED EVIDENCE AND WITNESSES
Case No. 3:20-cv-04929-WHA

1  *1-2 (N.D. Cal. Nov. 23, 2021) (where discovery "closed along ago," court ordered exclusion of

2  undisclosed documents and witnesses "whose opinions were never properly disclosed, and who

3  Defendant never had the opportunity to depose regarding those opinions"); *Power Integrations, Inc. v.*

4  *ON Semiconductor Corp.*, 396 F. Supp. 3d 851, 887-88 (N.D. Cal. 2019) (ordering exclusion of

5  "essential document" where defendant did "not even attempt to justify its glaring failure" to produce and

6  there was "simply not sufficient time left before trial… to take the full range of discovery necessary to

7  defend"); *United States v. N. E. Med. Servs.*, No. 10-CV-01904-CW (JCS), 2014 WL 7208627, at *7–8

8  (N.D. Cal. Dec. 17, 2014) (ordering exclusion of responsive documents first produced after the close of

9  fact discovery where opposing party believed all responsive documents were produced, potential

10  curative measures would "result in a significant disruption of the planned trial date," and "no credible

11  explanation" for untimely production was offered).

12  **IV.     CONCLUSION**

13          Zoosk's conduct here is inexcusable and a paradigmatic example of the hide-the-ball, litigation

14  by ambush tactics that Rules 26 and 37 prohibit. This Court should enforce Rule 37's "automatic

15  sanction," grant this motion, and exclude the late disclosed witness Constantin Garcev and the never

16  disclosed witness Juliana von Trotha, along with all evidence from their declarations; exclude the late-

17  disclosed document ZOOSK00002773, along with all portions of Mr. Ellman's Expert Report that relies

18  thereon and conclusions derived therefrom; and exclude the disc images, along with all portions of Mr.

19  El Halabi's expert report that relies thereon and conclusions derived therefrom.

20

21  Dated: June 24, 2022                              Respectfully submitted,

22                                                    **BRADLEY/GROMBACHER, LLP**
                                                      **CROSNER LEGAL P.C**
23                                                    **MORGAN & MORGAN**
                                                      **COMPLEX LITIGATION GROUP**
24

25

26                                             By:  /s/ *John A. Yanchunis*

27                                             John A. Yanchunis (*admitted pro hac vice*)
                                               Marcus Bradley
28                                             Kiley L. Grombacher, Esq.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO STRIKE UNTIMELY DISCLOSED EVIDENCE AND WITNESSES
Case No. 3:20-cv-04929-WHA

Lirit A. King, Esq.
Zachary M. Crosner
Michael R. Crosner
Patrick Barthle
Ryan McGee
*Attorneys for Plaintiffs*

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO STRIKE UNTIMELY DISCLOSED EVIDENCE AND WITNESSES
Case No. 3:20-cv-04929-WHA