**ORRICK, HERRINGTON & SUTCLIFFE LLP**
DOUGLAS H. MEAL (*admitted pro hac vice*)
dmeal@orrick.com
REBECCA HARLOW (CA BAR NO. 281931)
rharlow@orrick.com
MATTHEW D. LABRIE (*admitted pro hac vice*)
mlabrie@orrick.com
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:      +1 415 773 5700
Facsimile:      +1 415 773 5759

Attorneys for Defendant
ZOOSK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JUAN FLORES-MENDEZ, an individual and TRACY GREENAMYER, an individual, and on behalf of classes of similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> ZOOSK, INC., a Delaware corporation, <br><br> Defendant. | Case No. 3:20-cv-4929-WHA <br><br> **DEFENDANT ZOOSK, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE** <br><br> **REDACTED** <br><br> The Honorable William Alsup <br> Date:          July 14, 2022 <br> Time:          12:30 p.m. <br> Courtroom:  No. 12, 19th Floor |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   PROCEDURAL BACKGROUND ...................................................................... 3

III.  LEGAL STANDARD ........................................................................................ 3

IV.  ARGUMENT ..................................................................................................... 5

    A.   Plaintiffs Have Not Shown That Zoosk Failed to Disclose Any of the Information and Witnesses Targeted by the Motion to Strike as required by Rule 26(a) or (e). ............................................................................................... 5

        1.   The Garcev Declaration ................................................................ 6

            i.    Mr. Garcev Was Identified to Plaintiffs in a Timely Manner. ........ 6

            ii.   The Information in the Garcev Declaration Was Timely Disclosed. .......................................................................... 7

        2.   The von Trotha Declaration ................................................... 10

            i.    Ms. von Trotha and Her Information as to Ms. Greenamyer's Class Membership Were Timely Identified to Plaintiffs Once Ms. Greenamyer Became a Plaintiff. ................... 10

            ii.   None of the Information in the von Trotha Declaration Was Subject to an Independent Supplementation Obligation that Zoosk Had and Failed to Meet Prior to Ms. Greenamyer's Becoming a Plaintiff ....................................................... 12

        3.   The Refund Data .................................................................... 14

        4.   The Disk Images ................................................................... 15

    B.   Any Zoosk Failure to Disclose Any Witnesses or Information "as Required by Rule 26(a) or (e)" Was Substantially Justified and/or Harmless. ................... 18

        1.   Any Zoosk Rule 26(a) or (e) Failure Was Substantially Justified. ........... 19

        2.   Any Zoosk Rule 26(a) or (e) Failure Was Harmless. ................................ 21

    C.   An Exclusionary Sanction Would Not Be Appropriate Where Lesser Relief Would Be Sufficient and Where the Exclusion Would Allow Plaintiffs to Continue Their Pretense That the Class Is Certifiable ........................................ 23

V.   CONCLUSION ................................................................................................ 25

  
# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bresler v. Wilmington Trust Co.*, 855 F.3d 178 (4th Cir. 2017) ............................................. 21, 22

*BWP Media USA Inc. v. Urbanity LLC*, 696 F. App'x 795 (9th Cir. 2017) ................................. 22

*BWP Media USA Inc. v. Rich Kids Clothing Co., LLC*,
   2015 WL 347197 (W.D. Wash. Jan. 23, 2015) ......................................................... 22

*Cabrera v. Google LLC*, 842 F. App'x 38 (9th Cir. 2021) ............................................................. 7

*Davis v. Pinterest, Inc.*, -- F.Supp.3d --,
   2022 WL 1316566 (N.D. Cal. May 3, 2022) ........................................................ 4

*Feamster v. Gaco Western LLC*, No. 18-cv-01327-HSG,
   2021 WL 5494277 (N.D. Cal. Nov. 23, 2021) ...................................................... 22

*Kasper Smoke Kastle, LLC v. Atlantic Casualty Insurance Co.*,
   861 F. App'x 1224 (9th Cir. 2021) ..................................................................... 5, 19

*Lanard Toys, Ltd. v. Novelty, Inc.*, 375 F. App'x 705 (9th Cir. 2010) ................................ 4, 19, 21

*Power Integrations, Inc. v. ON Semiconductor Corp.*,
   396 F. Supp. 3d 851 (N.D. Cal. 2019) ................................................................ 22

*R&R Sails Inc. v. Insurance Co. of Pennsylvania.*,
   673 F.3d 1240 (9th Cir. 2012) .............................................................................. 4

*San Francisco Baykeeper v. West Bay Sanitary District*,
   791 F. Supp. 2d 719 (N.D. Cal. 2011) .................................................................. 7

*Stonefire Grill, Inc. v. FGF Brands, Inc.*,
   2013 WL 12126773 (C.D. Cal. June 27, 2013) ................................................... 19

**Other Authorities**

AWS User Guide for Linux Instances: Amazon Machine Images ............................................... 16

Dictonary.com, "Remediation" ................................................................................................... 8

Judge Willam H. Alsup Supplemental Order to Order Setting Initial Case Management
   Conference in Civil Cases ............................................................................... 4, 9, 17

**Rules**

Federal Rule of Civil Procedure 26 ................................................................................. passim

Federal Rule of Civil Procedure 37 ............................................................................... 1, 4, 22

ii

1    I.      **INTRODUCTION**

2           As part of the class certification opposition papers that Zoosk submitted on June 10, 2022,

3    Zoosk presented the Court with evidence establishing that (1) Plaintiff Tracy Greenamyer, the sole

4    proposed class representative, is not a member of the putative class; (2) Ms. Greenamyer's proposed

5    Rule 23(b)(3) damages class impermissibly includes persons who have already received full

6    refunds of their Zoosk subscription payments and thus have no UCL or Article III standing; and (3)

7    Ms. Greenamyer's proposed 23(b)(2) injunction class is uncertifiable because it seeks relief that is

8    wholly unnecessary given Zoosk's current information security posture.   Plaintiffs evidently

9    recognize that this evidence in and of itself defeats Ms. Greenamyer's class certification motion

10   without any need for the Court to reach the numerous other deficiencies in that motion detailed in

11   Zoosk's opposition papers.  Plaintiffs also evidently recognize that they have no good faith basis

12   for challenging the veracity of any of this outcome-determinative evidence.  Indeed, it is telling that

13   the one thing Plaintiffs *do not* seek by means of their present motion is an opportunity to take the

14   very discovery they supposedly were denied by the supposed Zoosk disclosure failures that are the

15   subject of their motion.  As Plaintiffs surely know, such discovery would be a fruitless exercise, as

16   the facts established by this evidence are clear and incontrovertible.

17          Plaintiffs accordingly decided to launch a "Hail Mary" effort to save Ms. Greenamyer's

18   class certification motion from its otherwise assured defeat by persuading the Court to simply

19   disregard the clear evidence Zoosk presented establishing the uncertifiability of the proposed class

20   and thereby allow Ms. Greenamyer to continue to argue that the other facts warrant class

21   certification here.  According to Plaintiffs, the Court can and should disregard Zoosk's dispositive

22   evidence pursuant to Rule 37(c)(1), because all this evidence constitutes either information Zoosk

23   failed to provide or a witness Zoosk failed to identify "as required by Rule 26(a) or (e)."  *See* Fed.

24   R. Civ. P. 37(c)(1) (permitting a preclusive order thereunder only where "a party fails to provide

25   information or identify a witness as required by Rule 26(a) or (e)").  Based on that theory, by their

26   present motion ("Motion to Strike"), Plaintiffs ask the Court to strike four items: (1) the declaration

27   of Constantin Garcev ("Garcev Declaration"), by which Zoosk established that Plaintiff's proposed

28   23(b)(2) injunction class is uncertifiable because it seeks relief that is wholly unnecessary given

Zoosk's current information security posture; (2) the declaration of Juliana von Trotha ("von Trotha Declaration"), by which Zoosk established that Ms. Greenamyer is not a member of the putative class; (3) the portion of the Expert Report of Brian Ellman (the "Ellman Report") that relied upon a spreadsheet Bates-stamped ZOOSK00002773 (the "Refund Data"), by which Zoosk established that Plaintiff's proposed Rule 23(b)(3) damages class impermissibly includes persons who have already received full refunds of their Zoosk subscription payments and thus have no UCL or Article III standing; and (4) the portions of the expert report titled "Zoosk AWS Investigation" by Mahmoud El Halabi of Stroz Friedberg (the "Stroz Report") that referenced two ██████████ ████████ that Mr. El Halabi examined (the "Disk Images"), which images have nothing whatever to do with Ms. Greenamyer's class certification motion but nonetheless somehow became (mistakenly) a focal point of the Motion to Strike.

For numerous reasons, the Motion to Strike is utterly meritless and should be denied *in toto*. First and foremost, none of the information and neither of the witnesses targeted by the Motion to Strike was required to be included in, but was not timely included in, a Zoosk Rule 26(a) disclosure or Rule 26(e) supplementation, so by its very terms Rule 37(c)(1) has no possible application to any of that information or either of those witnesses. *See* Part IV.A below. Second, even if Zoosk failed to make a timely disclosure "as required by Rule 26(a) or (e)" in regard to some of the information and/or either of the witnesses targeted by the Motion to Strike (and Zoosk certainly did not so fail), any such nondisclosure was "substantially justified and/or harmless" within the meaning of Rule 37(c)(1), such that the Motion to Strike must be denied notwithstanding the non-disclosure. *See* Part IV.B below. Finally, because any prejudice to Plaintiffs from any such non-disclosure can easily be cured by simply allowing Plaintiffs to take now whatever discovery they would have taken earlier regarding the information in question or from the witness in question, no need or reason exists to impose the drastic sanction of barring Zoosk from using that information or witness in opposing Ms. Greenamyer's class certification motion and thereby depriving the Court of facts that are themselves both beyond any genuine dispute and dispositive of that motion. The Court should therefore exercise its discretion in providing relief, if any, short of the exclusion sought by the Motion. *See* Part IV.C below.

1

## II.   PROCEDURAL BACKGROUND

2    The original class action complaint in this matter was filed by putative class representatives

3    Plaintiffs Juan Flores-Mendez and Amber Collins on July 22, 2020.  ECF No. 1.  Following Plaintiff

4    Collins's failure to participate in discovery and subsequent incarceration, Plaintiff Collins was

5    dismissed from the action with prejudice.  *See* ECF Nos. 170, 171.  Due to the dismissal of Plaintiff

6    Collins and concerns about the ability of Plaintiff Flores-Mendez to represent the class, Plaintiff

7    Tracy Greenamyer was added to the case on April 29, 2022 via the Fourth Amended Complaint.

8    ECF No. 191.   Also on April 29, 2022, the Court entered an updated scheduling order that

9    confirmed that (1) fact discovery ended on April 29, 2022 except for approximately four weeks for

10   Zoosk to take discovery from Ms. Greenamyer, (2) opening expert reports were due April 29,

11   2022—i.e., simultaneous with the filing of the Fourth Amended Complaint and the end of fact

12   discovery; (3) opposition expert reports were due June 1, 2022; and (4) reply expert reports were

13   due June 8, 2022.   ECF No. 192.   Plaintiffs served their expert reports on April 29, 2022.

14   Declaration of Douglas H. Meal in Support of Defendant Zoosk, Inc.'s Opposition to Plaintiffs'

15   Motion to Strike ("Meal Decl.") ¶ 10.  Ms. Greenamyer responded to interrogatories and requests

16   for production on May 11, 2022.  Meal Decl. ¶ 12.  On May 20, 2022, Ms. Greenamyer (alone,

17   without Plaintiff Flores-Mendez) moved for class certification.  ECF No. 200.  Ms. Greenamyer

18   then sat for deposition on May 25, 2022.  Meal Decl. ¶ 15.  Zoosk served its expert reports on June

19   1, 2022 and Plaintiffs served their reply expert reports on June 8, 2022.  Meal Decl. ¶¶ 16, 18.

20   Zoosk opposed the class certification motion on June 10, 2022, ECF No. 206.  Ms. Greenamyer

21   served her reply and Plaintiffs served the Motion to Strike on June 24, 2022.  ECF Nos. 217, 214.

22   ## III.   LEGAL STANDARD

23   Federal Rule of Civil Procedure 26(a)(1)(A) requires each party to an action to disclose the

24   identity of "each individual likely to have discoverable information—along with the subjects of

25   that information—that the disclosing party may use to support its claims or defenses" as well as

26   provide "a copy—or a description by category and location—of all documents, electronically stored

27   information, and tangible things that the disclosing party has in its possession, custody, or control

28   and may use to support its claims or defenses."  Fed. R. Civ. P. 26(a)(1)(A)(i)–(ii).  The Rule also

3

requires that a party supplement its Rule 26(a)(1)(A) disclosures "if the party learns in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).  However, as this Court has emphasized, the Federal Rules "obligate parties to disclose the documents and witnesses on which they will rely, *not* documents and witnesses on which they will *not* rely."  Supp. Order to Order Setting Initial Case Management Conference in Civil Cases Before Judge Alsup ("Alsup Supp. Order") ¶ 15.  A party must "produce either a copy or a description of the documents on which it" intends to rely but is "not required to affirmatively produce [documents] during the discovery period without a request from" the opposing party.  *R&R Sails Inc. v. Ins. Co. of PA.*, 673 F.3d 1240, 1246 (9th Cir. 2012).

If Rule 26(a) or (e) requires a party to make or supplement a disclosure by providing information or identifying a witness, and the party fails to so meet that requirement, then Rule 37(c) potentially permits a court to prohibit the party from "us[ing] that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  (The court may also impose additional or alternative sanctions in a case covered by Rule 37(c), such as payment of costs, informing a jury of the failure, or "other appropriate sanctions." Fed. R. Civ. P. 37(c)(1)(C).)  Under Rule 37(c), the moving party must first demonstrate the other party's failure to disclose information or a witness "as required by Rule 26(a) or (e)," at which point the burden shifts to the responding party to demonstrate the failure was substantially justified or harmless.  Only if such a demonstration cannot be made does Rule 37(c) permit exclusion or other sanctions.  The analysis of justification and harm can take into account "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure that prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Davis v. Pinterest, Inc.*, -- F. Supp. 3d --, 2022 WL 1316566, at *8 (N.D. Cal. May 3, 2022) (Gilliam, J.) (quoting *Lanard Toys, Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010)).  Rule 37 is "disjunctive" on this point in that a sanction should not be imposed if a court makes "either a finding of good cause, or a finding that failure to timely disclose was harmless." *Kasper Smoke Kastle, LLC v. Atl. Cas. Ins. Co.*, 861 F.

4

1   App'x 122, 124 (9th Cir. 2021).

2   **IV.    ARGUMENT**

3          As to each category of evidence that it targets, the Motion to Strike fails to address the

4   preliminary question of whether the information or the witness in question was not disclosed by

5   Zoosk "as required by Rule 26(a) or (e)."  Instead, the Motion skips immediately to the question of

6   whether the evidence should be excluded based on the prejudice Plaintiffs supposedly will suffer

7   were the Court to consider that evidence in deciding Ms. Greenamyer's class certification motion.

8   Plaintiffs' failure to address this question is important, because, in point of fact, no showing has

9   been or could be made that Zoosk ever failed to provide any of the information in question or to

10  identify either of the witnesses in question "as required by Rule 26(a) or (e)."  *See* Part IV.A below.

11         Moreover, even if the Court were to find (which it should not) a Zoosk Rule 26(a) or (e)

12  failure as to certain of the information or witnesses in question, any such failure was "substantially

13  justified" and/or "harmless" within the meaning of Rule 37(c)(1), such that the Motion to Strike

14  must be denied notwithstanding any such failure.  *See* Part IV.B below.  Finally, because any

15  prejudice to Plaintiffs from any such non-disclosure can easily be cured by simply allowing

16  Plaintiffs to take now whatever discovery they would have taken earlier regarding the information

17  in question or from the witness in question, no need or reason exists to impose the drastic sanction

18  of barring Zoosk from using that information or witness in opposing Ms. Greenamyer's class

19  certification motion and thereby denying the Court access to evidence that is both beyond genuine

20  dispute and dispositive of that motion.  *See* Part IV.C below.

21         **A.    Plaintiffs Have Not Shown That Zoosk Failed to Disclose Any of the**
               **Information and Witnesses Targeted by the Motion to Strike as required by**
22             **Rule 26(a) or (e).**

23         The theory of the Motion to Strike is that all the information and both witnesses targeted by

24  the motion fall within Rule 26(a)(1)(A), such that Zoosk was required, but failed, to provide that

25  information and identify those witnesses by means of a timely Rule 26(e)(1)(A) supplementation

26  of its Rule 26(a)(1)(A) disclosures.  Mot. at 13–14.  The fatal flaw in that theory, as shown below,

27  is that Plaintiffs have not shown and cannot show that Zoosk failed to provide any of the

28  information or either of the witnesses in question "as required by" Rule 26(e).

1

### 1.   *The Garcev Declaration*

2      By means of the Garcev Declaration, Zoosk established that Ms. Greenamyer's proposed

3   23(b)(2) injunction class is uncertifiable because it seeks relief that is wholly unnecessary given

4   Zoosk's current information security posture.  ECF No. 206-8.  Plaintiffs seeks to exclude the

5   Garcev Declaration on the grounds that Zoosk purportedly failed to timely identify Mr. Garcev as

6   a witness and failed to timely provide the information contained in the Garcev Declaration.  Neither

7   is true.

8      ### i.   *Mr. Garcev Was Identified to Plaintiffs in a Timely Manner.*

9      The Garcev Declaration, as Plaintiffs correctly point out, relates to the particular data

10   security measures (the "Proposed Injunctive Measures") they are asking the Court to require of

11   Zoosk as the injunctive relief Ms. Greenamyer is seeking on behalf of herself and the putative class.

12   *See* Mot. at 9.  Plaintiffs are also correct that Mr. Garcev was added to Zoosk's Rule 26(a)

13   disclosures via a Rule 26(e) amendment on May 13, 2022.  What Plaintiffs conveniently omit,

14   however, is that the Proposed Injunctive Measures were first articulated by Plaintiffs just 14 days

15   earlier, in the April 29, 2022 Declaration of Matthew Strebe in Support of Plaintiffs' Motion for

16   Class Certification (the "Strebe Declaration," Meal Decl. Ex. F).[1]  Zoosk therefore had not

17   previously been "hiding the ball" as Plaintiffs claim—until service of the Strebe Declaration, there

18   was no ball.  It was only after receipt of the Strebe Declaration that Zoosk determined, or for that

19   matter had any ability to determine, that Mr. Garcev possessed "discoverable information . . . that

20   [Zoosk] may use to support its claims or defenses," such that Zoosk's then-existing Rule

21   26(a)(1)(A) disclosures were incomplete to the extent they did not identify him.  *See* Fed. R. Civ.

22   P. 26(a)(1)(A)(i).  As soon as Zoosk determined that Mr. Garcev possessed information on which

23   it would need to rely to defend against the injunctive relief being sought by Plaintiffs, it amended

---

[1] While the various iterations of the Complaint have asserted a claim for injunctive relief, prior to the Strebe Declaration, neither Greenamyer nor either of the other Plaintiffs had said anything about the specific measures they would ask the Court to impose on Zoosk pursuant to that injunctive relief.  *See, e.g.*, ECF No. 191 at Prayer for Relief ¶ 5 ("An award of injunctive or other equitable relief that directs Defendant to implement adequate security procedures and practices to protect customers' PII that conform to relevant federal and state guidelines and industry norms.").  Thus, until it received the Strebe Declaration Zoosk could not have known what testimony and information would be relevant to its defense against imposition of the Proposed Injunctive Measures.

its Rule 26(a)(1)(A) disclosures to include him.  That amendment fully satisfied Zoosk's Rule 26(e) supplementation obligation as to Mr. Garcev.  *See* Fed. R. Civ. P. 26(e)(1)(A) (Rule 26(a) disclosures must be amended "in a timely manner" when a party learns they are incomplete or incorrect in some material respect); *S.F. Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 734 (N.D. Cal. 2011) (Chen, J.) (noting that "timing on disclosing these witnesses and documents was substantially justified because its investigation into the elements of the case was ongoing while preparing the summary judgment motion"); *cf. Cabrera v. Google LLC*, 842 F. App'x 38, 40 (9th Cir. 2021) (finding that "Rule 26 did not require [Plaintiff] to anticipate [Defendant's] defenses and produce evidence to defeat defenses that [Defendant] had not yet asserted").  As there was no failure by Zoosk to identify Mr. Garcev "as required by Rule 26(a) or (e)," Rule 37(c)(1) by its terms can have no application to Mr. Garcev.[2]

> ## ii. *The Information in the Garcev Declaration Was Timely Disclosed.*

Plaintiffs also miss the mark in complaining that the information in the Garcev Declaration should have been disclosed in response to their past discovery requests.  Plaintiffs accurately summarize the Garcev Declaration as discussing "numerous cybersecurity measures Zoosk has put in place, will be putting in place, or is considering putting in place concerning its 'security posture,'" as of June 2022.  Mot. at 9.  However, Plaintiffs are incorrect to assert that such information was requested during discovery.  Only by ignoring the very words Plaintiffs themselves used in the discovery requests they rely upon can they try to shoehorn this information into those requests.[3]  In Interrogatory No. 12, Plaintiffs asked Zoosk to "Describe in detail any *remedial*

---

[2] Moreover, while Zoosk (appropriately) first identified Mr. Garcev on May 13, 2022 as a potential trial witness in support of its defenses pursuant to Rule 26(a)(1), Zoosk disclosed *more than a year ago* Mr. Garcev's knowledge of the information as to which he would testify (namely, Zoosk's current information security posture) when it identified him as one of five individuals "responsible for [Zoosk's] set-up, implementation, logging, and monitoring, [sic] of any computer networks or computer systems (including any cloud infrastructure)" in its Responses to Plaintiffs' First Set of Interrogatories, served on June 24, 2021.  Meal Decl. Ex. C.  Plaintiffs deposed three of the five—including one, Grant Kessler, who discussed Mr. Garcev several times in his deposition, Meal Decl. Ex. E at 41:2, 42:8, 129:18, 133:3, 133:7, 150:12, 152:5, 161:4, 166:4—and have had the ability for more than a year to depose Mr. Garcev as well.  Meal Decl. ¶ 3.  That Plaintiffs chose not to cannot be laid at Zoosk's feet.

[3] Plaintiffs' *ex post* revision of their discovery requests from what was actually requested into what they now wish had been requested is a recurrent theme in the Motion to Strike.  *See also* Part IV.A.4 *infra*.

actions undertaken by You, or others acting on Your behalf, *related to the Breach . . . .*" Meal Decl. Ex. A (emphasis added).  The Interrogatory thus makes clear that it relates to measures that Zoosk took specifically in response to the Intrusion.  The Garcev Declaration, on the other hand, does not purport to discuss measures Zoosk took in response to the Intrusion (all of which Zoosk has long ago fully disclosed, Meal Decl. Ex. C, Response to Interrogatory No. 12, but rather explains why each of the Proposed Injunctive Measures is unnecessary because of the *current state* of Zoosk's security some two and one-half years after the Intrusion and because of additional security enhancement measures already planned for the near future.  To the extent any of the current or planned Zoosk security measures discussed in the Garcev Declaration is not among the security measures disclosed by Zoosk in response to Interrogatory 12, that is simply because the measure in question was not a "remedial action" "related to the Breach" that would have been responsive to that Interrogatory.[4]

Plaintiffs equally fail in trying to read their Requests for Production as seeking the information provided in the Garcev Declaration.  First, Plaintiffs contend that information should have been provided in response to Request No. 15 which seeks documents "relating to . . . remediation."  Just as the information security measures discussed in the Garcev Declaration were not responsive to Interrogatory No. 12 because they were not "remedial actions" "related to the Breach," so too documents related to those security measures were not responsive to Request No. 15 as such documents likewise were unrelated to "remediation."  More egregiously, Plaintiffs rely on a selective misreading of Request No. 24 in contending that documents relating to the information security measures discussed in the Garcev Declaration should have been disclosed in response to that request, which purportedly sought "remediation plans."  However, what Request No. 24 actually sought was:

> *All incident reports and referenced artifacts concerning the Breach or remediation of the Breach, including the Documents supporting the incident reports, such as* investigator notes, correspondence, service desk tickets, security architectural reviews, change approvals

---

[4] The Interrogatories do not define "remediation," but according to Dictionary.com, it refers to "the correction of something bad or defective."  *See* https://www.dictionary.com/browse/remediation (last visited July 7, 2022).  This is distinct from subsequent improvements which do not respond to or seek to correct "something bad," like the Intrusion.

and change management documents, and *any remediation plans*.

Meal Decl. Ex. B.  By its express terms, then, Request No. 24 sought only remediation documents concerning "remediation of the Breach."  As the information security measures discussed in the Garcev Declaration were not related to "remediation of the Breach," documents related to those security measures were no more responsive to Request No. 24 than they were to Request No. 15.

In short, Zoosk had no obligation to disclose the information security measures discussed in the Garcev Declaration any earlier than it did because Plaintiffs never posed discovery directed to Zoosk's current and planned future security posture, which is the sole subject addressed by the Garcev Declaration[5],  and because only after Plaintiffs served the Strebe Declaration on April 29, 2022 did it become relevant to Zoosk's defense whether Zoosk already had (or would soon have) security measures in place that obviated the Proposed Injunctive Measures.[6]  For this reason alone, the Motion to Strike fails insofar as it seeks to preclude Zoosk from offering evidence as to the security measures discussed in the Garcev Declaration.

Moreover, even if Plaintiffs' discovery requests *had* sought information as to Zoosk's current and planned future security posture, Zoosk's failure to provide such information in response to such requests would at most be a failure to comply with its obligations under Rules 33 and 34, rather than a failure to meet its Rule 26(a) or 26(e) obligations.  Plaintiffs offer no evidence or even argument that Zoosk *knew*, prior to its receipt of the Strebe Declaration, that its discovery responses were purportedly rendered incomplete by their not having included the information set forth in the Garcev Declaration.  Absent such knowledge, Zoosk cannot have had any Rule 26(e) duty to supplement those discovery responses.  *See* Fed. R. Civ. P. 26(e)(1)(A) (a party must supplement

---

[5] Plaintiffs' characterization of the Garcev Declaration as not discussing Zoosk's "security policies and procedures," but rather "remediation and mitigation practices implemented (or anticipated) following the Breach," Mot. at 8, misrepresents the Garcev Declaration.  Mr. Garcev responds to Mr. Strebe's report, discusses current and planned "Zoosk controls," and does not identify any measures as remediation or mitigation relating to the Intrusion.  *See* ECF No. 206-8.

[6] As this Court has stated, the Federal Rules "obligate parties to disclose the documents and witnesses on which they will rely, *not* documents and witnesses on which they will *not* rely." Alsup Supp. Order ¶ 15.  Prior to receipt of the Strebe Report, Zoosk had no need to rely on information regarding the security controls discussed in the Garcev Declaration and Zoosk was therefore under no obligation to make any Rule 26(a)(1)(A) disclosure or Rule 26(e)(1)(A) supplementation concerning them.

prior discovery responses only "if the party learns" they are incomplete or incorrect in some material respect). And absent a Zoosk failure to provide the information set forth in the Garcev Declaration "as required by Rule 26(a) or (e)," Rule 37(c)(1) by its terms can have no application to that information—whether or not Zoosk failed to provide that information as required by Rule 33 and/or Rule 34.

### 2.   *The von Trotha Declaration*

By the von Trotha Declaration, Zoosk established that Ms. Greenamyer, the sole proposed class representative, is not a member of the putative class. ECF No. 206-9. The von Trotha Declaration thus in and of itself defeats Ms. Greenamyer's class certification motion. Desperate to stave off that certain defeat, Plaintiffs complain that Zoosk did not timely identify Ms. von Trotha as a witness and did not timely provide the information contained in the von Trotha Declaration. Both complaints miss the mark.

### i.   *Ms. von Trotha and Her Information as to Ms. Greenamyer's Class Membership Were Timely Identified to Plaintiffs Once Ms. Greenamyer Became a Plaintiff.*

The von Trotha Declaration, as Plaintiffs correctly point out, relates solely to the gating question of whether Ms. Greenamyer is in fact, as she claims, a member of the class she proposes to represent. *See* Mot. at 11–12, 17. Zoosk disclosed Ms. von Trotha, and her knowledge of the facts that refute Ms. Greenamyer's claimed class membership, to Plaintiffs on June 10, 2022, when Zoosk filed the von Trotha Declaration as part of its opposition to Plaintiff Greenamyer's class certification motion. Plaintiffs evidently contend that Ms. von Trotha and her knowledge of said facts should have been disclosed earlier than that by means of a Rule 26(e) supplementation to its Rule 26(a)(1)(A)(i) disclosures. But the record clearly shows otherwise.

Plaintiff Greenamyer did not even become a party to this case until April 29, 2022, when Plaintiffs filed their Fourth Amended Complaint, so there can be no argument that Ms. von Trotha and her information regarding Ms. Greenamyer's class membership should have been disclosed before that date.[7] In the Fourth Amended Complaint, Greenamyer alleged (falsely, it now turns

---

[7] Plaintiffs seemingly concede this point, contending only that Zoosk ought to have "raised the potential futility of Ms. Greenamyer as plaintiff in this case when she was added, and long before now." Mot. at 12 n.7. As discussed below, given that only seven weeks elapsed between the date

1    out) that she was a member of the putative class, but provided no specifics as her basis for so

2    alleging.  ECF No. 191 at ¶¶ 30–31, 48–49, 110–111.  Zoosk accordingly served discovery requests

3    seeking those specifics, which requests Ms. Greenamyer did not respond to until May 11, 2022.

4    Those responses raised questions as to the validity of Ms. Greenamyer's claim to be a member of

5    the class: whereas Zoosk had sent emails to all affected Zoosk members in June 2020 notifying

6    them that the Intrusion had impacted information they had provided to Zoosk, Greenamyer

7    produced no such email, and her interrogatory answer admitted that she first learned of the Intrusion

8    on or about May 26, 2021 when her account was blocked for security reasons.  Meal Decl. Ex. G

9    at Rog. No. 4.  Nonetheless, on May 20, 2022, Ms. Greenamyer went ahead and moved for class

10   certification, reiterating her now-known-to-be-false claim to be a member of the putative class.

11   ECF No. 200.  Zoosk accordingly went ahead and took Ms. Greenamyer's deposition on May 25,

12   2022, during which she raised still further doubts as to the veracity of her claim to be a class

13   member, by admitting that she had no memory or record of receiving an email from Zoosk notifying

14   her of the Intrusion, while claiming she that she might possibly have received such an email that

15   she deleted without reading.  Meal Decl. Ex. H at 52:23–53:9.

16        Zoosk served the von Trotha Declaration, and thereby notified Plaintiffs of Ms. von Trotha

17   and her information regarding Ms. Greenamyer's alleged class membership, on June 10, 2022.  This

18   was just 16 days after Ms. Greenamyer's deposition, just 21 days after she moved for class

19   certification, less than a month after she first responded to discovery, and just six weeks after she

20   became a party to the case.  Once Zoosk made this disclosure, Rule 26(e) by its express terms

21   relieved Zoosk of any obligation to repeat that disclosure by means of a Rule 26(e) supplement to

22   its Rule 26(a)(1)(A)(i) disclosures.  *See* Fed. R. Civ. P. 26(e)(1)(A) (no duty to supplement where

23   the additional information has been made known to the other parties in writing).  And given the

24   very short intervals between the disclosure on the one hand and the relevant case events that

25   preceded the disclosure on the other hand, that disclosure was "timely" within the meaning of Rule

26
27
28

on which Ms. Greenamyer was added (April 29, 2022) and the date on which Zoosk disclosed Ms. von Trotha and her information regarding Ms. Greenamyer's class membership (June 10, 2022), and given the significant facts regarding Ms. Greenamyer's class membership that emerged in discovery during that seven-week period, Zoosk's June 10 disclosure was clearly "timely" for purposes of Rule 26(e).

26(e)(1)(A).  This is especially so because by the time Ms. Greenamyer joined the case on April 29, fact discovery had already closed.  Thus, even if Zoosk theoretically could have filed the von Trotha Declaration somewhat before June 10, 2022 (and Plaintiffs have pointed to no reason why Zoosk should have done so), such an earlier filing would have provided Plaintiffs with no actionable information.  By any measure, then, Zoosk timely disclosed Ms. von Trotha and her information regarding Ms. Greenamyer's class membership.

> ii.     *None of the Information in the von Trotha Declaration Was Subject to an Independent Supplementation Obligation that Zoosk Had and Failed to Meet Prior to Ms. Greenamyer's Becoming a Plaintiff*

Plaintiffs also assert that the von Trotha Declaration adds "significant, never before revealed details" about the Intrusion, Mot. at 11, which information they evidently contend should have been included in a Zoosk Rule 26(e) supplementation even before Ms. Greenamyer became a plaintiff. This assertion does not withstand analysis as to any of the supposedly new information.

First, Plaintiffs complain that while Zoosk's interrogatory responses distinguish between those ███████████████████████████████████████████████████████ and those ████████████████████████████ the von Trotha Declaration adds that ████████████████████ Mot. at 11–12.  Plaintiffs make no effort to explain, however, how the failure of Zoosk's interrogatory responses to include this additional fact rendered them "materially" incomplete or incorrect such that Zoosk might have had a supplementation obligation as to that fact (*see* Fed. R. Civ. P. 26(e)(1)(A) (no supplementation obligation unless prior disclosure a party learns it is incomplete or incorrect "in some material respect")).  Nor do they explain why, if this additional fact is so "significant," they never asked Zoosk to provide that fact after Zoosk first served the interrogatory responses in question on October 8, 2021.  Meal Decl. Ex. D at Rog. Nos. 9–10.  Nor do they explain why the appropriate remedy for any untimely Zoosk disclosure of this one additional fact is exclusion of the entire von Trotha Declaration and not merely exclusion of its reference to that additional fact.

Next, Plaintiffs take issue with the von Trotha Declaration's description of the fields of information included in the accessed data, which they contend is "the first time Zoosk has revealed that information."  Mot. at 12.  But that very information, and more, has been disclosed to Plaintiffs

via Zoosk's document production.  *See* Meal Decl. Ex. J, ZOOSK00000812 at -814 (listing each data field in affected database and whether information was in plain text or encoded).  Zoosk therefore cannot have had any supplementation obligation as to this information (*see* Fed. R. Civ. P. 26(e)(1)(A) (no supplementation obligation as to information otherwise provided in discovery)), which defeats the Motion to Strike as to this information even apart from Plaintiffs' failure to show either its materiality or why they never asked Zoosk to provide it or how its nondisclosure would justify striking the entire von Trotha Declaration.

Finally, Plaintiffs complain that they are being asked to "take [Ms. von Trotha's] word for it" when she says that none of Ms. Greenamyer's data was in the data set accessed in the Intrusion.  Mot. at 12.  But that is completely untrue; Plaintiffs had the opportunity to independently verify this crucial fact for themselves.  Plaintiffs' expert Mr. Strebe was given access to a copy of the data set recovered from the dark web in late April 2022—before the end of discovery—as requested by Plaintiffs so that he could conduct analysis of it in connection with their anticipated class certification filing.  Meal Decl. ¶ 11.  That analysis easily could have included reviewing the accessed data set to see if it included Ms. Greenamyer's information, such that Plaintiffs would have known before she joined the case that Ms. Greenamyer was not actually a class member.  Plaintiffs also could have asked Mr. Strebe to verify Ms. Greenamyer's status as a class member after receiving the von Trotha declaration, as Mr. Strebe continued to have that access until late June.  Meal Decl. ¶ 11.  Plaintiffs therefore cannot claim to have been unfairly surprised by the von Trotha Declaration's disclosure that Ms. Greenamyer's data is nowhere to be found in the data set stolen in the Intrusion.  The truth of the matter is that Plaintiffs know they have no basis upon which to doubt Ms. von Trotha's "word" on this and the other facts recited in her declaration, which is why they do not seek discovery so as to test that declaration's veracity, but instead have ginned up a flimsy motion to strike the declaration entirely.[8]

---

[8] While in a footnote Plaintiffs claim certain "issues addressed by Ms. von Trotha" were the subject of several of their document requests, two of their interrogatories, and an "area of inquiry" in a nonexistent exhibit, *see* Mot. at 13 n.8, they make no effort to show how any particular information provided by Ms. von Trotha was responsive to any particular discovery request they advanced, much less how Zoosk both had and violated a Rule 26(e) supplementation obligation in regard to any such information or any such discovery request.  Nor could Plaintiffs have done so, because

3.     *The Refund Data*

By means of the Refund Data, Zoosk established, through its expert Brian Ellman, that Plaintiffs' proposed Rule 23(b)(3) damages class impermissibly includes persons who have already received full refunds of their Zoosk subscription payments and thus have no UCL or Article III standing.  ECF No. 206-5.[9]  The Refund Data therefore in and of itself defeats Ms. Greenamyer's class certification motion insofar as it seeks certification of a Rule 23(b)(3) damages class.

The Motion to Strike seeks to avoid this result by claiming that the Refund Data was not timely disclosed.  The facts show otherwise.  The Refund Data was produced by Zoosk on June 1, 2022, via a document bearing production number ZOOSK00002773, in order to satisfy Zoosk's obligation under Rule 26(a)(2)(B)(ii) to identify the facts or data Mr. Ellman considered in forming the opinions expressed by him in his expert report.  Meal Decl. ¶ 17.  This production occurred contemporaneously with the service of Mr. Ellman's report, *id.*, thus exactly meeting the timing requirements imposed by Rule 26(a)(2)(B).

Plaintiffs acknowledge that they received the Refund Data contemporaneously with the Ellman Report, but nonetheless assert that the Refund Data was provided to them "impermissibly late."  Mot. at 5–6.  They never explain why they say that, however.  Nor could they have done so, as the Refund Data had never previously been sought by any of Plaintiffs' discovery requests and thus was not at all "late"—much less "impermissibly" so—when produced on June 1, 2022.

To be sure, as Plaintiffs accurately recite, Plaintiffs had previously propounded and Zoosk had fully responded to discovery requests that asked Zoosk to identify those Zoosk users who fell within the scope of Plaintiffs' proposed class (United States users with data affected by the Intrusion that had paid for a subscription for Zoosk's services) and to provide Zoosk's records of subscription payments made by those individuals during the period from May 28, 2015 through the Intrusion.  Mot. at 5.  Those Zoosk discovery responses did not provide any of the Refund Data for

---

the truth is that they never sought discovery as to Ms. Greenamyer's class membership for the simple reason that, by the time Ms. Greenamyer joined the case, fact discovery had already closed.

[9] As reflected in the Ellman report, the Refund Data also establishes that Plaintiffs' classwide damages calculations are overstated by reason of their failure to take into account the refunds the members of the putative class have already received in regard to the subscription payments they made.  ECF No. 206-5 at ¶ 19.

14

the simple reason that those discovery requests (which are quoted at page 5 of the Motion to Strike) never requested any of the Refund Data, and instead simply asked what amounts members of the putative class had paid for their subscriptions.

Moreover, even if Plaintiffs' discovery requests could reasonably be read to call for production of the Refund Data, the first time when Zoosk could possibly be thought to have had reason to know that the Refund Data might have some relevance to the case (and that its prior discovery responses therefore theoretically might be considered "materially" incomplete by reason of not having included the Refund Data) was on April 29, 2022, when it received the report of Plaintiffs' expert Gary Olsen.  In that report, Plaintiffs for the first time revealed the methodologies they proposed to use for ascertaining class membership and calculating classwide damages, which methodologies were fundamentally flawed (for many reasons, but including) by reason of their failure to take into account the Refund Data as Mr. Ellman's report plainly shows.  Just a little over a month later, on June 1, 2022, Zoosk provided the Refund Data to Plaintiffs—a disclosure that was certainly "timely" within the meaning of Rule 26(e)(1)(A) and thus prevented Zoosk from running afoul of any Rule 26(e) supplementation obligation it might otherwise have had with regard to the Refund Data.

For all the above reasons, Rule 37(c)(1) has no possible application to the Refund Data, so the Motion to Strike must be denied insofar as it is directed to that data.[10]

### 4.   *The Disk Images*

The Disk Images █████████████████████████████

---

[10] Plaintiffs assert that the Refund Data cannot be trusted because Mr. Ellman "cannot speak to the provenance of the information and . . . did nothing to *confirm* its accuracy," Mot. at 6, and that permitting Mr. Ellman to rely on the Refund Data would require additional discovery regarding that data and additional revisions to Mr. Olsen's expert report.  This argument has nothing to do with Rule 37(c)(1) and therefore need not be considered by the Court in ruling on the Motion to Strike.  This argument also rings exceedingly hollow:  Given that Plaintiffs felt the *payment* data produced by Zoosk was sufficiently reliable for Mr. Olsen to make it the linchpin of his entire report, what basis can Plaintiffs possibly have for doubting the reliability of the *refund* data produced by Zoosk?  Once again, Plaintiffs' position is a bluff and bluster:  They make no effort to actually now take the discovery they complain was denied to them in regard to the Refund Data, because they obviously have no reason to think any such discovery would actually undermine the veracity of the Refund Data.  Instead, they ask the Court to ignore the Refund Data and thereby base its class certification decision on factual information that everybody knows is incomplete and therefore inaccurate in material respects, all for the cynical sole purpose of thereby advancing their last-gasp effort to save their class certification motion from defeat.

1 ████████████████████████████████[11]████████████████████████████████ that Zoosk's

2 expert Mahmoud El Halabi considered in preparing his report and that, accordingly, are disclosed

3 in that report pursuant to Rule 26(a)(2)(B)(2).  Mr. El Halabi did not rely upon the Disk Images in

4 reaching any of the opinions in his report[12], and Zoosk in turn did not rely on the Stroz Report in

5 opposing Ms. Greenamyer's class certification motion, so it is a bit of a mystery why so much of

6 the ink spilled in the Motion to Strike is directed to the Disk Images.  In any event, as shown below,

7 Plaintiffs have made no showing that Rule 37(c)(1) requires exclusion of the Disk Images or any

8 of the Stroz Report's references to the Disk Images.

9          For starters, the Motion to Strike is improper procedurally insofar as it addresses the Disk

10 Images.  Zoosk has not submitted the Stroz Report to the Court in support of its opposition to Ms.

11 Greenamyer's motion for class certification or for any other purpose.  Indeed, the only time the

12 Stroz Report has been placed before the Court is as an exhibit to the declaration Plaintiffs submitted

13 in support of the Motion to Strike.  That alone renders the Motion to Strike improper and

14 necessitates its denial, insofar as it relates to the Disk Images and the Stroz Report's references to

15 the Disk Images.

16          As to the merits of this aspect of the Motion to Strike, Plaintiffs' complaint is that Mr. El

17 Halabi had access to information Plaintiffs had requested in discovery but had been told no longer

18 existed, leaving them "gob smacked."  Mot. at 7.  This is patently false.  First, Plaintiffs never

19 requested the Disk Images during the fact discovery period—notwithstanding the long list of

20 requests Plaintiffs now point to as purportedly seeking them.  Second, ████████████ that

21 Mr. Callahan testified was destroyed is something different entirely from the Disk Images, so at no

22 point did Zoosk tell Plaintiffs that the Disk Images had been destroyed.

23          As to the first point, Plaintiffs list six Request for Production and contend that the Disk

24 Images are within the scope of each, but that contention does not survive even the lightest scrutiny.

25 ────────────────
26 [11]  *See* AWS User Guide for Linux Instances: Amazon Machine Images,
    https://docs.aws.amazon.com/AWSEC2/latest/UserGuide/AMIs.html (last visited July 7, 2022).

27 [12]  Specifically, Mr. El Halabi testified that he made ██████████████████████████████
    ████████████████████████████████████████████████████████████ Ex. 11 to
28 Declaration of Patrick Barthle in Support of the Motion to Strike ("Barthle Decl.") at 121:9–19.

- RFP No. 5 seeks "Documents sufficient to identify the structure, architecture, and interconnectivity" of certain systems "including maps, diagrams, and charts including those portions of the computer system." A disk image is not a map, diagram, or chart, nor is it a document that permits the identification of the structure, architecture or interconnectivity of the systems.

- RFP No. 12 seeks "Zoosk system logs relating to the Breach," but a disk image is not a log.

- RFP No. 24 seeks "All incident reports and referenced artifacts concerning the Breach or remediation of the Breach . . . ." Other than the Stroz Report, there was no incident report generated regarding the Intrusion and therefore necessarily no "referenced artifacts" in any such other report. As for the Stroz Report, it *does* reference the Disk Images, so Plaintiffs could have obtained discovery of the Disk Images pursuant to Rule 26(b)(4)(C)(ii) by simply making a request for them prior to the expiration of expert discovery on June 24, 2022. Naturally, because Plaintiffs have no interest in actually obtaining any of the discovery they complain so bitterly about having been denied to them, Plaintiffs never made any such request.

- RFP No. 27 seeks "Documents concerning any investigations, assessments, or analyses undertaken . . . concerning the Breach . . . ." As above, this does not ask for disk images.

- RFP No. 28 seeks "All event logs prepared or reviewed as part of any investigation of the Breach." Just as a disk image is not a system log responsive to RFP NO. 12, it is also not an event log.

- RFP No. 29 seeks "Documents concerning any and all investigations, assessments, or reports . . . regarding the PII compromised in the Breach . . . ." The Disc Images do not contain PII; do not reference any investigation of the Intrusion; and were not reviewed in the course of any investigation of the Intrusion other than the investigation conducted by Mr. El Halabi, in connection with which they were timely disclosed.

Plaintiffs' strained effort to fit the Disk Images into the requests they actually made in the hopes of fixing those requests with the benefit of hindsight is a paradigmatic example of the familiar phenomenon where "counsel draft inartful requests, which fail to call for adverse evidence[, after which] [t]hey eventually (wrongly) blame the responder for not disclosing [the evidence] voluntarily." Alsup Supp. Order ¶ 15.

As to the second point, namely Plaintiffs' assertion that Zoosk had "previously unequivocally indicated [the Disk Images] had been deleted," leaving Plaintiffs "gob smacked" by Mr. El Halabi's acknowledgment of their continuing existence, Mot. at 7, Plaintiffs are badly confused. They are correct in citing Zoosk's statement in its interrogatory responses that "Zoosk's information security team deleted ███████████████████ on February 26, 2020." Mot. at 6. Plaintiffs also accurately cite the Stroz Report's statement that Mr. El Halabi reviewed

17

the ███████████████████████████████████████████████████████████████████████

*Id.* at 7.  However, where Plaintiffs err is in assuming that the ███████████ and the Disk Images

are the same thing.  Mr. El Halabi testified regarding the ████████████████ on the one

hand and the two Disk Images ████████████████████████████ on the other.

███████████████████████████████████████████████████████████████████████

███████ *See* Barthle Decl. Ex. 11 at 88:15–18, 122:5–22.  Therefore, Zoosk's statement that the

██████████████████████████ in no way meant that the Disk Images had been destroyed.

In short, the Motion to Strike makes no showing of any delay by Zoosk in disclosing the

Disk Images, much less a delay so egregious as to represent a failure by Zoosk to provide

information "as required by Rule 26(a) or (e)" and thereby potentially bring Rule 37(c)(1) into play

as to the Disk Images.  To the contrary, the only point the Motion to Strike truly establishes as to

the Disk Images is that Plaintiffs have no genuine interest in obtaining discovery of them.  For this

reason alone, the Motion to Strike should be denied as to the Disk Images.

**B.     Any Zoosk Failure to Disclose Any Witnesses or Information "as Required by Rule 26(a) or (e)" Was Substantially Justified and/or Harmless.**

Because, as discussed above, Plaintiffs have not shown that Zoosk failed to disclose "as

required by Rule 26(a) or (e)" any of the information or either of the witnesses targeted by the

Motion to Strike, Rule 37(c)(1) by its express terms can have no application to that information or

those witnesses.  The Court's inquiry should end there.  However, even if Plaintiffs *had* shown a

Rule 26(a) or (e) failure by Zoosk as to certain of the information and witnesses in question, even

then Rule 37(c)(1) could not be invoked as to any such information or witness if Zoosk's disclosure

failure "was substantially justified or harmless."  Fed. R. Civ. P. 37(c)(1).

As the Ninth Circuit has stated, the analysis of substantial justification and harm under Rule

37(c)(1) includes consideration of "(1) prejudice or surprise to the party against whom the evidence

is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the

trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence."  *Lanard Toys*

*Ltd.*, 375 F. App'x at 713.  This Court has applied a slightly different standard, which nonetheless

yields the same results.  *See Martel v. Hearst Commc'ns, Inc.*, 468 F. Supp. 3d 1212, 1219 (N.D.

Cal. 2020) (Alsup, J.) (adding fifth factor of "importance of the evidence").  Questions of prejudice and surprise, ability to cure, and potential for disruption go to harm, while substantial justification turns on the explanation of the nondisclosure.  Either substantial justification or lack of harm suffices to prevent application of Rule 37(c)(1).  *Kasper Smoke Kastle, LLC*, 861 F. App'x at 124.  Here, as shown below, any Zoosk Rule 26(e) disclosure failure as to any of the information and witnesses at issue was *both* "substantially" justified and harmless, thus precluding imposition of the sanctions Plaintiffs seek under Rule 37(c)(1).

> 1.    ***Any Zoosk Rule 26(a) or (e) Failure Was Substantially Justified.***

Where a party has failed to provide information or identify a witness "as required by" Rule 26(a) or Rule 26(e)—which Zoosk has not—the information or witness in question should nevertheless not be excluded if the party's failure was substantially justified, i.e., if the party can adequately explain the failure and demonstrate that it was not the product of bad faith or willfulness.  *See Stonefire Grill, Inc. v. FGF Brands, Inc*., 2013 WL 12126773, at *6 (C.D. Cal. June 27, 2013) (denying motion to exclude expert testimony given "there [was] no evidence of bad faith in [d]efendant's decision to designate [the expert] as an expert witness after [the] deadline" where Plaintiff did not specify its theory of damages until after the expert disclosure deadline).    As to each of the four categories at issue here, any Zoosk Rule 26(a) or (e) failure as to the witness or information in question has a sound explanation, and there is no evidence of any bad faith or willfulness on Zoosk's part in connection with the timing of its disclosure of such witness or information, so no Rule 37(c)(1) sanction would be warranted even had there been a Rule 26(a) or (e) failure on Zoosk's part.

First, as to the Garcev Declaration, Zoosk had good reason for not identifying Mr. Garcev as a witness or disclosing the contents of the Garcev Declaration prior to the close of discovery[13]— Zoosk simply did not then know, or have any way of knowing, that Mr. Garcev's testimony on the matters discussed in the Garcev Declaration would be relevant to Zoosk's defense against Plaintiffs' injunction claim.  Plaintiffs, via their expert Mr. Strebe, did not articulate the Proposed

---

[13] As previously noted, Mr. Garcev *was* identified as a knowledgeable individual in Zoosk's interrogatory responses.  *See* note 2, *supra*.

1    Injunctive Measures discussed in the Garcev Declaration until April 29, 2022, the same day that

2    discovery closed.  Just two weeks later, Zoosk supplemented its initial disclosures pursuant to Rule

3    26(e) to identify Mr. Garcev as a potential witness, and on June 10 Zoosk served the Garcev

4    Declaration.  There is nothing in the record to suggest that Zoosk held back either identifying Mr.

5    Garcev as a witness or providing the information set forth in the Garcev Declaration in order to

6    gain some sort of unfair advantage over Plaintiffs or for any other bad faith reason.  Accordingly,

7    even if the circumstances surrounding the Garcev Declaration somehow constituted a Rule 26(a)

8    or (e) failure on Zoosk's part (which they did not), that failure was substantially justified.

9         Second, as to the von Trotha Declaration, Zoosk likewise had good reason for not

10   identifying Ms. von Trotha as a witness or disclosing her information as to Ms. Greenamyer's non-

11   membership in the class prior to the close of discovery—during the fact discovery period Ms.

12   Greenamyer was not even a party to the case, so Ms. von Trotha's information as to her class

13   membership was utterly irrelevant.  The relevance of Ms. von Trotha's information as to Ms.

14   Greenamyer's class membership only became obvious after Ms. Greenamyer joined the case on

15   April 29, 2022; failed on May 11, 2022 to produce documents establishing that Zoosk had notified

16   her of the Intrusion; and testified at deposition on May 25, 2022 that she first learned of the Intrusion

17   in 2021 and could not say whether she might have received notice of the Intrusion from Zoosk a

18   year earlier.  On June 10, 2022, just sixteen days after Ms. Greenamyer's deposition, Zoosk served

19   the von Trotha Declaration.  There is nothing in the record to suggest that Zoosk held back either

20   identifying Ms. von Trotha as a witness or providing the information set forth in the von Trotha

21   Declaration in order to gain some sort of unfair advantage over Plaintiffs or for any other bad faith

22   reason.  Accordingly, even if the circumstances surrounding the von Trotha Declaration somehow

23   constituted a Rule 26(a) or (e) failure on Zoosk's part (which they did not), that failure was

24   substantially justified.

25        Third, as to the Refund Data and the Disk Images, Zoosk had good reason for not producing

26   this information in response to Plaintiffs' interrogatories and document requests—read reasonably,

27   those discovery requests did not ask for either the Refund Data or the Disk Images to be produced.

28   As to the relevance of this information, the Disk Images have no apparent relevance to any issue in

1    the case, and the relevance of the Refund Data only became clear when, on April 29, 2022,

2    Plaintiffs' damages expert's theory of how to establish class membership and classwide damages—

3    including the fatal flaws in that theory by reason of its failure to account for the Refund Data—was

4    revealed for the first time.  On June 1, 2022—barely a month later—Zoosk produced the Refund

5    Data contemporaneously with submitting the Ellman Report.  There is nothing in the record to

6    suggest that Zoosk held back either the Refund Data or the Disk Images in order to gain some sort

7    of unfair advantage over Plaintiffs or for any other bad faith reason.  Accordingly, even if the

8    circumstances surrounding the Refund Data and/or the Disk Images somehow constituted a Rule

9    26(a) or (e) failure on Zoosk's part (which they did not), that failure was substantially justified.

10            2.      ***Any Zoosk Rule 26(a) or (e) Failure Was Harmless.***

11           The harm analysis called for by Rule 37(c)(1) takes into account prejudice and surprise, the

12    potential for such prejudice to be cured, and the potential disruption of trial.  *Lanard Toys Ltd.*, 375

13    F. App'x at 713.  If the Court even reaches the harm analysis in regard to any of the information

14    and witnesses targeted by the Motion to Strike, it should conclude Plaintiffs suffered no harm

15    sufficient to justify the exclusionary sanction they seek.  Indeed, the cases cited by Plaintiffs

16    demonstrate that only egregious failures that cause incurable harm are enough to justify exclusion

17    under Rule 37(c)(1), which failures are a far cry from Zoosk's supposed Rule 26(a) and (e) failures

18    here and any harm that has been shown to have flowed from those supposed failures.

19           *Bresler v. Wilmington Trust Co.*, one of Plaintiffs' cited cases, involved the question of

20    whether a trial court erred in allowing an expert to present a previously undisclosed theory of

21    damages at trial.  855 F.3d 178 (4th Cir. 2017).  Even though the new evidence was not disclosed

22    until *trial had already begun*, the court found the nondisclosure harmless because the opposing

23    party had received a spreadsheet outlining the calculation two months before trial and the expert

24    then updated his analysis based on evidence admitted during the trial. Any surprise was found to

25    be "minimal" and "inconsequential," rendering the "vital" evidence properly admitted.  *Id.* at 193–

26    94.  The "timing [did not affect the party's] ability to conduct its defense in any material respect."

27    *Id.* at 194.  Plaintiffs also cite *BWP Media USA Inc. v. Urbanity LLC*, 696 F. App'x 795 (9th Cir.

28    2017), where the Court found, not surprisingly, that BWP (which had produced no documents in

21

1  response to discovery requests) should have supplemented its disclosures rather than falsely

2  confirm that it was relying only on documents attached to its complaint and then submit new

3  evidence with its motion for summary judgment just four weeks before trial. *Id.* at 797. This, the

4  district court found, harmed the defendant by depriving the defendant the evidence upon which

5  BWP relied to prove its claim until the deadline for dispositive motions, which eliminated any

6  ability of the defendant to conduct discovery or mount a defense. *Id.* (citing *BWP Media USA Inc.*

7  *v. Rich Kids Clothing Co., LLC*, 2015 WL 347197, at *5 (W.D. Wash. Jan. 23, 2015)).[14]

8      Comparing the facts here to those in *BWP Media USA*, where the exclusion was justified

9  based on deception, and to those in *Bresler*, where evidence offered for the first time at trial was

10  admissible because the other party had sufficient information to plan ahead, it is obvious that any

11  supposed Zoosk Rule 26(a) or (e) failure was harmless for purposes of Rule 37(c)(1). In essence,

12  as to all the information and witnesses targeted by the Motion to Strike, Plaintiffs claim Zoosk's

13  supposed Rule 26(a) or (e) failure denied them an opportunity to take discovery as to the

14  information or witness in question. *See, e.g.*, Mot. at 16. Plaintiffs are wrong on each point:

- ***Garcev Declaration***. Mr. Garcev and the information in the Garcev Declaration were *irrelevant* prior to April 29, 2022, when Plaintiffs first revealed the Proposed Injunctive Measures. By April 29, however, fact discovery had already closed. Thus, even if the Garcev Declaration had been submitted the very day the Proposed Injunctive Relief was proposed, Plaintiffs would have had no ability to take discovery of Mr. Garcev or as to the facts in the Garcev Declaration. The fact that Zoosk did not identify Mr. Garcev as a witness until May 13 and did not serve the Garcev Declaration until June 10 thus did not deprive Plaintiffs of any discovery they otherwise would have been able to take. Moreover, Plaintiffs had months and months, prior to the close of fact discovery, to take discovery on the general subject of Zoosk's *current* information security posture had they wanted to do so; their failure to obtain any such discovery resulted from their failure to request it, not Zoosk's failure to provide it.

- ***von Trotha Declaration.*** Ms. von Trotha and her information as to Ms. Greenamyer's class membership were *irrelevant* prior to April 29, 2022, when Ms. Greenamyer first joined the case. By April 29, however, fact discovery had already closed. Thus, even if the von Trotha Declaration had been submitted the very day Ms. Greenamyer joined the case, Plaintiffs would have had no ability to take discovery of Mr. von Trotha or her

[14] *See also Feamster v. Gaco W. LLC*, 2021 WL 5494277, at *1 (N.D. Cal. Nov. 23, 2021) (Gilliam, J.) (granting motion in limine to exclude experts "whose opinions were never properly disclosed, and who Defendant never had the opportunity to depose regarding those opinions" because no expert reports were ever served); *Power Integrations, Inc. v. ON Semiconductor Corp.*, 396 F. Supp. 3d 851, 888 (N.D. Cal. 2019) (Freeman, J.) (excluding "foundational document to ON's theory of infringement" where the "Court can only assume bad faith" in ON's production after plaintiff filed for summary judgment, which "willful failure has severely prejudiced" plaintiff and time does not remain before trial for sufficient discovery).

22

information regarding Ms. Greenamyer's class membership.  That Zoosk did not serve the von Trotha Declaration until June 10 thus did not deprive Plaintiffs of any discovery they otherwise would have been able to take.  Moreover, as discussed in Part IV.A.2.ii above, prior to the close of fact discovery, Plaintiffs had already received much of the information provided in the von Trotha declaration, including, notably, the copy of the data set accessed in the Intrusion, in which Ms. Greenamyer's information is nowhere to be found, confirming that she is not a class member—so the timing of the von Trotha Declaration in no way hindered Plaintiffs' discovery efforts as to *that* information.

- ***Refund Data and Disk Images.***  The Disk Images have no seeming relevance to this case, and the Refund Data did not become relevant until April 29, 2022, when Plaintiffs' damages expert submitted his report.  While fact discovery had already closed by April 29, both the Refund Data and the Disk Images were disclosed in the expert reports Zoosk submitted on June 1, 2022, so Plaintiffs had until the close of *expert* discovery on June 24 to take discovery as to the Refund Data and the Disk Images.  Plaintiffs took no such discovery, however—not because they couldn't, but rather because they had no need to do so:  The Disk Images are irrelevant (so Plaintiffs never even asked for copies of them), and the Refund Data was incorporated into the rebuttal expert report that Plaintiffs' damages expert submitted just seven days after the Refund Data was provided.

In short, like in *Bresler*, any surprise to Plaintiffs from Zoosk's supposed Rule 26(a) and (e) failures was "minimal" and "inconsequential" or, in the case of the Disk Images, entirely mistaken.  Trial is currently set to begin on October 17, 2022, more than three months from now, and more than four months from when all of the information and witnesses targeted by the Motion to Strike unquestionably had been fully disclosed by Zoosk, leaving plenty of time for Plaintiffs to cure any genuine surprise or prejudice by conducting limited additional discovery with little or no disruption of the trial schedule, and certainly no disruption of the trial itself.  This is simply not a case of a party dropping a bombshell at summary judgment or on the eve of or during trial.  Rather, to the extent a supposed Zoosk Rule 26(a) or (e) failure actually denied Plaintiffs discovery they otherwise could have taken (which *has not* been shown, as discussed above), that harm could be easily cured within the time remaining in the case schedule by simply allowing Plaintiffs to take the very discovery they claim to have been wrongly denied.  Even in that event, then, any such Zoosk failure was plainly "harmless" under Rule 37(c)(1).

### C. <u>An Exclusionary Sanction Would Not Be Appropriate Where Lesser Relief Would Be Sufficient and Where the Exclusion Would Allow Plaintiffs to Continue Their Pretense That the Class Is Certifiable</u>

Plaintiffs seek as relief for Zoosk's alleged Rule 26(a) and (e) failures an *in toto* exclusion

of the Garcev Declaration, the von Trotha Declaration, the Refund Data, and the Disk Images—breathlessly contending that no other relief would be sufficient.  While the Motion to Strike demonstrates no reason to grant Plaintiffs *any* Rule 37(c)(1) relief in regard to the witnesses and information that it targets, in a case where Rule 37(c)(1) relief *is* appropriate Rule 37(c) gives a court substantial discretion to fashion an appropriate remedy for the Rule 26(a) or (e) failure before it, including but not limited to, *and not necessarily*, exclusion of the witness or information to which the failure relates.  Specifically, the Rule states that a court may, "[i]n addition to *or instead of*" excluding evidence, award expenses incurred as a result, instruct the jury as to the nondisclosure, or "impose other appropriate sanctions."  Fed. R. Civ. P. 37(c)(1) (emphasis added).

Here, there are several alternatives to the wholesale evidentiary exclusions sought by Plaintiffs.  For example, the Court could order limited additional discovery into the issues discussed in the von Trotha and Garcev Declarations, production of copies of the Disk Images, and/or production of additional discovery as to the Refund Data.  While Plaintiffs argue that such relief would not be sufficient because they would purportedly need "a full-scale re-opening of discovery—fact and expert," the facts belie that assertion.  For instance, Plaintiffs' damages expert was able to revise his Expert Report to incorporate the Refund Data a mere seven days after Zoosk provided that data.  *See* Meal Decl. Ex. I.  Any further discovery to confirm the accuracy of that data would likewise add minimal time.  As for the von Trotha and Garcev Declarations, Plaintiffs have pointed to nothing in either declaration that they have a good faith basis for challenging (indeed, that is precisely why they desperately want to have those declarations excluded), so any discovery as to those declarations would be minimal, if Plaintiffs were to bother taking it at all.

It is true that, as Plaintiffs point out, this "Court has already indulged the parties by extending the deadlines," but the primary drivers for those extensions have been global circumstances beyond the parties' control (including the difficulties of conducting depositions in Germany during a pandemic) and Plaintiffs' own ongoing inability to identify a proper and adequate class representative with valid claims despite having filed five complaints in the two years since this case was initiated.  Neither of those is a valid basis for Plaintiffs' contention that the Court should not countenance any deadline extensions necessary to allow them the very discovery

they claim to have been denied by Zoosk's supposed Rule 26(a) and (e) failures.  The reality is that Plaintiffs do not want the Court to provide time for additional discovery because they do not want to do any such discovery—they see the writing on the wall and the inevitable futility of any effort to challenge via discovery the incontrovertible facts set forth in the Garcev Declaration, the von Trotha Declaration, and the Refund Data, which facts establish that Plaintiff Greenamyer's class certification motion is doomed.

So, instead, Plaintiffs have gone all-in on the all-or-nothing approach of demanding an *in toto* exclusion of the Garcev Declaration, the von Trotha Declaration, the Disk Images, and the Refund Data.  Such an exclusion would be utterly unjust, as it would create the possibility of this action moving forward based on three known fallacies that go to the heart of the case: first, it would allow Plaintiffs to continue their pretense that Ms. Greenamyer is a class member, even though everyone knows she is not; second, it would allow Plaintiffs to continue their pretense that Zoosk's information security posture is no different today than it was two years ago, when everyone knows that posture has changed substantially since then; and third, it would allow Plaintiffs to continue their pretense that none of the members of the putative class has already received a full refund for his or her Zoosk subscription, when everyone knows that many of them have already been so refunded.  How can it possibly be right to allow Plaintiffs to take this action forward based on these known fallacies?  The answer: it cannot be right for that to happen, and Plaintiffs have shown no good reason in law or equity as to why they should be allowed to cause that to happen.  In no event, then, should the Court grant the exclusionary order Plaintiffs seek.

## V.    CONCLUSION

For the foregoing reasons, Zoosk respectfully requests the Court deny the Motion to Strike.

Dated: July 8, 2022                                        Respectfully submitted,

                                                           ORRICK, HERRINGTON & SUTCLIFFE LLP

                                                           By:        */s/ Douglas H. Meal*
                                                                      DOUGLAS H. MEAL
                                                                      Attorneys for Defendant
                                                                      Zoosk, Inc.