1  **ORRICK, HERRINGTON & SUTCLIFFE LLP**
   DOUGLAS H. MEAL (*admitted pro hac vice*)
2  dmeal@orrick.com
   REBECCA HARLOW (STATE BAR NO. 281931)
3  rharlow@orrick.com
   MATTHEW D. LABRIE (*admitted pro hac vice*)
4  mlabrie@orrick.com
   The Orrick Building
5  405 Howard Street
   San Francisco, CA  94105-2669
6  Telephone:    +1 415 773 5700
   Facsimile:    +1 415 773 5759
7
   Attorneys for Defendant
8  Zoosk, Inc.

9

                    UNITED STATES DISTRICT COURT
10
                   NORTHERN DISTRICT OF CALIFORNIA
11

12
   JUAN FLORES-MENDEZ, an individual and       Case No. 3:20-cv-4929-WHA
13 TRACY GREENAMYER, an individual, and
   on behalf of classes of similarly situated   **DEFENDANT ZOOSK INC.'S**
14 individuals,                                 **MEMORANDUM IN SUPPORT OF**
                                                **MOTION FOR SUMMARY**
15              Plaintiffs,                      **JUDGMENT**

16       v.                                     Date:      Thursday September 15, 2022
                                                Time:      8:00 a.m.
17 ZOOSK, INC., a Delaware corporation,         Judge:     Hon. William H. Alsup
                                                Trial Date: October 17, 2022
18              Defendant.                       Date Action Filed: July 22, 2020

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................ 1

II.  SUMMARY OF MATERIAL FACTS .................................................................... 1

III.  PROCEDURAL BACKGROUND ........................................................................... 4

IV.  LEGAL STANDARD ............................................................................................... 4

V.  ARGUMENT ............................................................................................................ 5

    A.  Zoosk Is Entitled to Summary Judgment on Greenamyer's Negligence Claim ...... 6

        1.  Greenamyer Cannot Prove That the Intrusion Was the Proximate Cause of Any Injury She Claims to Have Suffered .................................... 6

        2.  Greenamyer Has Not Claimed Any Damages Recoverable in Negligence ........................................................................................................ 8

        3.  Greenamyer Cannot Establish That Zoosk Owed Her a Duty to Protect Her Data ........................................................................................................ 9

        4.  Greenamyer Cannot Establish That Zoosk Violated Any Duty Owed to Her in Negligence Because She Cannot Establish the Standard of Care Required to Meet That Duty or a Failure by Zoosk to Meet That Standard of Care ....................................................................................... 12

    B.  Zoosk Is Entitled to Summary Judgment on Greenamyer's UCL Claim .............. 17

        1.  Greenamyer's Calculation of Her Alleged "UCL Loss" Has No Admissible Evidentiary Support ................................................................. 17

        2.  Greenamyer Cannot Establish That She Relied Upon Any Misrepresentation by Zoosk and Thus Will Not Be Able to Prove That Zoosk's Purported Unfair Act Harmed Her ................................................. 18

        3.  Greenamyer Cannot Prove That Zoosk Misrepresented the Security Measures It Had in Place for Her User Account Record. ......................... 19

    C.  Zoosk Is Entitled to Summary Judgment on Flores-Mendez's Negligence Claim ........................................................................................................................ 19

        1.  Flores-Mendez, Like Greenamyer, Cannot Prove Either That Zoosk Owed Him a Duty in Negligence or That Zoosk Failed to Meet the Standard of Care ....................................................................................... 19

        2.  Flores-Mendez Has Claimed No Damages Actionable in Negligence ...... 20

        3.  The Economic Loss Doctrine Precludes Recovery in Negligence of the Damages Claimed by Flores-Mendez ........................................................ 22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

        4.     The Terms of Use Preclude Recovery of Consequential Damages in Negligence ............................................................................................. 23

    D.    Zoosk Is Entitled to Summary Judgment on Flores-Mendez's UCL Claim .......... 24

VI.    CONCLUSION ............................................................................................................. 25

1

TABLE OF AUTHORITIES

**Cases**

2

3

*Adkins v. Facebook, Inc.*,
    424 F. Supp. 3d 686 (N.D. Cal. 2019) ....................................................................... 20

4

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ...................................................................................................... 5

5

*Anthony v. Kelsey-Hayes Co.*,
    25 Cal. App. 3d 442 (1972) ......................................................................................... 20

6

7

*Braverman v. BMW of North America, LLC*,
    No. SACV1600966TJHPJWX, 2021 WL 1020408 (C.D. Cal. Mar. 17, 2021) ........ 13

8

*Brown v. USA Taekwondo*,
    11 Cal. 5th 204 (2021) ...................................................................................... 9, 10, 11

9

10

*Castillo v. Seagate Tech., LLC*,
    No. 16-cv-01958-RS, 2016 WL 9280242 (N.D. Cal Sept. 14, 2016) ........................ 20

11

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .................................................................................................. 4, 5

12

13

*Chinese Hospital Association v. Jacobs Engineering Group, Inc.*,
    No. 18-cv-05403-JSC, 2019 WL 6050758 (N.D. Cal. Nov. 15, 2019) ................ 23, 24

14

*Chowning v. Kohl's Department Stores, Inc.*,
    735 F. App'x. 924 (9th Cir. 2018) .............................................................................. 17

15

16

*City of Vista v. Robert Thomas Securities, Inc.*,
    84 Cal. App. 4th 882 (2000) ....................................................................................... 21

17

*Corales v. Bennett*,
    567 F.3d 554 (9th Cir. 2009) ............................................................................. 6, 9, 19

18

19

*Daubert v. Merrell Dow Pharmaceutical, Inc.*,
    509 U.S. 579 (1993) .................................................................................................... 13

20

*Dent v. National Football League*,
    384 F. Supp. 3d 1022 (N.D. Cal. 2019) ..................................................................... 16

21

22

*Diaz v. Intuit, Inc.*,
    No. 15-cv-1778-EJD, 2018 WL 2215790 (N.D. Cal. May 15, 2018) ........................ 10

23

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
    No. 316CV00014GPCBLM, 2016 WL 6523428 (S.D. Cal. Nov. 3, 2016) ............... 22

24

*Eid v. Alaska Airlines, Inc.*,
    621 F.3d 858 (9th Cir. 2010) ...................................................................................... 12

25

26

*Elsayed v. Maserati North America, Inc.*,
    215 F. Supp. 3d 949 (C.D. Cal. 2016) ....................................................................... 11

27

28

*Fagerquist v. Western Sun Aviation, Inc.*,
  191 Cal. App. 3d 709 (1987)................................................................................. 17

*Fieldstone Co. v. Briggs Plumbing Products, Inc.*,
  54 Cal. App. 4th 357 (1997)................................................................................. 11

*Forbes v. Wells Fargo Bank, N.A.*,
  420 F. Supp. 2d 1018 (D. Minn. 2006) .................................................................. 21

*Galen v. County of Los Angeles*,
  477 F.3d 652 (9th Cir. 2007).................................................................................... 5

*Howard v. Omni Hotels Management Corp.*,
  203 Cal. App. 4th 403 (2012)................................................................................ 13

*Huynh v. Quora, Inc.*,
  508 F. Supp. 3d 633 (N.D. Cal. 2020) ................................................................ 6, 7

*In re Anthem Inc. Data Breach Litigation*,
  No. 15-md-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016) ................... 24

*In re Glumetza Antitrust Litigation*,
  Nos. C 19-05822 WHA *et al.*, 2021 WL 3773621 (N.D. Cal. Aug. 25, 2021)................... 13, 15

*In re Sonic Corp. Customer Data Security Breach Litigation (Financial Institutions)*,
  No. 17-MD-2807, 2020 WL 3577341 (N.D. Ohio July 1, 2020) ............................. 17

*In re Sony Gaming Networks & Customer Data Security Breach Litigation*,
  903 F. Supp. 2d 942 (S.D. Cal. 2012) ................................................................... 22

*In re Sony Gaming Networks & Customer Data Security Breach Litigation*,
  996 F. Supp. 2d 942 (S.D. Cal. 2014) ................................................................. 7, 11

*In re Tobacco Cases II*,
  240 Cal. App. 4th 779 (2015)................................................................................ 18

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ......................................................................................... 18

*Iolab Corp. v. Seaboard Surety Co.*,
  15 F.3d 1500 (9th Cir. 1994).................................................................................... 7

*Issakhani v. Shadow Glen Homeowners' Association*,
  63 Cal. App. 5th 917 (2021)............................................................................. 12, 16

*Ivanoff v. Bank of America, N.A.*,
  9 Cal. App. 5th 719 (2017)...................................................................................... 6

*Kalitta Air, LLC v. Central Texas Airborne Systems, Inc.*,
  315 F. App'x 603 (9th Cir. 2008) ......................................................................... 22

*Kamerik v. Depuy Orthopaedics, Inc.*,
  No. CV1106920MMMMANX, 2013 WL 12322041 (C.D. Cal. Jan. 28, 2013) ............... 12, 13

*LabMD, Inc. v. FTC*,
   894 F.3d 1221 (11th Cir. 2018) ............................................................................. 17

*Loube v. Loube*,
   64 Cal. App. 4th 421 (1998) ..................................................................................... 8

*Magana v. Commonwealth of North Mariana Islands*,
   107 F.3d 1436 (9th Cir. 1997) ................................................................................... 5

*Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) .................................................................................................. 5

*Miller v. Los Angeles County Flood Control District*,
   8 Cal. 3d 689 (1973) ............................................................................................... 12

*Mishiyev v. Alphabet, Inc.*,
   444 F. Supp. 3d 1154 (N.D. Cal. 2020) ..................................................................... 6

*National Union Fire Insurance Co. of Pittsburgh v. Argonaut Insurance Co.*,
   701 F.2d 95 (9th Cir. 1983) ....................................................................................... 5

*Nissan Fire & Marine Insurance Co., Ltd. v. Fritz Companies, Inc.*,
   210 F.3d 1099 (9th Cir. 2000) ............................................................................... 5, 8

*Osborn v. Irwin Memorial Blood Bank*,
   5 Cal. App. 4th 234 (1992) ..................................................................................... 14

*Primiano v. Cook*,
   598 F.3d 558 (9th Cir. 2010) ................................................................................... 13

*Ramirez v. Nelson*,
   44 Cal. 4th 908 (2008) ............................................................................................ 17

*Regents of the University of California v. Superior Court*,
   4 Cal. 5th 607 (2018) .............................................................................................. 10

*See In re iPhone Application Litigation*,
   6 F. Supp. 3d 1004 (N.D. Cal. 2013) ...................................................................... 19

*Sheen v. Wells Fargo Bank, N.A.*,
   12 Cal. 5th 905 (2022) ............................................................................................ 22

*Siegal v. Westin St. Francis Limited Partnership*,
   No. C-95-1442 MMC, 1996 WL 524378 (N.D. Cal. Sept. 9, 1996) ...................... 13

*Silverpop Systems, Inc. v. Leading Market Technologies, Inc.*,
   641 F. App'x 849 (11th Cir. 2016) .......................................................................... 15

*Steinle v. United States*,
   17 F.4th 819 (9th Cir. 2021) ................................................................................. 6, 7

*Swafford v. International Business Machines Corp.*,
   408 F. Supp. 3d 1131 (N.D. Cal. 2019) .................................................................... 5

*Torres v. Taser International, Inc.*,
   277 F. App'x 684 (9th Cir. 2008) ........................................................................... 12

*Tourgeman v. Nelson & Kennard*,
   900 F.3d 1105 (9th Cir. 2018) ................................................................................ 22

**Statutes**

California Business & Professions Code § 17204 ......................................................... 18

California Civil Code § 1798.81.5 ............................................................................... 17

California Evidence Code § 669 ................................................................................... 16

**Rules**

Federal Rule of Civil Procedure 56 ............................................................................... 4

I.      **INTRODUCTION**

The original plaintiffs initiated this case more than two years ago, claiming that they and millions of other users of Defendant Zoosk Inc.'s ("Zoosk") dating app were harmed when criminal hackers infiltrated Zoosk's Amazon Web Services ("AWS") environment and stole certain personal information of some of Zoosk's users (the "Intrusion").  Now, with the Court's having ruled that no class can be certified here, this case is down to the negligence and California Unfair Competition Law ("UCL") claims of the two individual named plaintiffs.  Because neither named plaintiff will be able at trial to prove a claim against Zoosk either in negligence or under the UCL, Zoosk is entitled to summary judgment against both Plaintiffs on both claims.

II.     **SUMMARY OF MATERIAL FACTS**

Zoosk is a dating application that offers both a free version and a paid subscription-based version.  Plaintiffs' Fourth Amended Class Action Complaint ("Complaint") (ECF No. 191), ¶ 3.  One of the primary differences between the free and paid versions is that paying members are able to communicate with other members.  Declaration of Douglas H. Meal ("Meal Decl."), Ex. B ("Greenamyer Depo. Tr.") 29:8–12.  Plaintiff Juan Flores-Mendez ("Flores-Mendez") signed up for a Zoosk account ███████████████  Meal Decl. Ex. A ("Flores-Mendez Depo. Tr.") 104:11–13.  ████████████████████████████████████████████

████  Flores-Mendez Depo. Tr. 66:12–14, 73:2–12, 75:11–13, 84:8–24; Meal Decl. Ex. C (Flores-Mendez Depo. Ex. 18).  Plaintiff Tracy Greenamyer ("Greenamyer") joined Zoosk in approximately ███████████  Greenamyer Depo. Tr. 26:4–12.

████████████████████████████████████████████  Greenamyer Depo. Tr. 29:8–12, 33:16–25; Meal Decl. Ex. D (Greenamyer Depo. Ex. 36).

On January 12 and 13, 2020, an unauthorized actor (or actors)[1] perpetrated the Intrusion.  Meal Decl. Ex. E ("SF Report") at 7–8.  The forensic evidence shows that ████████████

---

[1] Zoosk is unaware of the identity and number of attacker(s).  For purposes of this brief, Zoosk will use the singular to refer to the hacker or group of hackers that perpetrated the Intrusion.

ZOOSK INC.'S MEMO. IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
3:20-cv-4929-WHA



1     ██████████████████████████████████████ *Id.* at

2     8–9. ███████████████████████████████████████

3     ██████████████████████████████ Meal Decl. Ex. Q

4     ("Callahan Decl.") ¶ 3. █████████████████████████

5     ███████████████████████████████ SF Report at

6     14–15 & Table 5. █████████████████████████████

7     ████████████████████████████████████████ *Id.*

8     at 15.

9     ███████████████████████████████████████

10    ████████████████████████████████████████

11    ████████████████████████ Callahan Decl. ¶ 4. ████

12    ████████████████████████████████████████

13    ████████████████████████ *See id.* ¶ 5. █████

14    ████████████████████████████████████████

15    ████████████████████████████████████████

16    ████████████████████████████████████████

17    ████████████████████████████████ *Id.* ¶ 6.

18       In May 2020, a group of hackers identifying themselves as the "ShinyHunters" posted a

19    dataset for sale on the darkweb that they claimed contained personal information about Zoosk users.

20    Compl. ¶ 4.  Via counsel, Zoosk obtained a copy of the darkweb dataset in order to determine its

21    authenticity.  Meal Decl. Ex. S ("Kessler Decl.") ¶ 4.  Zoosk determined that the dataset contained

22    authentic Zoosk user account records ██████████████████████

23    ████████████████████████████████████████

24    ████ *Id.*[2] █████████████████████████████

25    ───────────────────────────────

     [2] Stroz Friedberg also conducted review of the darkweb dataset and concluded ████████

26    ████████████████████████████████████████

27    ██████████████████████████████████ SF Report

28    at pp. 17–19.

ZOOSK INC.'S MEMO. IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
3:20-cv-4929-WHA

1  ████████████████████████████████████████████████

2  ████████████████████████████████████████████████

3  ████████████████████████████████████████████████

4  ████████████████████████████████████████████████

5  ████████████████████████████████████████████████

6  ████████████████████████████████  SF Report at 17–18, Table 6, Exs. D–G.

7       In June 2020 Zoosk provided email notice of the Intrusion (the "Notice") ████████

8  ████████████████████████████████████████████████  Meal Decl. Ex. R

9  ("Garcev Decl.") ¶ 4.  The Notice did not go to all Zoosk users ████████████████

10       ████████████████  *Id.* ¶ 5.  ████████████████████████████

11  ████████████████████████████████████████████████

12  ████████████████████████████████████████████████

13  ████████████████  *Id.*  ████████████████████████████

14  ████████████████████████████████████████████████

15  ████████████████████████████████████████████████

16  ████████████████████████████████████  *Id.*

17       Flores-Mendez received the Notice on or about June 6, 2020.  Flores-Mendez Depo. Tr.

18  147:7–25; Meal Decl. Ex. F (Flores-Mendez Depo. Ex. 22).  Flores-Mendez testified that ████████

19  ████████████████████████████████████████████████

20  ████████████████████████████  Flores-Mendez Depo. Tr. 207:9–15, 212:23–214:25.

21       Greenamyer's Zoosk user account record resides in Zoosk database ████████████

22  ████████████████████████████████████████████████  Meal

23  Decl. Ex. G ("SF Supp. Report") at 2.  Greenamyer was accordingly not among the group of Zoosk

24  users to whom the Notice was sent, ████████████████████████████████

25  ████████████████  Greenamyer Depo. Tr. 52:24–53:4; Meal Decl. ¶ 8.  Greenamyer only became

26  aware of the Intrusion ████████████████████████████████████████

27  ████████████████████████████████████████████████

28  Greenamyer Depo. Tr. 42:19–24.  ████████████████████████████

ZOOSK INC.'S MEMO. IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
3:20-cv-4929-WHA

1      ███████████ Greenamyer Depo. Tr. 43:1–23; Meal Decl. Ex. H (Greenamyer Depo. Ex. 37).

2 ██████████████████████████████████████████████████████████████████████

3 ████████████████████████████████████████████████ Greenamyer Depo. Tr.

4 71:23-72:14.  Greenamyer testified that ██████████████████████████████

5 ██████████████████████████████████████████████████ Greenamyer

6 Depo. Tr. 75:10-25; Meal Decl., Ex.  I ("Greenamyer Special Interrogs. Resp.") No. 7.

7 ### III.   PROCEDURAL BACKGROUND

8      The twists and turns that have brought this two-year-old case to its current procedural

9 posture are recapitulated in the Meal Declaration.  *See* Meal Decl. ¶¶ 2-7.  Where matters now stand

10 is that the currently operative complaint (the *fifth* complaint in this case) is the Fourth Amended

11 Complaint filed by Flores-Mendez and Greenamyer on April 29. 2022.  ECF No. 191.  In the Fourth

12 Amended Complaint both Plaintiffs assert against Zoosk, on behalf of themselves and a putative

13 class of Zoosk users whose information was compromised in the Intrusion, Intrusion-related claims

14 in negligence and under the UCL.  Fact and expert discovery regarding those claims are now

15 complete (*see* ECF Nos. 192, 212); class certification of those claims has now been entirely denied

16 (ECF No. 234); and trial of Flores-Mendez's and Greenamyer's remaining individual claims is set

17 for October 17, 2022 (ECF No. 212).

18 ### IV.   LEGAL STANDARD

19      Federal Rule of Civil Procedure 56(a) dictates that the "court *shall* grant summary judgment

20 if the movant shows that there is no genuine dispute as to any material fact and the movant is

21 entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (emphasis added).  The moving party

22 must identify the evidence, or lack thereof, demonstrating the absence of a genuine issue of material

23 fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), which will then shift the burden to the

24 nonmoving party to identify the specific facts that show that a genuine issue exists, Fed. R. Civ. P.

25 56(c).  If the nonmoving party cannot do so, then the moving party is entitled to judgment as a

26 matter of law.  *Celotex Corp.*, 477 U.S. at 323.  A fact is "material" only if it, "under applicable

27 substantive law, may affect the outcome of the case" and a dispute is "genuine" only if "the

28 evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*

ZOOSK INC.'S MEMO. IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
3:20-cv-4929-WHA

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007).  In addition to a plaintiff's claims, affirmative defenses are appropriate for adjudication on a motion for summary judgment.  *Magana v. Commonwealth of the N. Mar. I.*, 107 F.3d 1436, 1446 (9th Cir. 1997).  While summary judgment should be granted "with caution," *Anderson*, 477 U.S. at 255, it is not a "disfavored procedural shortcut" and must be granted where it is warranted, *Celotex Corp.*, 477 at 327.

A moving party may obtain summary judgment if it can either disprove an essential element of the other party's claim or show that the other party will be unable to meet its burden of proof at trial.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  "A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex Corp.*, 477 U.S. at 323; *see also id.* at 325 (moving party need only point out "that there is an absence of evidence to support the nonmoving party's case").  As long as there has been the opportunity to conduct discovery, the fact that the essential evidence is in the possession of the moving party will not defeat a motion.  *Anderson*, 477 U.S. at 257.  Simply raising issues regarding the credibility of the movant's evidence is likewise insufficient.  *Nat'l Union Fire Ins. Co. of Pittsburgh v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983).  Once the moving party "identif[ies] those portions of the record that demonstrate the absence of a genuine issue of material fact," the nonmoving party bears the burden of "by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designat[ing] specific facts showing that there is a genuine issue for trial."  *Swafford v. Int'l Bus. Machines Corp.*, 408 F. Supp. 3d 1131, 1139 (N.D. Cal. 2019) (Koh, J.).  The party opposing a motion "must do more than simply show there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## V.     ARGUMENT

Greenamyer and Flores-Mendez have each advanced two claims against Zoosk: one for negligence and one for violation of the UCL's "unfair" prong.  Both claims are abject failures.  First, neither plaintiff will be able to establish any element of negligence – duty, breach, causation, or damage.  Nor can either prove that he or she incurred a loss recoverable under the UCL, that any

such loss was as a result of Zoosk's purported unfair behavior, or that Zoosk engaged in unfair behavior.  Summary judgment must therefore be granted in Zoosk's favor across the board.[3]

**A.     Zoosk Is Entitled to Summary Judgment on Greenamyer's Negligence Claim**

The necessary elements of a cause of action for negligence under California law are as follows: "(1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages)."  *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (quoting *McGarry v. Sax*, 158 Cal. App. 4th 983, 994 (2008)).  Greenamyer cannot establish any of these necessary elements here.

*1.     Greenamyer Cannot Prove That the Intrusion Was the Proximate Cause of Any Injury She Claims to Have Suffered*

In order to prevail on a cause of action for negligence, a plaintiff must prove, among other things, that the defendant's breach of a duty was the "proximate cause" of an "actual loss" suffered by the plaintiff.  *Corales*, 567 F.3d at 572.  "Legal causation" as an element of a negligence claim "has two components: cause in fact and proximate cause.'"  *Steinle v. United States*, 17 F.4th 819, 822 (9th Cir. 2021) (quoting *S. Coast Framing, Inc. v. Workers' Comp. Appeals Bd.*, 61 Cal. 4th 291, 298 (2015)).  In California, proving causation involves establishing "that the defendant's act or omission was a substantial factor in bringing about the injury" and requires "some *substantial link or nexus* between the act and the injury."  *Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 651 (N.D. Cal. 2020) (Freeman, J.) (emphasis added) (citations omitted and cleaned up); *see also In re*

---

[3] Plaintiffs seek both monetary relief and injunctive relief on both of their claims. *See* Compl. ¶ 111 & Prayer for Relief ¶ 5.  As to their request for injunctive relief, an injunction is only a form of relief, not a claim in and of itself.  Thus, because as shown below "none of [their] claims for relief survive, [their] claim for injunctive relief fails too."  *Mishiyev v. Alphabet, Inc.*, 444 F. Supp. 3d 1154, 1161 (N.D. Cal. 2020) (Alsup, J.); *see also Ivanoff v. Bank of Am., N.A.*, 9 Cal. App. 5th 719, 734 (2017) ("Injunctive relief is a remedy . . . . A cause of action must exist before a court may grant a request for injunctive relief.") (quoting *Allen v. City of Sac.*, 234 Cal. App. 4th 41 (2015)). In particular, because incurring an actual loss is an *element* of both a valid negligence claim (see Part V.A *infra*) and a valid UCL claim (see Part V.B.1 *infra*), Plaintiffs' inability to establish an actual loss (see Parts V.A.2 & V.B.1 *infra*) defeats not only their claims for monetary relief but also their claims for injunctive relief.

ZOOSK INC.'S MEMO. IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
3:20-cv-4929-WHA

*Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 970 (S.D. Cal. 2014) (requiring, and not finding, "a logical and temporal connection between" alleged data breach and "prophylactic credit monitoring costs").  Causation is often a question of fact left to a jury, but can be resolved by the court as a matter of law "where the facts are such that the only reasonable conclusion is an absence of causation." *Steinle*, 17 F.4th at 822 (quoting *State Dep't of State Hosps. v. Superior Ct.*, 61 Cal. 4th 339, 353 (2015)); *Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1506 n.4 (9th Cir. 1994) ("[I]t may be decided as a matter of law if, under the undisputed facts, reasonable minds could not differ on the outcome."); *Huynh*, 508 F. Supp. 3d at 650 (causation is a factual question "unless 'the proof is insufficient to raise a reasonable inference that the act complained of was the proximate cause of the injury'").

Greenamyer will be unable to prove causation at trial because it is beyond any genuine dispute that her user account record was not compromised in the Intrusion.  *See* pp. 3–4 *supra*. Thus, even if she could establish that Zoosk owed her some duty and breached that duty in permitting the Intrusion to occur, which she cannot (*see* Parts V.A.3 & V.A.4 *infra*), the Intrusion cannot have proximately caused, *i.e.*, been "a substantial factor in bringing about," any cognizable injury to Greenmayer.  *Huynh*, 508 F. Supp. 3d at 651.

Specifically, to the extent Greenamyer claims injury based on her allegedly having taken protective steps regarding her user account record (such as ████████████████) once she learned of the Intrusion ██████████████, Greenamyer Depo. Tr. 42:19–24, she will not be able to prove that the Intrusion was the proximate cause of such steps nor that they were necessary to protect herself against a risk of harm actually created or magnified by the Intrusion.  *See Sony*, 996 F. Supp. 2d at 970 (proof of entitlement to compensation for credit monitoring to protect against risk of identity theft needs "both a logical and temporal connection").  That is because her user account record was not compromised in, and her risk of identity theft therefore was in no way increased by, the Intrusion, which involved only the theft of *other people's user account records* from Zoosk.  The *proximate* cause of Greenamyer's alleged protective steps, and any costs she incurred in taking those steps, was therefore not the Intrusion or Zoosk's alleged negligence in allowing the Intrusion to occur, but rather her mistaken assumption a year after the fact that her

ZOOSK INC.'S MEMO. IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
3:20-cv-4929-WHA

user account records had been stolen from Zoosk during the Intrusion, which was not the case and which she had no reason to believe was the case.

Further, to the extent Greenamyer claims injury based on allegedly having overpaid for her Zoosk subscription when she purchased it ▮▮▮▮▮▮▮, Greenamyer Depo. Tr. 29:8–12, 33:16–25, her causation case is equally impossible to prove.  Greenamyer paid for her subscription *more than 4.5 years before the Intrusion occurred*.  That being the case, neither the Intrusion nor any negligence by Zoosk in allowing the Intrusion to occur could possibly have caused Greenamyer to make the subscription payment that is the basis for her overpayment claim.

Because it will be impossible for Greenamyer to prove the necessary element of proximate cause as to either of her claimed injuries, summary judgment must be granted in Zoosk's favor as to her negligence claim.  *See Fritz Cos.*, 210 F.3d at 1106 ("moving party may carry its burden . . . [by] *negating* (disproving) an essential element of the opposing party's claim").

### 2.    Greenamyer Has Not Claimed Any Damages Recoverable in Negligence

Ms. Greenamyer's negligence claim fails as a matter of law for the further reason that she seeks no damages recoverable in negligence.  First, to the extent she is claiming that Zoosk's alleged negligence proximately caused her to take protective steps regarding her user account record, Greenamyer has expressly disavowed making any damages claim based on that supposed injury.  Greenamyer Special Interrogs. Resp. No. 14.  Thus, that supposed injury could not sustain Greenamyer's negligence claim even if that injury has been proximately caused by the Intrusion (which it was not).

Second, to the extent Greenamyer is claiming that Zoosk's alleged negligence proximately caused her to overpay for her Zoosk subscription, the remedy she is seeking for that supposed injury (i.e., restitution of amounts she paid to Zoosk for her subscription) does not constitute "damages" that are recoverable in negligence.  Under California law, only out-of-pocket *losses* from a non-physical alleged injury are recoverable (if at all) in negligence.  *Loube v. Loube*, 64 Cal. App. 4th 421, 426 (1998) ("[A]n award of damages that exceeds actual loss runs afoul of the basic principle that damages are awarded to compensate for loss incurred.").  Greenamyer's calculation of her subscription overpayment claim, which relies entirely on Plaintiffs' damages expert's report,

ZOOSK INC.'S MEMO. IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
3:20-cv-4929-WHA

Greenamyer Special Interrogs. Resp. Nos. 12, 13, does not even purport, however, to calculate her *losses* from having purchased her Zoosk subscription.  Rather, as shown by Zoosk in its class certification opposition brief, the first calculation methodology offered by Plaintiffs' damages expert merely purports to calculate the amount Greenamyer *paid* for her subscription, without taking any account of the value she received in exchange for that payment and thus without purporting to calculate her *losses* from making that payment; and the expert's second and third methodologies purport to calculate profits and/or savings that Zoosk achieved from her subscription payment, not losses that Greenamyer suffered by making that payment.  ECF No. 206 at 7–12.  Moreover, by its very terms Plaintiffs' damages expert's report only purports to calculate subscription overpayments made by Zoosk users whose user account records were stolen in the Incident[4]; that report's calculations thus have no relevance to any claimed subscription overpayment made by a Zoosk user like Greenamyer whose user account record was not stolen in the Incident.[5]

   3.   *Greenamyer Cannot Establish That Zoosk Owed Her a Duty to Protect Her Data*

In order to be liable for negligence, a defendant must have breached a duty that it owed to the plaintiff.  *Corales*, 567 F.3d at 572.  Greenamyer alleges that Zoosk owed her "a duty to exercise reasonable care in protecting [her] PII from unauthorized disclosure or access."  Compl. ¶ 88.  Under well-established California law, however, "[d]uty is not universal; not every defendant owes every plaintiff a duty of care."  *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 213 (2021).  As is

---

[4] Mr. Olsen's report sets out his analysis of "the economic harm suffered by the Subscription Subclass as a result of the Data Breach."  Meal Decl. Ex. M (Expert Report of Gary D. Olsen) ¶ 2.  Mr. Olsen accordingly offers various calculations of the amounts supposedly overpaid by those Zoosk users who "did not authorize Zoosk to make their PII available to bad actors – which is exactly what happened in the Data Breach."  *Id.* at ¶ 15.  Thus, as Mr. Olsen acknowledged in his deposition, his calculations only purport to calculate subscription overpayments made by persons whose data was stolen in the Incident.  Meal Decl. Ex. N (Olsen Depo. Tr.) 55:18–21 ("PII was [exfiltrated] and, as a result, [the] plaintiffs are seeking damages."); 56:14–15 ("The damages depend on the exposure of PII.").

[5] Even if Greenamyer's alleged damages were actionable in negligence, her recovery of those alleged damages would be barred by the economic loss doctrine and the prohibition on recovery of consequential damages in Zoosk's Terms of Use for the same reason as Flores-Mendez's recovery of his claimed damages is so barred.  *See* Parts V.C.3 & V.C.4 *infra*.

ZOOSK INC.'S MEMO. IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
3:20-cv-4929-WHA

relevant here, a duty to protect from harm inflicted by a criminal third party – the attacker who perpetrated the Intrusion – will not be found unless "there exists a special relationship between the parties or some other set of circumstances giving rise to an affirmative duty to protect." *Id.* at 209; *see also Diaz v. Intuit, Inc.*, No. 15-cv-1778-EJD, 2018 WL 2215790, at *5 (N.D. Cal. May 15, 2018) (Davila, J.) ("[T]here is no general duty to protect against the conduct of another in the absence of a special relationship[.]").[6] No such relationship, and hence no such duty to protect, can be found here.

A special relationship can only arise if the defendant's relationship with either the criminal actor or the victim "gives the victim a right to expect protection" and "puts the defendant in a unique position to protect the [victim] from [the] injury" inflicted by the criminal actor. *Brown*, 11 Cal. 5th at 216. In *Brown*, the California Supreme Court affirmed the lower court's decision that USA Taekwondo had a special relationship with the criminal actor – a coach who abused minors that competed in martial arts – where it registered the coach, initiated a disciplinary action against him, and eventually banned him. *Id.* at 211. The U.S. Olympic Committee, on the other hand, had no special relationship with either the victim or the criminal actor, even though it was alleged that USOC could have regulated USA Taekwondo and thereby prevented the abuse. *Id.* What *Brown* teaches, then, is that the mere ability to potentially prevent either the criminal actor from perpetrating the crime or the victim from being injured by the crime is not itself sufficient to create a special relationship. Instead, the "typical setting" for finding a special relationship between the defendant and the plaintiff is "where the plaintiff is particularly vulnerable and dependent upon the defendant who, correspondingly, has some control over the plaintiff's welfare." *Regents of Univ. of California v. Superior Ct.*, 4 Cal. 5th 607, 621 (2018). Illustrative examples of plaintiff-defendant relationships that have been recognized as "special" therefore include "[r]elationships

---

[6] Only if a special relationship is found to exist will a court proceed to a second analytical step and determine whether the factors outlined in *Rowland v. Christian*, 69 Cal. 2d 108 (1968), apply and counsel in favor of finding no duty in spite of the existence of a special relationship. *Brown*, 11 Cal. 5th at 209. The *Rowland* test, as the California Supreme Court recently emphasized, therefore does not provide the test for whether a special relationship exists but rather only applies where a special relationship sufficient to support the existence of a duty has already been found to exist.

ZOOSK INC.'S MEMO. IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
3:20-cv-4929-WHA

1   between parents and children, college and students, employers and employees, common carriers

2   and passengers, and innkeepers and guests." *Brown*, 11 Cal. 5th at 216.

3          Applying the above principles here, Greenamyer as a matter of law cannot establish a

4   "special relationship" between Zoosk and either herself or the criminal attacker who perpetrated

5   the Intrusion.  First, under *Brown*, it matters not to the special relationship analysis that Zoosk

6   conceivably (though not necessarily) could have foreseen and prevented the attacker from

7   perpetrating the Intrusion.  Second, turning to what *does* matter to the special relationship analysis,

8   (a) Zoosk had no relationship of any sort with the attacker, much less a "special" one, and (b)

9   Zoosk's relationship with Greenamyer bears not the slightest resemblance to the sorts of

10   relationships that heretofore have been found "special" under California law, but rather was nothing

11   more than an arm's length commercial relationship of the sort that California courts routinely refuse

12   to find "special."  *See Sony*, 996 F. Supp. 2d at 969 (no special relationship created by "everyday

13   consumer transactions"); *Elsayed v. Maserati N. Am., Inc.*, 215 F. Supp. 3d 949, 963–64 (C.D. Cal.

14   2016) (distinguishing relationship between car manufacturer and consumers generally from special

15   relationship that could exist with particular consumer known to be purchasing product for particular

16   use); *Fieldstone Co. v. Briggs Plumbing Prods., Inc.*, 54 Cal. App. 4th 357, 368 (1997) (finding no

17   special relationship where product "was intended to affect [plaintiffs] in the same way as all retail

18   buyers" not "in any way particular to" plaintiffs).  Being unable to establish the requisite special

19   relationship, Greenamyer therefore cannot establish that Zoosk had a duty enforceable in

20   negligence to protect her user account record from criminal actors such as the attacker. [7]

21

22

---

23   [7] In ruling on Zoosk's motion to dismiss, the Court concluded that a duty had been adequately
     alleged because Zoosk had Plaintiffs' information and from an "incentives standpoint," Zoosk

24   should be held to a duty to adequately protect it.  ECF No. 61 at 6.  However, as subsequently made
     clear in *Brown*, policy considerations such as business incentives are only to be considered in the

25   second step once a special relationship has been found and those considerations cannot be an
     independent basis for finding a special relationship.  11 Cal. 5th at 217.  The Court's decision on

26   Zoosk's motion to dismiss also stated that "[t]he 'special relationship' question only emerges with
     respect to the economic loss doctrine."  ECF No. 61 at 5.  However, as *Brown* subsequently

27   clarified, the existence of a special relationship is also a necessary component of the duty inquiry
     where, as here, the duty being asserted is to protect another against a third-party criminal attack.

28   11 Cal. 5th at 209.

ZOOSK INC.'S MEMO. IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
3:20-cv-4929-WHA

4.      *Greenamyer Cannot Establish That Zoosk Violated Any Duty Owed to Her in Negligence Because She Cannot Establish the Standard of Care Required to Meet That Duty or a Failure by Zoosk to Meet That Standard of Care*

If she were able to establish that Zoosk owed her a duty in negligence to protect her user account record against third-party criminal attack, which she cannot, Greenamyer would then also need to prove that Zoosk breached that duty in failing to prevent the third-party criminal attack that led to the Intrusion.  In order to do so, she would need to establish the standard of care with which Zoosk was obligated to comply in order to meet its duty and the specific way or ways that Zoosk failed to so comply.  "The duty of care establishes whether one person has a legal obligation to prevent harm to another, while the standard of care defines what that person must do to meet that obligation and thus sets the standard for assessing whether there has been a breach." *Issakhani v. Shadow Glen Homeowners' Ass'n*, 63 Cal. App. 5th 917, 935 (2021) (internal citation omitted). There is not sufficient evidence in the record for Greenamyer to carry her burden on the breach element of her negligence claim either.

It is generally the case that whether a defendant acted reasonably is a question of fact for the jury to resolve.  *See Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 868–69 (9th Cir. 2010). However, where the "plaintiff relies on a theory plainly beyond the common experience of both judges and jurors," rather than the basic reasonable person standard, expert testimony is necessary to assist the jury in deciding that fact question by giving them the standard against which to measure the defendant's actions.  *Kamerik v. Depuy Orthopaedics, Inc.*, No. CV1106920MMMMANX, 2013 WL 12322041, at *4 (C.D. Cal. Jan. 28, 2013); *see also Miller v. Los Angeles Cnty. Flood Control Dist.*, 8 Cal. 3d 689, 702 (1973) (expert evidence necessary where "the matter in issue is one within the knowledge of experts only and not within the common knowledge of laymen"). Such is the case here, where the questions are the standard of care applicable to the protection of personal information akin to Greenamyer's user account record and whether Zoosk complied with that standard of care – questions far beyond the knowledge of laypeople.  *See, e.g.*, *Torres v. Taser Int'l, Inc.*, 277 F. App'x 684, 687 (9th Cir. 2008) (granting summary judgment to defendant on claim of negligent design of firearm because "the appropriate standard of care for a weapon

- 12 -

manufacturer is beyond the common knowledge of laypersons and, thus, it was incumbent upon [plaintiff] to present at least *some* expert testimony regarding this customary standard of care"); *Braverman v. BMW of N. Am., LLC*, No. SACV1600966TJHPJWX, 2021 WL 1020408, at *3 (C.D. Cal. Mar. 17, 2021) (same for claim of defective design of car battery); *Kamerik*, 2013 WL 12322041, at *4 (same for design of medical device).  At trial then, it will be incumbent on Greenamyer to provide admissible expert testimony as to the standard of care applicable to the protection of data akin to her user account record and Zoosk's compliance with that standard of care.  This Greenamyer cannot do.

In order for an expert's testimony to be considered, it must be helpful to the trier of fact, "based upon sufficient facts or data, the "product of reliable principles and methods," and the result of application of those "principles and methods reliability to the facts of the case." *In re Glumetza Antitrust Litig.*, Nos. C 19-05822 WHA *et al.*, 2021 WL 3773621, at *2 (N.D. Cal. Aug. 25, 2021) (Alsup, J.) (discussing Fed. R. Evid. 702).  The inquiry is not into the "correctness of the expert's conclusions but the soundness of his methodology." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010).  Expert evidence must be reliable and relevant, *i.e.*, it must "ha[ve] a valid connection to the pertinent inquiry" and "ha[ve] a reliable basis in the knowledge and experience of the relevant discipline." *In re Glumetza*, 2021 WL 3773621, at *2 (quoting *Primiano*); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591, 597 (1993).  An expert must do more than "present[] only conclusory statements of opinion" but must provide "evidence in the industry" or identify evidence relating "to the individual circumstances" in order to establish a standard of care or the failure to meet it. *Howard v. Omni Hotels Mgmt. Corp.*, 203 Cal. App. 4th 403, 430 (2012); *see also Siegal v. Westin St. Francis Ltd. P'ship*, No. C-95-1442 MMC, 1996 WL 524378, at *5 (N.D. Cal. Sept. 9, 1996) (Chesney, J.) (granting summary judgment because expert testimony "was based simply on conjecture and speculation" which "cannot rise to the dignity of substantial evidence") (citations omitted).

Greenamyer relies on the Strebe Report to meet her evidentiary burden as to the standard of care.  Greenamyer Special Interrogs. Resp. No. 6.  However, Mr. Strebe fails to make the showing required of an expert to establish the standard of care applicable to Zoosk in regard to the

protection of Greenamyer's user account record. ███████████████████████████

███████████████████ and he nowhere purports to specify (much less substantiate) what

standards Zoosk was required to meet in order to achieve "reasonable" security for Greenamyer's

user account records.  *See* Meal Decl. Ex. J ("Strebe Report") ¶ 3; *see also* Meal Decl. Ex. K

("Strebe Rebuttal Report") ¶ 13 (█████████████████████████████████████████

████████).  As for the term "industry standard," ████████████████████████████

████████████████████████████████████████████████████████████████████

████████  Strebe Rebuttal Report ¶ 16; *see also* Meal Decl. Ex. L ("Strebe Depo. Tr.") 54:18–

55:24.  This definition is at odds with the much narrower definition of that term that applies under

California law, the "actual or accepted practice within a profession, rather than theories about what

'should' have been done," *Osborn v. Irwin Mem'l Blood Bank*, 5 Cal. App. 4th 234, 282 (1992), so

even on its face Mr. Strebe's report provides nothing reliable as to the standard of care that Zoosk

was *legally* obliged to meet.  *See also* Restatement (Third) of Torts: Liability for Physical and

Emotional Harm, § 13 cmt. d (explaining a custom must be such that "it induces general reliance

by virtually all those participating in an activity").   Indeed, in his deposition Mr. Strebe

acknowledged ████████████████████████████████████████████████████████

█████████████████████████ (Strebe Depo Tr. 68:7–69:20; 70:25–71:10) – which

requirement is the linchpin of the *legal* definition of "industry standard."   Moreover, in his

deposition testimony Mr. Strebe acknowledged ████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████,[8] and as to that

standard Mr. Strebe readily agreed in his deposition testimony that ████████████████████

███████████████████████████████████[9]  In short, there is literally nothing in Mr.

Strebe's report that Greenamyer could point to as being, or that the Court could find to be, sufficient

---

[8] Mr. Strebe testified that ███████████████████████████████████████████████████. Strebe Depo. Tr. 176:5–16.

[9] Mr. Strebe acknowledged at deposition that █████████████████████████████████████████

██████████ *See* Strebe Depo. Tr. 165:10–167:4.

1    to establish "evidence in the industry" as to the standard of care applicable to the protection of

2    personal information akin to Greenamyer's user account records.[10]

3        A data breach case where the plaintiff's evidence had this exact same failing at the summary

4    judgment stage was *Silverpop Systems, Inc. v. Leading Market Technologies, Inc.*, 641 F. App'x

5    849 (11th Cir. 2016).  There, the Eleventh Circuit held that the plaintiff's negligence claim against

6    its service provider, which had suffered a cybersecurity breach, failed at the summary judgment

7    stage because the plaintiff "failed to present evidence to establish the applicable standard of care."

8    *Id.* at 852.  Observing that "evidence of custom within a particular industry, group, or organization

9    is admissible as bearing on the standard of care in determining negligence," the court noted the

10   plaintiff failed to identify any "standards that are ordinarily employed in [the defendant's]

11   industry."  *Id.*  Accordingly, as the plaintiff "failed to present evidence establishing the standard of

12   care," it could not "establish a breach of the standard of care."  *Id.*

13       Each of the *Silverpop* court's findings as to evidentiary failings of the plaintiff in that case

14   applies fully to the evidentiary showing (or lack thereof) made by Greenamyer in this case as to the

15   applicable standard of care.  Like the plaintiff in *Silverpop*, Mr. Strebe does not establish and apply

16   "reliable principles and methods" to the facts of this case, *see In re Glumetza*, 2021 WL 3773621,

17   at *2, because he does not explain what the standard of care in Zoosk's industry is for data of the

18   sort at issue here or how Zoosk fell short of that undefined standard.  Instead, he simply applies an

19   approach of "I know bad security when I see it," which approach does not yield replicable or

20   testable results and therefore is useless in assisting the Court and/or the trier of fact in determining

21   the standard of care and assessing Zoosk's alleged breach thereof.  Without admissible and

22   trustworthy evidence of the standard of care in Zoosk's industry for data of the sort at issue here,

23

[10] Instead of focusing on industry standards and Zoosk's compliance therewith, the overwhelming
24   majority of the criticisms that Mr. Strebe levels at Zoosk's data security measures represent Zoosk's
     supposed failures to meet either its own internal security policies or what Mr. Strebe calls "best
25   practices" for information security.  Strebe Depo. Tr. 85:8–18, 86:18–87:5, 190:13–18.  Even Mr.
     Strebe does not contend that these policies and practices rise to the level of "industry standards"
26   however.  *Id.* at 239:23–242:7.  Apart from those criticisms, all that Mr. Strebe does in his report
     is describe his understanding of what occurred (based on produced emails and deposition
27   transcripts, not forensic evidence), criticize the handling of the acquisition of Zoosk, lambast
     Zoosk's investigation of the Intrusion after it occurred, and offer a list of steps that he believes
28   Zoosk should be ordered to undertake.  *See generally* Strebe Report.

ZOOSK INC.'S MEMO. IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
3:20-cv-4929-WHA

1    Greenamyer will be unable to carry her burden of proof on breach of duty, entitling Zoosk to

2    summary judgment on the negligence cause of action.  *See Braverman*, 2021 WL 1020408, at *2–

3    3 (finding summary judgment appropriate where expert testified only about how car battery worked

4    but not whether its design was defective).

5        Alternatively, Greenamyer asserts that Zoosk's standard of care can be found in, and

6    Zoosk's noncompliance with that standard can be established by Zoosk's supposed violation of the

7    Federal Trade Commission Act ("FTC Act") and the California Consumer Privacy Act ("CCPA").

8    *See* Compl. ¶¶ 93, 97.[11]  For multiple reasons, Greenamyer cannot use those statutes to supply the

9    standard of care here.[12]  First, under California law the negligence per se doctrine permits a plaintiff

10   to use a statute to define the standard of care for an existing duty only where (1) a statutory violation

11   (2) caused "death or injury to person or property" to (3) a "person[] for whose protection the statute

12   . . . was adopted," and (4) the alleged injury was "of the nature which the statute was designed to

13   prevent."  Cal. Evid. Code § 669(a)(1)–(4).  Here, Greenamyer cannot show a violation of either

14   the FTC Act or the California statute[13] nor has death or injury to person or property occurred,

15   making negligence per se *doubly* unavailable on its face.

16   _____

17   [11] While the Fourth Amended Complaint purports to refer to the CCPA, the specific provision cited, California Civil Code § 1798.81.5, is not part of the CCPA but rather the California Consumer Records Act.  *See* Compl. ¶ 97–98.

18   [12] To the extent Greenamyer cites these statutes to establish that Zoosk had a *duty* of care, and not

19   to establish the *standard* of care Zoosk had to meet to satisfy that claimed duty, *see* Compl. ¶ 93, Greenamyer has committed "the sin of conflating a standard of care with a duty of care."  *See*

20   *Issakhani*, 63 Cal. App. 5th at 936.  While, as discussed, in text statutes can on rare occasion provide the *standard* of care that must be met to satisfy a common-law duty in negligence, they cannot in

21   and of themselves create such a common-law duty.  *Dent v. Nat'l Football League*, 384 F. Supp. 3d 1022, 1028–29 (N.D. Cal. 2019) (Alsup, J.), *aff'd in part* 968 F.3d 1126 (9th Cir. 2020) ("The

22   presumption of negligence" that arises from the violation of a statute on a negligence per se theory "applies only after determining that the defendant owes the plaintiff an independent duty of care.")

23   (quoting *Cal. Serv. Station & Auto. Repair Ass'n v. Am. Home Assurance Co.*, 62 Cal. App. 4th 1166 (1998)).

24   [13] The Complaint asserts that Zoosk breached its duties under the statutes "by failing to implement reasonable safeguards to ensure" that Greenamyer's "PII was adequately protected."  Compl. ¶ 53.

25   For the same reasons that Greenamyer will not be able to prove a standard of care by which to assess any duty Zoosk may have had *in common-law negligence* to "reasonably" secure

26   Greenamyer's user account records, Greenamyer will likewise be unable to prove a standard of care by which to assess any duty Zoosk may have had *under these statutes* to "reasonably" secure those

27   records.  And as the Eleventh Circuit has held, a legal requirement to put in place "reasonable" security for a particular category of data (whether imposed by statute, regulation, or at common

28   law) is unenforceably vague unless it is tethered to a standard of care that specifies exactly how to meet that legal requirement to "be reasonable."  *LabMD, Inc. v. FTC*, 894 F.3d 1221, 1231 (11th

ZOOSK INC.'S MEMO. IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
3:20-cv-4929-WHA

Moreover, for Greenamyer to rely on a statute to provide the standard of care element of a negligence claim, the statute allegedly violated must "prescribe a[ ] particular course of conduct" that a defendant "must take, or refrain from taking." *Ramirez v. Nelson*, 44 Cal. 4th 908, 919 (2008). In merely proscribing "unfair . . . acts or practices in or affecting commerce," 15 U.S.C. § 45(a)(1); Compl. ¶ 95, the FTC Act speaks only in generalities and does not set forth the sort of "specific standard of conduct" necessary for negligence per se to be available. *Compare Fagerquist v. W. Sun Aviation, Inc.*, 191 Cal. App. 3d 709, 722 (1987) (finding FAA regulatory provisions sufficiently specific) *with In re Sonic Corp. Customer Data Sec. Breach Litig. (Fin. Insts.)*, No. 17-MD-2807, 2020 WL 3577341, at *6 (N.D. Ohio July 1, 2020) (finding that "Section 5 does not lay out objective standards" as required for negligence per se under Oklahoma law). The same is true for California Civil Code § 1798.81.5, which like the FTC Act fails to provide a particular course of conduct that a defendant must take, or refrain from taking, in order the meet that statute's requirement to "implement and maintain reasonable security procedures and practices" to protect personal information. Thus, even making the highly dubious assumption (see note 12 above) that these statutes are themselves legally enforceable insofar as they mandate "reasonable" data security without providing a standard of care by which to determine whether that mandate has been met, these statutes cannot define the standard of care for Greenamyer's claim in negligence.

## B.  Zoosk Is Entitled to Summary Judgment on Greenamyer's UCL Claim

### 1.  *Greenamyer's Calculation of Her Alleged "UCL Loss" Has No Admissible Evidentiary Support*

Greenamyer alleges that she overpaid for her Zoosk subscription and seeks, by her UCL claim, to recover the amount of that supposed overpayment. Greenamyer Special Interrogs. Resp. No. 14. Under the UCL, just as in negligence, recovery is limited to an actual loss suffered by the plaintiff by reason of the defendant's challenged conduct. *See Chowning v. Kohl's Dep't Stores, Inc.*, 735 F. App'x. 924, 925 (9th Cir. 2018) ("Under California law, where a plaintiff obtains value from the product, the proper measure of restitution is '[t]he difference between what the plaintiff

Cir. 2018); *see also id.* at 1236 (vacating as "unenforceable" FTC order that "contains no prohibitions," "does not instruct LabMD to stop committing a specific act or practice," and "commands LabMD…to meet an indeterminable standard of reasonableness").

ZOOSK INC.'S MEMO. IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
3:20-cv-4929-WHA

paid and the value of what the plaintiff received.'"); *In re Tobacco Cases II*, 240 Cal. App. 4th 779 (2015) (holding that nonrestitutionary disgorgement (a full refund) is not an available remedy under the UCL where the plaintiff derives a benefit from product received from the defendant). Greenamyer admits that she herself has no ability to calculate the amount of her claimed loss by reason of her Zoosk subscription payment and that, instead, she is relying entirely on the expert report of Gary Olsen for that calculation. Greenamyer Special Interrogs. Resp. Nos. 13 & 14; Greenamyer Depo. Tr. 63:11–17. As shown above in regard to Greenamyer's negligence claim, however, Mr. Olsen's report provides no legally valid basis for calculating the amount of any *actual loss* Greenamyer might have suffered from her Zoosk subscription payment. *See* Part V.A.2 *supra*. As a result, for the same reasons that it fails to sustain a negligence claim based on Greenamyer's alleged subscription overpayment, Mr. Olsen's report cannot sustain a UCL claim based on that alleged overpayment.

> 2. *Greenamyer Cannot Establish That She Relied Upon Any Misrepresentation by Zoosk and Thus Will Not Be Able to Prove That Zoosk's Purported Unfair Act Harmed Her*

Greenamyer (and the Court) have been crystal clear that alleged Zoosk misrepresentations are the basis for Greenamyer's sole surviving theory of UCL liability, which is predicated on the UCL's "unfair" prong.[14] That being the case, her theory of UCL injury necessarily must be predicated on those very same alleged Zoosk misrepresentations – otherwise Greenamyer would run afoul of the bedrock UCL requirement that a plaintiff's UCL loss must have occurred "as a result of the unfair competition" being asserted by the plaintiff. Cal. Bus. & Prof. Code § 17204. Where, as here, a plaintiff's UCL theory is based on misrepresentations, the language "as a result of" in Section 17204 "require[s] a showing of actual reliance on the . . . misrepresentations as a result of which the loss of money or property was sustained." *In re Tobacco II Cases*, 46 Cal. 4th 298, 325 (2009). Greenamyer's own testimony demonstrates █████████████████████ ███████████████████████████████████████

---

[14] *See* Compl. ¶ 105 ("Defendant engaged in business acts or practices deemed "unfair" under the UCL because, as alleged above, Defendant failed to disclose the inadequate nature of the security of its computer systems and networks…."); *see also* ECF No. 133 at 4–12.

ZOOSK INC.'S MEMO. IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
3:20-cv-4929-WHA

1
2                                                                      Greenamyer Depo. Tr. at 50:12–

3  17.  She therefore cannot prove reliance and cannot prove her UCL claim.  *See In re iPhone*

4  *Application Litig.*, 6 F. Supp. 3d 1004, 1015 (N.D. Cal. 2013) (Koh, J.) ("Plaintiffs must have seen

5  the misrepresentations and taken some action based on what they saw—that is, Plaintiffs must have

6  actually relied on the misrepresentations to have been harmed by them.").

7              3.     *Greenamyer Cannot Prove That Zoosk Misrepresented the Security*
                      *Measures It Had in Place for Her User Account Record.*
8

9         Greenamyer's UCL claim is premised upon Zoosk's purportedly false assertions that it had

10  reasonable security in place for her user account record.  Compl. ¶¶ 105–07.  However, Greenamyer

11  does not have admissible evidence to establish that Zoosk's security for her user account record

12  actually was unreasonable.  *See* Part V.A.4 *supra*.  Because Greenamyer cannot prove Zoosk lacked

13  reasonable security for her user account record, Greenamyer likewise cannot prove that Zoosk

14  falsely represented that it had such reasonable security in place.  For this further reason, her UCL

15  claim fails.

16     **C.   Zoosk Is Entitled to Summary Judgment on Flores-Mendez's Negligence**
              **Claim**
17

18            1.     *Flores-Mendez, Like Greenamyer, Cannot Prove Either That Zoosk Owed*
                     *Him a Duty in Negligence or That Zoosk Failed to Meet the Standard of*
19                   *Care*

20         As noted above, to prevail on a claim of negligence, a plaintiff must *inter alia* prove the

21  existence of a duty owed to him in negligence and a breach of the standard of care imposed by that

22  duty.  *Corales*, 567 F.3d at 572.  Flores-Mendez, like Greenamyer, will be unable to prove either

23  element.  First, he cannot prove, any more than Greenamyer can, that Zoosk owed its users a duty

24  in negligence to protect them against criminal attacks such as the Intrusion.  *See* Parts V.A.3 *supra*.

25  Second, even if Zoosk had such a duty, Flores-Mendez (just like Greenamyer) has no admissible

26  evidence as to the standard of care required to meet that duty and thus will not be able to carry his

27  evidentiary burden of proving that Zoosk fell short of meeting that standard.  *See* Part V.A.4 *supra*.

28

ZOOSK INC.'S MEMO. IN SUPPORT OF
                                         MOTION FOR SUMMARY JUDGMENT
                                         3:20-cv-4929-WHA

       2.     *Flores-Mendez Has Claimed No Damages Actionable in Negligence*

Recovery in negligence is available only for tangible injuries, *i.e.*, physical injury to a person or property or, in certain cases, out-of-pocket monetary losses. *See Anthony v. Kelsey-Hayes Co.*, 25 Cal. App. 3d 442, 446–47 (1972) ("In California, the only kinds of damages caused by negligence which may be recovered from a defendant not in privity with plaintiff are for bodily injury and physical damage."); *Castillo v. Seagate Tech., LLC*, No. 16-cv-01958-RS, 2016 WL 9280242, at *4 (N.D. Cal Sept. 14, 2016) (Seeborg, J.) ("Those who have incurred such out-of-pocket expenses have pleaded cognizable injuries . . . ."). Intangible injuries – lost time, risk of embarrassment, or increased risk of identity theft – are therefore not in and of themselves actionable in negligence. *See, e.g.*, *Adkins v. Facebook, Inc.*, 424 F. Supp. 3d 686, 695 (N.D. Cal. 2019) (Alsup, J.) (finding that increased risk of future identity theft was sufficient to establish standing but did "not rise to the level of appreciable harm to assert a negligence claim"). Rather, if a plaintiff is to seek compensation in negligence for an intangible injury, he must allege that he suffered some sort of concrete loss as a result, such as out-of-pocket payment or the monetary opportunity cost of the time spent by responding to the breach instead of working or doing something else valuable. *See id.* at 696 (distinguishing *Castillo*, in which plaintiffs had already incurred costs for credit monitoring).

Here, Flores-Mendez claims no physical injury to his person or property by reason of the Intrusion. Nor does he claim any out-of-pocket costs by reason of the Intrusion, apart from making a subscription overpayment claim identical to Greenamyer's. Meal Decl. Ex. O, ("Fourth Suppl. Resp. to Special Interrogs.") No. 13. For two reasons that claim fails to seek damages actionable in negligence. First, like Greenamyer's subscription overpayment claim, Flores-Mendez's overpayment claim relies entirely on Plaintiffs' damages expert's report, Meal Decl. Ex. P ("Second Am. Initial Disclosures") at 8–9, and as shown in Zoosk's brief in opposition to class certification that report does not calculate Flores-Mendez's *losses* from having purchased his Zoosk subscription. *See* Part V.A.2 *supra*. Second, ███████████████████████████████

███████████████████████████ see Part II *supra*, ███████████████████

1 ████████████████████████████████████████████████████████

2 ████████████

3          Flores-Mendez also seeks compensation for the monetary value of the time he spent in

4 responding to notice of the Intrusion.  Specifically, in his discovery responses, Flores-Mendez states

5 that ██████████████████████████████████████████████████████

6 ████████████████████████████████████████  Fourth Suppl. Resp. to

7 Special Interrogs. No. 13.  Crucially, Flores-Mendez says that ████████████████████

8 ████████████████████████████████████  *Id.*  He thus makes no

9 allegation that the time he spent responding to the Intrusion would have otherwise been spent

10 working or doing something else by which he would have achieved some sort of financial gain.

11 Flores-Mendez's most recent supplemental interrogatory response accordingly states that █████████

12 ████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████

15 ████████████████████████████████████████████  *Id.*  By his own

16 admission, then, Flores-Mendez has no evidence that his alleged lost time caused him to incur a

17 *financial* loss of the sort that would be actionable in negligence. *City of Vista v. Robert Thomas*

18 *Secs., Inc.*, 84 Cal. App. 4th 882, 887 (2000) (where "[d]amage is an element" of a claim such as

19 negligence, "resulting damage must be 'actual monetary loss'") (citations omitted); *see, e.g. Forbes*

20 *v. Wells Fargo Bank, N.A.*, 420 F. Supp. 2d 1018, 1020–21 (D. Minn. 2006) ("[A] plaintiff can only

21 recover for loss of time in terms of earning capacity or wages.").

22          Flores-Mendez's alleged lost-time damages are unactionable in negligence as a matter of

23 law for the further reason that Flores-Mendez has no admissible evidence by which to prove the

24 $15-per-hour value his damages calculation places on his lost time.  At deposition, Flores-Mendez

25 admitted that ████████████████████████████████████████████████

26 ██████████████████████████████████████  Flores-Mendez

27 Depo. Tr. at 256:9–257:25. The evidentiary record is thus clear that Flores-Mendez does not

28 himself have ability to substantiate the claimed value of his time.  Nor can Flores-Mendez rely on

ZOOSK INC.'S MEMO. IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
3:20-cv-4929-WHA

1  some expert's analysis to substantiate that claimed value, as no such expert has been disclosed.

2  Flores-Mendez thus has no way to meet the burden that a plaintiff bears to establish the amount of

3  his claimed damages.  *See Tourgeman v. Nelson & Kennard*, 900 F.3d 1105, 1109 (9th Cir. 2018)

4  (calling it "one of the most basic propositions of law" and a "fundamental rule" that a "plaintiff

5  bears the burden of proving his case, including the amount of damages") (internal quotation marks

6  omitted).

7          3.  *The Economic Loss Doctrine Precludes Recovery in Negligence of the*

8              *Damages Claimed by Flores-Mendez*

9        The damages claimed by Flores-Mendez consist of his alleged monetary losses by reason

10  of having allegedly (i) overpaid for his Zoosk subscription(s) and (ii) spent time in responding to

11  the Intrusion.  Fourth Suppl. Resp. to Special Interrogs. No. 13.  Under California law, "there is no

12  recovery in tort for negligently inflicted 'purely economic losses,' meaning financial harm

13  unaccompanied by physical or property damage."  *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th

14  905, 922 (2022).  The recovery of purely economic loss is therefore foreclosed in a California

15  negligence action by the so-called "economic loss doctrine" unless the plaintiff establishes that

16  there exists "(1) personal injury, (2) physical damage to property, (3) a 'special relationship'

17  existing between the parties, or (4) some other common law exception to the" economic loss rule,

18  none of which applies here.  *Kalitta Air, LLC v. Cent. Tex. Airborne Sys., Inc.*, 315 F. App'x 603,

19  605 (9th Cir. 2008) (quoting *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799 (1979)).

20        In the context of an alleged data breach, there is no "physical harm (i.e., personal injury or

21  property damage)," and so the "economic loss doctrine" bars recovery for any alleged economic

22  harm on a plaintiff's negligence claims "as a matter of law" unless the third or fourth exception to

23  the doctrine applies.  *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F.

24  Supp. 2d 942, 959–61 (S.D. Cal. 2012); *see also Dugas v. Starwood Hotels & Resorts Worldwide,*

25  *Inc.*, No. 316CV00014GPCBLM, 2016 WL 6523428, at *12 (S.D. Cal. Nov. 3, 2016) (dismissing

26  negligence claim where plaintiff alleged "nothing more than pure economic loss," including theft

27  of credit card information, costs associated with preventing identity theft, and costs associated with

28  time spent and loss of productivity).  As to those latter two exceptions, Flores-Mendez does not

ZOOSK INC.'S MEMO. IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
3:20-cv-4929-WHA

contend that a common-law exception applies, and although he does allege that Zoosk had a "special relationship" with him, Compl. ¶ 92, no such relationship existed.  *See* Part V.A.3 *supra*. As a result, the economic loss doctrine prohibits recovery in negligence of any of the damages Flores-Mendez seeks in this action.[15]

> 4.    *The Terms of Use Preclude Recovery of Consequential Damages in Negligence*

Flores-Mendez, like each Zoosk user, is subject to the Zoosk Terms of Use ("TOU"), which includes a Limitation of Liability provision that states that "in no event shall Zoosk . . . be liable for any special, consequential or indirect damages . . . whether in an action in contract, tort (including but not limited to negligence) or otherwise, arising out of or relating to the use of . . . the service . . . ."  TOU ¶ 19.  In California, "special," "consequential," and "indirect" damages refer to "losses that do not arise directly and inevitably from any similar breach" of a contract or duty but are rather "secondary or derivative losses arising from circumstances that are particular" to the situation or the parties, as opposed to general damages that "are 'a natural and necessary consequence' of a breach."  *Chinese Hosp. Ass'n v. Jacobs Eng'g Grp., Inc.*, No. 18-cv-05403-JSC, 2019 WL 6050758, at *2 (N.D. Cal. Nov. 15, 2019) (Corley, Mag. J.) (quoting *Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 34 Cal. 4th 960 (2004)).  Here, as discussed above, Flores-Mendez's claimed damages represent the amount of his alleged monetary losses by reason of his having allegedly (i) overpaid for his Zoosk subscription(s) and (ii) spent time in responding to the Intrusion.  Neither of these supposed losses "ar[o]se directly and inevitably from" Zoosk's alleged breach of its supposed duty to have reasonable security measures in place to protect Flores-Mendez's information against a third-party criminal attack.  Rather, each loss depended on the intervening occurrence of an uncertain event – i.e., the Intrusion – by reason of that alleged breach of duty.  *See* Fourth Suppl. Resp. to Special Interrogs. No. 13 (acknowledging that Flores-

---

[15] While the Court held at the motion to dismiss stage that as pleaded Flores-Mendez's injuries were not "purely economic" within the meaning of the economic loss doctrine, ECF No. 61 at 5, as shown above discovery has subsequently revealed that the damages sought by Flores-Mendez for those injuries all represent alleged "financial harm unaccompanied by physical or property damage" and thus all fall within California law's definition of "purely economic losses."  *See Sheen*, 12 Cal. 5th at 922.

Mendez's alleged lost time resulted from the Intrusion and that his alleged subscription overpayment amount was being calculated by Plaintiffs' expert); note 4 above and accompanying text (Plaintiffs' expert acknowledging that his calculation of the amount of the alleged subscription overpayment amount by any Zoosk subscriber depended on that subscriber's Zoosk user account record having been compromised in the Intrusion).  Such Intrusion-dependent losses did not flow as a "a natural and necessary consequence" of Zoosk's alleged breach of its supposed data-security-related duty, for the simple reason that the Intrusion itself was not a "natural and necessary consequence" of that supposed breach of duty.  Instead, Flores-Mendez's alleged losses from the Intrusion are "derivative" and "secondary" results of Zoosk's alleged negligence and as such are paradigmatic examples of losses that are "consequential" rather than "direct" under California law.  *See Chinese Hosp. Ass'n*, 2019 WL 6050758, at *2 (finding that "secondary or derivative losses arising from circumstances that are particular to the contract" were unrecoverable consequential damages).  "A growing number of courts now recognize that individuals may be able to recover [c]onsequential [o]ut of [p]ocket [e]xpenses that are incurred because of a data breach, including for time spent reviewing one's credit accounts," *In re Anthem Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *43 (N.D. Cal. May 27, 2016) (Koh, J.), and Plaintiffs' alleged time-related losses from the Intrusion are just such "consequential" results of Zoosk's alleged negligence.  That being the case, any damages recovery by Flores-Mendez for either his alleged subscription overpayment(s) or his alleged lost time is prohibited by the express language of the TOU.[16]

### D.    Zoosk Is Entitled to Summary Judgment on Flores-Mendez's UCL Claim

Flores-Mendez's UCL claim fails for the same reasons as Greenamyer's.  *First*, just as Greenamyer's inability to prove an actual loss actionable in negligence proved fatal to her ability to prove an actionable UCL loss, see Part V.B.1 *supra*, Flores-Mendez's inability to prove an actual

---

[16] The TOU also limits the total recovery on any theory of liability to "the greater of (1) the aggregate amount of fees for paid services paid by you during the immediately preceding six months or (2) \$50."  TOU ¶ 19.  If for some reason the Court is not prepared to rule on summary judgment that the TOU independently prohibit Flores-Mendez's recovery of *any* of his claimed damages in this action, the Court should at a minimum enforce the TOU's liability cap by ruling that Flores-Mendez's recovery in this action cannot exceed the amount provided for in that cap.

ZOOSK INC.'S MEMO. IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
3:20-cv-4929-WHA

loss actionable in negligence, see Part V.C.2 *supra*, defeats his ability to prove an actionable UCL loss. *Second*, Flores-Mendez (like Greenamyer) will not be able to prove that he relied on any purported Zoosk misrepresentation regarding its security for his user account record,[17] so he (like Greenamyer) cannot prove the reliance on which his UCL claim depends. *See* Part V.B.2 *supra*. *Third*, Flores-Mendez (like Greenamyer) does not have admissible evidence to establish that Zoosk's security for his user account record was unreasonable, *see* Part V.A.4 *supra*, so he (like Greenamyer) cannot prove that Zoosk falsely represented that it had such reasonable security in place, which he (like Greenamyer) must prove for his UCL claim to be valid. *See* Part V.B.3 *supra*.

## VI.    CONCLUSION

For the reasons discussed herein, Zoosk requests that the Court grant summary judgment in Zoosk's favor as to each claim asserted by each plaintiff.

Dated: August 11, 2022

DOUGLAS H. MEAL
REBECCA HARLOW
MATTHEW D. LABRIE
Orrick, Herrington & Sutcliffe LLP

By:    */s/ Douglas H. Meal*

DOUGLAS H. MEAL
Attorneys for Defendant
Zoosk, Inc.

---

[17] Flores-Mendez Dep. Tr. 103:19–104:9